```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                              :    **AMENDED ORDER**
                                              :    **FOLLOWING APPELLATE**
IN RE WORLD TRADE CENTER DISASTER             :    **REMAND, EXTENDING**
SITE LITIGATION                               :    **JURISDICTION**
                                              :
---------------------------------------------------------------x    21 MC 100 (AKH)
```

ALVIN K. HELLERSTEIN, UNITED STATES DISTRICT JUDGE:

      In In re World Trade Center Disaster Site Litigation, 270 F. Supp. 2d 357 (S.D.N.Y. 2003), I ruled on the district court's jurisdiction to hear claims of respiratory injuries incurred by firemen, policemen, and workers while engaged in rescue and debris-removal operations following the terrorist attacks on the World Trade Center. I certified my rulings for interlocutory review, commenting that the exclusive jurisdiction of the district court provided by the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"), 49 U.S.C. § 40101 (2005), made it important that the parties have the more authoritative rulings of the Court of Appeals to determine the proper forum for their lawsuits, the United States District Court for the Southern District of New York, or the New York Supreme Court. I urged the Court of Appeals to hear the appeal, both by the persons aggrieved by my ruling extending federal jurisdiction and, by supplemental jurisdiction, notwithstanding 28 U.S.C. § 1447(d), by the persons aggrieved by my denials of federal jurisdiction and remands to the Supreme Court. Pending review by the Court of Appeals, I stayed remands and retained all the lawsuits.

      Meanwhile, the number of respiratory injury cases has grown, from approximately 35 when I issued my rulings, on June 20, 2003, to 1,886 now. Counsel have represented that there

are more in the offing, probably to aggregate more than 4,000 representing many all of those engaged in the rescue and debris-removal efforts from September 11, 2001 to May, 2002, when the work officially ended.

The proliferation of cases that continue to be filed in this court, or removed to this court from the Supreme Court on the basis of putative federal jurisdiction, could not be ignored. The public interest in all aspects of the wounds left by September 11 required speedy resolution of the claims of those injured by and relating to the terrorist-related aircraft crashes. I therefore proceeded on the basis that federal jurisdiction of all these cases existed until the Court of Appeals might rule otherwise. Regardless whether this court, or the Supreme Court, would ultimately hear the trials of these cases, streamlined and coordinated pre-trial proceedings would promote efficiency, hasten resolution, and serve the interests of justice.

By order of October 13, 2004, I ordered plaintiffs to file their claims in separate cases, one injured claimant to one case, and ruled that the individual issues relating to each claimant predominated over common issues, and were unsuitable to class action treatment. I ruled that coordinated, rather than consolidated, procedures should be followed. Thus, I set up the cases to move forward while the parties waited for the Court of Appeals to review the appeal and issue its ruling.

The economic issue that motivated the parties to argue the jurisdictional issue as strenuously as they did related to the aggregate liability caps provided by the ATSSSA of $350 million for New York City, see, ATSSSA, § 408(a)(3), and the total amount of the liability insurance coverage of the Port Authority of New York and New Jersey and other property holders. Id. § 408(a)(1). The parties considered that the liability cap more likely would be

applied if federal jurisdiction and federal law governed, than if the traditional tort liability procedures of state law were to govern. As it turned out, however, because of the extraordinary success of the Victim Compensation Fund, see ATSSSA §§ 402-407, these considerations became much less important.

On January 22, 2004, the Victim Compensation Fund officially closed. All eligible claimants were paid. As the Special Master reported, approximately 97% per cent of the families of deceased victims eligible to make claims did so. $7.049 billion was paid to survivors of 2,880 persons who were killed and to 2,680 individuals who were injured. Since Congressional appropriations funded these claims, the City and Port Authority did not have to reserve any part of their liability potentials to the claimants who had entered the Victim Compensation Fund procedures. That left a much larger potential that would be available for any liability ultimately payable to respiratory claimants.

This greater potential and other funds made available to the City, for example, a grant from the Federal Emergency Management Agency enabled the City to form a not-for-profit captive insurance company to ensure the liability exposure of the City and its contractors. On October 20, 2005, the captive appeared in the lawsuit, and gradually assumed the defense of the City and many of the many contractor companies that had carried out the debris-removal work, substantially easing the burden of judicial supervision of the lawsuits.

As services of process were completed, and the plaintiffs and defendants became organized, the cases began to move forward. Master complaints have begun to be filed on behalf of all claimants. Individual claims are identified by location of work performed, whether at the site of the World Trade Center, or on barges, or in the Staten Island landfill, and if at the World

Trade Center site, in which quadrant of the site. Claimants also are to identify the precise days they worked. The parties have cooperated in developing a unified, computer automated system for entering and reporting this information, with flexibility to capture additional information yet to be developed, for example, the extent and nature of injuries, diagnoses, special damages, etc. The intent was to prepare the cases for efficient and simplified discovery of essential information, facilitating coordinated settlement discussions, motion practice or, if and to the extent necessary, trials at relatively early dates.

The defendants have identified a number of basic defenses that they wished to advance, in particular, the availability of federal and state statutes that extended protection to defendants, in relation to public emergencies. I ordered discovery to proceed limited to these issues. Defendants have produced a very large production of documents from their files, and the parties have exchanged contention interrogatories designed to identify the issues that needed to be explored in discovery. Discovery on the potential defenses is to be followed by motions and oral argument in early 2006.

All these activities have been regulated by regularly scheduled case management conferences. Lead attorneys have assisted me in fixing agenda items; reports are given as to all proceedings that have been conducted; issues are resolved; schedules are planned; and comments from attendees are solicited. Customarily, the courtroom is packed with attorneys and other persons and parties having interests in the proceedings. At all stages, the parties have been made to realize that an appropriate time will arise for serious settlement discussions. At this point, they are probably premature, and lead counsel seem also so to believe. With consent of the parties, I have appointed a board of three mediators who have committed to stand by for such time as they

4

may be needed to help the parties – in this and in the other tracks of September 11 cases over which I preside.

These cases are in a much different state today than they were two years ago, in June 2003, when I decided the motions that the Court of Appeals now has reviewed. The liability cap is of substantially lesser importance, and counsel have cooperated in coordinating and moving these cases in a way that lends itself to efficient management.

The Court of Appeals, in its dicta, commented that ATSSSA "supersedes state-law claims only with respect to damages remedies for injuries arising out of or relating to the terrorist-related aircraft crashes of September 11," McNally v. The Port Authority of New York and New Jersey, No. 03-7698, slip op. at 43(2d Cir. July 14, 2005) and that the Act further provides that the "substantive law for decision in any such suit shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law." ATSSSA § 408(b)(2). The Court of Appeals concluded that ATSSSA displaces, "not the substantive standards governing liability, but only the state-law damages remedies." McNally, slip op. at 44. Specifically, the Court of Appeals did not agree with my ruling that September 29, 2001 (or, presumably, any date) should demark federal and state jurisdiction, or that there should be a geographical limitation to the World Trade Center site in fixing jurisdiction. And, emphasizing that point, the Court of Appeals stated that Congress' intent to preempt state law related to "state-law remedies for damages claims arising out of those crashes." The Court of Appeals allowed that "there will be some claims" with a relationship that may be "'too tenuous, remote, or peripheral,'" Id. at 45 (quoting New York State Conf. Of Blue Cross and Blue Shield Plans v. Travelers, 514 U.S. 645, 661 (1995)), to qualify for pre-emptive

5

status, but commented that "a definitive line" should not now be drawn.

Given the progress of these cases in federal court and the reasoning in the Second Circuit's dicta, I hereby adopt the reasoning in the remand decision and find jurisdiction accordingly. Should a time arise when subject matter jurisdiction again might be challenged, for the defense is not waivable, there will be opportunity again to re-visit the issue, in the context of a more developed record.

SO ORDERED.

Dated: New York, New York
July 22, 2005

ALVIN K. HELLERSTEIN
United States District Judge