UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                                                  :
IN RE WORLD TRADE CENTER          :     **MEMORANDUM AND ORDER**
DISASTER SITE LITIGATION            :     **APPOINTING SPECIAL MASTERS**
                                                  :
                                                  :     21 MC 100 (AKH)
                                                  :
-----------------------------------------------------X
ALVIN K. HELLERSTEIN, U.S.D.J.:

**I.      Order Appointing Special Masters**

        1.  Pursuant to my authority under Rule 53, Fed. R. Civ. P., and my inherent power to

seek assistance in order to administer the cases before me efficiently, economically, and in the interests

of justice, I appoint as special masters to assist me in the administration of this litigation Dean Aaron

D. Twerski of New York City, New York, and Professor James A. Henderson, Jr. of Ithaca, New York,

effective immediately.  Dean Twerski and Professor Henderson are outstanding academics with special

expertise in the field of mass torts.  Their curriculum vitae and affidavits stating that there are no

grounds for disqualification under 28 U.S.C. § 455 are appended to this order.  I find that their

impartiality and competence to perform the tasks that will be described in this and subsequent orders

cannot reasonably be questioned.  See Fed. R. Civ. P. 53(a)(2); 28 U.S.C. § 455(a).  The Special

Masters hereby appointed are directed to proceed with all reasonable diligence to complete the tasks

assigned by this order.  See Fed. R. Civ. P. 53(b)(2).

        The Special Masters are urgently needed.  The thousands of cases before the Court that

allege respiratory and other injuries suffered by workers performing the clean-up functions at the

World Trade Center site and nearby locations in the aftermath of the terrorist-related aircraft crashes

are individual cases, not a class action.  Each plaintiff bears the burden of establishing facts particular

to his or her claims—facts that must be alleged and proved.  The multitude of plaintiffs in this

consolidated litigation presents a field of facts too vast to be addressed effectively and timely by me, or

by a magistrate judge of the district court.  <u>See</u> Fed. R. Civ. P. 53(a)(1)(C).  The Special Masters will create intelligent and informative categories to enable cases to be considered efficiently and according to their particularized facts, ensuring that each case receives the individual treatment it deserves, while enabling the parties to value the claims and defenses, make appropriate motions, conduct relevant discovery, and organize trials.  The purpose of the Special Masters' involvement is not to resolve disputed issues of fact or law, but to monitor compliance with court orders, and help organize the cases to facilitate their efficient and just progress.  Without their help, neither plaintiffs nor defendants will be able to organize and present the facts and issues, delaying justice, and perhaps denying it entirely.

2.  The first task of the Special Masters is to create a complete and official list of the cases that have been filed and the extent of the compliance of those filings with prior orders of this Court.  Counsel, in reporting to the Court, have been unable to agree as to the number of cases that have been removed from the New York Supreme Court, their identities, or whether multiple plaintiffs in single cases have been eliminated.  The Special Masters will create an undisputed list, and report to the Court those cases that fail in their captions and pleadings to comply with court orders.  The Court has also ordered the parties to identify specifically various particulars of the individual cases: where the plaintiffs worked, in which quadrant of the World Trade Center site, for which contractors, at which times, and describing the injuries complained of.  The Court has asked the parties to establish a database, accessible to all the appropriate parties, to manage these particulars.  The Special Masters will assure compliance with such orders, and recommend their enlargement to comprehend additional, critical information.  The Special Masters will collaborate with the parties to accomplish these tasks speedily, justly, and efficiently.

3.  In the performance of their duties, the Special Masters shall observe the Code of Conduct for United States Judges insofar as it applies to them.  <u>See</u> <u>In re New York City Asbestos</u>

<u>Litig.</u>, 737 F. Supp. 735 (E. & S.D.N.Y. 1990) (Weinstein, J.) ("In general a special master or referee should be considered a judge for purposes of judicial ethics rules.") (citing Code of Judicial Conduct for United States Judges, 69 F.R.D. 273, 286 (1975)).  In particular, the Special Masters may not communicate ex parte with any witness or party to this litigation.  The Special Masters shall meet with liaison counsel for each side, and it will be the responsibility of liaison counsel to convene any others who have an interest in the proceeding or the information to be disclosed, without causing delay.  In order to advise the Court with regard to the development of the projects entrusted to them, however, and to facilitate free interchange of suggestions with the Court, the Special Masters may communicate ex parte with the Court.

      4.   To accomplish the tasks assigned by this Order, the Special Masters may require additional assistance, and towards that end they may apply to the Court, on notice to the parties, for appointment of medical and computer experts to create proper categories for cases and a database application to manage them.  In addition, the Court authorizes the Special Masters to assign tasks to students working under their supervision, provided that such tasks can be accomplished impartially and without significant discretion.  Students will not be required to file affidavits pursuant to 28 U.S.C. § 455.

      5.   The Special Masters shall file monthly a report describing their activities, to be available as a public record, beginning on February 1, 2007, and on the first day of each month thereafter.  The parties may file objections within 30 calendar days of filing.  <u>See</u> Fed. R. Civ. P. 53(g)(2).  The Court shall consider any such objections, and issue a ruling, if appropriate.  <u>See</u> Fed. R. Civ. P. 53(g).

      6.   The cost and expenses of the Special Masters' services shall be divided equally between the plaintiffs and the defendants, with plaintiffs bearing half the cost and defendants bearing

half the cost.  Plaintiffs and defendants shall agree upon a further allocation of each side's half share among themselves.  The Special Masters will bill the parties at a rate of $500 per hour, and for reasonable expenses incurred in connection with their assigned duties.  Work by students shall be billed at the rate of $25 per hour.  On the first day of each month, the Masters shall file and serve on liaison counsel a joint invoice, describing their services and expenses with reasonable detail, and avoiding unreasonable duplication of labor.

7.  I find that the appointment of the Special Masters will materially advance the litigation and reduce costs over the run of many cases.  Therefore, the imposition of the associated costs on the parties is fair.  See Fed. R. Civ. P. 53(a)(3).  In addition, the Court will protect against unreasonable expense or delay by regular communication with the Special Masters and liaison counsel. See id.

**II.    Response to Parties' Objections to the Appointment of the Special Masters**

On October 17, 2006, I solicited the input of all counsel concerning the prospective appointment of a special master in accordance with Rule 53(b)(1) of the Federal Rules of Civil Procedure.  See Order Suggesting a Special Master for Further Proceedings.  I received and considered the parties' input by their joint submission to the Court dated October 31, 2006, and at status conferences on November 3, 2006 and November 28, 2006.  The parties were unable to agree on whether a special master was necessary, how to select a master, or what the qualifications of that master should be.  In the absence of consensus, I circulated a draft order appointing Dean Aaron D. Twerski and Professor James A. Henderson, Jr., as special masters prior to the conference on November 28, 2006, for discussion at the conference and in connection with the more extensive submissions in their joint letter dated December 8, 2006, presenting their respective positions.  Having conferred with the parties a second time and received their views in two separate written submissions

to the Court, there is no reason to delay further the appointment of special masters, and I do so notwithstanding their varying objections.

  A.  <u>Plaintiffs' Objections</u>

    Plaintiffs agree that the appointment of a special master is needed, but object to the appointments of Dean Twerski and Professor Henderson to that position.  Plaintiffs argue that the previous writings of Dean Twerski and Professor Henderson disqualify them from functioning as Special Masters.  The arguments are without merit.   Professor Henderson's criticisms of "aggregative torts" do not apply to the cases before me.  <u>See</u> James A. Henderson, Jr., <u>The Lawlessness of Aggregative Torts</u>, 34 HOFSTRA L. REV. 329, 330 (2005).  The cases before me are individual cases, not class actions, or "aggregative torts" as defined by Professor Henderson, and must be separately alleged and proved according to law.

    The professors' critique of claims for medical monitoring and mental distress by plaintiffs exposed to asbestos similarly is irrelevant.  <u>See</u> James A. Henderson Jr. & Aaron D. Twerski, <u>Asbestos Litigation Gone Mad:  Exposure-Based Recovery for Increased Risk, Mental Distress, and Medical Monitoring</u>, 53 S.C. L. REV. 815 (2002).  By my Summary Order of June 27, 2006, I ordered plaintiffs to remove counts for medical monitoring and fear of cancer in their master complaint.  <u>See</u> <u>In re World Trade Ctr. Disaster Site Litig.</u>, __ F. Supp. 2d __, 2006 WL 2948819 at *17 (S.D.N.Y. Oct. 17, 2006) (recounting procedural history of plaintiffs' complaints).  Prayer for such relief may perhaps be considered as equitable remedies, if causes of action are otherwise proved and if the remedies are held to be appropriate and in accordance with the law.  They do not constitute independent causes of action.

    I stress that if value judgments are to be made, the Court will make them, on notice and with opportunity of the parties to object.  The judicial function belongs to the Court, and not to anyone

else.  The appointment of Special Masters will not change the Court's practices or responsibilities.  See

Rios v. Enterprise Assoc. Steamfitters Local Union 638 of U.A., 860 F.2d 1168, 1175 (2d Cir. 1988)

("It is primarily up to the district court to control the master and to evaluate his conclusions.").  In sum,

the writings of Professor Henderson and Dean Twerski, whose high academic quality is acknowledged

by the parties, relate to the actions and proceedings about which they write, and not to the cases,

parties, and attorneys in the cases over  which I preside.

      B.    Defendants' Objections

        Defendants object to the appointment of special masters on the ground that their

appointment is premature, and to proposed provisions of the draft order.  Their objection to the

appointment is overruled, and I find that the timing is appropriate.  To the extent that defendants'

purpose in objecting is based on their quest for immediate appeal of my Opinion and Order considering

various immunity defenses, In re World Trade Ctr. Disaster Site Litig., __ F. Supp. 2d __, 2006 WL

2948819, supra, their objection is irrelevant to the issues resolved by that Order.

        Defendants also object to my proposal to permit ex parte contact between the Special

Masters and the parties; this objection is accepted, and no ex parte communication between the Special

Masters and the parties is allowed.

        Defendants' objection to ex parte conversations between the Special Masters and the

Court is overruled.  There is no risk that the Court will obtain "personal knowledge of disputed

evidentiary facts" through the Special Masters, for that is not their function.  See In re Brooks, 383

F.3d 1036, 1043 (D.C. Cir. 2004); Edgar v. K. L., 93 F.3d 256, 258 (7th Cir. 1996).  This is not a case

where the appointed master has unqualified ex parte access to parties, third parties, and witnesses, such

that his role is like that of a private investigator.  See Edgar, 93 F.3d at 259 ("Instead of [investigating]

himself, [the] judge appointed agents, who made a private report of how they investigated and what

they learned."); see also Cobell v. Norton, 383 F.3d 1128, 1142 (D.C. Cir. 2003) (finding that appointed Monitor "was charged with an investigative, quasi-inquisitorial, quasi-prosecutorial role that is unknown to our adversarial legal system").  Here, by contrast, any communication between the Special Masters and a party will occur in full view of the other parties.  I find no case, and the parties have not cited one, forbidding the Court from communicating ex parte with its appointed agents, so long as those agents do not give the Court "personal knowledge of disputed evidentiary facts."

   In their objection, defendants quote the advisory notes to Rule 53 of the Federal Rules of Civil Procedure, which warns that "[e]x parte communications between a master and the court present troubling questions."  The drafters of Rule 53 also advise, however, that "there may be circumstances in which the master's role is enhanced by the opportunity for ex parte communications" such as the coordination of multiple proceedings or other logistical matters.  The drafters further advise that Rule 53 does not directly regulate ex parte contact with parties or the district court; instead, it "requires only that the court exercise its discretion and address the topic in its order of appointment." See Fed. R. Civ. P. 53, Advisory Comm. Notes, 2003 Amendments.  Having considered the Code of Conduct for United States Judges, relevant case law, the needs of this litigation, and the tasks assigned to the Special Masters, I find that ex parte contact between the Masters and the Court is appropriate and beneficial to all involved.

   Defendants ask the Court to augment its description of tasks assigned to the Special Masters such as would require a more complete description of the injuries alleged by plaintiffs. Defendant suggests that, in addition to other facts related to these cases, plaintiffs should provide "the date of onset of those injuries; and the date those injuries allegedly were first connected to work related to the WTC rescue, recovery, and debris removal operations."  These ideas should be considered by the Special Masters with plaintiffs' and defendants' liaison counsel.

Both plaintiffs and defendants equally are benefited by full disclosure in an automated and accessible system, for all the reasons causing me to appoint Special Masters, and I anticipate that the Special Masters will be able to proceed by consensus.

SO ORDERED.

Dated:          December 12, 2006
                New York, New York

                                        _____
                                        ALVIN K. HELLERSTEIN
                                        United States District Judge

8

AFFIDAVIT OF AARON D. TWERSKI
TENDERED PURSUANT TO FED. R. CIV. P. 53

STATE OF NEW YORK   )
                     ) ss.                         **AFFIDAVIT**
KINGS COUNTY )

Aaron D. Twerski, affirms according to law, the following:

1.  I am an attorney at law, duly licensed to practice law in the State of New York since 1977 (2nd Department).

2.  I have thoroughly familiarized myself with the issues involved in the litigation captioned In Re World Trade Center Disaster Site Litigation, 21 MC 100 (AKH).  As a result of my knowledge of that case, I can attest and affirm that there are no non-disclosed grounds for disqualification under 28 U.S.C. §455 that would prevent me from serving as the Special Master in the captioned matter.

FURTHER AFFIANT SAYETH NAUGHT.

Aaron D. Twerski

Affirmed to before me and subscribed in my presence this 12th day of December, 2006.

Notary Public

JOYCE AMORE COX
Notary Public, State of New York
No. 30-4794025
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires March 30, 40
June 30, 2010

**R E S U M E**

Name:                Aaron D. Twerski

Address:             121 Hofstra University School of Law
                     Hempstead, NY 11549-1210
Telephone:           516-463-5854

**EDUCATION:**

Beth Medrash Elyon Talmudic Research Institute
A.B. Talmudic Law

Ner Israel Rabbinical College

University of Wisconsin - Milwaukee
B.S. Philosophy
Phi Eta Sigma National Honor Fraternity
Marquette University School of Law J.D. 1965
Class Rank: Second - Cum Laude
Student Editor Marquette Law Review for 1964-65
Appointed by President of Marquette University to
Alpha Sigma Nu Honor Fraternity

**PROFESSIONAL EMPLOYMENT:**

Dean and Professor of Law Hofstra University School of Law, June 2005 to
     present.

Professor of Law Brooklyn Law School, Sept. 1986 to May 2005.
     Appointed Newell DeValpine Professor of Law September 1996.

Professor of Law Hofstra University School of Law, 1972-86
     Interim Dean 1977-78 and Associate Dean 1975-77 of Hofstra
     University School of Law

Professor of Law Duquesne University School of Law,
     1967-71

Visiting Professor Cornell Law School, Spring 1976;
     Boston University, 1982; University of Michigan, 1984

Teaching Fellow at Harvard School of Law, 1966-67

Trial Attorney with the United States Department of
     Justice, Civil Rights Division - Honors Program, 1965-66

Bar Admissions: Wisconsin, Pennsylvania and New York

**SPECIAL PROJECTS AND HONORS**

          American Law Institute: Co-reporter with Professor James
          Henderson, Jr. for Restatement (Third) of Torts Products
          Liability. Appointed May, 1992. Tentative Draft No. 1
          (April 1994); Tentative Draft No. 2 (March 1995); Tentative

1

Aaron D. Twerski                                                            Resume

Draft No. 3 (April 1996). Proposed Final Draft (April 1, 1997). Approved at Annual Meeting, May 20, 1997. Published May 1998.

Named R. Ammi Cutter Reporter (honor bestowed by the American Law Institute for distinguished performance as a Reporter)

Honorary, Doctor of Laws, Touro College, May, 2004

Robert F. Boden Lecture: Marquette University, Oct. 26, 2004

## PUBLICATIONS

### Books

Cases and Materials on the Law of Torts , (co-authored with Prof. James A. Henderson, Jr.) Aspen Law & Business (2003)

Products Liability: Problems and Process, (co-authored with Prof. James A. Henderson, Jr.) Little Brown & Co. (1987) Supplement (1989); Second Edition (1992); Third Edition Aspen Law & Business (1997). Fourth Edition, Aspen Law & Business (2000); Fifth Edition, Aspen Law & Business (2004)

Comparative Negligence Law and Practice (Chapter in Treatise on Conflicts of Law) (Matthew Bender 1984) (Revised 1994)

Products Liability and the Reasonable Safe Product , (co-author) (1978) (John Wiley & Co.)

A Summary Analysis of Conflict of Laws, (1976) (Brackton Press)

2

Aaron D. Twerski                                                    Resume

### Articles

From the Wrong End of the Telescope: A Response to Professor
David Bernstein, (co-authored with Margaret A. Berger) to be
published in Michigan L. Rev.(2006)

Uncertainty and Informed Choice: Unmasking Daubert, (co-
authored with Margaret A. Berger) 104 Michigan L. Rev. 257
(2005)

Liability For Direct Advertising of Drugs to Consumers: An
Idea Whose Time Has Not Come, 33 Hofstra L. Rev. 1149 (2005)

A Fictional Tale of Unintended Consequences: A Response to
Professor Wertheimer, (co-authored with James A. Henderson,
Jr.) 70 Brooklyn L. Rev. 939 (2005)

Consumer Expectations' Last Hope - A Response to Professor
Kysar, (co-authored with James A. Henderson, Jr.) 103 Columb.
L. Rev. 1791 (2003)

Asbestos Litigation Gone Mad: Exposure-Based Recovery for
Increased Risk, Mental Distress and Medical Monitoring, (co-
authored with James A. Henderson, Jr.) 53 S. Car. L. Rev. 815
(2002)

Drug Designs Are Different , (co-authored with James A.
Henderson, Jr.) 141 Yale L. J. 151 (2001)

Intent and Recklessness in Tort: The Practical Craft of
Restating Law, (co-authored with James A. Henderson, Jr.) 54
Vand. L. Rev. 1133 (April 2001)

The Products Liability Restatement in the Courts: An Initial
Assessment, (co-authored with James A. Henderson, Jr.)  27 Wm.
Mitchell L. Rev. 7 (2000)

Liability Without Cause?  Further Ruminations On Cause
In Fact As Applied To Handgun Liability (co-authored with
Anthony J. Sebok) 32 U. of Conn. L. Rev. (Summer 2000)

Intuition and Technology in Product Design Litigation: An
Essay on Proximate Causation (co-authored with James A.
Henderson, Jr.)  88 Georgetown L. Rev. 659 (2000)

One Size Does Not Fit All: The Third Multi-Track Restatement
of Conflicts of Laws, 75 Ind. L.J. 667 (2000)

Product Design Liability in Oregon and the New Restatement,
(co-authored with James A. Henderson, Jr.) 78 Ore. L. Rev. 1
(1999)

3

**Aaron D. Twerski**                                                    Resume

The Second Revolution in Informed Consent: Comparing
Physicians to Each Other, (co-authored with Neil B. Cohen)
94 Northwestern L. Review 1 (Fall 1999)

What Europe, Japan and Other Countries Can Learn from the
New American Restatement of Products Liability, (co-
authored with James A. Henderson, Jr.) 24 Tex. Int'l. L.J. 1
(1999)

Achieving Consensus on Defective Product Design, 83 Cornell
L. Rev. 867 (1998) (co-authored with James A. Henderson, Jr.)

The Politics of the Products Liability Restatement, 26
Hofstra L. Rev. 667 (1998) (co-authored with James A.
Henderson, Jr.).

Defending The Products Liability Restatement, University of
Kansas Journal of Law and Public Policy, Vol. 8, Issue 1
(November 1998)

Inside the Restatement 24 Pepperdine L. Rev. 839 1997.

Arriving at Reasonable alternative Design: The Reporters'
Travelogue, 30 U. of Mich. J. of Law Reform, 563 (Spring
1997) (co-authored with James A. Henderson, Jr.).

A Sheep in Wolf's Clothing: Territorialism in the Guise of
Interest Analysis in Cooney v. Osgood Machinery, Inc., 59
Brook. L. Rev. 1351 (1994)

Symposium on Punitive Damages Punitive Damages: Through the
Five Prisms, 39 Villanova Law Review 353 (1994)

From a Reporter's Perspective: A Proposed Agenda, 10 Touro
Law Review 5 (1993)

Will a New Restatement Help Settle Troubled Waters:
Reflections, (co-authored with James A. Henderson, Jr.), 42
American University L. Rev. 1257 (1993)

Comparing Medical Providers: A First Look at the New Era Of
Medical Statistics, (co-authored with Neil B. Cohen), 58
Brooklyn L. Rev. 5 (1992)

The Unworkability of Court-Made Enterprise Liability: A
Reply to Geistfeld, (co-authored with James A. Henderson,Jr.),
67 N.Y.U. L. Rev. 1174 (1992)

A Proposed Revision of Section 402A of The Restatement
(Second) of Torts, 77 Cornell Law Review, (co-authored with
James A. Henderson, Jr.) 1512 (September, 1992)

Star Gazing: The Future of American Products Liability Law,

4

Aaron D. Twerski                                                    Resume

(co-authored with James A. Henderson, Jr.), 66 N.Y.U.L. Rev.
1332, (1991)

Closing the American Product Liability Frontier: The Rejection
of Liability Without Defect, (co-authored with James A.
Henderson, Jr.) 66 N.Y.U.L. Rev. 1263 (Nov. 1991)

Some Obvious Truths About Obvious Danger Warnings, 19 Prod.
Safety & Liability Rep. 77 (1991) (co-authored with James A.
Henderson, Jr.)

State Choice of Law in Mass Tort Cases: A Response to "A View
From the Legislature" co-authored with Robert Sedler, 73 Marq.
L. Rev. 625 (1990)

Doctrinal Collapse in Products Liability: The Empty Shell of
Failure to Warn co-authored with James A. Henderson, Jr. 65
N.Y.U. L. Rev. 601 (1990)

The Case Against All Encompassing Federal Mass Tort
Legislation: Sacrifice Without Gain, co-authored with Robert
Sedler, 73 Marq. L. Rev. 76 (1989)

Market Share - A Tale of Two Centuries 55 Brooklyn L. Rev. 869
(1989)

The Baby Swallowed the Bathwater: A Rejoinder to Professor
Wright, 31 University of Calif-Davis L. Rev 1161 (1989)

The Joint Tortfeasor Legislature Revolt: A Rational Response
to the Critics, 31 Univ. of Calf-Davis L. Rev 1125 (1989)

Informed Decision-Making And the Law of Torts: The Myth of
Justiciable Causation. 1988 University of Illinois Law Review
607 (1988)  (Co-authored with Neil B. Cohen)

With Liberty and Justice for All: An Essay on Agent Orange and
Choice of Law, 52 Brooklyn L. Rev. 341 (1986)

Review of New York Court of Appeals Torts Decisions in the
1986-87 Term, New York Law Journal September 28, 1987

A Moderate and Restrained Products Liability Bill: Targeting
The Crisis Areas for Resolution, 18 Univ. of Mich. J. of L.
Reform 575 (1985)

From Risk-Utility to Consumer Expectations: Enhancing the Role
of Judicial Screening in Product Liability Litigation, 11
Hofstra L. Rev. 861 (1983)

Seizing the Middle Ground Between Rules and Standards in
Design Defect Litigation: Advancing Directed Verdict Practice
in the Law of Tort, 57 N.Y.U. L. Rev. 297 (1982), reprinted in

5

Aaron D. Twerski                                              Resume

6 Journal of Product Liability 297 (1983)

National Products Liability Legislation: In Search of the Best
of All Possible Worlds, 18 Idaho L. Rev. 411 (1982)

On Territorality and Sovereignty: System Shock and
Constitutional Choices of Law, 10 Hofstra L. Rev. 194 (1981)

Post-Accident Design Modification Evidence in a Manufacturing
Defect Setting: Strict Liability and Beyond, 4 Journal of
Product Liability 143 (1981)

In Defense of Process, 56 N.Y.U. L. Rev. 616 (1981)
(co-author)

Shifting Perspectives in Product Liability: From Quality to
Process Standards, 55 N.Y.U. L. Rev. 347 (1980) (co-author)

Toward a Selective Use of Comparative Fault in Product
Liability, Trial Magazine (Nov. 1980)

Rebuilding the Citadel - The Legislative Assault on the Common
Law of Products Liability, Trial Magazine (Nov. 1979)

Multistate Conflict-of-Law Rules: Continuing the Dialogue with
Professors Trautman and Sedler, 7 Hofstra L. Rev. No. 4 (1979)

Toward a Pragmatic Solution of Choice-of-Law Problems: At the
Interface of Substance and Procedure, 74 Nw. L. Rev. 501
(1979) (co-author)

A Critique of the Uniform Product Liability Law - A Rush to
Judgment, 28 Drake L. Rev. 221 (1979) (co-author)

The Many Faces of Misuse: An Inquiry Into the Emerging
Doctrine of Comparative Causation, 29 Mercer L. Rev. 403
(1978)

The Use and Abuse of Comparative Negligence in Products
Liability, 10 Ind. L. Rev. (1977)

From Defect to Cause to Comparative Fault - Rethinking Some
Product Liability Concepts, 59 Marq. L. Rev. Vol. 3 (1977)

The Use and Abuse of Warnings: Design Defect Litigation Comes
of Age, 61 Cornell L. Rev. 495 (1976) (co-author)

Products Litigation, ASTM Standardization News, Vol. 3, No.
10, October 1975 (co-author)

Product Liability and the Technical Expert, Science, December
1974, p. 1083 (co-author)

6

The Technical Expert, 52 Tex. L. Rev. 1303 (1974) (co-author)

Old Wine in a New Flask: Restructuring Assumption of the
Risk for the Product Liability Era, 60 Iowa L. Rev. 1 (1974)

From Codling to Bolm to Velez: Triptych of Confusion,
2 Hofstra L. Rev. 489 (1974)

Neumeier v. Kuehner: Where are the Emperor's Clothes?,
1 Hofstra L. Rev. 104 (1973)

To Where Does One Attach the Horses? - Symposium on Foster v.
Leggett, 61 Kent. L. J. 393 (1973)

Choice of Law in Contracts: Some Thoughts on The Weintraub
Approach, 57 Iowa L. Rev. 1239 (1972)

Debate, The Right to Treatment: Encounter and Synthesis, 10
Duquesne L. Rev. 554-578 (1972)

Treating the Untreatable: A Critique of the Proposed Right
to Treatment Law, American Journal of Hospital and Community
Psychiatry (September 1971)

Common Sense and Conflict of Laws: A Welcome Change   , 38
Insurance Council Journal (July 1971)

Enlightened   Territorialism   and   Professor   Cavers:   The
Pennsylvania Method, 9 Duquesne L. Rev. 373 (1970), Symposium
on Conflict of Law.  See response of Professor Sedler at 394

Treating   the   Untreatable:   A   Critique   of   the   Proposed
Pennsylvania Right to Treatment Law, 9 Duquesne L. Rev. 220
(1970)

A Return to Jurisdictional Due Process: The Case for the
Vanishing Defendant, 8 Duquesne L. Rev. 220 (1970) and
reprinted in 37 Insurance Council Journal 265 (April 1970)

Court Scrutiny of Medical Commitment: Collusion on
Delusion, Juris, Vol. 3, No. 4 (reprinted in Pittsburgh Legal
Journal)

The Independent Doctrine of Ratification v. The Restatement
and Mr. Seavey, 42 Temple Law Quarterly 1 (1968)

Commentary, An Ode to Rejection, 7 Duquesne L. Rev., Student
Case Notes in Marquette L. Rev. (1964-65)

**RESEARCH:**

Co-principal investigator on National Science Foundation
Research Project, Product Liability: A Study of the
Interaction of Law and Technology, 12 Duquesne L. Rev. 425
(1974)

**Aaron D. Twerski**                                              **Resume**

**MEMBER:**

Board of Directors Community Action for Legal Services
(CALS), representing the new Legal Aid Service for the
Jewish Community (1974-75)

Association of American Law Schools Round Table on the
Conflict of Laws (1973)

Association of American Law Schools Round Table on
Product Liability (1980)

Senior Research Associate - Carnegie Institute of
Technology at Carnegie Mellon University (1974-78)

Chairman - Commission on Legislation and Civic Action
Agudas Israel (1979 to present)

Member, Board of Trustees, Maimonides Hospital, Brooklyn,
New York (1995 - to present)

Chairman, Mishkon Community Board (1991 - to present)

AFFIDAVIT OF JAMES A. HENDERSON, JR.
TENDERED PURSUANT TO FED. R. CIV. P. 53

STATE OF NEW YORK    )
                                       ) ss.                              AFFIDAVIT
COUNTY OF TOMPKINS )

James A. Henderson, Jr., being first duly sworn according to law, states the following:

1. I am an attorney at law, duly licensed to practice law in the States of Florida and
Massachusetts. My bar admissions are as follows:

> Florida            1962
> Massachusetts      1964

2. I have thoroughly familiarized myself with the issues involved in the litigation captioned
In Re World Trade Center Disaster Site Litigation, 21 MC 100 (AKH). As a result of my knowledge
of that case, I can attest and affirm that there are no non-disclosed grounds for disqualification under
28 U.S.C. §455 that would prevent me from serving as the Special Master in the captioned matter.

FURTHER AFFIANT SAYETH NAUGHT.

James A. Henderson, Jr.

Sworn to before me and subscribed in my presence this 30th day of November, 2006.

Notary Public

DONNA A. DINGY
Notary Public, State of New York
Residing in Cayuga Co. at time of Appt.
Official No. 4841407
My Commission Expires March 30, 19
April 30, 2007

<u>RESUME</u>                                        March 8, 2006

**PROFESSOR JAMES A. HENDERSON, JR**
Frank B. Ingersoll Professor of Law
Cornell Law School


## **Law School Address**:

Cornell Law School
Ithaca, New York 14853
(607) 255-2303 (Phone)
(607) 255-7763 (Fax)


**PERSONAL:** Born:  February 6, 1938
                    Marital Status:  Married, two grown children

**DEGREES:**    A.B.  Princeton University        1959
              LL.B  Harvard Law School        1962
              LL.M  Harvard Law School        1964


**ADMITTED TO PRACTICE:**  1962 Florida; 1965 Massachusetts


## **PROFESSIONAL EXPERIENCE:** (non-teaching)

Law Clerk, United States Court of Appeals, Fifth Circuit 1962-63 (Judge Warren L.
Jones)
Limited practice while teaching, including appellate advocacy and serving as expert witness,
    since 1965
Member, American Law Institute
Chairman, AALS Torts Section, 1985-86
Member, Association of the Bar of the City of New York
Reporter, Restatement,Third, of Torts:  Products Liability, May, 1992-1998
        (named R. Ammi Cutter Distinguished Reporter by the ALI in 1997)
Adviser, Restatement, Third, of Torts:  Apportionment of Liability, May, 1993-1999

## **LAW TEACHING EXPERIENCE:**

Frank B. Ingersoll Professor of Law, Cornell Law School since 1984
Boston University School of Law, September, 1964 to 1984, Professor of Law, 1967-
1984
Visiting Professor of Law, University of Colorado, 1975-1976
Visiting Professor of Law, University of Virginia, 1978-1979
Visiting Professor of Law, Cornell Law School, Fall 1983
Visiting Professor of Law, Brooklyn Law School, Fall 1994
Subjects:   <u>Torts</u>; <u>Products Liability</u>; <u>Insurance</u>; Environmental Law; Legal Process;
        Law and the Behavioral Sciences; Trusts and Estates and Estate
Planning

**Resume of JAMES A. HENDERSON, JR.**
**Page 2**

## PUBLICATIONS:

### <u>Books and Chapters in Books</u>

The Form and Logic of American Law:  A Study in Collaborative Problem Solving (in progress; expected completion fall, 2007)

The Torts Process (Aspen Publishers) (1974) (6th ed.2003) (with Richard N. Pearson and John A. Siliciano).

Products Liability:  Problems and Process (Aspen Publishers) (1987) (5th ed. 2004) (with  Aaron Twerski).

Torts:  Cases and Materials (Aspen Publishers) (2003) (with Aaron Twerski)

Containing the Negligence Concept: Respect for the Rule of Law, Chapter 6 in Exploring Tort Law (Cambridge Univ. Press, M. Stuart Madden, ed. 2005).

MacPherson v. Buick Motor Company: Simplifying the Facts While ReShaping the Law, chapter in Torts Stories (R. Rabin and S. Sugarman, eds. 2003).

The Virginia Birth-Related Medical Injury Compensation Act:  Limited No-Fault Statutes as Solutions to the "Medical Malpractice Crisis," chapter in Medical Professional Liability and the Delivery of Obstetrical Care (V. Rostow & R. Bulger, eds. 1988).

### <u>Restatement</u>

Restatement of Torts, Third:  Products Liability (1998) (Co-Reporter)

### <u>Articles</u>

The Lawlessness of Aggregative Torts (publication expected in Hofstra Law Review, winter 2006).

Asbestos Litigation Madness:  Have the States Turned a Corner? Mealey's Litigation Report (January 10, 2006).

A Fictional Tale of Unintended Consequences: A Response to Professor Wertheimer, 70 Brooklyn L. Rev. 939 (2005)(with Aaron Twerski)

Consumer Expectations' Last Hope: A Response to Professor Kysar, 103 Colum. L. Rev. 1791 (2003) (with Aaron Twerski)

Why Negligence Dominates Tort, 50 U.C.L.A. L. Rev. 377 (2002)

Asbestos Litigation Gone Mad: Recovery for Increased Risk, Mental Anguish, and Medical Monitoring, 53 S.Car. L. Rev. 815 (2002) (with Aaron Twerski)

Echoes of Enterprise Liability in Product Design and Marketing Litigation, 87 Cornell L. Rev. 958 (2002)

Drug Designs *Are* Different, 111 Yale L.J. 151 (2001) (with Aaron Twerski)

### <u>Articles</u> (cont'd)

**Resume of JAMES A. HENDERSON, JR.
Page 3**

Intent and Recklessness in Tort: The Practical Craft of Restating the Law, 54 Vand. L. Rev. 1133 (2001) (with Aaron Twerski)

Products Liability Reporters' Response, 10 Kansas J. of L. & Pub. Policy 21 (2000) (with Aaron Twerski)

Product-Related Risk and Cognitive Biases: The Shortcomings of Enterprise Liability, 6 Roger Wms. L. Rev. 213 (2000) (with Jeff Rachlinski)

Intuition and Technology in Product Design Litigation: An Essay on Proximate Causation  88Geo.L J. 659 (2000) (with Aaron Twerski)

The Products Liability Restatement in the Courts: An Initial Assessment, 27 Wm. Mitchell L. Rev. 7 (2000) (with Aaron Twerski)

Product Design Liability in Oregon and the New Restatement, 78 Or. L. Rev. 1 (1999) (with Aaron Twerski)

What Europe, Japan, and Other Countries Can Learn From the New American Restatement       6 Products Liability, 34 Texas Int'l L.J. 1 (1999) (with Aaron Twerski)

A Discussion and a Defense of the *Restatement (Third) of Torts: Products Liability*, VIII Kan.        J Public Pol. 19 (1998)

The Politics of the Products Liability Restatement, 26 Hofstra L. Rev. 667 (1998) (with Aaron Twerski)

Achieving Consensus on Defective Product Design, 83 Cornell L. Rev. 867 (May, 1998) (with Aaron Twerski)

Arriving at Reasonable Alternative Design: The Reporters' Travelogue, 30 U. Mich. J. Law Reform 563 (1997) (with Aaron Twerski)

Prescription Drug Design Liability Under the Third Restatement of Torts: A Reporter's Perspective, 48 Rutgers L. Rev. 471 (1996)

Settlement Class Actions and the Limits of Adjudication, 80 Cornell L. Rev. 101 (1995)

Optimal Issue Separation in Modern Products Liability Litigation 72 Tex. L. Rev. 1653 (1995) (with Fred Bertram & Michael Toke).

Universal Health Care and the Continued Reliance on Custom in Determining Medical Malpractice, 79 Cornell L. Rev. 1382 (1994)(with John Siliciano).

Revising Section 402A: The Limits of Tort as Social Insurance, 10 Touro L. Rev. 107 (1993).

Will a New Restatement Help Settle Troubled Waters?: Reflections, 42 Amer. U. L. Rev. 301(1993) (with Aaron Twerski).

Products Liability Cases on Appeal:  An Empirical Study, 16 Justice Systems J. 117 (1992) (with Ted Eisenberg).

**Articles** (cont'd)

**Resume of JAMES A. HENDERSON, JR.**
**Page 4**

Why Vosburg Comes First, 1992 Wisc. L. Rev. 853 (1992).

Why the Recent Shift in Tort?, 26 Ga. L. Rev. 777 (1992).

A Proposed Revision of Section 402A of the Restatement (Second) of Torts, 77 Cornell L.
Rev. 1512 (1992)(with Aaron Twerski).

The Efficacy of Organic Tort Reform, 77 Cornell L. Rev. 596 (1992).

Inside the Quiet Revolution in Products Liability, 39 U.C.L.A. L. Rev. 301 (1992) (with Ted
Eisenberg).

The Unworkability of Court-Made Enterprise Liability:  A Reply to Geistfeld, 67 N.Y.U. L. Rev.
1174 (1992) (with Aaron Twerski).

Star Gazing:  The Future of American Products Liability Law, 66 N.Y.U. L. Rev. 1332 (1991)
(with Aaron Twerski).

Closing The American Products Liability Frontier:  The Rejection of Liability Without Defect,      6
N.Y.U. L. Rev. 1263 (1991) (with Aaron Twerski).

Judicial Reliance on Public Policy:  An Empirical Analysis of Products Liability Decisions, 59
Geo. Wash. L. Rev. 101 (1991).

Some Obvious Truths About Obvious Danger Warnings, 19 Prod. Safety & Liab. Rep. 877
(1991) (with Aaron Twerski).

Is the Quiet Revolution in Products Liability Reflected in Trial Outcomes?, 17 Cornell L.     Forum  2
(1990) (with Ted Eisenberg).

Process Norms in Products Litigation:  Liability for Allergic Reactions, 51 U. Pitt. L. Rev. 761
(1990).

Doctrinal Collapse in Products Liability: The Empty Shell of Failure to Warn, 65 N.Y.U. L. Rev. 265
(1990) (with Aaron Twerski).

The Quiet Revolution in Products Liability: An Empirical Study of Legal Change, 37 U.C.L.A.     L
Rev. 479 (1990)(with Ted Eisenberg).

Agreements Changing the Forum for Resolving Malpractice Claims, 49 Law & Contemp.   Prob. 243
(1986).

Products Liability and the Passage of Time:  The Imprisonment of Corporate Rationality, 58
N.Y.U. L. Rev. 765 (1983).

Why Creative Judging Won't Save the Products Liability System, 11 Hofstra L. Rev. 845    (1983).

The Boundary Problems of Enterprise Liability, 41 Md. L. Rev. 649 (1982).

Process Constraints in Tort, 67 Cornell L. Rev. 901 (1982).

**Articles** (cont'd)

**Resume of JAMES A. HENDERSON, JR.**
**Page 5**

Foreseeability and the Conduct of Third Parties, 4 Corp. L. Rev. 87 (1981).

Should A "Process Defense" Be Recognized in Product Design Cases?, 56 N.Y.U. L. Rev.   8
(1981).

Coping With the Time Dimension in Products Liability, 69 Calif. L. Rev. 919 (1981).

The Demise of the Patent Danger Rule, 3 Corp. L. Rev. 78 (1980).

Extending the Boundaries of Strict Products Liability:  Implications of the Theory of the   Second
Best, 128 U. Pa. L. Rev. 1063 (1980).

DES Litigation:  The Tidal Wave Approaches Shore, 3 Corp. L. Rev. 143 (1980).

The Model Uniform Product Liability Act, 3 Corp. L. Rev. 242 (1980).

Renewed Judicial Controversy Over Defective Product Design:  Toward The Preservation   6
an Emerging Consensus, 63 Minn. L. Rev. 773 (1979).

Manufacturers' Liability for Defective Product Design: A Proposed Statutory Reform, 56 N.C.   L
Rev. 625 (1978).

Products Liability:   The Gathering Momentum Toward Statutory Reform, 1 Corp. L. Rev. 41
(1978).

Implementing Federal Environmental Policies:  The Limits of Aspirational Commands, 78  Colum. L.
Rev. 1429 (1978) (with Richard N. Pearson).

Expanding the Negligence Concept:  Retreat From the Rule of Law, 51 Ind. L.J. 467 (1976).

Design Defect Litigation Revisited, 61 Cornell L. Rev. 541 (1976).

Judicial Review of Manufacturers' Conscious Design Choices:  The Limits of Adjudication,   3
Colum. L. Rev. 1531 (1973).

A Defense of the Use of the Hypothetical Case to Resolve the Causation Issue - The Need   6
an Expanded, Rather Than a Contracted, Analysis, 47 Tex. L. Rev. 183 (1969).

Mistake and Fraud in Wills: A Suggested Statutory Departure, 47 B.U. Law Rev. 461 (1967).

Mistake and Fraud in Wills:  A Comparative Analysis of Existing Law, 47 B.U. Law Rev. 303
(1967).

## Book Reviews

Reforming Products Liability (Viscusi) 77 Cornell L. Rev. 501 (1992).

Compensation for Incapacity (The New Zealand Accident Compensation Reform), (Palmer)   8
U.Chi. L. Rev. 781 (1981).

Ending Insult to Injury:  No-Fault Insurance for Products and Services, (O'Connell) 56 B.U.   L
Rev. 830 (1976).
Hearings, National Commission on Product Safety 51 B.U. L. Rev. 704 (1972).

**Resume of JAMES A. HENDERSON, JR.**
**Page 6**

Death, Property and Lawyers (Shaffer) 47 N. Dame Law Rev. 404 (1971).

How To Avoid Probate (Dacey) 46 B.U. Law Rev. 417 (1966).

Unsafe At Any Speed (Nader) 46 B.U. Law Rev. 135 (1966).

## Reports

The Designated Compensable Event Project, Innovative Alternatives Subcommittee of the ABA Commission on Medical Professional Responsibility (with Boyden and Tancredi) (1980).

Taggants in Explosives 202-226 (Analysis of products liability implications, prepared for U.S. Office of Technology Assessment, published April 1980).

## Legislative Testimony

Testified many times before committees of the United States Congress and state legislatures on matters relating to tort law and products liability law.

## Speeches and Conferences

I have spoken many times at professional and academic conferences in this country, Europe, and Japan.