```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
IN RE WORLD TRADE CENTER                              :
DISASTER SITE LITIGATION                              :    ORDER APPOINTING
                                                      :    TECHNICAL ADVISOR
                                                      :
                                                      :
                                                      :    21 MC 100 (AKH)
                                                      :
------------------------------------------------------X
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

       The Special Masters have recommended that Technology Concepts & Design, Inc. ("TCDI") be retained to build, maintain and operate a database, to store the Core Discovery that the parties have begun to produce, and will continue to produce, pursuant to my order dated November 27, 2007 ("Core Discovery Order"). I approve the recommendation.

       The Core Discovery will create a substantial amount of information: insurance data from scores of contractors and subcontractors, and basic details concerning each plaintiff's claim. Because of the volume of information that will be produced, and the intense time pressures governing production, it is imperative that a means be developed to process and organize the information on a consistent, reliable, and accessible basis. From this information, it should be possible to align plaintiffs readily with the particular defendants against whom they may have a basis to seek recovery, categorize plaintiffs according to their types and severity of injuries, eliminate various defendants from various cases, identify the sequence in which cases should be tried, group those cases with others that appear to be similarly situated, organize and understand the insurance that might relate to particular claims and, perhaps, not to others, and, not least, create paradigms that could lead to settlements.

       These goals cannot be achieved unless the database recommended by the Special Masters is approved. Without responsive and reliable information and reports, the parties, the

1

Special Masters, and the Court will not have a common basis to deal with the many and complex issues that regularly arise as this immense and important litigation proceeds. The separate databases maintained by the parties have not been able to produce reliable and consistent information, not even, for example, as to the number of cases that have been filed as of given dates. Needless disputes have arisen in response to the Court's questions, even with regard to what should be basic and undisputable matters.

The Special Masters developed their proposal with the aid of an approved consultant, Timothy Opsitnick, vetted it thoroughly with the parties, and solicited bids from a number of technically competent vendors. They recommend the vendor appearing to be most proficient and most economical. Defendants consent to the choice. Plaintiffs, while not quite objecting, raise various concerns.

Their main concern is expense; the project, they say, "will generate costs that will be significant and that will impact the plaintiffs in an unacceptably inequitable fashion," and that the project is unnecessary since the parties have their own databases and can inform the court as information becomes relevant (Worby Groner letter, dated March 17, 2008) They note that "plaintiffs and defendants are each already paying $20,000 per month for the Special Masters' services," and sharing in substantial billings expected of Mr. Opsitnick, the computer consultant, services and expenses as to which they do not object. They express concern, however, as to the expected costs of TCDI project (estimated by the TCDI bid to be $249,750 in the first year and $204,000 in the second year). Plaintiffs fear that the total of all expenses can reach $1,000,000 per year. (Ibid) They fear that, as to defendants' portion, the expense will make too much of an inroad on the one billion dollar insurance fund created by FEMA and administered by WTC Captive Insurance Co., Inc. ("WTC Captive"), and that it is too much for plaintiffs' counsel to

absorb. The problem is exacerbated for Worby Groner, because that firm represents the great bulk of the approximately 10,000 cases before me

I am sensitive to the costs of this litigation, and to the potential diminution of the insurance fund which limits recoveries. See Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101, section 408(a). With the guidance of counsel, I ordered the Core Discovery Program to eliminate the greatest expense of complex litigation, the countless depositions that counsel pursue. And, in past proceedings, and with the guidance of counsel, I organized and limited issues to contain discovery and reduce the expense of motions practice with respect to critical issues, such as jurisdiction, immunity, and other issues. <u>See In re September 11 Property Damage and Business Loss Litigation</u>, 481 F.Supp.2d 253 (S.D.N.Y. 2007); <u>In re September 11 Property Damage and Business Loss Litigation</u>, 468 F.Supp.2d 508 (S.D.N.Y. 2006); <u>In re World Trade Center Disaster Site Litigation (Hickey v. City of New York)</u>, 270 F.Supp.2d 357 (S.D.N.Y. 2003).

There is no substitute for an independently created and managed database. Without a common core of reliable information, the approximately 10,000 cases that are before me will become increasingly difficult to manage. Disputes will proliferate, and progress will be slowed. Depositions and other discovery will become necessary, as each side tries to prove facts that their separate databases treat in different ways. The cases will take years longer to progress towards trial or resolution. Expenses to each side will rise in uncontainable ways, making present complaints insignificant. Meanwhile, individual plaintiffs will incur illnesses and some may die, blaming their heroism in the aftermath of 9/11 as the cause, and criticizing government and the courts for indifference and neglect with respect to their claims.

The court has ample power to appoint Special Masters, and to support their activities in manners that will create efficiencies and economies. Fed. R. Civ. P. 53; In re Peterson, 253 U.S. 300, 312-13 (1920) ("Courts have . . . inherent power to provide themselves with appropriate instruments required for the performance of their duties. This power includes authority to appoint persons unconnected with the court to aid judges in the performance of specific judicial duties" including Special Masters); Manual for Complex Litigation § 11.52 (4th ed. 2004). The track of respiratory injury and cancer cases, 21 MC 100, seeking recoveries because of alleged failures and neglects of the City and its contractors to create safe working conditions in the clean-up efforts of the collapsed towers of the World Trade Center, is as complex and difficult as any multi-district litigation. The importance of these cases is clear, to the litigants and to society. The ability of the court and counsel to cause them to progress towards resolution with due speed, economy and fairness depend very much on the ways that complex information can be organized and reported, reliably, responsively and consistently.

For all these reasons, the objections of plaintiffs are denied. The recommendations of the Special Masters are approved. The Special Masters, with the assistance of counsel, will kindly submit an order appointing TCDI for the indicated tasks.

SO ORDERED.

Dated: March 2*f*, 2008
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge