USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/10/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
IN RE WORLD TRADE CENTER DISASTER    :   **ORDER ACKNOWLEDGING,**
SITE LITIGATION                      :   **AND SETTING HEARING ON,**
                                     :   **MODIFIED AND IMPROVED**
-------------------------------------------------------------- :   **AGREEMENT OF**
IN RE WORLD TRADE CENTER LOWER       :   **SETTLEMENT**
MAHATTAN DISASTER SITE LITIGATION    :
                                     :   21 MC 100 (AKH)
-------------------------------------------------------------- :   21 MC 102 (AKH)
IN RE COMBINED WORLD TRADE CENTER    :   21 MC 103 (AKH)
AND LOWER MANHATTAN DISASTER SITE    :
LITIGATION                           :
                                     :
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J:

      Whereas, certain parties have provided to the Court a World Trade Center

Litigation Settlement Process Agreement, As Amended ("Amended Settlement Process

Agreement"), amending the World Trade Center Litigation Settlement Process Agreement dated

March 11, 2010 ("Settlement Process Agreement") and modifying and improving the terms and

conditions that the Court discussed during the hearing it conducted March 19, 2010, and

      Whereas, in addition to other improvements and benefits, the Amended

Settlement Process Agreement will provide up to approximately $125 million in improved

compensation to the plaintiffs, reflected by (a) an additional $50 million at a minimum, and up to

$55 million, to be paid by the WTC Captive Insurance Company, Inc., (b) the waiver of certain

workers compensation liens by the City and its WTC workers compensation insurer valued at up

to approximately $25 million, and (c) a voluntary reduction of plaintiffs' attorneys' fees to 25%,

with no fee to be taken on premiums paid for or benefits received under the cancer insurance

policy provided for by the Amended Settlement Process Agreement, the value of which exceeds
$50 million, and

Whereas, the Court, after having reviewed the Amended Settlement Process
Agreement and the improved benefits and procedures reflected therein, and believing it to be
fair, reasonable and adequate, and that it should be presented for comments and evaluation in an
open, public hearing at which the parties and the public are invited to present their views in order
that the court, at the end of the hearing, may rule on the fairness, reasonableness, and adequacy
of the settlement in the best interests of all the parties, and

Whereas, this Court having over-ruled the parties' objections as to the exercise of
jurisdiction by the Court over the Settlement Process Agreement in its original and amended
versions, including as to the court's authority to review, authorize, approve, amend, make
appointments or determine attorneys' fees and costs under the Settlement Process Agreement and
the Amended Settlement Process Agreement, including as relates to all terms, conditions and
appointments thereunder, and

Whereas, all parties' above-referenced objections and any rights to appeal all
orders and statements of the Court are expressly preserved and not waived by the parties,

Now, therefore, it is ordered:

1.     a hearing will be held June 23, 2010, at 10:00 a.m. in Courtroom 14D, 500
Pearl Street, New York, NY 10007,

a.     to consider the reasonableness, fairness and adequacy of the
Amended Settlement Process Agreement and its procedures relating to each settling
plaintiff's recovery in his/her case against New York City and the contractors listed on
exhibit A;

2

        b.      to adopt the protocol in the form set out at exhibit B hereto, applicable to cases settled under the Amended Settlement Process Agreement, accepting the voluntary fee reduction to 25% by plaintiffs' attorneys, to be deducted from each plaintiff's net recovery after deduction of appropriate expenses, and establishing procedures for the approval of "Common Benefit" expenses incurred by Plaintiffs' Liaison Counsel;

        c.      to consider the appointment of Matthew L. Garretson and the Garretson Firm Resolution Group as the Allocation Neutral, and Kenneth Feinberg as the Claims Appeals Neutral, of the settlement, responsible for determining the specific entitlements of each plaintiff under the Amended Settlement Process Agreement, and hearing appeals from such determinations, respectively;

        d.      to consider the appointment of Professor Roy D. Simon to review certain communications to plaintiffs regarding the Amended Settlement Process Agreement;

        e.      to adopt case management orders in 21 MC 100, 21 MC 102, and 21 MC 103, numbered One, Two, and Three, respectively, in the form set out at exhibit C hereto, to regulate all cases that are not settled and all newly-filed cases; and

        f.      to make such other rulings and appointments as may be fair and appropriate.

        2.      In the meantime, and nunc pro tunc to the beginning date of their respective engagements, Matthew L. Garretson and the Garretson Firm Resolution Group, Kenneth Feinberg, and Professor Roy D. Simon, are appointed to act consistent with the

functions they respectively are or were engaged to perform by the settling parties, and to be compensated according to the terms agreed to by the settling parties.

3.    Set out at exhibit D hereto, is a fair and accurate summary of the Amended Settlement Process Agreement and its annexes and of the matters to come before the Court on June 23, 2010.

4.    The Amended Settlement Process Agreement and its annexes, as well as the summary, will be posted on the court's website at http://www.nysd.uscourts.gov/cases.php?form=sept11; the RSS feed is available at http://www.nysd.uscourts.gov/rss/sept11litigation.xml

5.    The plaintiffs, the defendants, and members of the public are invited to speak at the hearing on June 23, 2010. All who wish to speak should register with the law firm of Worby Groner Edelman & Napoli Bern by contacting Christopher LoPalo, Esq. at clopalo@nbrlawfirm.com.

SO ORDERED.

Dated:    June 10, 2010
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

4

# Exhibit A

## EXHIBIT A – LIST OF WTC CAPTIVE INSUREDS

| |
|---|
| CITY OF NEW YORK, including the: |
| BOARD OF EDUCATION OF THE CITY OF NEW YORK |
| BOROUGH OF MANHATTAN COMMUNITY COLLEGE |
| CITY UNIVERSITY OF NEW YORK |
| NEW YORK CITY DEPARTMENT OF EDUCATION |
| NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY |
| A RUSSO WRECKING |
| ACROW |
| ALLCOM ELECTRIC |
| AMEC CONSTRUCTION MANAGEMENT, INC. |
| AMEC EARTH AND ENVIRONMENTAL |
| ANTHONY CORTESE SPECIALIZED HAULING LLC |
| ASG PEST CONTROL |
| ATC GROUP SERV/DBA ATC ASSOCIATES |
| ATLANTIC HEYDT CORP. |
| ATLAS CONCRETE |
| AVANTI DEMOLITION & CARTING CORP. |
| BECHTEL CONSTRUCTION, INC. |
| BERGEN CONCRETE CUTTING |
| BERKEL & CO. CONTRACTORS, INC. |
| BIG APPLE WRECKING & CONSTRUCTION |
| BOVIS LEND LEASE LMB, INC. |
| BREEZE CARTING |
| BREEZE NATIONAL, INC. |
| BRER FOUR TRANSPORTATION |
| BURO HAPPOLD CONSULT ENG. |
| C & D FIREPROOFING |
| C & D PAINTING, INC. |
| C.B. CONTRACTING CORP. |
| CANRON CONSTRUCTION CORP. |
| CANTOR SEINUK GROUP |
| CERTIFIED FENCE CORP. |
| CIVETTA COUSINS |
| CLARCO ENTERPRISE CORP. |
| COMPONENT ASSEMBLY SYS |
| COORDINATED METALS, INC. |
| CORD CONTRACTING CO., INC. |
| CRAIG TEST BORING |

| | |
|---|---|
| | CRITICOM INTERNATIONAL CORP |
| | DAKOTA DEMO-TECH |
| | DESIMONE CONSULTING ENGINEERS, PLLC |
| | DCM ERECTORS, INC. |
| | DIAMOND POINT EXCAVATION CORP |
| | DIEGO CONSTRUCTION |
| | DIVERSIFIED CARTING |
| | DMT ENTERPRISE |
| | D'ONOFRIO GENERAL CONTRACTORS CORP. |
| | EAGLE LEASING & INDUSTRIAL SUPPLY (SEASONS) |
| | EAGLE ONE ROOFING CONTRACTORS, INC. |
| | EAGLE SCAFFOLDING CO. (SEASONS) |
| | EJ DAVIES, INC. |
| | EN-TECH CORP. |
| | ENTERTAINMENT PARTNERS |
| | ET ENVIRONMENTAL |
| | EVERGREEN RECYCLING OF CORONA (EROC) |
| | EWELL W. FINLEY, P.C. |
| | EXECUTIVE MED SERVICES, PC |
| | F&G MECHANICAL CORPORATION |
| | FELIX EQUITIES, INC. |
| | FLEET TRUCKING |
| | FRANCIS A. LEE EXTERIOR RESTORATION |
| | FRANK MICELLI JR CONTRACTING |
| | FTI TRUCKING |
| | G & G CONTRACTING, INC. |
| | GILSANZ, MURRAY, & STEFICEK |
| | GINO CRACOLICI & SONS, INC. |
| | GOLDSTEIN ASSOCIATES PLLC |
| | GRACE INDUSTRIES |
| | GUY NORDENSON AND ASSOCIATES |
| | HALLEN WELDING SERVICE |
| | HELMSMAN MANAGEMENT SERVICES, INC. |
| | HGC CONTRACTING CORP. |
| | HIGH RISE HOISTING AND SCAFFOLDING |
| | HIGH-RISE ELECTRIC, INC. |
| | HP ENVIRONMENTAL |
| | JP EQUIPMENT RENTAL MATERIALS, INC. |
| | KEVIN MCMANUS |

| | |
|---|---|
| | KOCH SKANSKA, INC. |
| | LAQUILLA CONSTRUCTION, INC. |
| | LASTRADA GENERAL CONTRACTING CORP. |
| | LESLIE E. ROBERTSON ASSOCIATES |
| | LIBERTY MUTUAL GROUP |
| | LIRO |
| | LOCKWOOD, KESSLER & BARTLETT (LKB) |
| | LUCIUS PITKIN |
| | LZA TECH-DIVISION OF THORTON TOMASETTI |
| | M. G. MCLAREN, P.C. |
| | MANAFORT BROTHERS, INC. |
| | MAZZOCCHI WRECKING, INC. |
| | MEDCOR, INC. |
| | MENT BROTHERS |
| | MERIDIAN CONSTRUCTION GROUP |
| | MG MCLAREN P.C. |
| | MORETRENCH AMERICAN, CORP. |
| | MRA ENGINEERING, PC. |
| | MUESER RUTLEDGE CONSULTING ENGINEERS |
| | MUSCO SPORTS LIGHTING, LLC |
| | NACIREMA INDUSTRIES |
| | NEW YORK CRANE & EQUIPMENT CORP. |
| | NICHOLSON CONSTRUCTION CO. |
| | NICHOLSON/HEYWOOD JOINT VENTURE |
| | OFF ROAD WELDING, INC. |
| | THE OFFICES OF JAMES RUDERMAN, LLP |
| | OLYMPIC PLUMBING AND HEATING |
| | OVE ARUP & PARTNERS |
| | PARSON GROUP |
| | PETER SCALAMANDRE & SONS |
| | PINNACLE ENVIRONMENTAL |
| | PLAZA CONSTRUCTION CORP. |
| | PRO SAFETY SERVICES, LLC |
| | PT & L CONTRACTING CORP. |
| | REGIONAL SCAFFOLD & HOISTING CO, INC. |
| | RICH MARK ENVIRONMENTAL SERVICES, INC. |
| | ROBER SILMAN ASSOCIATES |
| | ROBERT C STEWART |
| | ROBERT ERRAT |

| | |
|---|---|
| | ROBERT L GEROSA |
| | RODAR ENTERPRISES, INC. |
| | ROYAL GM, INC. |
| | SAB TRUCKING |
| | SAFEWAY ENVIRONMENTAL |
| | SEMCOR EQUIPMENT |
| | SEVERUD ASSOCIATES CONSULTING ENGINEERS |
| | SHELDRAKE ORGANIZATION, INC. |
| | SILVERADO CONTRACTORS |
| | SILVERITE CONTRACTING |
| | SIMPSON, GUMPERTZ, & HEGER |
| | SKIDMORE, OWINGS & MERRILL LLP |
| | STAR DELTA ELECTRIC |
| | STIER, ANDERSON & MALONE |
| | SUMMIT STRUCTURES LLC |
| | TELENET COMMUNICATIONS |
| | THYSSEN KRUPP ELEVATOR CO. |
| | TOMASETTI GROUP |
| | TORETTA TRUCKING |
| | TOTAL SAFETY CONSULTING LLC |
| | TUCCI EQUIPMENT RENTAL CORP |
| | TULLY CONSTRUCTION |
| | TURNER CONSTRUCTION COMPANY |
| | ULTIMATE DEMOLITION/CS HAULING (JOINT VENTURE) |
| | UNITED STATES REBAR |
| | VANGUARD EQUIPMENT RENTALS |
| | VERTICAL TECHNOLOGIES |
| | VOLLMER ASSOCIATES |
| | W HARRIS & SON INC. |
| | WALTER WHITE TRUCKING |
| | WEEKS MARINE, INC. |
| | WEIDLINGER ASSOCIATES |
| | WHITNEY CONTRACTING |
| | WOLKOW BRAKER ROOFING |
| | YANNUZZI & SONS, INC. |
| | YONKERS CONTRACTING |
| | YORK HUNTER CONSTRUCTION, LLC |
| | ZIEGENFUSS DRILLING |

**Exhibit B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------  x
IN RE WORLD TRADE CENTER DISASTER          :
SITE LITIGATION                            :
                                           :
------------------------------------------------------------  :
IN RE WORLD TRADE CENTER LOWER             :
MAHATTAN DISASTER SITE LITIGATION          :
                                           :
------------------------------------------------------------  :
IN RE COMBINED WORLD TRADE CENTER          :
AND LOWER MANHATTAN DISASTER SITE          :
LITIGATION                                 :
                                           :
------------------------------------------------------------  x
```

**PROTOCOL FOR**
**REGULATING ATTORNEYS'**
**FEES AND ALLOWANCES OF**
**EXPENSES**

21 MC 100 (AKH)
21 MC 102 (AKH)
21 MC 103 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

1.  Within 30 days after court approval of the World Trade Center Litigation Settlement Process

    Agreement, as amended, Plaintiffs' Liaison Counsel shall submit to the Court, and serve on all

    plaintiffs' counsel, a schedule of expenses claimed to be incurred on behalf of all plaintiffs

    ("Common Benefit Expenses" or "General Expenses"), identifying the expenses and justification

    and support for the reasonableness of such expenses.  The supporting documentation shall

    include a sworn statement by counsel that the amounts were actually charged by and paid to

    outside vendors or, if services were furnished within counsel's office, at rates no greater than

    those customarily charged by outside vendors.

2.  Common Benefit Expenses claimed to be incurred on behalf of all plaintiffs will be subject to

    review and approval by the Court.  In case of dispute, whether initiated by the Court or by

    plaintiffs' counsel, the Court will hold a hearing and affected parties will have the opportunity to

    present their position.

3.  Schedules of individual expenses and approved Common Benefit Expenses shall be submitted to the Allocation Neutral for review and audit as described in its Protocol for Disbursing Proceeds to Claimants, exhibit 1 ("Allocation Neutral Protocol"), and hereby incorporated into this order.

4.  As and when the recovery of a settling plaintiff becomes determined and payable, the allowable expenses shall be deducted, and the net amount, less an attorneys' fee of 25% of that net amount, shall be due to that plaintiff.  The distribution process is described in the Allocation Neutral Protocol.

5.  The court shall retain jurisdiction to regulate disputes, directly, or by delegation to the Special Masters, regarding fees between or among plaintiffs' attorneys (e.g. referral attorneys, co-counsel or any other counsel legally entitled to a share of said recovery).

SO ORDERED.

Dated:        June__, 2010
              New York, New York          _____
                                          ALVIN K. HELLERSTEIN
                                          United States District Judge

Exhibit 1

## WTC ALLOCATION NEUTRAL PROCEDURE

## PROTOCOL FOR DISBURSING PROCEEDS TO CLAIMANTS
## ANP-04    (20100605-01)

**Executive Summary:** Procedures for disbursing proceeds consistent with Court ordered Protocols for Regulating Attorneys' Fees and Allowance of Expenses.

### I. Purpose

The purpose of the Protocol for Disbursing Proceeds to Claimants participating in the World Trade Center Litigation Settlement Process is to define the manner in which the "Protocols For Regulating Attorneys' Fees and Allowance of Expenses", issued by the Court, will be applied in an efficient and compliant manner.

### II. Overview

Each case within the World Trade Center Litigation Process is associated with its own individual expenses which can only be charged to that particular case ("Case-specific Expenses"). Case-specific Expenses include but are not limited to court filing fees for an individual case; obtaining a client's medical and employment records; past expert review of a client's medical records; and other expenditures specific to that individual case.

In addition to Case-specific Expenses, other costs are incurred on behalf of all the clients represented by a particular attorney ("General Expenses"). General Expenses include but are not limited to liability or general causation expert fees and expenses and costs associated with general discovery documents and motions.

Thus, from a client's total recovery one must deduct both the Case-specific Expenses and an apportioned share of the attorney's General Expenses (collectively, "Case Expenses"). This will have to be done separately on each and every case. The apportionment of General Expenses shall be limited to the plaintiffs listed on the Eligible Plaintiff List as established by and defined by the Settlement Process Agreement.

### III. The "Protocols For Regulating Attorneys' Fees and Allowance of Expenses"

To facilitate the administration of Case Expenses, Judge Hellerstein will define and provide the Protocols for Regulating Attorneys' Fees and Allowance of Expenses (hereinafter "Allowed Fees" and "Allowed Expenses").

Pursuant to such Order, the Court has delegated the function of review and audit to the Allocation Neutral and will not itself review the entire Case Expense file and corresponding Closing Statement per claimant. Allowable expenses will be those expenses that are:

    a. reasonably-related to the advancement of any plaintiff's case;
    b. customarily expended on behalf of plaintiffs in personal injury cases; and,
    c. charged to plaintiffs at no greater rate than those rates customarily charged by outside vendors for such services .

To the extent attorney fees and case expenses may come out of multiple types of payments (e.g., Initial, Interim, and / or Final), a prorated amount of the total Allowed Fees and Allowed Expenses will be deducted from each of the Initial Payment and Interim Payment, and the balance will be deducted from the Final Payment.

To the extent a claimant is only receiving one payment (i.e., pursuant to a Tier 1 claim), the entire Allowed Fees and Allowed Expenses will be deducted from such payment.

To the extent a client is only receiving Initial and Accelerated Payments (i.e., pursuant to a Tier 2 or Tier 3 claim), a prorated amount of Allowed Fees and Allowed Expenses would be deducted from the Initial Payment, and the balance will be deducted from the Accelerated Payment.

Hereinafter the terms Initial Payment, Interim Payment, Accelerated Payment and Final Payment are referred to as "Payment Types."

This procedure shall be applied to Permanent Disability Fund only to extent that Allowed Fees and Allowed Expenses are not deducted pursuant to the process described above.

## IV. Application of the "Protocols for Regulating Attorneys' Fees and Allowance of Expenses"

For each Payment Type, there may be several "waves" of disbursements, as various claimants may be eligible for a Payment Type at different times ("Disbursement Waves").

As waves of claimants are approved for disbursement, Plaintiffs Counsel shall apply the Allowed Fees and Allowed Expenses methodology, and provide a Disbursement Spreadsheet to Allocation Neutral with certification that the methodology has been applied appropriately. This Disbursement Spreadsheet shall contain the following columns per claimant:

   a. Allowed Attorney Fee Amount,
   b. Allowed Total Reimbursable Case Costs, and
   c. Net Proceeds to be Distributed to the Claimant.

For each Payment Type, the Allocation Neutral shall conduct a limited audit to validate that the Court-approved methodology was properly applied. In support of this audit, the Allocation Neutral shall randomly select up to 5% of claimants associated with each Payment Type (not to exceed 100 per Payment Type per firm). These randomly-selected claimants may be associated with multiple Disbursement Waves. Plaintiff Counsel shall provide the Allocation Neutral with Plaintiff Counsel's full client "Closing Statements" for such randomly-selected claimants, and supporting documentation as required by the Courts order dated _____ for review and audit by the Allocation Neutral as described in its protocol.

Upon the Allocation Neutral's completion of the audit for each Disbursement Wave, Plaintiffs Counsel will receive a single electronically-wired payment from the separate account established by and defined in Section III.A of the Settlement Process Agreement at the Bank of New York Mellon. Such payment shall be electronically transferred by Bank of New York Mellon into Plaintiffs Counsel's general trust account for receiving personal injury settlement funds (hereinafter "Account A – General Account"). Plaintiff Counsel will deduct Allowed Fees and Allowed Expenses. Thereafter, Plaintiff Counsel will transfer all net claimant proceeds to a separate claimant disbursement account established by Plaintiff Counsel at Plaintiff Counsel's

selected bank (hereinafter Account B – Claimant Disbursement Account).  Disbursements out of Account B – Claimant Disbursement Account must match the Allocation Neutral's payment instructions consistent with the Allocation Neutral Duties defined in Section XI of the Settlement Process Agreement.

## V. Reconciliation

Plaintiff Counsel must provide the Allocation Neutral with all bank statements related to Account B - Claimant Disbursement Account each month.  Said monthly statements must include check numbers and corresponding payees.  The Allocation Neutral shall reconcile total disbursement dollars to ensure "zero balance", that is the total net proceeds to claimants (contained on Disbursement Waive spreadsheets) equals the total amount of all checks written from Account B – Claimant Disbursement Account.  Further, the Allocation Neutral shall conduct a random audit of at least 10% of the payees listed on each statement to ensure said payees and corresponding amounts specifically match the corresponding Disbursement Waive spreadsheet.

The Allocation Neutral shall report any irregularities associated with the audit to the parties within 20 business days of receiving Account B – Claimant Disbursement Account statements.  Plaintiff Counsel shall have 7 business days to cure any irregularities after being notified by the Allocation Neutral.  Thereafter, if any irregularities are not cured to its satisfaction, the Allocation Neutral shall report said irregularities to the Court within 2 additional business days of the expiration of Plaintiff Counsel's 7-day cure period. Additionally, the Allocation Neutral shall provide a final status report of the audit and reconciliation procedures to the parties and the Court upon completion of all disbursements associated with the Settlement Process Agreement.

Plaintiffs' Counsel shall hold the Allocation Neutral harmless, without limitation, for all tasks performed and determinations made by the Allocation Neutral associated with this Allocation Neutral Procedure and shall indemnify the Allocation Neutral in the event of any claims against the Allocation Neutral relating in any way to this Allocation Neutral Procedure.

(THIS SPACE INTENTIONALLY LEFT BLANK)

The foregoing Allocation Neutral Procedure ANP-04 is hereby approved:


By:_____        Date: _____
       Counsel for Defendant Insureds

Name: _____Jim Tyrell_____


By:_____        Date: _____
       WTC Captive

Name: _____Peg Warner_____


By:_____        Date: _____
       Liaison Counsel

Name: _____Paul J. Napoli_____


By:_____        Date: _____
       Liaison Counsel

Name: _____Bill Groner_____


By:_____        Date: _____
       Liaison Counsel

Name: _____Nick Papain_____


By:_____        Date: _____
       Liaison Counsel

Name: _____Andy Carboy_____


By:_____        Date: _____
       Allocation Neutral

Name: _____Matthew L. Garretson_____

By:_____     Date: _____
     Claims Appeal Neutral

Name: _____Camille Biros_____

# Exhibit C - One

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                             :
IN RE WORLD TRADE CENTER DISASTER          :      **CASE MANAGEMENT**
SITE LITIGATION                            :      **ORDER NO. _____**
                                                             :
                                                             :      21 MC 100 (AKH)
                                                             :
------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

      This Case Management Order No. ___ shall apply to all plaintiffs with cases pending as of April 12, 2010, and all new plaintiffs filing cases after April 12, 2010 ("Plaintiff" or "Plaintiffs"). The requirements imposed upon Plaintiffs by this Order shall apply only as against those actual or potential defendants identified on Exhibit A hereto ("Listed Defendants").

      1.    <u>Filing of Amended Complaints.</u>  Each Plaintiff with an existing case as of April 12, 2010, shall file and thereafter serve an Amended Complaint satisfying the requirements of the Federal Rules of Civil Procedure ("FRCP") and this Case Management Order ("CMO") on Listed Defendants' Counsel by **[DATE]** <*date is determined as one hundred and thirty (130) days after the Affirmation of Final Settlement Agreement*>, if that Plaintiff's case is not dismissed with prejudice prior to this deadline pursuant to the final settlement agreement. Plaintiff's counsel shall comply with Rule 11 of the FRCP when filing any Complaint provided for herein.

      2.    <u>Content of Complaints.</u>  New Plaintiffs that file cases or Plaintiffs that amend their cases pursuant to Section 1 of this CMO shall include in their Complaint or Amended Complaint, in addition to the information required pursuant to the FRCP, the detailed information identified in Section 5 (e) through (h) herein and also information sufficient to respond adequately to the following:

a.    Reason Plaintiff's Claim Not Time-Barred.  The reason Plaintiff's claim is not barred by the statute of limitations as to each Listed Defendant, and, as to the City of New York, not barred by notice of claim requirements;

b.    Facts Supporting Contention That Listed Defendants Not Immune From Liability.  A statement of the facts supporting Plaintiff's contention that each particular Listed Defendant is not immune from liability under state and federal law.  *See In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d 520 (S.D.N.Y. 2006).

c.    Listed Defendants Against Whom Liability is Alleged.  The particular Listed Defendants that Plaintiff alleges are liable for his or her alleged injuries at the World Trade Center Site, and the particular factual and legal basis for such alleged liability specific to each particular Listed Defendant that Plaintiff sued.  Or, a Plaintiff may provide responses to Request Nos. 11, 12 and 13 of the November 21, 2007 CMO, with specificity as to each particular Listed Defendant that Plaintiff sued.

3.    Completion of Database Information.  Each Plaintiff with an existing case as of April 12, 2010, shall populate (if not already populated) all required information to the Court database by **[DATE]** *<date is determined as one hundred and sixty (160) days after the Affirmation of Final Settlement Agreement is executed>*, if that Plaintiff's case is not dismissed with prejudice pursuant to the final settlement agreement.  New Plaintiffs that file cases after April 12, 2010, shall populate all required information to the Court Database within thirty (30) days after filing a Complaint in accordance with the FRCP and the requirements of this CMO.

2

4.    <u>Requirement to Serve Case-Specific Expert Report.</u>  Each Plaintiff (including each personal representative of an estate of any deceased or incompetent participant in the World Trade Center rescue, recovery and/or debris removal operation claiming injury), and the Plaintiff's counsel, in consultation with such medical advisor(s) as they see fit to consult, shall serve a case-specific expert report stating that there is a causal relationship between the individual Plaintiff's claimed injury and his or her World Trade Center Site service and exposure and the good faith basis for that opinion, executed under oath and subject to the penalties of perjury (a "Case-Specific Expert Report").  Each Plaintiff with an existing case as of April 12, 2010 shall serve his or her Case-Specific Expert Report on Listed Defendants' counsel by **[DATE]** *<date is determined as one hundred and eighty (180) days after the Affirmation of Final Settlement Agreement is executed>*, if that Plaintiff's case is not dismissed with prejudice pursuant to the final settlement agreement.  New Plaintiffs that file cases after April 12, 2010, shall serve the Case-Specific Expert Report within ninety (90) days after filing a Complaint in accordance with the FRCP and the requirements of this CMO.

5.    <u>Contents of Case-Specific Expert Report.</u>  Each Case-Specific Expert Report shall include the following information:

a.    <u>Plaintiff's Information.</u>  The Plaintiff's name and date of birth;

b.    <u>Plaintiff's Employer.</u>  The name(s) of each and every employer for whom Plaintiff worked at the World Trade Center Site;

c.    <u>Expert's Information.</u>  The name, professional address, and curriculum vitae of the physician or medical expert, including a list of all publications authored by the expert within the preceding ten (10) years, and the

3

foundation for the expert's opinion in relation to his or her professional experience;

d.  Plaintiff's Medical Records.  A copy of the Plaintiff's medical records reviewed by the expert prior to the preparation of the Case-Specific Expert Report;

e.  Exposure Dates.  The dates during which the Plaintiff alleges to have been exposed at the World Trade Center Site and copies of documents relied upon, if any, as evidence of such alleged exposure;

f.  Exposure Locations. The  location(s) at which the Plaintiff alleges to have been exposed at the World Trade Center Site and copies of documents relied upon, if any, as evidence of such alleged exposure.  In identifying the alleged locations of exposure, the Plaintiff will make reference to one or more of the locations set forth in the pull down menu or "pick list" used in conjunction with completion of the fields in the Court database administered by TCDI.

g.  Plaintiff's Injury.  If Plaintiff does not allege exacerbation of a condition existing prior to Plaintiff's work at the World Trade Center Site, whether the Plaintiff's medical records reviewed by the expert indicate that the Plaintiff experienced an injury causally related to alleged exposures at the World Trade Center Site and, if so: (i) the nature of the alleged injury; (ii) the date of the alleged injury and the date the Plaintiff knew of the alleged injury; (iii) that the alleged injury was not a condition existing prior to

4

Plaintiff's work at the World Trade Center Site; and (iv) references to the particular medical record(s) relied upon as evidence of such alleged injury;

h.    Exacerbation of Pre-existing Condition. If Plaintiff alleges exacerbation of a condition existing prior to Plaintiff's work at the World Trade Center Site, whether the Plaintiff's medical records reviewed by the expert indicate that the Plaintiff experienced an exacerbation of a pre-existing condition causally related to alleged exposures at the World Trade Center Site and, if so: (i) the nature of the alleged exacerbated condition; (ii) the date of the alleged exacerbated condition and the date the Plaintiff knew of the alleged exacerbation; and (iii) references to the particular medical record(s) relied upon as evidence of such alleged exacerbated condition;

i.    Opinion Regarding Causation Sworn to by Medical Expert. An opinion that there is a causal relationship between the individual Plaintiff's claimed injury and his or her World Trade Center Site service and exposure, prepared by a physician or other medical expert and sworn/affirmed to and subject to the penalties of perjury.

6.    Responding to Complaints. The time for Listed Defendants to file a response to any Complaint or Amended Complaint subject to the requirements of this CMO shall not begin to run until after the receipt by counsel for the Listed Defendants of the Case-Specific Expert Report required pursuant to this CMO.

7.    Dismissal of Plaintiffs Who Fail to Comply With This Order.

a.    Notice of Non-compliance and Opportunity to Cure. If any Plaintiff fails to comply with any provision of this Order, including without limitation

5

the timely service of a Complaint or Amended Complaint, the timely population of information to the Court Database, and/or the timely service of the Case-Specific Expert Report, counsel for Listed Defendants shall place Plaintiff on written notice of such non-compliance ("Notice of Non-Compliance") specifying the non-compliance. Upon receipt of a Notice of Non-Compliance, Plaintiff shall have sixty (60) days to cure his or her Non-Compliance specified in the Notice of non-compliance. During the period wherein non-compliance has not yet been cured, all litigation deadlines applicable to Listed Defendants, including without limitation the deadline to file and serve a pleading responsive to Plaintiff's Complaint or Amended Complaint, shall be held in abeyance.

b.    Failure to Cure. If, after the passage of sixty (60) days of service of a Notice of Non-Compliance, a Plaintiff fails to cure his or her non-compliance, upon application by the Listed Defendants, the Plaintiff will be subject to having his or her claims, as well as any derivative claim(s), dismissed pursuant to FRCP 41(b) as against the Listed Defendants only.

c.    Extensions of Time. The Court, on motion and for good cause shown, may order an extension of the time to comply with this Order.

8.    Order Shall Become Void If Final Settlement Agreement Not Executed. This Order shall become void and of no prospective or retroactive effect as to any Plaintiff or Listed Defendant if affirmation of a final settlement agreement is not executed by all required signatories under the settlement agreement by [date of entry plus 120 days], such date subject to extension of time on motion and for good cause shown by any Listed Defendant.

6

9.    Objections.    Any party objecting to the entry of this Order shall file such objection by [date of entry plus 15 days].

**SO ORDERED.**

Date:    _____, 2010
         New York, New York

                                        _____
                                        ALVIN K. HELLERSTEIN
                                        United States District Judge

7

## EXHIBIT A

## LIST OF DEFENDANTS TO WHICH THIS ORDER APPLIES

| |
|---|
| CITY OF NEW YORK, including the: |
| BOARD OF EDUCATION OF THE CITY OF NEW YORK |
| BOROUGH OF MANHATTAN COMMUNITY COLLEGE |
| CITY UNIVERSITY OF NEW YORK |
| NEW YORK CITY DEPARTMENT OF EDUCATION |
| NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY |
| A RUSSO WRECKING |
| ACROW |
| ALLCOM ELECTRIC |
| AMEC CONSTRUCTION MANAGEMENT, INC. |
| AMEC EARTH AND ENVIRONMENTAL |
| ANTHONY CORTESE SPECIALIZED HAULING LLC |
| ASG PEST CONTROL |
| ATC GROUP SERV/DBA ATC ASSOCIATES |
| ATLANTIC HEYDT CORP. |
| ATLAS CONCRETE |
| AVANTI DEMOLITION & CARTING CORP. |
| BECHTEL CONSTRUCTION, INC. |
| BERGEN CONCRETE CUTTING |
| BERKEL & CO. CONTRACTORS, INC. |
| BIG APPLE WRECKING & CONSTRUCTION |
| BOVIS LEND LEASE LMB, INC. |
| BREEZE CARTING |
| BREEZE NATIONAL, INC. |
| BRER FOUR TRANSPORTATION |
| BURO HAPPOLD CONSULT ENG. |
| C & D FIREPROOFING |
| C & D PAINTING, INC. |
| C.B. CONTRACTING CORP. |
| CANRON CONSTRUCTION CORP. |
| CANTOR SEINUK GROUP |
| CERTIFIED FENCE CORP. |
| CIVETTA COUSINS |
| CLARCO ENTERPRISE CORP. |
| COMPONENT ASSEMBLY SYS |
| COORDINATED METALS, INC. |
| CORD CONTRACTING CO., INC. |

8

| | |
|---|---|
| | CRAIG TEST BORING |
| | CRITICOM INTERNATIONAL CORP |
| | DAKOTA DEMO-TECH |
| | DESIMONE CONSULTING ENGINEERS, PLLC |
| | DCM ERECTORS, INC. |
| | DIAMOND POINT EXCAVATION CORP |
| | DIEGO CONSTRUCTION |
| | DIVERSIFIED CARTING |
| | DMT ENTERPRISE |
| | D'ONOFRIO GENERAL CONTRACTORS CORP. |
| | EAGLE LEASING & INDUSTRIAL SUPPLY (SEASONS) |
| | EAGLE ONE ROOFING CONTRACTORS, INC. |
| | EAGLE SCAFFOLDING CO. (SEASONS) |
| | EJ DAVIES, INC. |
| | EN-TECH CORP. |
| | ENTERTAINMENT PARTNERS |
| | ET ENVIRONMENTAL |
| | EVERGREEN RECYCLING OF CORONA (EROC) |
| | EWELL W. FINLEY, P.C. |
| | EXECUTIVE MED SERVICES, PC |
| | F&G MECHANICAL CORPORATION |
| | FELIX EQUITIES, INC. |
| | FLEET TRUCKING |
| | FRANCIS A. LEE EXTERIOR RESTORATION |
| | FRANK MICELLI JR CONTRACTING |
| | FTI TRUCKING |
| | G & G CONTRACTING, INC. |
| | GILSANZ, MURRAY, & STEFICEK |
| | GINO CRACOLICI & SONS, INC. |
| | GOLDSTEIN ASSOCIATES PLLC |
| | GRACE INDUSTRIES |
| | GUY NORDENSON AND ASSOCIATES |
| | HALLEN WELDING SERVICE |
| | HELMSMAN MANAGEMENT SERVICES, INC. |
| | HGC CONTRACTING CORP. |
| | HIGH RISE HOISTING AND SCAFFOLDING |
| | HIGH-RISE ELECTRIC, INC. |
| | HP ENVIRONMENTAL |
| | JP EQUIPMENT RENTAL MATERIALS, INC. |

9

| | |
|---|---|
| | KEVIN MCMANUS |
| | KOCH SKANSKA, INC. |
| | LAQUILLA CONSTRUCTION, INC. |
| | LASTRADA GENERAL CONTRACTING CORP. |
| | LESLIE E. ROBERTSON ASSOCIATES |
| | LIBERTY MUTUAL GROUP |
| | LIRO |
| | LOCKWOOD, KESSLER & BARTLETT (LKB) |
| | LUCIUS PITKIN |
| | LZA TECH-DIVISION OF THORTON TOMASETTI |
| | M. G. MCLAREN, P.C. |
| | MANAFORT BROTHERS, INC. |
| | MAZZOCCHI WRECKING, INC. |
| | MEDCOR, INC. |
| | MENT BROTHERS |
| | MERIDIAN CONSTRUCTION GROUP |
| | MG MCLAREN P.C. |
| | MORETRENCH AMERICAN, CORP. |
| | MRA ENGINEERING, PC |
| | MUESER RUTLEDGE CONSULTING ENGINEERS |
| | MUSCO SPORTS LIGHTING, LLC |
| | NACIREMA INDUSTRIES |
| | NEW YORK CRANE & EQUIPMENT CORP. |
| | NICHOLSON CONSTRUCTION CO. |
| | NICHOLSON/HEYWOOD JOINT VENTURE |
| | OFF ROAD WELDING, INC. |
| | THE OFFICES OF JAMES RUDERMAN, LLP |
| | OLYMPIC PLUMBING AND HEATING |
| | OVE ARUP & PARTNERS |
| | PARSON GROUP |
| | PETER SCALAMANDRE & SONS |
| | PINNACLE ENVIRONMENTAL |
| | PLAZA CONSTRUCTION CORP. |
| | PRO SAFETY SERVICES, LLC |
| | PT & L CONTRACTING CORP. |
| | REGIONAL SCAFFOLD & HOISTING CO, INC. |
| | RICH MARK ENVIRONMENTAL SERVICES, INC. |
| | ROBER SILMAN ASSOCIATES |
| | ROBERT C STEWART |

| |
|---|
| ROBERT ERRAT |
| ROBERT L GEROSA |
| RODAR ENTERPRISES, INC. |
| ROYAL GM, INC. |
| SAB TRUCKING |
| SAFEWAY ENVIRONMENTAL |
| SEMCOR EQUIPMENT |
| SEVERUD ASSOCIATES CONSULTING ENGINEERS |
| SHELDRAKE ORGANIZATION, INC. |
| SILVERADO CONTRACTORS |
| SILVERITE CONTRACTING |
| SIMPSON, GUMPERTZ, & HEGER |
| SKIDMORE, OWINGS & MERRILL LLP |
| STAR DELTA ELECTRIC |
| STIER, ANDERSON & MALONE |
| SUMMIT STRUCTURES LLC |
| TELENET COMMUNICATIONS |
| THYSSEN KRUPP ELEVATOR CO. |
| TOMASETTI GROUP |
| TORETTA TRUCKING |
| TOTAL SAFETY CONSULTING LLC |
| TUCCI EQUIPMENT RENTAL CORP |
| TULLY CONSTRUCTION |
| TURNER CONSTRUCTION COMPANY |
| ULTIMATE DEMOLITION/CS HAULING (JOINT VENTURE) |
| UNITED STATES REBAR |
| VANGUARD EQUIPMENT RENTALS |
| VERTICAL TECHNOLOGIES |
| VOLLMER ASSOCIATES |
| W HARRIS & SON INC. |
| WALTER WHITE TRUCKING |
| WEEKS MARINE, INC. |
| WEIDLINGER ASSOCIATES |
| WHITNEY CONTRACTING |
| WOLKOW BRAKER ROOFING |
| YANNUZZI & SONS, INC. |
| YONKERS CONTRACTING |
| YORK HUNTER CONSTRUCTION, LLC |
| ZIEGENFUSS DRILLING |

# Exhibit C - Two

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
IN RE WORLD TRADE CENTER                                       :
LOWER MANHATTAN DISASTER                                       :
SITE LITIGATION                                                :     **CASE MANAGEMENT**
                                                               :     **ORDER NO. _____**
                                                               :
                                                               :     21 MC 102 (AKH)
                                                               :
-------------------------------------------------------------- x
ALVIN K. HELLERSTEIN, U.S.D.J.:

   This Case Management Order No. ____ shall apply to all plaintiffs in this consolidated

(for pretrial purposes) Master Docket with cases pending as of April 12, 2010, and all new

plaintiffs filing cases after April 12, 2010 ("Plaintiff" or "Plaintiffs"). The requirements imposed

upon Plaintiffs by this Order shall apply only as against those actual or potential defendants

identified on Exhibit A hereto ("Listed Defendants").

   1.  Filing of Amended Complaints. Each Plaintiff with an existing case as of April

12, 2010, shall file and thereafter serve an Amended Complaint satisfying the requirements of

the Federal Rules of Civil Procedure ("FRCP") and this Case Management Order ("CMO") on

Listed Defendants' Counsel by **[DATE]** <*date is determined as one hundred and thirty (130)*

*days after the Affirmation of Final Settlement Agreement*>, if that Plaintiff's case is not

dismissed with prejudice prior to this deadline pursuant to the final settlement agreement.

Plaintiff's counsel shall comply with Rule 11 of the FRCP when filing any Complaint provided

for herein.

   2.  Content of Complaints.  New Plaintiffs that file cases or Plaintiffs that

amend their cases pursuant to Section 1 of this CMO shall include in their Complaint or

Amended Complaint, in addition to the information required pursuant to the FRCP, the detailed

information identified in Section 5 (e) through (h) herein and also information sufficient to respond adequately to the following:

        a.    <u>Reason Plaintiff's Claim Not Time-Barred.</u> The reason Plaintiff's claim is not barred by the statute of limitations as to each Listed Defendant, and, as to the City of New York, New York City School Construction Authority, New York City Board of Education, New York City Department of Education, and City University of New York, not barred by notice of claim requirements;

        b.    <u>Facts Supporting Contention That Listed Defendants Not Immune From Liability.</u> A statement of the facts supporting Plaintiff's contention that each particular Listed Defendant is not immune from liability under state and federal law. *See In re World Trade Ctr. Disaster Site Litig.,* 456 F. Supp. 2d 520 (S.D.N.Y. 2006).

        c.    <u>Listed Defendants Against Whom Liability is Alleged.</u> The particular Listed Defendants that Plaintiff alleges are liable for his or her alleged injuries, and the particular factual and legal basis for such alleged liability specific to each particular Listed Defendant that Plaintiff sued. Or, Plaintiff's counsel may certify responses to the Requests set forth in Section II(B) of the jointly negotiated discovery demands referenced in CMO No. 6, with specificity as to each particular Listed Defendant that Plaintiff sued.

    3.    <u>Completion of Database Information.</u> Each Plaintiff with an existing case as of April 12, 2010, shall populate all required information to the Court Database by **[DATE]** *<date*

2

*is determined as one hundred and sixty (160) days after the Affirmation of Final Settlement Agreement>*, if that Plaintiff's case is not dismissed with prejudice pursuant to the final settlement agreement. New Plaintiffs that file cases after April 12, 2010, shall populate all required information to the Court Database within thirty (30) days after filing a Complaint in accordance with the FRCP and the requirements of this CMO.

      4.    Requirement to Serve Case-Specific Expert Report. Each Plaintiff (including each personal representative of an estate of any deceased or incompetent participant claiming injury as a result of work including, but not limited to debris removal, building cleaning, and other associated activities in buildings and areas in Lower Manhattan following the terrorist attack of September 11, 2001 ("World Trade Center-related work")), and the Plaintiff's counsel, in consultation with such medical advisor(s) as they see fit to consult, shall serve a case-specific expert report stating that there is a causal relationship between the individual Plaintiff's claimed injury and his or her World Trade Center-related work and exposure and the good faith basis for that opinion, executed under oath and subject to the penalties of perjury (a "Case-Specific Expert Report"). Each Plaintiff with an existing case as of April 12, 2010 shall serve his or her Case-Specific Expert Report on Listed Defendants' counsel by **[DATE]** *<date is determined as one hundred and eighty (180) days after the Affirmation of Final Settlement Agreement is executed>*, if that Plaintiff's case is not dismissed with prejudice pursuant to the final settlement agreement. New Plaintiffs that file cases after April 12, 2010, shall serve the Case-Specific Expert Report within ninety (90) days after filing a Complaint in accordance with the FRCP and the requirements of this CMO.

      5.    Contents of Case-Specific Expert Report. Each Case-Specific Expert Report shall include the following information:

3

a.    Plaintiff's Information.  The Plaintiff's name and date of birth;

b.    Plaintiff's Employer.  The name(s) of each and every employer for whom
Plaintiff performed World Trade Center-related work;

c.    Expert's Information.  The name, professional address, and curriculum
vitae of the physician or medical expert, including a list of all publications
authored by the expert within the preceding ten (10) years, and the
foundation for the expert's opinion in relation to his or her professional
experience;

d.    Plaintiff's Medical Records.  A copy of the Plaintiff's medical records
reviewed by the expert prior to the preparation of the Case-Specific Expert
Report;

e.    Exposure Dates.  The dates during which the Plaintiff alleges to have been
exposed while participating in World Trade Center-related work and
copies of documents relied upon, if any, as evidence of such alleged
exposure;

f.    Exposure Locations. The location(s) at which the Plaintiff alleges to have
been exposed and copies of documents relied upon, if any, as evidence of
such alleged exposure.  In identifying the alleged locations of exposure,
the Plaintiff will make reference to one or more of the locations set forth
in the operative Amended Master Complaint in this Master Docket.

g.    Plaintiff's Injury.  If Plaintiff does not allege exacerbation of a condition
existing prior to Plaintiff's participation in World Trade Center-related
work, whether the Plaintiff's medical records reviewed by the expert

4

indicate that the Plaintiff experienced an injury causally related to alleged exposures while participating in World Trade Center-related work and, if so: (i) the nature of the alleged injury; (ii) the date of the alleged injury and the date the Plaintiff knew of the alleged injury; (iii) that the alleged injury was not a condition existing prior to Plaintiff's participation in World Trade Center-related work; and (iv) references to the particular medical record(s) relied upon as evidence of such alleged injury;

h.    Exacerbation of Pre-existing Condition.    If Plaintiff alleges exacerbation of a condition existing prior to Plaintiff's participation in World Trade Center-related work, whether the Plaintiff's medical records reviewed by the expert indicate that the Plaintiff experienced an exacerbation of a pre-existing condition causally related to alleged exposures while participating in World Trade Center-related work and, if so: (i) the nature of the alleged exacerbated condition; (ii) the date of the alleged exacerbated condition and the date the Plaintiff knew of the alleged exacerbation; and (iii) references to the particular medical record(s) relied upon as evidence of such alleged exacerbated condition;

i.    Opinion Regarding Causation Sworn to by Medical Expert.    An opinion that there is a causal relationship between the individual Plaintiff's claimed injury and his or her World Trade Center-related work, prepared by a physician or other medical expert and sworn/affirmed to and subject to the penalties of perjury;

5

6.     <u>Responding to Complaints.</u> The time for Listed Defendants to file a response to any Complaint or Amended Complaint subject to the requirements of this CMO shall not begin to run until after the receipt by counsel for the Listed Defendants of the Case-Specific Expert Report required pursuant to this CMO.

7.     <u>Dismissal of Plaintiffs Who Fail to Comply With This Order.</u>

a.     <u>Notice of Non-compliance and Opportunity to Cure.</u> If any Plaintiff fails to comply with any provision of this Order, including without limitation the timely service of a Complaint or Amended Complaint, the timely population of information to the Court Database, and/or the timely service of the Case-Specific Expert Report, counsel for Listed Defendants shall place Plaintiff on written notice of such non-compliance ("Notice of Non-Compliance") specifying the non-compliance. Upon receipt of a Notice of Non-Compliance, Plaintiff shall have sixty (60) days to cure his or her Non-Compliance specified in the Notice of Non-compliance. During the period wherein non-compliance has not yet been cured, all litigation deadlines applicable to Listed Defendants, including without limitation the deadline to file and serve a pleading responsive to the operative Amended Master Complaint or that particular Plaintiff's Check-Off Complaint, shall be held in abeyance.

b.     <u>Failure to Cure.</u> If, after the passage of sixty (60) days of service of a Notice of Non-Compliance, a Plaintiff fails to cure his or her non-compliance, upon application by the Listed Defendants, the Plaintiff will

6

be subject to having his or her claims, as well as any derivative claim(s), dismissed pursuant to FRCP 41(b) as against the Listed Defendants only.

c.    Extensions of Time.    The Court, on motion and for good cause shown, may order an extension of the time to comply with this Order.

8.    Order Shall Become Void If Final Settlement Agreement Not Executed.    This Order shall become void and of no prospective or retroactive effect as to any Plaintiff or Listed Defendant if affirmation of a final settlement agreement is not executed by all required signatories under the settlement agreement by [date of entry plus 120 days], such date subject to extension of time on motion and for good cause shown by any Listed Defendant.

9.    Objections.    Any party objecting to the entry of this Order shall file such objection by [date of entry plus 15 days].

**SO ORDERED.**

Date:    _____, 2010
         New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge

7

## EXHIBIT A

## LIST OF DEFENDANTS TO WHICH THIS ORDER APPLIES

| |
|---|
| CITY OF NEW YORK, including the: |
| BOARD OF EDUCATION OF THE CITY OF NEW YORK |
| BOROUGH OF MANHATTAN COMMUNITY COLLEGE |
| CITY UNIVERSITY OF NEW YORK |
| NEW YORK CITY DEPARTMENT OF EDUCATION |
| NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY |
| A RUSSO WRECKING |
| ACROW |
| ALLCOM ELECTRIC |
| AMEC CONSTRUCTION MANAGEMENT, INC. |
| AMEC EARTH AND ENVIRONMENTAL |
| ANTHONY CORTESE SPECIALIZED HAULING LLC |
| ASG PEST CONTROL |
| ATC GROUP SERV/DBA ATC ASSOCIATES |
| ATLANTIC HEYDT CORP. |
| ATLAS CONCRETE |
| AVANTI DEMOLITION & CARTING CORP. |
| BECHTEL CONSTRUCTION, INC. |
| BERGEN CONCRETE CUTTING |
| BERKEL & CO. CONTRACTORS, INC. |
| BIG APPLE WRECKING & CONSTRUCTION |
| BOVIS LEND LEASE LMB, INC. |
| BREEZE CARTING |
| BREEZE NATIONAL, INC. |
| BRER FOUR TRANSPORTATION |
| BURO HAPPOLD CONSULT ENG. |
| C & D FIREPROOFING |
| C & D PAINTING, INC. |
| C.B. CONTRACTING CORP. |
| CANRON CONSTRUCTION CORP. |
| CANTOR SEINUK GROUP |
| CERTIFIED FENCE CORP. |
| CIVETTA COUSINS |
| CLARCO ENTERPRISE CORP. |
| COMPONENT ASSEMBLY SYS |
| COORDINATED METALS, INC. |
| CORD CONTRACTING CO., INC. |

8

| |
|---|
| CRAIG TEST BORING |
| CRITICOM INTERNATIONAL CORP |
| DAKOTA DEMO-TECH |
| DESIMONE CONSULTING ENGINEERS, PLLC |
| DCM ERECTORS, INC. |
| DIAMOND POINT EXCAVATION CORP |
| DIEGO CONSTRUCTION |
| DIVERSIFIED CARTING |
| DMT ENTERPRISE |
| D'ONOFRIO GENERAL CONTRACTORS CORP. |
| EAGLE LEASING & INDUSTRIAL SUPPLY (SEASONS) |
| EAGLE ONE ROOFING CONTRACTORS, INC. |
| EAGLE SCAFFOLDING CO. (SEASONS) |
| EJ DAVIES, INC. |
| EN-TECH CORP. |
| ENTERTAINMENT PARTNERS |
| ET ENVIRONMENTAL |
| EVERGREEN RECYCLING OF CORONA (EROC) |
| EWELL W. FINLEY, P.C. |
| EXECUTIVE MED SERVICES, PC |
| F&G MECHANICAL CORPORATION |
| FELIX EQUITIES, INC. |
| FLEET TRUCKING |
| FRANCIS A. LEE EXTERIOR RESTORATION |
| FRANK MICELLI JR CONTRACTING |
| FTI TRUCKING |
| G & G CONTRACTING, INC. |
| GILSANZ, MURRAY, & STEFICEK |
| GINO CRACOLICI & SONS, INC. |
| GOLDSTEIN ASSOCIATES PLLC |
| GRACE INDUSTRIES |
| GUY NORDENSON AND ASSOCIATES |
| HALLEN WELDING SERVICE |
| HELMSMAN MANAGEMENT SERVICES, INC. |
| HGC CONTRACTING CORP. |
| HIGH RISE HOISTING AND SCAFFOLDING |
| HIGH-RISE ELECTRIC, INC. |
| HP ENVIRONMENTAL |
| JP EQUIPMENT RENTAL MATERIALS, INC. |

| | |
|---|---|
| | KEVIN MCMANUS |
| | KOCH SKANSKA, INC. |
| | LAQUILLA CONSTRUCTION, INC. |
| | LASTRADA GENERAL CONTRACTING CORP. |
| | LESLIE E. ROBERTSON ASSOCIATES |
| | LIBERTY MUTUAL GROUP |
| | LIRO |
| | LOCKWOOD, KESSLER & BARTLETT (LKB) |
| | LUCIUS PITKIN |
| | LZA TECH-DIVISION OF THORTON TOMASETTI |
| | M. G. MCLAREN, P.C. |
| | MANAFORT BROTHERS, INC. |
| | MAZZOCCHI WRECKING, INC. |
| | MEDCOR, INC. |
| | MENT BROTHERS |
| | MERIDIAN CONSTRUCTION GROUP |
| | MG MCLAREN P.C. |
| | MORETRENCH AMERICAN, CORP. |
| | MRA ENGINEERING, PC |
| | MUESER RUTLEDGE CONSULTING ENGINEERS |
| | MUSCO SPORTS LIGHTING, LLC |
| | NACIREMA INDUSTRIES |
| | NEW YORK CRANE & EQUIPMENT CORP. |
| | NICHOLSON CONSTRUCTION CO. |
| | NICHOLSON/HEYWOOD JOINT VENTURE |
| | OFF ROAD WELDING, INC. |
| | THE OFFICES OF JAMES RUDERMAN, LLP |
| | OLYMPIC PLUMBING AND HEATING |
| | OVE ARUP & PARTNERS |
| | PARSON GROUP |
| | PETER SCALAMANDRE & SONS |
| | PINNACLE ENVIRONMENTAL |
| | PLAZA CONSTRUCTION CORP. |
| | PRO SAFETY SERVICES, LLC |
| | PT & L CONTRACTING CORP. |
| | REGIONAL SCAFFOLD & HOISTING CO, INC. |
| | RICH MARK ENVIRONMENTAL SERVICES, INC. |
| | ROBER SILMAN ASSOCIATES |
| | ROBERT C STEWART |

| |
|---|
| ROBERT ERRAT |
| ROBERT L GEROSA |
| RODAR ENTERPRISES, INC. |
| ROYAL GM, INC. |
| SAB TRUCKING |
| SAFEWAY ENVIRONMENTAL |
| SEMCOR EQUIPMENT |
| SEVERUD ASSOCIATES CONSULTING ENGINEERS |
| SHELDRAKE ORGANIZATION, INC. |
| SILVERADO CONTRACTORS |
| SILVERITE CONTRACTING |
| SIMPSON, GUMPERTZ, & HEGER |
| SKIDMORE, OWINGS & MERRILL LLP |
| STAR DELTA ELECTRIC |
| STIER, ANDERSON & MALONE |
| SUMMIT STRUCTURES LLC |
| TELENET COMMUNICATIONS |
| THYSSEN KRUPP ELEVATOR CO. |
| TOMASETTI GROUP |
| TORETTA TRUCKING |
| TOTAL SAFETY CONSULTING LLC |
| TUCCI EQUIPMENT RENTAL CORP |
| TULLY CONSTRUCTION |
| TURNER CONSTRUCTION COMPANY |
| ULTIMATE DEMOLITION/CS HAULING (JOINT VENTURE) |
| UNITED STATES REBAR |
| VANGUARD EQUIPMENT RENTALS |
| VERTICAL TECHNOLOGIES |
| VOLLMER ASSOCIATES |
| W HARRIS & SON INC. |
| WALTER WHITE TRUCKING |
| WEEKS MARINE, INC. |
| WEIDLINGER ASSOCIATES |
| WHITNEY CONTRACTING |
| WOLKOW BRAKER ROOFING |
| YANNUZZI & SONS, INC. |
| YONKERS CONTRACTING |
| YORK HUNTER CONSTRUCTION, LLC |
| ZIEGENFUSS DRILLING |

# Exhibit C - Three

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
IN RE COMBINED WORLD TRADE CENTER  :        **CASE MANAGEMENT**
DISASTER AND LOWER MANHATTAN       :        **ORDER NO.** _____
DISASTER SITE LITIGATION (straddler :
plaintiffs)                         :        21 MC 103 (AKH)
                                                               :
-------------------------------------------------------------- x
ALVIN K. HELLERSTEIN, U.S.D.J.:

This Case Management Order No. ___ shall apply to all plaintiffs with cases pending as

of April 12, 2010, and all new plaintiffs filing cases after April 12, 2010 ("Plaintiff" or

"Plaintiffs"). The requirements imposed upon Plaintiffs by this Order shall apply only as against

those actual or potential defendants identified on Exhibit A hereto ("Listed Defendants").

1.    <u>Filing of Amended Complaints.</u> Each Plaintiff with an existing case as of April

12, 2010 shall file and thereafter serve an Amended Complaint satisfying the requirements of the

Federal Rules of Civil Procedure ("FRCP") and this Case Management Order ("CMO") on

Listed Defendants' Counsel by **[DATE]** *<date is determined as one hundred and thirty (130)*

*days after the Affirmation of Final Settlement Agreement>*, if that Plaintiff's case is not

dismissed with prejudice prior to this deadline pursuant to the final settlement agreement.

Plaintiff's Counsel shall comply with Rule 11 of the FRCP when filing any Complaint provided

for herein.

2.    <u>Content of Complaints.</u> New Plaintiffs that file cases or Plaintiffs that amend

their cases pursuant to Section 1 of this CMO shall include in their Complaint or Amended

Complaint, in addition to the information required pursuant to the FRCP, the detailed

information identified in Section 5 (e) through (h) herein and also information sufficient to

respond adequately to the following:

97996

a.  <u>Reason Plaintiff's Claim Not Time-Barred.</u>  The reason Plaintiff's claim is not barred by the statute of limitations as to each Listed Defendant, and, as to the City of New York, not barred by notice of claim requirements;

b.  <u>Facts Supporting Contention That Listed Defendants Not Immune From Liability.</u>  A statement of the facts supporting Plaintiff's contention that each particular Listed Defendant is not immune from liability under state and federal law.  *See In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d 520 (S.D.N.Y. 2006).

c.  <u>Listed Defendants Against Whom Liability is Alleged.</u>  The particular Listed Defendants that Plaintiff alleges are liable for his or her alleged injuries at the World Trade Center Site or while participating in World Trade Center-related debris removal or building cleaning operations, and the particular factual and legal basis for such alleged liability specific to each particular Listed Defendant that Plaintiff sued.  If the Listed Defendant is alleged to be liable for Plaintiff's alleged injuries at the World Trade Center Site, Plaintiff's counsel may also certify responses to Request Nos. 11, 12 and 13 of the November 21, 2007 CMO, with specificity as to each particular Listed Defendant that Plaintiff sued.

3.  <u>Completion of Database Information.</u>  Each Plaintiff with an existing case as of April 12, 2010, shall populate all required information to the Court Database by **[DATE]** <*date is determined as one hundred and sixty (160) days after the Affirmation of Final Settlement Agreement>*, if that Plaintiff's case is not dismissed with prejudice pursuant to the final settlement agreement.  New Plaintiffs that file cases after April 12, 2010, shall populate all

2

required information to the Court Database within thirty (30) days after filing a Complaint in accordance with the FRCP and the requirements of this CMO.

    4.    <u>Requirement to Serve Case-Specific Expert Report.</u>  Each Plaintiff (including each personal representative of an estate of any deceased or incompetent participant claiming injury from work in (a) World Trade Center rescue, recovery and/or debris removal operations and (b) in buildings and areas in Lower Manhattan doing World Trade Center related debris removal or building cleaning operations ("World Trade Center-related work")), and the Plaintiff's counsel, in consultation with such medical advisor(s) as they see fit to consult, shall serve a case-specific expert report stating that there is a causal relationship between the individual Plaintiff's claimed injury and his or her World Trade Center Site service and World Trade Center-related work and exposure and the good faith basis for that opinion, executed under oath and subject to the penalties of perjury (a "Case-Specific Expert Report").  Each Plaintiff with an existing case as of April 12, 2010 shall serve his or her Case-Specific Expert Report on Listed Defendants' counsel by **[DATE]** <*date is determined as one hundred and eighty (180) days after the Affirmation of Final Settlement Agreement is executed*>, if that Plaintiff's case is not dismissed with prejudice pursuant to the final settlement agreement.  New Plaintiffs that file cases after April 12, 2010, shall serve the Case-Specific Expert Report within ninety (90) days after filing a Complaint in accordance with the FRCP and the requirements of this CMO.

    5.    <u>Contents of Case-Specific Expert Report.</u>  Each Case-Specific Expert Report shall include the following information:

        a.    <u>Plaintiff's Information.</u>  The Plaintiff's name and date of birth;

3

b.    <u>Plaintiff's Employer.</u>  The name(s) of each and every employer for whom Plaintiff worked at the World Trade Center Site and performed World Trade Center-related debris removal or building cleaning operations;

c.    <u>Expert's Information.</u>  The name, professional address, and curriculum vitae of the physician or medical expert, including a list of all publications authored by the expert within the preceding ten (10) years, and the foundation for the expert's opinion in relation to his or her professional experience;

d.    <u>Plaintiff's Medical Records.</u>  A copy of the Plaintiff's medical records reviewed by the expert prior to the preparation of the Case-Specific Expert Report;

e.    <u>Exposure Dates.</u>  The dates during which the Plaintiff alleges to have been exposed at the World Trade Center Site and while participating in World Trade Center-related debris removal or building cleaning operations and copies of documents relied upon, if any, as evidence of such alleged exposure;

f.    <u>Exposure Locations.</u>  The location(s) at which the Plaintiff alleges to have been exposed and copies of documents relied upon, if any, as evidence of such alleged exposure.  In identifying the alleged locations of exposure, the Plaintiff will make reference to one or more of the locations set forth in the pull down menu or "pick list" used in conjunction with completion of the fields in the Court database administered by TCDI.

g.  Plaintiff's Injury.  If Plaintiff does not allege exacerbation of a condition existing prior to Plaintiff's work at the World Trade Center Site and participation in World Trade Center-related debris removal or building cleaning operations, whether the Plaintiff's medical records reviewed by the expert indicate that the Plaintiff experienced an injury causally related to alleged exposures at the World Trade Center Site and while participating in World Trade Center-related debris removal or building cleaning operations and, if so: (i) the nature of the alleged injury; (ii) the date of the alleged injury and the date the Plaintiff knew of the alleged injury; (iii) that the alleged injury was not a condition existing prior to Plaintiff's work at the World Trade Center Site and participation in World Trade Center-related debris removal or building cleaning operations; and (iv) references to the particular medical record(s) relied upon as evidence of such alleged injury;

h.  Exacerbation of Pre-existing Condition.  If Plaintiff alleges exacerbation of a condition existing prior to Plaintiff's work at the World Trade Center Site and participation in World Trade Center-related debris removal or building cleaning operations, whether the Plaintiff's medical records reviewed by the expert indicate that the Plaintiff experienced an exacerbation of a pre-existing condition causally related to alleged exposures at the World Trade Center Site and while participating in World Trade Center-related debris removal or building cleaning operations and, if so: (i) the nature of the alleged exacerbated condition; (ii) the date of the

5

alleged exacerbated condition and the date the Plaintiff knew of the alleged exacerbation; and (iii) references to the particular medical record(s) relied upon as evidence of such alleged exacerbated condition;

i.    Opinion Regarding Causation Sworn to by Medical Expert.  An opinion that there is a causal relationship between the individual Plaintiff's claimed injury and his or her World Trade Center Site and World Trade Center-related service and exposure, prepared by a physician or other medical expert and sworn/affirmed to and subject to the penalties of perjury.

6.    Responding to Complaints.  The time for Listed Defendants to file a response to any Complaint or Amended Complaint subject to the requirements of this CMO shall not begin to run until after the receipt by counsel for the Listed Defendants of the Case-Specific Expert Report required pursuant to this CMO.

7.    Dismissal of Plaintiffs Who Fail to Comply With This Order.

a.    Notice of Non-compliance and Opportunity to Cure.  If any Plaintiff fails to comply with any provision of this Order, including without limitation the timely service of a Complaint or Amended Complaint, the timely population of information to the Court Database, and/or the timely service of the Case-Specific Expert Report, counsel for Listed Defendants shall place Plaintiff on written notice of such non-compliance ("Notice of Non-Compliance") specifying the non-compliance.  Upon receipt of a Notice of Non-Compliance, Plaintiff shall have sixty (60) days to cure his or her Non-Compliance specified in the Notice of non-compliance.  During the

6

period wherein non-compliance has not yet been cured, all litigation deadlines applicable to Listed Defendants, including without limitation the deadline to file and serve a pleading responsive to Plaintiff's Check-Off Complaint, shall be held in abeyance.

b.   Failure to Cure.  If, after the passage of sixty (60) days of service of a Notice of Non-Compliance, a Plaintiff fails to cure his or her non-compliance, upon application by the Listed Defendants, the Plaintiff will be subject to having his or her claims, as well as any derivative claim(s), dismissed pursuant to FRCP 41(b) as against the Listed Defendants only.

c.   Extensions of Time.  The Court, on motion and for good cause shown, may order an extension of the time to comply with this Order.

8.   Order Shall Become Void If Final Settlement Agreement Not Executed.  This Order shall become void and of no prospective or retroactive effect as to any Plaintiff or Listed Defendant if affirmation of a final settlement agreement is not executed by all required signatories under the settlement agreement by [date of entry plus 120 days], such date subject to extension of time on motion and for good cause shown by any Listed Defendant.

9.   Objections.  Any party objecting to the entry of this Order shall file such objection by [date of entry plus 15 days].

**SO ORDERED.**

Date:            _____ _____, 2010
                 New York, New York

                                     _____
                                     ALVIN K. HELLERSTEIN
                                     United States District Judge

7

8

**EXHIBIT A**

**LIST OF DEFENDANTS TO WHICH THIS ORDER APPLIES**

| | |
|---|---|
| CITY OF NEW YORK, including the: | |
| | BOARD OF EDUCATION OF THE CITY OF NEW YORK |
| | BOROUGH OF MANHATTAN COMMUNITY COLLEGE |
| | CITY UNIVERSITY OF NEW YORK |
| | NEW YORK CITY DEPARTMENT OF EDUCATION |
| | NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY |
| A RUSSO WRECKING | |
| ACROW | |
| ALLCOM ELECTRIC | |
| AMEC CONSTRUCTION MANAGEMENT, INC. | |
| AMEC EARTH AND ENVIRONMENTAL | |
| ANTHONY CORTESE SPECIALIZED HAULING LLC | |
| ASG PEST CONTROL | |
| ATC GROUP SERV/DBA ATC ASSOCIATES | |
| ATLANTIC HEYDT CORP. | |
| ATLAS CONCRETE | |
| AVANTI DEMOLITION & CARTING CORP. | |
| BECHTEL CONSTRUCTION, INC. | |
| BERGEN CONCRETE CUTTING | |
| BERKEL & CO. CONTRACTORS, INC. | |
| BIG APPLE WRECKING & CONSTRUCTION | |
| BOVIS LEND LEASE LMB, INC. | |
| BREEZE CARTING | |
| BREEZE NATIONAL, INC. | |
| BRER FOUR TRANSPORTATION | |
| BURO HAPPOLD CONSULT ENG. | |
| C & D FIREPROOFING | |
| C & D PAINTING, INC. | |
| C.B. CONTRACTING CORP. | |
| CANRON CONSTRUCTION CORP. | |
| CANTOR SEINUK GROUP | |
| CERTIFIED FENCE CORP. | |
| CIVETTA COUSINS | |
| CLARCO ENTERPRISE CORP. | |
| COMPONENT ASSEMBLY SYS | |
| COORDINATED METALS, INC. | |
| CORD CONTRACTING CO., INC. | |

| |
|---|
| CRAIG TEST BORING |
| CRITICOM INTERNATIONAL CORP |
| DAKOTA DEMO-TECH |
| DESIMONE CONSULTING ENGINEERS, PLLC |
| DCM ERECTORS, INC. |
| DIAMOND POINT EXCAVATION CORP |
| DIEGO CONSTRUCTION |
| DIVERSIFIED CARTING |
| DMT ENTERPRISE |
| D'ONOFRIO GENERAL CONTRACTORS CORP. |
| EAGLE LEASING & INDUSTRIAL SUPPLY (SEASONS) |
| EAGLE ONE ROOFING CONTRACTORS, INC. |
| EAGLE SCAFFOLDING CO. (SEASONS) |
| EJ DAVIES, INC. |
| EN-TECH CORP. |
| ENTERTAINMENT PARTNERS |
| ET ENVIRONMENTAL |
| EVERGREEN RECYCLING OF CORONA (EROC) |
| EWELL W. FINLEY, P.C. |
| EXECUTIVE MED SERVICES, PC |
| F&G MECHANICAL CORPORATION |
| FELIX EQUITIES, INC. |
| FLEET TRUCKING |
| FRANCIS A. LEE EXTERIOR RESTORATION |
| FRANK MICELLI JR CONTRACTING |
| FTI TRUCKING |
| G & G CONTRACTING, INC. |
| GILSANZ, MURRAY, & STEFICEK |
| GINO CRACOLICI & SONS, INC. |
| GOLDSTEIN ASSOCIATES PLLC |
| GRACE INDUSTRIES |
| GUY NORDENSON AND ASSOCIATES |
| HALLEN WELDING SERVICE |
| HELMSMAN MANAGEMENT SERVICES, INC. |
| HGC CONTRACTING CORP. |
| HIGH RISE HOISTING AND SCAFFOLDING |
| HIGH-RISE ELECTRIC, INC. |
| HP ENVIRONMENTAL |
| JP EQUIPMENT RENTAL MATERIALS, INC. |

| |
|---|
| KEVIN MCMANUS |
| KOCH SKANSKA, INC. |
| LAQUILLA CONSTRUCTION, INC. |
| LASTRADA GENERAL CONTRACTING CORP. |
| LESLIE E. ROBERTSON ASSOCIATES |
| LIBERTY MUTUAL GROUP |
| LIRO |
| LOCKWOOD, KESSLER & BARTLETT (LKB) |
| LUCIUS PITKIN |
| LZA TECH-DIVISION OF THORTON TOMASETTI |
| M. G. MCLAREN, P.C. |
| MANAFORT BROTHERS, INC. |
| MAZZOCCHI WRECKING, INC. |
| MEDCOR, INC. |
| MENT BROTHERS |
| MERIDIAN CONSTRUCTION GROUP |
| MG MCLAREN P.C. |
| MORETRENCH AMERICAN, CORP. |
| MRA ENGINEERING, PC |
| MUESER RUTLEDGE CONSULTING ENGINEERS |
| MUSCO SPORTS LIGHTING, LLC |
| NACIREMA INDUSTRIES |
| NEW YORK CRANE & EQUIPMENT CORP. |
| NICHOLSON CONSTRUCTION CO. |
| NICHOLSON/HEYWOOD JOINT VENTURE |
| OFF ROAD WELDING, INC. |
| THE OFFICES OF JAMES RUDERMAN, LLP |
| OLYMPIC PLUMBING AND HEATING |
| OVE ARUP & PARTNERS |
| PARSON GROUP |
| PETER SCALAMANDRE & SONS |
| PINNACLE ENVIRONMENTAL |
| PLAZA CONSTRUCTION CORP. |
| PRO SAFETY SERVICES, LLC |
| PT & L CONTRACTING CORP. |
| REGIONAL SCAFFOLD & HOISTING CO, INC. |
| RICH MARK ENVIRONMENTAL SERVICES, INC. |
| ROBER SILMAN ASSOCIATES |
| ROBERT C STEWART |

11

| |
|---|
| ROBERT ERRAT |
| ROBERT L GEROSA |
| RODAR ENTERPRISES, INC. |
| ROYAL GM, INC. |
| SAB TRUCKING |
| SAFEWAY ENVIRONMENTAL |
| SEMCOR EQUIPMENT |
| SEVERUD ASSOCIATES CONSULTING ENGINEERS |
| SHELDRAKE ORGANIZATION, INC. |
| SILVERADO CONTRACTORS |
| SILVERITE CONTRACTING |
| SIMPSON, GUMPERTZ, & HEGER |
| SKIDMORE, OWINGS & MERRILL LLP |
| STAR DELTA ELECTRIC |
| STIER, ANDERSON & MALONE |
| SUMMIT STRUCTURES LLC |
| TELENET COMMUNICATIONS |
| THYSSEN KRUPP ELEVATOR CO. |
| TOMASETTI GROUP |
| TORETTA TRUCKING |
| TOTAL SAFETY CONSULTING LLC |
| TUCCI EQUIPMENT RENTAL CORP |
| TULLY CONSTRUCTION |
| TURNER CONSTRUCTION COMPANY |
| ULTIMATE DEMOLITION/CS HAULING (JOINT VENTURE) |
| UNITED STATES REBAR |
| VANGUARD EQUIPMENT RENTALS |
| VERTICAL TECHNOLOGIES |
| VOLLMER ASSOCIATES |
| W HARRIS & SON INC. |
| WALTER WHITE TRUCKING |
| WEEKS MARINE, INC. |
| WEIDLINGER ASSOCIATES |
| WHITNEY CONTRACTING |
| WOLKOW BRAKER ROOFING |
| YANNUZZI & SONS, INC. |
| YONKERS CONTRACTING |
| YORK HUNTER CONSTRUCTION, LLC |
| ZIEGENFUSS DRILLING |

**Exhibit D**

# OVERVIEW OF THE WORLD TRADE CENTER LITIGATION SETTLEMENT PROCESS AGREEMENT, AS AMENDED

**Contents:**

I.    **Introduction to the Settlement** ................................................... 1
II.   **Overview of the Agreement** ..................................................... 1
III.  **Detailed Description of the Agreement** ..................................... 3
IV.   **Diagram of the Settlement Process** ........................................ 13
V.    **Diagram of the Reconsideration Request and Appeal Process** ................ 14
VI.   **List of Settling Defendants** ................................................ 15

## I.    Introduction to the Settlement

The City of New York and the contractors hired to conduct the rescue, recovery and debris removal work after the terrorist attack on 9/11 (the "Settling Defendants") entered into the World Trade Center Litigation Settlement Process Agreement, As Amended ("Agreement" or "Settlement") with lawyers representing the workers and volunteers who have filed claims for injuries they allege resulted from their exposure during that work ("Plaintiffs"). This summary is not intended to amend or supplement the Agreement's terms in any way. The diagram on page 15 may help to clarify the settlement process. Plaintiffs should talk with their lawyer about the effect of the Agreement on their individual case.

## II.    Overview of the Agreement

**A.    How much is the Settlement worth overall?**  If enough Plaintiffs agree to participate in the Settlement, the WTC Captive Insurance Company, Inc. ("WTC Captive"), will pay between $625 million and $712.5 million on behalf of the Settling Defendants to Plaintiffs who agree to participate, as well as providing other benefits to Plaintiffs.

**B.    How many Plaintiffs have to participate?**  The Agreement will not become effective unless 95% of eligible plaintiffs agree to participate in the Settlement.

**C.    What makes a Plaintiff eligible to participate?**  A Plaintiff is *eligible* to participate if: (1) he or she filed a lawsuit against any of the Settling Defendants or submitted a notice of claim to the City of New York by April 12, 2010; and (2) his or her lawsuit or notice of claim alleges that he or she suffered a physical injury or fears future injury because of work or volunteer service at the World Trade Center site or related locations ("WTC Site"). Please note that only Plaintiffs who can prove they served at the WTC Site after 9/11 are eligible to be paid.

**D.    What kinds of injuries qualify for compensation?**  Certain injuries qualify for payments under this Agreement.  These injuries are Chronic Obstructive Pulmonary Disease, Interstitial Lung Disease, Asthma, RADS, Laryngitis, Pharyngitis, Chronic Rhinosinusitis, Upper Digestive Conditions, Sleep Disorders, Death, Cancer, Cardiac Conditions, and Restrictive Lung Disease (collectively the "Qualifying Injuries").  Plaintiffs can also receive compensation for undergoing certain surgeries, having an orthopedic injury, or being permanently disabled.

**E.    What do Plaintiffs have to do to participate?**  In order to participate in the Settlement, Plaintiffs must release all claims against the Settling Defendants.  This means they must agree to drop any existing claims against the Settling Defendants and waive the right to sue the Settling Defendants in the future.  Plaintiffs must also fill out Claim Forms that states their claim that they worked at the WTC Site and had, has, or fear having a Qualifying Injury, and must submit medical records that substantiate their Qualifying Injuries.

**F.    What benefits are available?**  *All* Qualifying Plaintiffs will receive an initial payment of $3,250 and apply for the Cancer Insurance Policy.  The Cancer Insurance Policy provides payments of up to $100,000 to those who are later diagnosed for the first time with certain forms of cancer.  Qualifying Plaintiffs will receive additional payments if they (1) were diagnosed with a Qualifying Injury; (2) required surgery as a result of their Qualifying Injuries, (3) suffered an orthopedic injury during their WTC-related service, or (4) are disabled due to their WTC-related service.  Payments are subject to guaranteed floors and range from thousands of dollars to over $1 million, depending upon the strength of the claim.

**G.    Who decides how much each Plaintiff receives?**  The Garretson Firm Resolution Group, an independent claims evaluator with experience in administering mass tort settlements, will serve as the "Allocation Neutral" and will evaluate each Claim Form to ensure that Plaintiffs are treated fairly in a way consistent with the Agreement.  In addition, Kenneth R. Feinberg, Esquire, the former Special Master of the September 11th Victim Compensation Fund, will serve as the "Claims Appeal Neutral" and decide Plaintiffs' appeals under the Agreement if they disagree with the Allocation Neutral's decision on their claim.

**H.    Will the Settlement affect health benefits provided by the City of New York?**  No, all Plaintiffs remain eligible for medical screening and care provided by the City of New York through the WTC Centers for Excellence.

## III.    Detailed Description of the Agreement

### A.    Which Plaintiffs are eligible to participate in the Settlement?

On April 12, 2010, Plaintiffs' counsel provided a list of Plaintiffs eligible to participate in the Settlement (the "Eligible Plaintiff List"). A Plaintiff is eligible to participate if:

- he or she filed a lawsuit (or a personal representative filed a lawsuit on behalf of his or her estate) against any of the Settling Defendants or submitted a Notice of Claim to the City of New York on or before April 12, 2010;
- his or her lawsuit claimed that he or she suffered a physical injury or fears future injury because of his or her work or volunteer service at the WTC Site;[1] and
- he or she can prove service at the WTC Site after 9/11.

Those Plaintiffs who are eligible to participate in the Settlement ("Eligible Plaintiffs"), are associated with one of three "Master Dockets" – a list of cases to be resolved by the court.

### B.    What are the components of the Settlement?

If the Settlement goes forward, the WTC Captive will pay at least $625 million. This money is divided as follows:

- $514.8 million for Plaintiffs in Master Docket 21 MC 100;
- $6.1 million for Plaintiffs in Master Docket 21 MC 102;
- $18.2 million for Plaintiffs in Master Docket 21 MC 103;
- $62.5 million for permanently disabled Plaintiffs in all 3 Master Dockets (the "Permanent Disability Fund"); and
- $23.4 million for the Cancer Insurance Policy for Plaintiffs in all 3 Master Dockets.

At least ninety-five percent (95%) of all Eligible Plaintiffs must agree to participate for the Settlement to go forward. For every additional one percent (1%) of Eligible Plaintiffs who agree to participate over 95%, another $12.5 million will be contributed to the Settlement, up to a total of $62.5 million in additional money. For example, if ninety-six percent (96%) of Eligible Plaintiffs agree to participate in the Settlement, the WTC Captive will pay $625 million plus $12.5 million, for a total of $637.5 million. Any money added to the Settlement for this reason

---

[1] Plaintiffs who sued the Settling Defendants solely for orthopedic injuries will not be on the Eligible Plaintiff List.

-3-

will be spread out among the three Master Dockets and the Permanent Disability Fund in proportion to the relative amounts above.

In addition, the City of New York and its WTC workers' compensation insurer have agreed to waive all liens against recoveries by Participating Plaintiffs who received workers' compensation benefits under the City's WTC workers' compensation policy, or from the City directly, for injuries compensated under this Settlement. This means the money or health benefits some Plaintiffs have already received from workers' compensation will *not* have to be repaid, and continuing workers' compensation benefits will not be eliminated or reduced by a credit because of the Settlement.

Separately, the WTC Captive will pay up to an additional $25 million, in five annual installments of $5 million, if there are not too many lawsuits filed after the Settlement and the money spent by the WTC Captive on claims by plaintiffs who opt out of the settlement or sue later fall within fixed limits (called "Contingent Payments"). This money will be distributed among those Plaintiffs with the most serious injuries that would be easiest to prove in court.

Also, the WTC Captive has given Plaintiffs the value of its right to payment from certain insurers (the "London Insurers") who issued insurance policies ("Marine Policies") to the City of New York and Weeks Marine, Inc. This means that Plaintiffs' lawyers have the right to seek more money from these insurers for the Plaintiffs. The Marine Policies may cover claims alleging exposure on barges and nearby piers, so money recovered from the London Insurers will go to Plaintiffs who alleged exposure on the barges and nearby piers associated with the WTC Site clean-up.

### C.    What documents must Eligible Plaintiffs submit to participate in the Settlement and qualify for Benefits?

Eligible Plaintiffs must sign and submit two documents to *participate* in the Settlement:

- *A Release and Covenant Not to Sue* signed by the Eligible Plaintiff, his or her lawyer, and by anyone else who sued jointly with the Eligible Plaintiff stating that the Eligible Plaintiff is giving up their rights to sue the Settling Defendants in exchange for participating in the Settlement; and

- *A "Second Injury Letter"* signed by the Eligible Plaintiff explaining that he or she understands that the Release and Covenant Not to Sue applies not only to current injuries

-4-

known to the Plaintiff, but also to injuries that worsen in the future, current injuries the Plaintiff discovers in the future, and to injuries that develop in the future.

Eligible Plaintiffs who sign and submit these documents will be Participating Plaintiffs under the Agreement. Either at the same time or shortly after the Agreement goes into effect, Participating Plaintiffs, with the help of their lawyers, must submit the following additional documents to qualify for benefits:

- *A sworn Claim Form* providing information about the Plaintiff, his or her work at the WTC Site, any injuries, and any workers' compensation or other disability benefits received; and

- *Any records required by the Claim Form* to prove: (a) that the Plaintiff worked or volunteered in the rescue, recovery and debris removal efforts after 9/11; (b) the injury the Plaintiff claims and the severity of that injury, called "Qualifying Injuries"; and (c) whether the Plaintiff had any Qualifying Surgeries, Mixed Orthopedic Injuries and/or Permanent Disability determinations, as explained below. (To ensure that the process is fair, most types of medical records must be dated before March 12, 2010.)

Claim Forms sent to the Allocation Neutral shall be completed and signed under penalty of perjury. This means that if anyone lies, misrepresents, omits, or conceals facts that are important to the determination of his or her claim, he or she is breaking the law and could be prosecuted and lose all Settlement benefits.

Participating Plaintiffs whose forms demonstrate that they qualify for payment under the Settlement ("Qualifying Plaintiffs") will have the value of their claims determined by the Allocation Neutral as described below.

### D.    When does the Agreement become final?

The Agreement will become final when at least ninety-five percent (95%) of all Eligible Plaintiffs agree to settle. In addition, enough of the Eligible Plaintiffs from each of the following categories must agree to settle for the Settlement to go forward:

1. 95% of Eligible Plaintiffs with those types of Qualifying Injuries that receive the most money according to the Agreement.
2. 90% of Eligible Plaintiffs in all other Qualifying Injury categories;

-5-

3.  95% of Eligible Plaintiffs who claim eligibility for the Permanent Disability Fund;

4.  90% of Eligible Plaintiffs in each Master Docket; *and*

5.  90% of Eligible Plaintiffs represented by law firms with over 150 Eligible Plaintiffs.

These requirements will be checked against the Eligible Plaintiff List. For these purposes, the lawfully married spouses of workers and volunteers who filed suit or notices of claim against the Settling Defendants will not count separately. Instead, they will count as one plaintiff and will receive benefits, if any, only when their spouse receives benefits.

If not enough Eligible Plaintiffs opt in, there will not be a settlement and the Settling Defendants will not make any payments. All submissions by Eligible Plaintiffs will be destroyed and all such plaintiffs may continue to pursue their claims in court.

### E.    What happens to the cases in court once the Agreement becomes final?

If the Agreement becomes final, all Participating Plaintiffs' claims against the Settling Defendants will be dismissed with prejudice. This means that each Participating Plaintiff's claims against the Settling Defendants will be extinguished and Participating Plaintiffs will not be able to sue any of the Settling Defendants again in the future for any claims arising out of post-9/11 rescue, recovery, and debris removal. Plaintiffs' claims against other non-settling defendants will remain unaffected and will proceed in the normal course of litigation.

### F.    Who determines compensation for Qualifying Injuries and how are Plaintiffs' claims valued?

The Allocation Neutral will decide how to pay out money for each Master Docket to Qualifying Plaintiffs based upon their individual injuries and proof of impairment using the medical criteria set forth in the Agreement (the "Allocation Process"). In other words, how much Qualifying Plaintiffs get paid depends on what condition they have, how severe it is, and how strong their claims are. The Agreement includes a list of injuries or sicknesses for which Qualifying Plaintiffs can receive money under the Agreement. These are called "Qualifying Injuries." The Qualifying Injuries are divided into groups as follows:

- Chronic Obstructive Pulmonary Disease ("COPD"),
- Interstitial Lung Disease ("ILD"),
- Asthma/RADS,
- Laryngitis/Pharyngitis,

-6-

- Chronic Rhinosinusitis,
- Upper Digestive Conditions,
- Sleep Problems,
- Death,
- Cancer,
- Cardiac Conditions, and
- Restrictive Lung Disease.

Most of these Qualifying Injuries are sub-divided into levels based upon the extent of impairment in normal bodily function. These levels are called "Severity Levels." The Severity Levels generally are based upon objective tests widely used by doctors to decide how bad the illness is for each person. To both validate diagnoses and decide whether a Qualifying Plaintiff meets the requirements for a given Qualifying Injury and to assess the Severity Level of that injury, the Allocation Neutral will be helped by an independent panel of doctors to develop and follow a procedure for the accurate and efficient review of records. In other words, the Allocation Neutral will review each Qualifying Plaintiff's records to determine (a) what illness he or she has on the list, and (b) the severity of that illness.

The Claim Form is an essential part of the process. To make it quicker and easier for the Allocation Neutral to figure out how much money each Qualifying Plaintiff will receive, Participating Plaintiffs are divided into four levels or "Tiers" depending upon whether they have a Qualifying Injury and if so, the Tier of their Primary Qualifying Injury, as explained below:

- Tier 1 is for Plaintiffs who only are eligible to recover for fear of future injuries;
- Tier 2 is for Plaintiffs whose Qualifying Injury requires only a physician diagnosis;
- Tier 3 is for Plaintiffs whose Qualifying Injury may require basic proof of impairment to support a physician diagnosis; and
- Tier 4 is for Plaintiffs whose Primary Qualifying Injury requires more strict proof of impairment to support a physician diagnosis.

Tier 4 Plaintiffs have to submit more documentation because the Qualifying Injuries they are claiming are more serious and worth more money per Plaintiff. Plaintiffs in Tier 4 will recover more money if they have a second Qualifying Injury. Also, Plaintiffs in Tier 4 must

provide information concerning the following factors, which may increase or decrease the amount of money they get under the Agreement:

- Age on September 11, 2001;
- Timing of diagnosis relative to date of alleged exposure;
- Smoking history;
- Timing and duration of alleged exposure; and
- Pre-existing injuries (those pre-dating 9/11).

Together, these are referred to as "Adjustment Factors," and will individualize the recoveries of Plaintiffs in Tier 4. In Tier 4, the Allocation Neutral will first identify a Plaintiff's two most highly valued Qualifying Injuries (injuries on the list) and their impairment level. The Plaintiff will receive points for each Qualifying Injury ("Base Points"). These Base Points will go up or down depending upon the Adjustment Factors. Each Tier 4 Qualifying Plaintiff will receive a "Total Score" that combines all of these factors. There are limits on how much a Plaintiff's Base Points can go up or down. This ensures consistent valuation of similarly situated Plaintiffs and fair relative valuations of differently situated Plaintiffs. It also ensures that a Plaintiff's injury is the most important part of figuring out how many points they get. At the end of the process, the money set aside for each Master Docket that is left over from paying Plaintiffs in Tiers 1-3 will be distributed to Qualifying Plaintiffs in Tier 4 in proportion to their respective Total Scores.

### G.    What are the payments for Qualifying Injuries?

*All* Qualifying Plaintiffs will receive an initial payment of $3,250 and must apply for the Cancer Insurance Policy, at no charge to them. The Cancer Insurance Policy is available to all Qualifying Plaintiffs except for those who have been diagnosed with certain forms of cancer, and will make payments of up to $100,000 to those who are diagnosed with a listed form of cancer in the next fifteen (15) years, subject to its terms and conditions. Qualifying Plaintiffs in Tiers 2 and 3 also will receive a second guaranteed payment called an "Accelerated Final Payment":

|        | Amount of Accelerated Final Payment by Master Docket | | |
|--------|-----------|-----------|-----------|
| **Tier** | **21 MC 100** | **21 MC 102** | **21 MC 103** |
| Tier 2 | $4,250 | $1,085 | $1,625 |
| Tier 3 | $7,750 | $2,170 | $3,250 |

Plaintiffs in Tier 4 have a different process because they can get more money, but it will take longer. Qualifying Plaintiffs in Tier 4 will receive two additional payments – an "Interim

Payment" and a "Final Distribution" – based upon their Total Scores instead of an Accelerated Final Payment. Payments to Plaintiffs in Tier 4 will be no less than $1,000 more than Plaintiffs in Tier 3 of their Master Docket and can be over $1 million for particularly strong claims. The Interim Payment is like a "down payment" on a Qualifying Plaintiff's recovery, and will be forty percent (40%) of the projected Final Distribution based upon the Plaintiff's Qualifying Injury(ies) as determined by the Allocation Neutral. Interim Payments will be paid to each Qualifying Plaintiff part-way through the Allocation Process. The timing of each payment will depend upon when the claim is evaluated.[2] Final Distributions will be made at the end of the Allocation Process. This process is set up so that Qualifying Plaintiffs in Tier 4 will receive partial payments as soon as possible, while making sure all claims are evaluated and paid fairly.

Because Qualifying Plaintiffs in Tier 4 receive payments based upon their respective Total Scores, and all Total Scores will not be known until the Allocation Process is complete, the *exact* amount of their payments cannot be determined now. However, Plaintiffs should speak with their lawyers, who will give them an individualized assessment of their recovery. While most payments will be made sooner, the entire Allocation Process could take around a year once the Agreement becomes final.

### H.   How do spouses of Qualifying Plaintiffs qualify for benefits?

In all Tiers, spouses may also get a payment. Any lawfully married spouse of a worker or volunteer who (a) married the Qualifying Plaintiff before September 11, 2001, (b) remained married to the Qualifying Plaintiff until either the date of diagnosis of injury, or, if no injury was diagnosed, the Qualifying Plaintiff's last day of alleged exposure, and (c) who joined in the Qualifying Plaintiff's lawsuit or notice of claim shall receive payment(s) totaling three-and-one-half percent 3.5% of their spouse's payment.

### I.   Under what circumstances can Plaintiffs with orthopedic injuries or secondary consequences of their Qualifying Injuries get extra money?

*Qualifying Surgery Payments.* If the Allocation Neutral finds that Qualifying Plaintiffs had to have surgery (or were recommended for a lung transplant they were too sick to have) after

---

[2] Because projected Final Distributions for such Plaintiffs with equal Total Scores may change as more claims are processed and better information becomes available, Interim Payments may vary.

their service at the WTC Site because of a Qualifying Injury, they may receive additional money ("Qualifying Surgeries"). Payments range from $5,000 to $150,000 depending upon the surgery.

*Mixed Orthopedic Injury Payments.* Qualifying Plaintiffs who suffered an orthopedic injury and sued the Settling Defendants or served a Notice of Claim against the City of New York for that injury within the statute of limitations will be eligible to receive extra payments for those injuries ("Mixed Orthopedic Injuries"). To qualify, the Plaintiff must prove that he or she sustained an orthopedic injury during work at the WTC Site, sought immediate treatment, and had it confirmed by objective medical tests. Payments can be up to $10,000, depending upon severity, at the discretion of the Allocation Neutral. In no case will all Mixed Orthopedic Injury Payments exceed $1,040,000.

*Permanent Disability Fund Payments.* There is a separate pool of money to be shared by Qualifying Plaintiffs in Tiers 2-4 who are disabled as a result of injuries allegedly linked to their service at the WTC Site. Beneficiaries, heirs or assigns of deceased Plaintiffs also may be eligible for Permanent Disability Fund awards. To calculate Permanent Disability Fund payment amounts, the Allocation Neutral will use the same baseline for all Plaintiffs eligible for the Permanent Disability Fund and adjust up or down. The adjustments are for age, Master Docket, disability based upon pre-existing injuries or orthopedic injuries, pending disability determinations, disability based upon death, and proof of serious ILD, Asthma/RADS or Blood Cancer Qualifying Injuries.

**J.    Are all decisions of the Allocation Neutral final or is there a right to appeal?**

Participating Plaintiffs who believe that the Allocation Neutral's decision on their claim is wrong can submit a Reconsideration Request.[3] Reconsideration Requests consist of a letter from a Participating Plaintiff's attorney to the Allocation Neutral. The letter can include additional medical records to demonstrate that the Plaintiff meets the requirements specified by the Agreement. The Allocation Neutral's determination of a Participating Plaintiff's Reconsideration Request can only be appealed to the Claims Appeal Neutral as set forth below.

---

[3] A Reconsideration Request can challenge the failure to verify work at the WTC Site, Tier placement, Total Score calculation, or determination concerning a Qualifying Surgery, Mixed Orthopedic Injury, or the Permanent Disability Fund as inconsistent with the Agreement and/or the Plaintiff's Claim Form and medical records.

Participating Plaintiffs who submit a Reconsideration Request and receive an adverse decision can appeal that determination to the Claims Appeal Neutral. Appeals consist of a letter from a Participating Plaintiff's attorney setting forth the Plaintiff's argument that the Allocation Neutral has made a mistake in applying the requirements specified by the Agreement. The Claims Appeal Neutral's determination shall be final, binding, and non-appealable.

### K.     How does the Settlement prevent fraudulent claims?

Plaintiffs claiming Tier 3 or Tier 4 Qualifying Injuries are subject to audit by the Allocation Neutral. Plaintiffs selected for audit will be required to provide additional medical records. For this reason, Plaintiffs claiming Tier 3 or Tier 4 must provide a release authorizing the Allocation Neutral to collect any relevant medical records solely for the audit. The Allocation Neutral will look for material misrepresentations, omissions, concealment or other falsehood in the Claim Forms and supporting medical records. If detected, a Plaintiff will receive no payments under the Agreement and be referred to authorities responsible for bringing perjury charges.

### L.     Can Participating Plaintiffs sue the Settling Defendants again in the future?

**No.  By signing and submitting a Release and Covenant Not to Sue, an Eligible Plaintiff agrees to be bound by all terms and conditions of the Agreement, including agreeing to accept the final value of the Eligible Plaintiff's claim under the process set up by the Agreement, if the Eligible Plaintiff qualifies for benefits under the Agreement. Also, Eligible Plaintiffs are agreeing to release any and all claims against the Settling Defendants and the WTC Captive for any future injuries allegedly arising out of work or volunteer service in rescue, recovery, or debris removal operations. So, once the Agreement is final, all claims against the Settling Defendants brought by Eligible Plaintiffs who sign and submit a Release and Covenant Not to Sue will be dismissed with prejudice and they cannot be brought again.**

### M.     Can Participating Plaintiffs back out of the Settlement if they do not like the Allocation Neutral's determination?

**No. Once an Eligible Plaintiff submits a Release and Covenant Not to Sue and the Agreement goes into effect it is *irrevocable*. In other words, under no circumstances and for no reason may an Eligible Plaintiff request the return of a signed Release and Covenant**

Not to Sue, or otherwise exit the Settlement once the Agreement goes into effect. Plaintiffs will not be able to appeal in court the determinations of the Claims Appeal Neutral or avoid dismissal of their claims.

### N.    Do Plaintiffs have to pay back money they received from workers' compensation and other programs for injured workers?

Some Plaintiffs have received benefits, including medical care and monetary assistance, from workers' compensation, Social Security, Medicare, Medicaid and other similar programs for their alleged WTC-related injuries. In some cases, by providing such benefits, these programs earned the right to claim a share of any money Plaintiffs recover from a settlement or judgment of claims based upon their injuries. These claims are called "liens." Importantly, the City of New York and its WTC workers' compensation insurer, have agreed to waive all liens against recoveries by Participating Plaintiffs who have received workers' compensation benefits from them under the City's WTC workers' compensation policy, or from the City directly, relating to the injuries for which they are being compensated under this Settlement.

Participating Plaintiffs who are subject to other such liens, must pay those liens from the funds received under the Settlement. Under the Agreement, a company will be hired to help administer this process and assist with resolving or compromising all liens.

### O.    Who pays the Plaintiffs' lawyers and how much will they get?

Qualifying Plaintiffs will owe fees to their lawyers based upon their recovery and the contract signed with the lawyer. Based upon the a voluntary agreement by Plaintiffs' lawyers, fees will be no more than twenty-five percent (25%) of an individual Plaintiff's recovery, notwithstanding any term in the Qualifying Plaintiff's contract with his or her lawyer. In addition, Qualifying Plaintiffs shall owe no fee on the Cancer Insurance Policy. However, Qualifying Plaintiffs may owe their lawyers for both case-specific expenses and general expenses (consistent with the contract with his or her lawyer). Case-specific expenses are those that benefit a specific client (e.g., costs of obtaining that client's medical or pharmacy records). General expenses are those that benefit a larger group of clients represented by the same lawyer (e.g., fees paid a medical expert), and are allocated equally or on a pro rata basis (depending on the terms of the contract) across the group of benefited clients. These fees will be deducted from any benefits paid by the Settlement before the Plaintiff receives the money.

## IV.    Diagram of the Settlement Process



**V.     Diagram of the Reconsideration Request and Appeal Process**



## VI.    List of Settling Defendants

| CITY OF NEW YORK, including the: |
| --- |
| BOARD OF EDUCATION OF THE CITY OF NEW YORK |
| BOROUGH OF MANHATTAN COMMUNITY COLLEGE |
| CITY UNIVERSITY OF NEW YORK |
| NEW YORK CITY DEPARTMENT OF EDUCATION |
| NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY |
| A RUSSO WRECKING |
| ACROW |
| ALLCOM ELECTRIC |
| AMEC CONSTRUCTION MANAGEMENT, INC. |
| AMEC EARTH AND ENVIRONMENTAL |
| ANTHONY CORTESE SPECIALIZED HAULING LLC |
| ASG PEST CONTROL |
| ATC GROUP SERV/DBA ATC ASSOCIATES |
| ATLANTIC HEYDT CORP. |
| ATLAS CONCRETE |
| AVANTI DEMOLITION & CARTING CORP. |
| BECHTEL CONSTRUCTION, INC. |
| BERGEN CONCRETE CUTTING |
| BERKEL & CO. CONTRACTORS, INC. |
| BIG APPLE WRECKING & CONSTRUCTION |
| BOVIS LEND LEASE LMB, INC. |
| BREEZE CARTING |
| BREEZE NATIONAL, INC. |
| BRER FOUR TRANSPORTATION |
| BURO HAPPOLD CONSULT ENG. |
| C & D FIREPROOFING |
| C & D PAINTING, INC. |
| C.B. CONTRACTING CORP. |
| CANRON CONSTRUCTION CORP. |
| CANTOR SEINUK GROUP |
| CERTIFIED FENCE CORP. |
| CIVETTA COUSINS |
| CLARCO ENTERPRISE CORP. |
| COMPONENT ASSEMBLY SYS |
| COORDINATED METALS, INC. |
| CORD CONTRACTING CO., INC. |

| CRAIG TEST BORING |
| --- |
| CRITICOM INTERNATIONAL CORP |
| DAKOTA DEMO-TECH |
| DESIMONE CONSULTING ENGINEERS, PLLC |
| DCM ERECTORS, INC. |
| DIAMOND POINT EXCAVATION CORP |
| DIEGO CONSTRUCTION |
| DIVERSIFIED CARTING |
| DMT ENTERPRISE |
| D'ONOFRIO GENERAL CONTRACTORS CORP. |
| EAGLE LEASING & INDUSTRIAL SUPPLY (SEASONS) |
| EAGLE ONE ROOFING CONTRACTORS, INC. |
| EAGLE SCAFFOLDING CO. (SEASONS) |
| EJ DAVIES, INC. |
| EN-TECH CORP. |
| ENTERTAINMENT PARTNERS |
| ET ENVIRONMENTAL |
| EVERGREEN RECYCLING OF CORONA (EROC) |
| EWELL W. FINLEY, P.C. |
| EXECUTIVE MED SERVICES, PC |
| F&G MECHANICAL CORPORATION |
| FELIX EQUITIES, INC. |
| FLEET TRUCKING |
| FRANCIS A. LEE EXTERIOR RESTORATION |
| FRANK MICELLI JR CONTRACTING |
| FTI TRUCKING |
| G & G CONTRACTING, INC. |
| GILSANZ, MURRAY, & STEFICEK |
| GINO CRACOLICI & SONS, INC. |
| GOLDSTEIN ASSOCIATES PLLC |
| GRACE INDUSTRIES |
| GUY NORDENSON AND ASSOCIATES |
| HALLEN WELDING SERVICE |
| HELMSMAN MANAGEMENT SERVICES, INC. |
| HGC CONTRACTING CORP. |
| HIGH RISE HOISTING AND SCAFFOLDING |
| HIGH-RISE ELECTRIC, INC. |

| |
|---|
| HP ENVIRONMENTAL |
| JP EQUIPMENT RENTAL MATERIALS, INC. |
| KEVIN MCMANUS |
| KOCH SKANSKA, INC. |
| LAQUILLA CONSTRUCTION, INC. |
| LASTRADA GENERAL CONTRACTING CORP. |
| LESLIE E. ROBERTSON ASSOCIATES |
| LIBERTY MUTUAL GROUP |
| LIRO |
| LOCKWOOD, KESSLER & BARTLETT (LKB) |
| LUCIUS PITKIN |
| LZA TECH-DIVISION OF THORTON TOMASETTI |
| M. G. MCLAREN, P.C. |
| MANAFORT BROTHERS, INC. |
| MAZZOCCHI WRECKING, INC. |
| MEDCOR, INC. |
| MENT BROTHERS |
| MERIDIAN CONSTRUCTION GROUP |
| MG MCLAREN P.C. |
| MORETRENCH AMERICAN, CORP. |
| MRA ENGINEERING, PC |
| MUESER RUTLEDGE CONSULTING ENGINEERS |
| MUSCO SPORTS LIGHTING, LLC |
| NACIREMA INDUSTRIES |
| NEW YORK CRANE & EQUIPMENT CORP. |
| NICHOLSON CONSTRUCTION CO. |
| NICHOLSON/HEYWOOD JOINT VENTURE |
| OFF ROAD WELDING, INC. |
| THE OFFICES OF JAMES RUDERMAN, LLP |
| OLYMPIC PLUMBING AND HEATING |
| OVE ARUP & PARTNERS |
| PARSON GROUP |
| PETER SCALAMANDRE & SONS |
| PINNACLE ENVIRONMENTAL |
| PLAZA CONSTRUCTION CORP. |
| PRO SAFETY SERVICES, LLC |
| PT & L CONTRACTING CORP. |
| REGIONAL SCAFFOLD & HOISTING CO, INC. |
| RICH MARK ENVIRONMENTAL SERVICES, INC. |

| |
|---|
| ROBER SILMAN ASSOCIATES |
| ROBERT C STEWART |
| ROBERT ERRAT |
| ROBERT L GEROSA |
| RODAR ENTERPRISES, INC. |
| ROYAL GM, INC. |
| SAB TRUCKING |
| SAFEWAY ENVIRONMENTAL |
| SEMCOR EQUIPMENT |
| SEVERUD ASSOCIATES CONSULTING ENGINEERS |
| SHELDRAKE ORGANIZATION, INC. |
| SILVERADO CONTRACTORS |
| SILVERITE CONTRACTING |
| SIMPSON, GUMPERTZ, & HEGER |
| SKIDMORE, OWINGS & MERRILL LLP |
| STAR DELTA ELECTRIC |
| STIER, ANDERSON & MALONE |
| SUMMIT STRUCTURES LLC |
| TELENET COMMUNICATIONS |
| THYSSEN KRUPP ELEVATOR CO. |
| TOMASETTI GROUP |
| TORETTA TRUCKING |
| TOTAL SAFETY CONSULTING LLC |
| TUCCI EQUIPMENT RENTAL CORP |
| TULLY CONSTRUCTION |
| TURNER CONSTRUCTION COMPANY |
| ULTIMATE DEMOLITION/CS HAULING (JOINT VENTURE) |
| UNITED STATES REBAR |
| VANGUARD EQUIPMENT RENTALS |
| VERTICAL TECHNOLOGIES |
| VOLLMER ASSOCIATES |
| W HARRIS & SON INC. |
| WALTER WHITE TRUCKING |
| WEEKS MARINE, INC. |
| WEIDLINGER ASSOCIATES |
| WHITNEY CONTRACTING |
| WOLKOW BRAKER ROOFING |
| YANNUZZI & SONS, INC. |
| YONKERS CONTRACTING |
| YORK HUNTER CONSTRUCTION, LLC |
| ZIEGENFUSS DRILLING |