UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE WORLD TRADE CENTER DISASTER SITE LITIGATION | **21 MC 100 (AKH)** |
| THIS DOCUMENT RELATES TO ALL CASES | |

# CERTIFICATION OF ANDREW J. CARBOY CONCERNING THE NAPOLI FIRM'S RESPONSE TO THE AUGUST 4, 2010 ORDER

Andrew J. Carboy, an attorney duly admitted to practice law in the State of New York and the Southern District of New York, certifies the following under the penalty of perjury:

1. I am a member of the law firm of Sullivan Papain Block McGrath & Cannavo P.C. ("Sullivan Papain"), a firm serving as Co-Liaison Counsel for the plaintiffs in 21 MC 100. This office represents 689 plaintiffs who are eligible to participate in the subject settlement, most of them New York City firefighters and fire officers.

2. Sullivan Papain submits this certification in response to the Napoli firm's "Memorandum Responding to the Court's *Sua Sponte* Order of August 4, 2010" ("Napoli Memorandum").

3. First, Sullivan Papain is not charging any interest to any of its 689 clients with respect to the approximate $1.525 million in case costs that it has incurred in this litigation.

1

4. Second, we take no position with respect to the Napoli firm's request to have <u>its</u> clients pay interest that is owed on loans taken out by the Napoli firm to fund its litigation of this case.

5. Third, if the Court grants the Napoli firm's application, we seek confirmation that none of that interest will be passed on to clients of this firm, or any other plaintiffs' firm, as a Common Benefit Cost. Interest can not be charged unless such provision was "*clearly explained to the client in advance and agreed to by the client, and, pursuant to DR 2-106(D), the lawyer provided the client with a writing stating the method by which the fee is to be determined.*" <u>New York State Bar Association, Committee on Professional Ethics</u>, Op. No. 729 (May 10, 200). None of our retainers contained any such provision and, as noted, we are not charging our clients any interest, whatsoever, on any of the costs we have incurred in this litigation.

6. Further, I will only briefly address the baseless accusations made in the Napoli Memorandum against this firm since they are largely irrelevant to the issue at hand.

7. Among other stated reasons for borrowing funds, the Napoli firm argues that, allegedly, "No other firm was willing to take on the risks of these cases or their expense" (Napoli Memorandum, p. 3); and that, "even those firms that did represent clients – including [Sullivan Papain], either did not have the ability or refused to contribute their share of the costs." (*Id*., p. 4).

8. Those statements of the Napoli firm are simply not true. Sullivan Papain never turned down any request to contribute costs that were for the benefit of <u>all</u> plaintiffs.

9.   Sullivan Papain's Common Benefit Expenses in relation to its share of the number of cases in this litigation far exceed those of the Napoli firm. Approximately $1.98 million has been claimed, collectively, as Common Benefit Expenses. Of that amount, Sullivan Papain has paid approximately $222,000.00 or about 11%, which is well more than its approximate 6.4% share of the cases. Further, if one were to exclude the charges inappropriately characterized by the Napoli firm as "expert costs" – *e.g.*, legal fees paid to outside attorneys – our firm's share of the Common Benefit Expenses would be approximately 14% or more than double our apportioned share relative to the number of cases we have.

10.   As will be demonstrated in a memorandum to be submitted to the Court on the issues of Common Benefit Expenses and Common Benefit Fees, Sullivan Papain has made critical contributions throughout this litigation which have benefited all plaintiffs in the 21 MC 100 litigation, including, but not limited to: drafting briefs at both the trial and appellate levels on all dispositive and otherwise important motions; conducting, defending and/or appearing at over 90 depositions; consulting with over 60 medical, environmental and science experts; conducting intensive discovery in our Bellwether trial cases which accounted for 25% of all such cases; and serving as an integral part of the two-year long settlement negotiations and drafting of the 104-page settlement agreement.

11.   Finally, the accusation that, "most of the Papain firm's clients were solicited only after they learned a settlement was imminent" (*Id.*, p.4, footnote 4) is absurd. The Napoli firm attaches as "proof" of this allegation a letter we sent to all active and retired members of the Uniformed Firefighters Association (UFA) dated September 17, 2009. A review of the letter shows that it was specific to informing all firefighters of

3

rights they had as a result of the Governor's signing, on September 16th, the day before, of "Jimmy Nolan's Law" which revived, for one year, previously time-barred 9/11 WTC first responder claims (see Napoli Exhibit "F"). As Counsel to the UFA, a position Sullivan Papain has held for decades, it was our <u>obligation</u> to inform our client's members of this newly acquired right. As to the settlement being "imminent" at the time of the mailing, suffice it to say that the proposed settlement that was reached in March 2010, some six months later, was nowhere in sight when this letter was sent.

Dated: New York, New York
      August 25, 2010

           Respectfully submitted,

           SULLIVAN PAPAIN BLOCK
           MCGRATH & CANNAVO P.C.

           By: *Andrew J. Carboy*_____
           Andrew J. Carboy (AC 2147)
           Attorneys for Plaintiffs
           120 Broadway
           New York, New York 10271
           (212) 732-9000