UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
IN RE WORLD TRADE CENTER DISASTER SITE    :   **ORDER AND OPINION**
LITIGATION:                                :   **RELATING TO THIRD-PARTY**
-------------------------------------------------------------------  :  **SUBPOENA COMPLIANCE**
MOUNT SINAI MEDICAL CENTER v. THE         :   **EXPENSES**
PORT AUTHORITY OF NEW YORK AND            :
NEW JERSEY, INC.                           :   21 MC 100 (AKH)
                                           :
                                           :
------------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J:

      Mount Sinai Medical Center ("Mount Sinai") moves under Federal Rule of Civil Procedure 45 to compel payment by The Port Authority of New York and New Jersey ("Port Authority") of $53,188.25. This amount represents Mount Sinai's alleged legal costs expended in responding to a nonparty subpoena duces tecum served on it by the Port Authority and in bringing this motion. The Port Authority issued the subpoena as part of the discovery proceedings that I ordered for a selected number of cases among the approximately 10,000 cases in this master calendar. For the reasons set forth, I sustain the Port Authority's objections to these expenses without prejudice to a new motion by Mount Sinai consistent with the rulings that follow.

      Mount Sinai has been collecting and studying data regarding various health effects of the terrorist-related aircraft crashes of September 11, 2001. Since 2002, federal grants have provided approximately $300 million for this work. The Port Authority, a defendant in much of the litigation arising out of the crashes, sought Mount Sinai's raw data with a broad subpoena. Mount Sinai initially resisted the subpoena, then retained outside counsel and made a limited production, to which the Port Authority responded by seeking better compliance. The Port Authority was not able to pursue this aim, however, because a partial settlement, a court-ordered stay, and additional

settlement negotiations overtook the subpoena process.  Once the dispute ended, Mount Sinai sent the Port Authority its legal bill for costs incurred resisting the subpoena.  The Port Authority refused to pay and Mount Sinai now brings this motion.

Under Federal Rule of Civil Procedure 45, a party issuing a subpoena is not required to bear the subpoenaed nonparty's cost of compliance.  In re First American Corp., 184 F.R.D. 234, 241 (S.D.N.Y. 1998); Linder v. Calero-Portocarrero, 180 F.R.D. 177, (D.D.C. 1998).  Rather, "[a] non-party can be required to bear some or all of the expenses where the equities of the particular case demand it."  In re Honeywell Int'l, Inc. Securities Litig., 230 F.R.D. 293, 302-03 (S.D.N.Y. 2003) (internal quotation omitted).  Customarily, determining each party's share of the cost of compliance turns on three factors: (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance.  In re Exxon Valdez, 142 F.R.D. 380, 383 (D.D.C. 1992); Dow Chemical Co. v. Reinhard, No. M8-85, 2008 WL 1968302, at *1 (S.D.N.Y. April 29, 2008); In re Law Firms of McCourts and McGrigor Donald, No. M19-96, 2001 WL 345233, at *1 (S.D.N.Y. April 9, 2001).  The inquiry is fact intensive, turning on the particular aspects of each case.  See Prescient Acquisition Group, Inc. v. MJ Publishing Trust, 05-cv-6298, 2006 WL 2996645, at *2 (S.D.N.Y. Oct. 13, 2006) (finding a percentage of the nonparty's legal costs appropriate to charge the issuing party because of certain features of the dispute over compliance with the subpoena).  In this case, several considerations lead me to conclude that much of the fee Mount Sinai has attempted to charge is not compensable by the Port Authority.

Mount Sinai does not have an interest in the outcome of the September 11 litigation, but its reason for hiring outside counsel to resist the subpoena is not one that merits charging legal costs to the Port Authority. Mount Sinai hired outside counsel because it did not wish for its raw data to be exposed to outside viewers who might contradict the conclusions Mount Sinai had drawn. According to the revised declaration of Robert H. Rickner, attorney for the Port Authority, Mount Sinai felt "attacked" by the subpoena and also indicated that the subpoena was an effort to put it "on trial." Revised Decl. of Robert H Rickner in Opp. to Mount Sinai Medical Center's Motion to Compel Costs Pursuant to Fed. R. Civ. P. 45 ("Rickner Declaration"), Ex. A. In this, Mount Sinai evidenced a view that its reputation was at issue and sought to defend it by resisting the subpoena. Hiring outside counsel is appropriate when a nonparty wishes to resist a subpoena duces tecum for its own independent reasons, but that is not a sufficient reason to charge legal costs to the issuing party.

In considering this issue, I find instructive Judge Kevin Castel's Memorandum and Order from the Prescient Acquisition Group case. There, Bank of America, a nonparty, hired outside counsel to resist a subpoena duces tecum. Bank of America thereafter sought to charge the issuing party, Prescient Acquisition Group, costs incurred resisting the subpoena. Judge Castel found that Bank of America had a general reputational interest at stake when served with judicial process and that this warranted hiring outside counsel, but also that the reputational interest could not justify a complete shift of costs to Prescient Acquisition. Rather, in consideration of various other factors, Judge Castel found it appropriate to shift only a measure of Bank of America's costs. Prescient Acquisition Group, 2006 WL 2996645, at *2. Here, Mount Sinai's concerns

over its reputation made hiring outside counsel reasonable, but that is not sufficient to justify charging costs to the Port Authority.

Moreover, Mount Sinai is equipped to shoulder these costs, even recognizing that like all non-profit hospitals, it is pressed financially in many other aspects of its core activities. In terms of this case, I note that Mount Sinai has received approximately $300 million in federal funding since 2002 to collect and analyze the data discussed above. Rickner Declaration, Ex. J. In light of the funds it has received to conduct this data collection, I find it reasonable to require Mount Sinai to pay costs associated with its effort to keep that data private – particularly when the data is sought by a party to protracted litigation arising out of September 11, for whom such information is relevant and might well have been helpful. The Port Authority also is a public institution, and it too is financially pressed in many of its core, public functions.

Finally, the substantial public interest in these cases suggests that Mount Sinai should pay its own costs. The public interest in litigation is a factor that typically requires the nonparty to absorb costs. In re First American Corp., 184 F.R.D. at 242. Public interest in this litigation is substantial. Over 10,000 plaintiffs have filed claims against many defendants, alleging a wide array of injuries arising out of the plaintiffs' cleanup work at the World Trade Center site following the terrorist-related airplane crashes of September 11, 2001. The lawsuits, it is fair to say, are also a matter of great public interest. The information that the Port Authority sought, data regarding the health consequences of the cleanup work on these plaintiffs, would have been valuable both for the thousands of parties and the observing public. Accordingly, it is appropriate to require Mount Sinai to pay the costs related to resisting disclosure of that information.

For the foregoing reasons, I find that much of Mount Sinai's claimed costs – including costs related to bringing this motion – cannot be charged to the Port Authority. However, certain aspects of these costs may be appropriate to charge. Specifically, Mount Sinai's expenses in negotiating for a limit on the Port Authority's broad subpoena, and in modifying definitions to be consistent with Mount Sinai's filing system, are appropriate for reimbursement. For that reason, Mount Sinai may refile a claim for payment of costs relating to those aspects of the work done by their counsel. Attorneys' rates should be limited to the billing rates of one or two associates, one of junior rank and the other of senior rank. Costs of reproduction should be limited to actual, incurred costs or, failing that, commercial photocopy rates. Other costs also should be similarly limited.

Mount Sinai has twenty days to revise and present a modified bill. The Port Authority has twenty days thereafter to pay such a modified bill, or enter into prompt negotiations.

SO ORDERED.

Dated: September __, 2010
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

5