UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
IN RE: WORLD TRADE CENTER    :
DISASTER SITE LITIGATION     :
                             :
                             : Master Docket No.: 21 MC 100 (AKH)
                             :
                             :
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY MOUNT SINAI MEDICAL CENTER'S MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 13, 2010 ORDER RELATING TO THIRD-PARTY SUBPOENA COMPLIANCE EXPENSES**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    THE COURT SHOULD RECONSIDER ITS SEPTEMBER 13, 2010 ORDER ........ 3

CONCLUSION ...................................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Crown Castle USA Inc. v. Fred A. Nudd Corp.*,
   No. 05-cv-6135, 2008 U.S. Dist. LEXIS 62649 (W.D.N.Y. Aug. 13, 2008) ............................7

*Dow Chem. Co. v. Reinhard*,
   2008 U.S. Dist. LEXIS 35398 (S.D.N.Y. Apr. 29, 2008) ..................................................9, 11

*Fehn v. Group Long Term Disability Plan*,
   No. 07 civ. 8321 (WCC), 2008 U.S. Dist. LEXIS 58329 (S.D.N.Y. July 30, 2008) ................7

*First American Corporation v. Price Waterhouse LLP*,
   184 F.R.D. 234 (S.D.N.Y. 1998) ........................................................................................9, 11

*Kahn v. Gen. Motors Corp.*,
   1992 U.S. Dist. LEXIS 12191 (S.D.N.Y. Aug. 14, 1992) .....................................................11

*Medoy v. Warnaco Employees. Long Term Disability Ins. Plan*,
   No. 97 cv 6612 (SJ), 2006 U.S. Dist. LEXIS 7635 (E.D.N.Y. Feb. 14, 2006) ........................7

*Prescient Acquisition Group, Inc.*,
   2006 U.S. Dist. LEXIS 75383 (S.D.N.Y. Oct. 13, 2006) ........................................................9

## OTHER AUTHORITIES

Fed. R. Civ. P. 45 ...............................................................................................................................5

Fed. R. Civ. P. 59(e) ..........................................................................................................................7

## PRELIMINARY STATEMENT

Mount Sinai requests reconsideration of this Court's September 13, 2010 Order (the "Order") because the Court's ruling relies on misleading and erroneous statements in the Lawyer's affidavit submitted by the Port Authority, before the submission of Mount Sinai's reply papers, which were due on September 24, and which would have presented evidence and arguments that would be necessary to prevent obvious injustice.[1] The Port Authority's repeated references to Mount Sinai's concerns about the confidentiality of its research data unfortunately misled the Court into believing that the costs for which Mount Sinai seeks reimbursement were related to production of the data. Nothing could be further from the truth.

Mount Sinai did not retain outside counsel to resist the production of its "raw data." (Order at 3).[2] Indeed, Mount Sinai's research data is totally irrelevant to Mount Sinai's motion because the issue was not litigated and therefore no costs or fees were incurred to protect the data. The fees sought on this motion related to efforts to coordinate and expedite the search and production of documents requested by the Port Authority and to prepare for and attend the deposition of the head of the WTC monitoring program sought by the Port Authority as the most efficient way to provide the information it was seeking. Other than a brief discussion, Mount Sinai's counsel has expended no time seeking to protect research data from disclosure.

Therefore, any desire by Mount Sinai to protect confidential research data does not make Mount Sinai an "interested party" for purposes of awarding costs that had nothing to do with the data. In fact, the extensive efforts undertaken by Mount Sinai to cooperate with the Port

---

[1] Mount Sinai and the Port Authority entered into a stipulation that was "so ordered" by the Court on September 3, 2010 that extended Mount Sinai's time to file reply papers up to and including September 24, 2010.

[2] The Court's September 13, 2010 Order is hereafter referred to as "Order at __." The Port Authority's memorandum of law in opposition to Mount Sinai's motion to compel costs pursuant to Fed. R. Civ. P. 45 is hereinafter referred to as "PA Br. at __".

Authority's subpoena (which sought both documents and testimony) belie this argument. Mount Sinai did not, as the Court was led to conclude, incur legal fees "resisting the subpoena." (Order at 2). The Port Authority served a broad subpoena that included 39 separate document requests seeking a wide array of documents in Mount Sinai's custody and control regarding the World Trade Center Medical Monitoring and Treatment Program (the "Program"). Instead of filing a motion to quash the subpoena on the grounds that it was patently overbroad and unduly burdensome, Mount Sinai took a cooperative and proactive approach by producing 1,741 pages of documents and offering Dr. Jacqueline Moline, the Director of the Program, as a deponent for a full day so that the Port Authority (and the 21 lawyers who attended the deposition) could better understand the workings of the Program and refine its search for documents. Despite Dr. Moline's role and expertise, no fee was charged for her appearance at deposition. Thereafter, Mount Sinai produced approximately 6,400 pages of <u>additional</u> documents in response to nearly <u>all</u> of the categories of documents requested by the Port Authority. The Port Authority has never informed Mount Sinai that it was dissatisfied with the production or Dr. Moline's testimony. Nor has the Port Authority ever filed a motion to compel further production.

 The additional factors considered by courts, including the level of effort expended by Mount Sinai to comply with the Port Authority's subpoena and Mount Sinai's status as a non-profit medical institution, likewise support an award for all costs incurred. Finally, Mount Sinai is not "equipped to shoulder" the costs of its production. (Order at 4). Although Mount Sinai has received substantial federal funding in connection with the Program, not a cent of that money can be used to pay the legal fees incurred in responding to the Port Authority's subpoena.

## ARGUMENT

I. **THE COURT SHOULD RECONSIDER ITS SEPTEMBER 13, 2010 ORDER.**

The standards governing a motion for reconsideration under Fed. R. Civ. P. 59(e) and Local Rule 6.3 are the same. *Medoy v. Warnaco Employees. Long Term Disability Ins. Plan*, No. 97 cv 6612 (SJ), 2006 U.S. Dist. LEXIS 7635 (E.D.N.Y. Feb. 14, 2006). Local Rule 6.3 provides, in pertinent part, that "there shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." A motion for reconsideration should be granted pursuant to Rule 59(e) where: "(1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice." *Crown Castle USA Inc. v. Fred A. Nudd Corp.*, No. 05-cv-6135, 2008 U.S. Dist. LEXIS 62649, at *21 (W.D.N.Y. Aug. 13, 2008); *Fehn v. Group Long Term Disability Plan*, No. 07 civ. 8321 (WCC), 2008 U.S. Dist. LEXIS 58329 (S.D.N.Y. July 30, 2008). As demonstrated below, material facts that were not before the Court and but would have been submitted with Mount Sinai's reply papers necessitate reconsideration of the Order to prevent obvious injustice.[3]

In determining how much of the production expense the requesting party should bear, the Court can consider factors in addition to whether (1) the nonparty has an interest in the outcome of the case; (2) the nonparty can more readily bear the costs; and (3) the litigation is of public importance. (Order at 2). In *Prescient Acquisition Group, Inc.*, 2006 U.S. Dist. LEXIS 75383 at *7 (S.D.N.Y. Oct. 13, 2006), this Court considered additional factors including the (1) the breadth and scope of the subpoena; (2) the level of effort by the nonparty to comply with the

---

[3] Because Local Rule 6.3 does not permit parties to submit affidavits on a motion for reconsideration, Mount Sinai has not done so in support of its application. However, if granted leave, Mount Sinai is prepared to submit declarations by Bettina B. Plevan, Mount Sinai's outside counsel, and Stephen Harvey, Mount Sinai's Chief Financial Officer, attesting to each of the representations made herein.

3

subpoena and (3) the nature of the non-party's business. The Court should reconsider its Order because material facts previously unavailable to the Court demonstrate that these factors favor awarding all of Mount Sinai's fees and expenses.

### A. Mount Sinai's Fees Were Not In Furtherance Of Its Interests In Protecting Research Data

In casting Mount Sinai as an interested party, the Court mistakenly concluded that "Mount Sinai hired outside counsel because it did not wish for its raw data to be exposed to outside viewers who might contradict the conclusions Mount Sinai had drawn." (Order at 3). (*See also*, PA Br. at 4-5). This is simply not the case. Mount Sinai retained counsel (Proskauer) in this matter to address its concerns about the extremely tight deadline imposed on November 18, 2008, when the Court issued an *ex-parte* order requiring Mount Sinai to produce Plaintiffs' medical records in an accelerated time-frame (by November 28, 2008). When Proskauer appeared on Mount Sinai's behalf at the December 10, 2008 hearing, the Court welcomed Proskauer's involvement to facilitate a more efficient and economical discovery process. Proskauer's later involvement did not reflect a desire by Mount Sinai to "resist" the Port Authority's subpoena (Order at 3) or to help protect the research data because there was no resistance. Mount Sinai simply objected to the production of research data, and the Port Authority never pursued the matter. Therefore, Mount Sinai did not incur any costs to produce or protect its research data.

In concluding that Mount Sinai held an interest in protecting its raw data, the Court relied on statements allegedly made by Mount Sinai's counsel that Mount Sinai felt "attacked" and put "on trial" by the broad subpoena and request for research data. (Order at 3). The comments by Mount Sinai's counsel during that conference call, even if accurately reported, were related to explanations of Mount Sinai's concerns about the burden that could be imposed on its

4

researchers and the impropriety of seeking to undermine the validity of their research as part of the discovery process. However, as explained above, no costs were incurred regarding that issue because the Port Authority never pressed a request for research data.

Unlike the Bank of America in *Prescient Acquisition Group, Inc.*, 2006 U.S. Dist. LEXIS 75383 at *7 (S.D.N.Y. Oct. 13, 2006), Mount Sinai did not retain Proskauer because of its "concerns over its reputation." (Order at 3-4).[4] Because the Port Authority's subpoena sought the production of highly-sensitive information concerning the Program's operations and patient care, it was necessary for Proskauer to carefully review the files for responsive documents and to create indexes so that Mount Sinai could track precisely which documents were being produced, as well as coordinate the production from multiple locations.[5] The fees charged by Proskauer in responding to the Port Authority's subpoena are reasonable and do not demonstrate that Mount Sinai was an interested party. In fact, Mount Sinai did not charge the Port Authority for the substantial time that Dr. Moline spent preparing and sitting for her deposition or the considerable time spent by Mount Sinai employees in locating and copying thousands of documents.

---

[4] Courts' decisions ruling that "non-neutral", non-parties are responsible for absorbing some of the costs of a subpoena response all involved markedly different circumstances than those here. For example, in *First American Corporation v. Price Waterhouse LLP*, 184 F.R.D. 234, 239 (S.D.N.Y. 1998), a case concerning one of the largest bank frauds in history perpetrated by the Bank of Credit and Commerce International, the court held that non-party Price Waterhouse-United Kingdom (an entity that "coordinated" the Defendant auditors) was "not neutral" for purposes of awarding costs because it had previously been a party to a litigation arising out of the same facts. Similarly, in *Dow Chem. Co. v. Reinhard*, 2008 U.S. Dist. LEXIS 35398 (S.D.N.Y. Apr. 29, 2008), the court held that non-party Allen & Overy ("A&O") was not the "quintessential, innocent, disinterested bystander" because of A&O's role as "lead counsel" in a leveraged buyout of the plaintiff. *Id.* at *5. Mount Sinai's position here is not akin to that of an interested "auditor" or "counsel" in a large-scale financial transaction and, unlike the situation in the above cases, it did not stand to gain from the transactions at issue in the litigation. It is therefore not an "interested" party. In fact, Mount Sinai has gone to great lengths to remain disinterested, including by informing all parties involved that its physicians will not act as an expert witness in the litigation.

[5] By letter dated September 1, 2010, Mount Sinai demanded that the Port Authority identify the "doctor in private practice" who allegedly produced "most of the same documents, at little expense." (PA Br. at 12). It does not appear that the doctor was deposed and therefore did not require counsel for that purpose. Mount Sinai respectfully reserves its right to further respond to this allegation once the mystery "doctor" is identified by the Port Authority.

In *Prescient Acquisition Group, Inc.*, this Court awarded Bank of America fees and expenses in the amount of $42,915.14 that were incurred by the bank in producing 2,100 pages of documents. Mount Sinai, by contrast, incurred $52,038.50 in attorney's fees and expenses in connection with its production of over 8,200 pages of documents <u>and</u> the deposition of Dr. Moline. Proskauer used its regular Mount Sinai billing rates and practices (including billing by the quarter of an hour, listing tasks in "block billing" format and giving Mount Sinai a 10% discount as a non-for-profit institution). Proskauer has invoiced Mount Sinai for its attorney's fees but has agreed not to seek payment until this motion has been resolved by the court.[6]

Based on the foregoing facts that were not before the Court when it ruled on Mount Sinai's motion, it is clear that Mount Sinai is not an interested party.

B. <u>Mount Sinai Is Not In a Better Position To Bear The Cost of Compliance</u>

The Court's conclusion that Mount Sinai could reasonably bear its attorney's fees was also based on misleading, one-sided statements proffered by the Port Authority. Specifically, the federal grant money that Mount Sinai receives for the Program may only be used for the specific purpose for which it was granted (*i.e.* conducting research, maintaining data or treating patients at the WTC). Thus, if the Port Authority does not pay the costs incurred by Mount Sinai in responding to the subpoena, Mount Sinai will have to use non-grant funds that could have been spent on patient care. In addition, unlike the Port Authority (we presume), Mount Sinai's costs

---

[6] In its opposition papers, the Port Authority creates a false dichotomy by comparing Mount Sinai's costs in responding to its subpoena with the costs of producing Plaintiffs' medical records. Mount Sinai did not retain outside counsel to coordinate its production of Plaintiffs' medical records because that production was a streamlined process requiring the production of documents that were clearly relevant to the litigation, that Mount Sinai routinely produces in the course of its regular business operations, and most of which were produced from an electronic database. By comparison, the Port Authority's subpoena required Proskauer's involvement because the subpoena sought a wide array of documents located in various files and databases as well as the testimony of a witness with knowledge regarding various aspects of the Program.

are not covered by insurance. Therefore, the Port Authority is in a better position to bear Mount Sinai's costs of complying with its subpoena.

### C. Additional Factors Considered By Courts In Awarding Costs Favor Mount Sinai

The fact that this litigation may be a matter of "public interest" does not absolve the Port Authority of its obligations to compensate Mount Sinai, a non-profit institution dedicated to patient care, for the legitimate costs that it incurred in responding to discovery requests. As discussed above, the substantial efforts that Mount Sinai undertook to comply with the Port Authority's broad subpoena favors awarding costs to Mount Sinai.

Mount Sinai is a non-profit institution located in East Harlem. It provides millions of dollars of uncompensated medical services to its neighboring community and to New York's residents and cares for thousands of 9/11 first responders. Mount Sinai's mission and status therefore also favor an award of its costs. *See Prescient Acquisition Group, Inc.,* 2006 U.S. Dist. LEXIS 75383 at *7 (S.D.N.Y. Oct. 13, 2006) (considering the "nature" of the non-party's business in apportioning costs). This court has awarded substantial costs to large "for-profit" corporations, such as the Bank of America, Price Waterhouse and the Hazeltine Corporation. *See Prescient Acquisition Group, Inc.*, 2006 U.S. Dist. LEXIS 75383 at *7 (S.D.N.Y. Oct. 13, 2006) (awarding Bank of America fees and expenses in the amount of $42,915.14); *First Am. Corp.*, 184 F.R.D. 234 (awarding Price Waterhouse-United Kingdom $75,000); *Kahn v. Gen. Motors Corp.*, 1992 U.S. Dist. LEXIS 12191 (S.D.N.Y. Aug. 14, 1992) (awarding the Hazeltine Corporation 80% of the legal fees sought "in connection with the retrieval, identification, and review of documents called for by the subpoena"). *See also Dow Chem. Co. v. Reinhard,* 2008 U.S. Dist. LEXIS 35398 (S.D.N.Y. Apr. 29, 2008) (awarding fees and expenses to Allen & Overy in the amount of $830,000). Therefore, as a non-profit institution, the "nature" of Mount

the "nature" of Mount Sinai's mission weighs heavily in its favor and entitles Mount Sinai to be fully reimbursed for its costs.

## CONCLUSION

For the foregoing reasons, Mount Sinai respectfully requests that the Court reconsider its September 13 Order and order the Port Authority to pay Mount Sinai for the outstanding fees and expenses incurred in responding to the Port Authority's subpoena as well as the fees incurred in making this motion in the total amount of $53,188.25.

Dated: New York, New York
September 27, 2010

PROSKAUER ROSE LLP

By: /s/ Bettina B. Plevan
Bettina B. Plevan
Harris M. Mufson
1585 Broadway
New York, New York  10036
(212) 969-3065
*Attorneys for Mount Sinai Medical Center*

8