UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

IN RE: WORLD TRADE CENTER DISASTER SITE
LITIGATION

-----------------------------------------------------------------X

Docket No.:  21 MC 100 (AKH)

STATE OF NEW YORK     )
                      )s.s.:
COUNTY OF TOMPKINS    )

W. Bradley Wendel, being duly sworn, hereby deposes and says:

1. 1. I am over the age of eighteen (18) and I am competent to make the statements contained herein.

2. I am a tenured Professor of Law at Cornell Law School.  Prior to joining the faculty at Cornell I was an Assistant Professor and an Associate Professor of Law at Washington and Lee Law School.  Before beginning full-time teaching at Washington and Lee, I was a product liability litigation associate at a large law firm in Seattle and a judicial clerk on the U.S. Court of Appeals for the Ninth Circuit.  I am a member of the Washington State Bar Association on active status.  I received a B.A. from Rice University, a J.D. from Duke Law School, and an LL.M. and J.S.D. from Columbia Law School.  Further biographical information is contained in my CV, attached as an exhibit to this affidavit.

3. My area of research and teaching specialization is legal ethics and professional responsibility.  I have taught courses in the law governing lawyers and ethical issues in civil litigation at least once a year, and often twice a year, since beginning full-time teaching in 1999.  I am a co-editor, along with Geoffrey Hazard, Susan Koniak, Roger Cramton, and George Cohen, of a widely adopted Foundation Press casebook, *The Law and Ethics of Lawyering*, now in its fifth edition.  I am also the sole author of a textbook, *Professional Responsibility: Examples and*

1

*Explanations*, for Aspen Publishers, now in its third edition.  Finally, I have been a permanent member of the drafting committee for the Multistate Professional Responsibility Exam (MPRE) since November 2007.

  4. Rules for attorney discipline in the Southern District of New York are given by the New York Rules of Professional Conduct, incorporated by reference.  *See* Local Rule 1.5(b)(5).  Effective April 1, 2009, New York adopted new rules, based upon the ABA's Model Rules of Professional Conduct.  (Citations to "Rule xx" are to the New York Rules of Professional Conduct, unless otherwise noted.)  In areas relevant to this affidavit, the new rules did not alter the substance of the prior New York Code of Professional Responsibility.  Particularly in connection with conflicts of interest, courts have interpreted the new rules in line with the previous Code.  *Pierce & Weiss LLP v. Subrogation Partners LLC*, 701 F. Supp. 2d 245, 251-52 (E.D.N.Y. 2010).

  5. I have reviewed the February 11, 2011, Declaration of Denise A. Rubin setting forth the facts relevant to this affidavit.  I have also reviewed this Court's order of February 7, 2011, appointing Noah Kushlefsky as special counsel to the fifty-nine plaintiffs who have accepted awards from the Victims' Compensation Fund (referred to as the "VCF clients").

  6. In my opinion there are no differing interests, and therefore no conflicts between the interests of the VCF clients and the other clients represented by the Worby firm.  These other clients are settling plaintiffs on the Eligible Plaintiffs List who have opted in to the Settlement Process Agreement ("SPA").  Because the VCF clients are ineligible to join the SPA, there is no way their claims can reduce the recovery of the other clients represented by the Worby firm.  Nothing the firm does on behalf of the VCF clients can adversely affect the legal interests of the SPA plaintiffs, and vice-versa.

Conflicts of Interest

7. Not all multiple representations involve a conflict of interest. A lawyer may not simultaneously represent multiple clients without obtaining the informed consent of each affected client only where the representation would involve "differing interests." Rule 1.7(a)(1). This is the same standard that applied under the prior New York Code of Professional Responsibility. See DR 5-105; N.Y. State Bar Op. 778 (2004). Differing interests are defined as those that affect the judgment or loyalty of the lawyer. Rule 1.0(f). A lawyer represents differing interests, and therefore a conflict of interest exists, if "a lawyer's exercise of professional judgment in considering, recommending or carrying out an appropriate course of action for the client will be adversely affected" by the simultaneous representation. Rule 1.7, comment [8].

8. A paradigm example of differing interests is a zero-sum situation in which gaining an advantage for one client necessarily would result in disadvantaging the other. The Restatement (Third) of the Law Governing Lawyers provides examples of this kind of conflict, including representing A and B, each a competitor for a single broadcast license, and representing Client A in a hostile takeover by Client A of another corporate client, Client B. See Restatement § 121, comment c, Illus. 1 & 2. In both of these cases, providing competent, diligent representation for Client A necessarily means harming the legal interests of Client B, and vice-versa. As a further example, the Restatement contemplates a situation in which Lawyer represents A and B, pedestrians struck by an automobile driven by C, who has $100,000 of liability insurance and no other assets. If both plaintiffs sue for $150,000, Lawyer has a conflict of interest and must obtain the informed consent of both A and B. Restatement § 128, cmt. d(i), Illus. 1.

9. In the absence of this kind of adverse effect, however, there are no differing interests and no conflict. Restatement § 121, comment c ("Unless there is risk that the lawyer's

representation would be affected 'adversely,' there is no conflict of interest."). The claims of the VCF clients do not threaten to diminish the recovery of plaintiffs in the SPA. If the VCF clients could join the SPA, this case would be analogous to the Restatement illustration where the clients' claims exceed the limits of the defendant's insurance policy. The Worby firm would be required to obtain the informed consent of both groups of clients in that instance. Here, by contrast, nothing the firm does on behalf of the VCF clients can affect the recovery of any of the plaintiffs in the SPA. Thus, there is no conflict of interest.

<u>Disqualification of Counsel and Appointment of Substitute Counsel</u>

10. Courts have the inherent authority to disqualify counsel for unethical conduct that creates prejudice to opposing parties and taints the adversarial process. See, e.g., *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 271 (2d Cir. 1975). Disqualification is a disfavored remedy, however, because it deprives parties of counsel of their choice. Accordingly, the Second Circuit has followed a "restrained approach" to disqualification. *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 896 (2d Cir. 1982) (citing *Armstrong v. McAlpin*, 625 F.2d 433 (2d Cir. 1980); *Board of Educ. v. Nyquist*, 590 F.2d 1241 (1979)). While doubtful cases must be resolved in favor of disqualification, *Cheng v. GAF Corp.*, 631 F.2d 1052 (2d Cir. 1980), courts must also be mindful of the disruption and expense occasioned by disqualification of counsel. Disqualification of counsel is appropriate *only* where continued representation would affect the integrity of the proceedings. *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *Premium Products Sales v. Chipwich, Inc.*, 539 F. Supp. 427, 435 (S.D.N.Y. 1982).

11. The attorney-client relationship is, at its root, a matter of contract and agency law. See, e.g., *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686 (Minn. 1980). It is therefore impossible, as a conceptual matter, to force a competent adult client to accept appointment of a

lawyer. Restatement § 14, cmt. g ("The appointment may be rejected by the prospective client, except for persons, such as young children, lacking capacity to make that decision."). Even in criminal cases, where there is a constitutional right to counsel, a defendant has a right to self-representation and may reject a court-appointed lawyer. *Faretta v. California*, 422 U.S. 806 (1975). In civil cases, the right of a litigant to reject court-appointed counsel is even stronger because there is no baseline constitutional right to counsel. Compare *Mallard v. U.S. District Court*, 490 U.S. 296 (1989) (granting mandamus where lawyer sought to avoid appointment under statute permitting courts to request lawyer to represent litigants claiming *in forma pauperis* status). Significantly, the Restatement's lengthy list of judicial remedies available for a lawyer's breach of duty does not include non-consensual appointment of substitute counsel. Restatement § 6.

12. Taken together, the presumption against disqualification of counsel, except where the trial process will be tainted, and the consensual nature of the attorney-client relationship, renders the mandatory appointment of substitute counsel highly anomalous, if not beyond the inherent authority of a trial court. Imposing the obligation on the Worby firm to pay the fees of substitute counsel is tantamount to a monetary sanction for litigation misconduct.

13. Federal courts have the inherent authority to impose sanctions on lawyers for certain abuses of the litigation process, but only upon a specific finding of bad faith conduct on the part of the attorney. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980); *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) (inherent power sanctions require finding of bad faith). The Supreme Court has said that bad faith is conduct equivalent to willful disobedience of a court order; fraud on the tribunal; acting vexatiously, wantonly, or for oppressive reasons; disrupting litigation or hampering enforcement of a court order; or "defiling the very temple of justice." Cambers, 501 U.S. at 45-46. As a matter of constitutional due process, a

5

sanction may be imposed only after notice of the conduct for which sanctions are threatened and an opportunity to be heard in response. *Mickel v. Morin*, 297 F.3d 114 (2d Cir. 2002).

14. As discussed above, the Worby firm does not have a conflict of interest in its simultaneous representation of the VCF clients and the SPA plaintiffs. Assuming *arguendo* that it did, however, the conduct alleged here would come nowhere close to the level of bad faith justifying impositions of sanctions under the court's inherent authority. The ethics rules are rules of reason. New York Rules, Scope, cmt. [6]. Reasonable lawyers can and do differ in their resolution of questions such as whether the interests of clients are "differing" for the purposes of Rule 1.7(a). Making a judgment call that another lawyer would disagree with does not rise to the level of bad faith as the Supreme Court has defined it in cases like *Chambers*.

_____
W. Bradley Wendel

Sworn to and subscribed before me
this 4th day of March 2011

_____
Notary Public

ROSEMARY LACEY
Notary Public, State Of New York
No. 01LA6074889
Qualified In Cayuga County
Commission Expires May 27, 20 14

6