UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

IN RE: WORLD TRADE CENTER DISASTER SITE
LITIGATION

-----------------------------------------------------------------X

Docket No.:  21 MC 100 (AKH)


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO VACATE FEBRUARY 7, 2011 ORDER APPOINTING
SPECIAL COUNSEL**


*On the Brief*:

Kevin K. Russell, Esq.
Goldstein, Howe & Russell, P.C.
7272 Wisconsin Ave., Suite 300
Bethesda, MD 20814

Denise A. Rubin (DR5591)
Paul J. Napoli (PN-8845)
Worby Groner Edelman & Napoli Bern, LLP
*Plaintiffs' Co-Liaison Counsel*
350 Fifth Avenue, Suite 7413
New York, New York  10118
(212) 267-3700

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

QUESTIONS PRESENTED.............................................................................................. 3

STATEMENT OF THE CASE.......................................................................................... 3

ARGUMENT .................................................................................................................... 4

POINT I.

        THERE IS NO CONFLICT OF INTEREST WARRANTING THE
        COURT'S APPOINTMENT OF SPECIAL COUNSEL ................................... 4

        A.    A Court May Only Interpose Itself Between A Client And Her
                Attorney To Prevent An Actual, Serious Conflict Of Interest....................... 4

        B.    There Is No Colorable Claim Of Conflict Between The VCF
                Plaintiffs And Their Present Counsel. ........................................................... 6

POINT II.

        EVEN IF THERE WERE A COLORABLE RISK OF CONFLICT, THE
        COURT'S ORDER IS NOT APPROPRIATELY TAILORED TO THAT
        RISK AND CREATES CONFLICT PROBLEMS OF ITS OWN................................. 9

POINT III.

        THE ORDER REQUIRING WGENB TO PAY SPECIAL COUNSEL AN
        HOURLY ATTORNEY FEE CONSTITUTED AN IMPERMISSIBLE
        SANCTION AND DEPRIVATION OF PROPERTY WITHOUT DUE
        PROCESS OF LAW. ...................................................................................... 12

CONCLUSION............................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. McAlpin*,
   625 F.2d 433 (2d Cir. 1980) ........................................................................ 6

*Bd. of Educ. v. Nyquist*,
   590 F.2d 1241 (2d Cir. 1979) ............................................................... 4, 5, 6

*Bottaro v. Hatton Assocs.*,
   680 F.2d 895 (2d Cir. 1982) ........................................................................ 6

*Ceramco, Inc. v. Lee Pharmaceuticals*,
   510 F.2d 268 (2d Cir. 1975) .................................................................... 5, 6

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ..................................................................................... 12

*Fusaro v. Porter-Hayden Co.*,
   145 Misc. 2d 911 (Sup. Ct., N.Y. Cty., 1989) *aff'd,* 170 A.D.2d 239 (1st
   Dep't 1991) .................................................................................................. 7

*Gov't of India v. Cook Indus., Inc.*,
   569 F.2d 737 (2d Cir. 1978) ........................................................................ 4

*In re Ames Dep't Stores, Inc.*,
   76 F.3d 66, 70 (2d Cir. 1996) *cert. denied*, 522 U.S. 932 (1997)............. 13

*In re Kelton Motors, Inc.*,
   109 B.R. 641 (Bankr. D. Vt. 1989) .............................................................. 6

*In re Mandell*,
   69 F.3d 830 (2d Cir. 1934) .......................................................................... 5

*In re Smith*,
   507 F.3d 64 (2d Cir. 2007) .......................................................................... 4

*Jones v. Pittsburgh Nat'l Corp.*,
   899 F.2d 1350 (3d Cir.1990) ...................................................................... 13

*Leslie Dick Worldwide v. Soros*,
   2009 WL 2190207 (SDNY 2009).................................................................. 6

*Local No. 93, Intn'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of
   Cleveland*, 478 U.S. 501 (1986) ............................................................... 8, 9

*Matter of Bohack Corp.*,
   607 F.2d 258 (2d Cir. 1979) ........................................................................ 4

*Mickel v. Morin*,
   297 F.3d 114 (2d Cir. 2002) ...................................................................... 12

*Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*,
   174 F.3d 87 (2d Cir. 1999) ............................................................. 5, 13, 15

*Oliveri v. Thompson*,
   803 F.2d 1265 (2d Cir. 1986) .................................................................... 12

*Roadway Express, Inc. v. Piper,*
    447 U.S. 752 (1980) ........................................................................................... 12

*Rounseville v. Zahl,*
    13 F.3d 625 (2d Cir. 1994) ............................................................................... 13

*S & S Hotel Ventures v. 777 S.H. Corp.,*
    69 N.Y.2d 437 (1987) ......................................................................................... 4

*Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York,*
    302 A.D.2d 183 (1st Dep't 2002) ..................................................................... 11

*Ted Lapidus, S.A. v. Vann,*
    112 F.3d 91 (2d Cir. 1997) ............................................................................... 13

*United States v. Gonzalez-Lopez,*
    548 U.S. 140 (2006) ............................................................................................ 4

*United States v. International Bhd. of Teamsters,*
    948 F.2d 1338 (2d Cir. 1991) ........................................................................... 13

*United States v. Ward Baking Company,*
    376 U.S 327 (1964) .............................................................................................. 8


**STATUTES**

Fed. R. Civ. P. 11 ...................................................................................................... 5

Fed. R. Civ. P. 11(c) ............................................................................................... 13

Fed. R. Civ. P. 11(c)(1)(B) .................................................................................... 13

Fed. R. Civ. P. 83(b) ................................................................................................. 5

N.Y. Judiciary Law § 475 ...................................................................................... 11


**OTHER AUTHORITIES**

Fed. R. Civ. P. 11(c) advisory committee's note to 1993 amendments ...................... 13


**RULES**

N.Y. Rules of Prof. Conduct §1.7 ............................................................................. 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

IN RE: WORLD TRADE CENTER DISASTER SITE
LITIGATION

Docket No.:  21 MC 100 (AKH)
                    21 MC 103 (AKH)

----------------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiffs respectfully request that this Court reconsider its order appointing special

counsel to advise, and potentially represent, certain plaintiffs who previously accepted awards

from the first Victims Compensation Fund ("VFC plaintiffs").  The order – issued without the

benefit of briefing by the parties or consultation with the court-appointed ethics expert – is

apparently premised on the view that current counsel, Worby Groner Edelman & Napoli Bern,

LLP (WGENB), have a disqualifying conflict of interest in representing both the VCF plaintiffs,

whose claims were not included in the Settlement Process Agreement (SPA), and those plaintiffs

whose claims settled under the SPA.  We respectfully suggest that upon closer examination,

there is no such conflict, and certainly no conflict that would authorize this Court to displace

plaintiffs' choice of counsel.  *See* Affidavit of Prof. W. Bradley Wendel, Cornell Law School

(attached to the Rubin Dec. as Exhibit 5) (opining that "In my opinion there are no differing

interests and therefore no conflicts between the interests of the VCF clients and the other clients

represented by the Worby firm.").

Current counsel are able and eager to pursue litigation on behalf of the VFC plaintiffs

against the defendants in this case, including by making appropriate motions to overcome the

waiver defense of the Air Transportation Safety and System Stabilization Act ("ATSSSA").

Nothing in the settlement prevents that litigation, and nothing in that litigation would harm the

settling plaintiffs.  In particular, any successful claim by the VCF plaintiffs will not be paid from

the funds set aside for the settlement, nor would any victory reduce the compensation to which the settling plaintiffs are entitled under the SPA.

To the extent the Court is concerned that the VFC plaintiffs might have a conflict-creating interest in seeking modifications to the current settlement, we respectfully suggest that any such claim would be futile and, therefore, does not create any real conflict.  The VCF plaintiffs were excluded from the present settlement for the simple reason that the defendants refused to negotiate any settlement with them.  And the law is absolutely clear that no court can force a defendant to settle claims its does not wish to compromise.  *See, e.g.*, *Local No. 93, Intn'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 522 (1986) (absent a trial, "it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all"); *id.* (a court "cannot enter consent decree to which one party has not consented") (citing *United States v. Ward Baking Co.*, 376 U.S 501 (1964)).   It is that settled law, and not any conflict of interest, that would prevent present counsel from seeking to insinuate the VCF plaintiffs into the existing settlement.

Even if the possibility of challenging the settlement warranted independent examination, the Court's order goes far beyond that, authorizing special counsel to run up potentially hundreds of thousands of dollars in legal fees (which this Court has ordered WGENB to pay) investigating any factual or legal issue that he may deem necessary to "advise [the VCF plaintiffs] of their respective rights and options."  Order at 3 (attached as Exhibit 1).  The Court has further provided special counsel a significant financial incentive to conclude that it would be in the VCF plaintiffs' interests to pursue some course of action that arguably required substitution of counsel, in order to allow special counsel to take over the representation of the clients and receive additional fees for the successful prosecution or settlement of the clients' claims

(notwithstanding that any such success would be premised in no small part on the work WGENB has already performed to preserve these clients' claims over the past seven years of litigation). The Court's order thus creates its own conflict of interests problems at least as severe as the ones it attempts to avoid.

In the end, there is no conflict that warrants this Court's extraordinary order. However, if the Court has determined that the VCF plaintiffs' current counsel are conflicted to such a degree to justify the Court's intervention in the attorney-client relationship, it should simply disqualify WGENB and appoint substitute counsel to take over the representation at his own expense. Better still, the Court should reconsider the order in its entirety, on the basis of briefing by the parties and in consultation with the Court's ethics expert.

## QUESTIONS PRESENTED

1. Whether this Court erred in assuming a conflict of interest exists between the plaintiffs who previously accepted awards from the Victims Compensation Fund and their present counsel.

2. Whether this Court's order is properly tailored to meet any possible conflict that might exist.

## STATEMENT OF THE CASE

A detailed statement of the underlying facts and procedural actions leading to this motion is set forth in the Declaration of Denise A. Rubin dated March 4, 2011, and is adopted here by reference as if fully set forth at length.

## ARGUMENT

### POINT I.

### THERE IS NO CONFLICT OF INTEREST WARRANTING THE COURT'S APPOINTMENT OF SPECIAL COUNSEL

#### A. A Court May Only Interpose Itself Between A Client And Her Attorney To Prevent An Actual, Serious Conflict Of Interest.

A court "must be solicitous of a client's right freely to choose his counsel." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978). As the New York Court of Appeals has noted,

> Disqualification of a law firm during litigation implicates not only the ethics of the profession but also the substantive rights of the litigants. Disqualification denies a party's right to representation by the attorney of its choice. The right to counsel of choice is not absolute and may be overridden where necessary – for example, to protect a compelling public interest – but it is a valued right and any restrictions must be carefully scrutinized.

*S & S Hotel Ventures v. 777 S.H. Corp.*, 69 N.Y.2d 437, 443 (1987) (citations omitted). *Cf. also United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) (the Sixth Amendment guarantees a criminal defendant that right to be "represented *by the lawyer he wants*, regardless of the quality of the representation he received") (emphasis added).

The Second Circuit thus has "shown considerable reluctance to disqualify attorneys," even when there are grounds for "misgivings about the attorney's conduct." *Board of Ed. of N.Y. City v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *see also Matter of Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979) ("We have indeed been loathe to separate a client from his chosen attorney where the alleged misconduct does not prejudice an opposing party and taint the litigation in which he is appearing."). Even in contexts in which courts have special authority to approve choice of counsel, a court "should not interfere with the [party's] choice of counsel '[o]nly in the rarest cases.'" *In re Smith*, 507 F.3d 64, 71 (2d Cir. 2007) (bankruptcy trustee's

4

choice of counsel); *see also In re Mandell*,69 F.3d 830, 831 (2d Cir. 1934) ("[I]n general we regard it as inimical to good administration to fasten an attorney on the trustee against his will.").

Instead, the Second Circuit has held that a court may displace chosen counsel only "where necessary to preserve the integrity of the adversary process." *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). In particular, the "power of trial judges to disqualify counsel" has been permitted "with rare exceptions . . . only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." *Id*.

There is no claim that this case falls within the second category, nor has the Court made any actual finding of a disqualifying conflict that would fall within the first. That in itself would require reversal if the order were appealed. *See*, *e.g.*, *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 271 (2d Cir. 1975) (disqualification order is immediately appealable collateral order and will be reversed absent a conflict or risk to privileged information that creates a "compelling reason to interfere with plaintiff's choice of counsel"). Nor, as discussed next, is there any basis for finding a conflict that would justify the Court's substitution of special counsel for the lawyers the VCF plaintiffs have chosen for themselves.[1]

---

[1] The Court did not suggest that the appointment of special counsel, or requiring WGENB to bear the cost of the appointment, was intended as a sanction. Nor could the order be justified on that ground, particularly given that it did not comply with the procedural requirements of Fed. R. Civ. P. 11. *See*, *e.g.*, *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92 (2d Cir. 1999) (requiring that "a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter" prior to the issuance of any sanction); *see also* Fed. R. Civ. P. 83(b) ("No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.").

### B.   There Is No Colorable Claim Of Conflict Between The VCF Plaintiffs And Their Present Counsel.

To give rise to disqualification, a conflict must be real, not simply a hypothetically possibility.  *See*, *e.g.*, *In re Kelton Motors, Inc*., 109 B.R. 641, 650 (Bankr. D. Vt. 1989) (noting that *"*mere hypothetical conflicts do not meet the heavy burden of proof to warrant disqualification"); *see also*  N.Y. Rules of Prof. Conduct §1.7 ("[A] lawyer shall not represent a client if a *reasonable lawyer would conclude* that . . . the representation *will* involve the lawyer in representing differing interests.") (emphasis added); *Nyquist*, 590 F.2d at 1247 ("[W]hen there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases.").  Instead, the conflict must be sufficiently probable and serious to "pose a substantial threat to the integrity of the judicial process."  *Ceramco,* 510 F.2d at 271; *see also Hempstead Video*, 409 F.3d at 132 (same); *Leslie Dick Worldwide v. Soros*, 2009 WL 2190207, at *7 (SDNY 2009) (same); *In re MTBE Products Liability Litigation*, 438 F.Supp.2d at 307-09 (same).

As noted in the affidavit of Professor W. Bradley Wendel, disqualification is a disfavored remedy.  *See* Wendel Aff. ¶ __.  The Second Circuit follows a "restrained approach" to attorney disqualification.  *Bottaro v. Hatton Assocs*., 680 F.2d 895, 896 (2d Cir. 1982) (citing *Armstrong v. McAlpin*, 625 F.2d 433 (2d Cir. 1980); *Board of Educ. v. Nyquist*, 590 F.2d 1241 (1979)).  Disqualification of counsel is appropriate *only* where continued representation would taint the integrity of the proceedings.

In this case, present counsel has recognized that the VCF plaintiffs and the settling plaintiffs are differently situated to a degree that the possibility of conflict problems should be investigated.  However, upon further consideration and review, it is clear that no disqualifying conflict exists.  That is the opinion of ethics professor Prof. W. Bradley Wendel of Cornell Law

School, *see* Exhibit 5, and we are confident that the court-appointed ethics advisor would share the same view if asked, based on the following considerations.

First, there should be no question of any conflict arising from the VCF plaintiffs' pursuing their claims in litigation against the defendants with their present, *chosen* counsel.  To be sure, the ATSSSA waiver provision poses a significant challenge.  But present counsel are prepared to meet it, arguing among other things that under New York's "Second Injury Rule," the VCF clients are not precluded from litigating claims for injuries that had not developed and were not contemplated at the time of their VCF awards.  *See, e.g., Fusaro v. Porter-Hayden Co*., 145 Misc. 2d 911, 915 (Sup. Ct., N.Y. Cty., 1989) , *aff'd,* 170 A.D.2d 239 (1st Dep't 1991).  Thus, in *Fusaro*, the plaintiff was permitted to file a claim for mesothelioma when diagnosed, despite an earlier settlement of a claim for asbestosis; the court held that mesothelioma does not reasonable flow from an earlier diagnosis of asbestosis and thus constitutes a wholly separate and distinct claim of injury.   That argument – and any potential settlement or judgment arising from it – poses no threat to any other plaintiff in this case, including those who accepted the settlement.  Any judgment or settlement would in no way diminish the funds available to the settling plaintiffs or adjust their entitlements under the terms of the SPA.  In this way, the VCF plaintiffs stand in no different position than any other plaintiff who chose not to join the settlement.[2]

Instead, the perceived conflict seems to arise from the Court's concern that the VCF plaintiffs may have an interest in seeking to challenge their exclusion from the settlement.  *See* Exhibit 3, at 23.  Counsel share the VCF plaintiffs' wish that their claims had been resolved

---

[2] Like other non-settling plaintiffs, the VCF plaintiffs' claims do not count as "New Debris Removal Claims" for purposes of the Contingent Payments address in Section IV of the SPA, because their claims were filed prior to April 13, 2010.  *See* SPA ¶ JJ.  Accordingly, prosecution of the VCF plaintiffs' claims will not risk any diminishment in the Contingent Payments to the settling plaintiffs.

through the SPA.  But the defendants in this case simply refused our repeated attempts to include the VCF plaintiffs in the settlement, in light of the defendants' belief that these plaintiffs had irretrievably waived any claims by accepting assistance from the VCF.  Present counsel fully intend to challenge that proposition in further litigation seeking to damages on our VCF clients behalf from these defendants.   And, as noted above, there is no ground to believe that counsel suffers from any conflict that would impede that effort.

Instead, the question is whether there is any colorable claim the VCF plaintiffs could make to insist on being joined to the settlement without the defendants' consent.  If there were, there might be an arguable claim that the interests of the VCF and settling plaintiffs would be adverse (although the actual effect of including 59 VCF clients in the massive existing settlement would likely be de minimis).  But any such claim would be doomed to failure.  Even if the VCF plaintiffs can surmount the ATSSSA waiver defense, it is an entirely distinct question whether they would be entitled to insist on joining a settlement that the defendants have refused to extend to them.  And although this Court has found that it has the authority to deny approval of a settlement under the ATSSSA, it has not claimed the power to impose a settlement on unwilling parties.  Nor could it.  The Supreme Court has been unmistakably clear that a court may not impose judgment upon a defendant absent a trial or its freely given consent.  In *United States v. Ward Baking Company*, 376 U.S 327 (1964), for example, the Court considered the question whether "a District Court may properly enter a 'consent' judgment in a civil antitrust suit without the consent of the Government and without trial of certain disputed issues." *Id*. at 327.  The answer, unsurprisingly, was no.  A "District Court may not enter a 'consent' judgment without the actual consent of the Government." *Id*. at 334; s*ee also*, *e.g.*, *Local No. 93, Intn'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 522 (1986) (absent a trial, "it is

the parties' agreement that serves as the source of the court's authority to enter any judgment at all"); *id*. (a court "cannot enter consent decree to which one party has not consented").

Accordingly, any attempt to force the VCF plaintiffs' joinder to the settlement would be futile (if not frivolous).  And as a result, the Court cannot find that present counsel has a disqualifying conflict because the interests of their other clients preclude them from raising an argument they could not make – and no reasonable replacement counsel would make – in any event.

### POINT II.

### EVEN IF THERE WERE A COLORABLE RISK OF CONFLICT, THE COURT'S ORDER IS NOT APPROPRIATELY TAILORED TO THAT RISK AND CREATES CONFLICT PROBLEMS OF ITS OWN.

Even if this Court had grounds to worry that there were one or more potential arguments or claims that the VCF plaintiffs could reasonably make that would be adverse to the interests of the settling plaintiffs, the Court's order is not an appropriate response to that perceived risk.

First, as discussed above, the mere possibility of some future, ill-defined conflict is no grounds for disqualification of counsel.  Because the Court is required to find an actual, substantial conflict before displacing the parties' choice of counsel, at most the court should have sought independent advice from an outside source regarding whether the feared conflict is real. The court could, for example, solicit an opinion from the court-appointed ethics advisor.

Second, even if the Court determined to appoint an outside counsel to explore possible legal theories that the VCF clients might reasonably make, but present counsel would be conflicted from presenting, it should have limited the order to the circumscribed task.  Instead, the present order authorizes special counsel to conduct a wide ranging investigation into any factual or legal question he deems reasonably connected to advising the VCF plaintiffs on their

"rights and options with regard to continuing in this litigation."  Order at 3.  This could, and

likely will, include duplicating the research and factual investigations present counsel has

already undertaken and can pursue without any remotely arguable conflict of interest.  Indeed,

rather that focus on the only question pertinent to the existence of a conflict, special counsel has

already demanded that present counsel turn over the entire case file of each VCF plaintiff.  *See*

Exhibit 4.

Having placed no limit on the scope of special counsel's work, and having guaranteed

him payment at an hourly rate from present counsel, the Court has given the special counsel a

financial incentive to incur significant expenses that are unnecessary to resolve the Court's

expressed concerns.  The consequences could well be hundreds of thousands of dollars in fees,

billed for no real practical benefit to the plaintiffs or the Court.  (For comparison, Special

Counsel Michael Hoenig, Esq., has billed WGENB $268,000 for his work between appointment

on or about November 23, 2010 and this Court's discharge order on February 1, 2011).

Even more troubling, the Court's order creates a financial incentive that risks skewing the

objectivity of any advice the special counsel might give.  The order not only requires special

counsel to offer advice to the VCF plaintiffs, it permits him to take them on as his own clients,

with the prospect of earning additional fees in any subsequent litigation or settlement of the

clients' claims.  The order thus creates a significant financial incentive for special counsel to

recommend that the plaintiffs take a course of action that would create a conflict with present

counsel, or to otherwise use the mandate to provide advice as an opportunity for client

solicitation.  While one would hope counsel would resist such financial pressures, it is the

possibility of such temptation that creates precisely the kind of conflict the Court issued this

order to avoid in the first place.  As between the two risks – that present counsel would be

influenced by a theoretical and truly miniscule effect on other clients and the risk that a lawyer might weight his advice in a way that has an immediate and substantial impact on his fees – the conflict ordained by this Court's order is by far the more serious and regrettable.

That conflict could be avoided by the Court taking the traditional course of action if it determines that there is a real conflict that meets the Second Circuit's standards for intervention into the attorney-client relationship – it should disqualify present counsel entirely and appoint substitute counsel to take whatever actions he deems necessary, at his own initial expense and in accordance with an appropriate fee agreement with his new clients.[3]

Finally, the Court's order is extraordinary in that it not simply disqualified present counsel from continuing to represent their long-standing clients, it imposes a *particular* lawyer on the clients without their consent.  The client files newly appointed counsel has demanded contain sensitive, personal information that a client might reasonably chose to disclose only to lawyers she has chosen and in whom she has personal confidence.   Rather than make that choice for them, the Court should have, at the very least, allowed the clients – in consultation with their present counsel or some neutral third party – to decide whether they wish to accept Mr. Kushlefsky's representation or instead would prefer to retain other counsel for purposes of obtaining advice and, if necessary, future representation in litigation.

---

[3] The Court would also be required to resolve the division of any fees between special counsel for the work he has performed and WGENB for its seven years of prior representation on the clients' behalf.  *See, e.g.,* N.Y. Judiciary Law § 475; *see also Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 302 A.D.2d 183, 186 (1st Dep't 2002) ("An attorney who is discharged without cause has three remedies to recover the value of his or her legal services: the retaining lien, the charging lien, and the plenary action in quantum meruit (*Butler, Fitzgerald & Potter v. Gelmin,* 235 A.D.2d 218, 218-19, 651 N.Y.S.2d 525).  These remedies are not exclusive, but cumulative.").

## POINT III.

### THE ORDER REQUIRING WGENB TO PAY SPECIAL COUNSEL AN HOURLY ATTORNEY FEE CONSTITUTED AN IMPERMISSIBLE SANCTION AND DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW.

Federal courts have the inherent authority to impose sanctions on lawyers for certain abuses of the litigation process, but only upon a specific finding of bad faith conduct on the part of the attorney. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980); *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) (inherent power sanctions require finding of bad faith). The Supreme Court has said that bad faith is conduct equivalent to willful disobedience of a court order; fraud on the tribunal; acting vexatiously, wantonly, or for oppressive reasons; disrupting litigation or hampering enforcement of a court order; or "defiling the very temple of justice." Cambers, 501 U.S. at 45-46. As a matter of constitutional due process, a sanction may be imposed only after notice of the conduct for which sanctions are threatened and an opportunity to be heard in response. *Mickel v. Morin*, 297 F.3d 114 (2d Cir. 2002).

As discussed above, the Worby firm does not have a conflict of interest in its simultaneous representation of the VCF clients and the SPA plaintiffs. Assuming *arguendo* that it did, however, the conduct alleged here would come nowhere close to the level of bad faith justifying impositions of sanctions under the court's inherent authority. The ethics rules are rules of reason. New York Rules, Scope, cmt. [6]. Reasonable lawyers can and do differ in their resolution of questions such as whether the interests of clients are "differing" for the purposes of Rule 1.7(a). Making a judgment call that another lawyer would disagree with does not rise to the level of bad faith as the Supreme Court has defined it in cases like *Chambers*.

The Second Circuit has held that "due process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997) *quoting In re Ames Dep't Stores, Inc*., 76 F.3d 66, 70 (2d Cir. 1996) (alteration in original), *cert. denied*, 522 U.S. 932 (1997); *accord Rounseville v. Zahl*, 13 F.3d 625, 632-33 (2d Cir. 1994).  The Court also recognized Rule 11 requires that sanctions be imposed only "after notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c); see also Fed. R. Civ. P. 11(c) advisory committee's note to 1993 *amendments* ("Explicit provision is made for litigants to be provided notice of the alleged violation and an opportunity to respond before sanctions are imposed.").  *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc*., 174 F.3d 87, 92 (2d Cir. 1999).

The *Nuwesra* Court went on to note that in particular, "a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter." *Nuwesra*, 174 F.3d 87, 92 (2d Cir. 1999), *quoting Lapidus*, 112 F.3d at 97 (emphasis added); *see also United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1346 (2d Cir. 1991) (district court must "specify the sanctionable conduct and the authority for the sanction"). "The purpose of particularized notice is to put counsel 'on notice as to the particular factors that he must address if he is to avoid sanctions.' " *Lapidus*, 112 F.3d at 96 (*quoting Jones v. Pittsburgh Nat'l Corp*., 899 F.2d 1350, 1357 (3d Cir.1990)). Accordingly, Rule 11 requires that the court, before imposing sanctions sua sponte, "enter an order describing the specific conduct that appears to violate [the rule] and directing [the] attorney ... to show cause why it has not violated [the rule] with respect thereto." Fed. R. Civ. P. 11(c)(1)(B) (emphasis added).  None of the requisite notice was provided to WGENB before this Court announced at the February 2, 2011 conference that WGENB would

be responsible to pay an hourly attorneys' fee to the appointed Special Counsel.  Indeed, this Court has yet to expressly state why Special Counsel was necessary and the authority that supported his appointment.

In ordering WGENB to pay the hourly attorneys fee for its appointed Special Counsel Noah Kushlefsky and his firm, this Court has essentially sanctioned WGENB for the Court's perception that a conflict exists that may preclude the firm from properly representing the VCF clients and continuing to litigate their claims.  The February 7, 2011 order has thereby prospectively deprived WGENB of property (a substantial portion of their attorneys fees for these clients) without prior notice, an explanation of the alleged wrong for which WGENB is being punished and most seriously, an opportunity for WGENB to defend its conduct and representation of its VCF clients and thereby avoid the imposition of this Order and its attendant costs.  Moreover, this Court has not addressed where the fees to pay Mr. Kushlefsky will come from in the event the VCF clients' claims do not ultimately result in a plaintiff's verdict or successful settlement and thus do not generate any attorneys' fees.  There is certainly no basis to require WGENB to pay out a portion of attorneys fees derived from representation of clients whose claims are not even implicated in the scope of the February 7, 2011 order.

An attorney's right to fees under a contingent fee contract is a recognized property right. Because WGENB's contingent fee contracts with the VCF plaintiffs constitute property, as does the putative attorneys fees that may be earned upon resolution of their claims, the law firm is entitled to the procedural minima of due process before this Court renders any order requiring the firm to pay a portion of its fees to Special Counsel.  These minimal requirements are effective notice and an opportunity to be heard and neither was provided before this Court's

announcement of Mr. Kushlefsky's appointment and the manner in which this Court expected he would be paid at the February 2, 2011 conference (and the resulting February 7, 2011 Order).

Tellingly, the *Nuwesra* Court found that the District Court in that matter had failed to properly apprise the appellant in that matter of the specific conduct alleged to be sanctionable. *Nuwesra*, 174 F.3d at 92.  The Second Circuit noted that the District Court's written order had only stated that "[t]he court will be awarding attorney's fees based on one or more of the following provisions: 42 U.S.C. § 12205; 28 U.S.C. § 1927; Rule 11(c)(1)(B) F.R.C.P.; and the inherent power of the district court to award attorney's fees."   The Second Circuit held that although the District Court's order notified appellant of the possible legal bases for a fee award, it failed to apprise him of the particular conduct for which the court was considering imposing sanctions. Plainly, WGENB did not even receive the notice that the Second Circuit deemed insufficient in *Nuwesra*.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion, rescinding the February 7, 2011 Order appointing Noah H. Kushlefsky as Special Counsel to 59 Worby Groner Edelman & Napoli Bern, LLP plaintiffs and limiting the scope of any further orders appointing Special Counsel as set forth herein, as well as such other relief as this Court deems just and proper.

Dated: New York, New York
        March 4, 2011

Respectfully Submitted,

WORBY GRONER EDELMAN & NAPOLI BERN LLP
*Attorneys for Plaintiffs*

Denise A. Rubin (DR-5591)

350 Fifth Avenue, Suite 7413
New York, New York 10118
(212) 267-3700

## ATTORNEY'S DECLARATION/AFFIRMATION OF SERVICE

Denise A. Rubin, an Attorney duly licensed to practice before the Courts of the State of New York, hereby affirms/declares the following under penalty of perjury:

I am associated with the law firm Worby Groner Edelman & Napoli Bern, LLP and as such represent the plaintiffs in the within action.  On March 4, 2011, I duly served a true copy of the within Memorandum of Law on the persons listed below by e-mail.

James E. Tyrrell Jr., Esq.
Joseph Hopkins, Esq.
Patton Boggs, LLP
*Defendants' Liaison Counsel*
One Riverfront Plaza, 6th floor
Newark, New Jersey 07102
jtyrrell@pattonboggs.com
jhopkins@pattonboggs.com

Margaret Warner, Esq.
McDermott Will & Emery, LLP
600 13th Street, N.W.
Washington, D.C. 20005-3096
mwarner@mwe.com

Andrew J. Carboy,  Esq.
Nicholas Papain, Esq.
Sullivan Papain, Block, McGrath
& Cannavo, P.C.
120 Broadway
New York, New York 10271
Acarboy@triallaw1.com

Noah H. Kushlefsky, Esq.
Kreindler & Kreindler, LLP
750 Third Avenue
New York, New York  10017-2703

Denise A. Rubin (DR5591)