```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/11/11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
IN RE WORLD TRADE CENTER DISASTER SITE       :
LITIGATION                                    :
                                              :
------------------------------------------------------------ :
IN RE LOWER MANHATTAN DISASTER SITE           :
LITIGATION                                    :
                                              :
------------------------------------------------------------ :
IN RE WORLD TRADE CENTER DISASTER SITE        :
AND LOWER MANHATTAN DISASTER SITE             :
LITIGATION                                    :
                                              :
------------------------------------------------------------ x

**ORDER DENYING MOTION**
**TO VACATE ORDER**
**APPOINTING COUNSEL**

21 MC 100 (AKH)
21 MC 102
21 MC 103

ALVIN K. HELLERSTEIN, U.S.D.J.:

    Plaintiffs' Liaison Counsel, Worby Groner Edelman & Napoli Bern LLP ("Napoli

Bern") moves under Federal Rule of Civil Procedure 60(b) for an Order vacating my Order of

February 7, 2011, appointing Noah H. Kushlefsky, Esq., as special counsel to advise 59 Plaintiffs

represented by Napoli Bern. The 59 Plaintiffs were accepted by Napoli Bern as clients even

though they had made claims to and received recoveries from the Victim Compensation Fund

("VCF") created by the Air Transportation Safety and System Stabilization Act ("ATSSSA"), 49

U.S.C. § 40101 et seq.

    Napoli Bern sued the City of New York, its contractors, and various other entities

on behalf of these 59 Plaintiffs, even though these Plaintiffs had given releases of all litigation by

making claims to the VCF. When it came time to settle, Napoli Bern removed these Plaintiffs

from the list of Plaintiffs eligible to settle—for reasons, it seemed, that preferred their other

clients and were against the wishes of some, perhaps all, of these 59 clients. Napoli Bern had

previously represented that it would find an independent special counsel to advise these Plaintiffs

with regard to their cases in this litigation, but never did so. I therefore appointed Mr.

Kushlefsky in relation to what I perceived was a conflict of interest. Napoli Bern now responds

1

that no such appointment is necessary.  It was, and is, necessary, and for the reasons that follow, the motion of Napoli Bern is denied.

## I.   Background to the Motion

In June 2010, the City of New York and its contractors, the WTC Captive, and Plaintiffs' Liaison Counsel submitted an amended version of the SPA for review.[1]  I found the terms of the SPA fair and reasonable and approved them.  The SPA required at least 95 percent of the Plaintiffs eligible to settle to choose to do so.  If fewer than 95 percent of these Plaintiffs opted into the SPA, it would not be effective, and the 10,000 to 11,000 cases on the Court's docket would proceed toward trial.  The SPA provided that Plaintiffs eligible to settle their cases had until September 8, 2010, to choose whether or not to settle, a date later extended to November 8, 2010.

The Plaintiffs eligible to settle were compiled on a list by Plaintiffs' Liaison Counsel, mainly Napoli Bern, and cross-checked and certified by the WTC Captive.  Plaintiffs were eligible to settle if they had filed either a complaint or a notice of claim against the City by April 12, 2010.  This list, the Eligible Plaintiff List ("EPL"), was not filed and was considered confidential to the parties.  I was given to understand that approximately 10,500 Plaintiffs in the Master Calendars were listed.  If 5 percent, approximately 525 eligible Plaintiffs, chose not to opt into the SPA, the settlement would not be effective.

On July 26, 2010, and August 3, 2010, I held public meetings in Staten Island and Queens, respectively, to discuss the SPA with the Plaintiffs themselves, and to answer their questions.  The meetings were attended by Plaintiffs' Liaison Counsel; Defendants' counsel; the WTC Captive's counsel; the Allocation Neutral; and the Special Masters.  All addressed the

---

[1] Plaintiff's Liaison Counsel is Napoli Bern and Sullivan Papain Block McGrath & Cannavo, P.C.  Sullivan Papain is not a party to this motion; it does not represent any of the 59 Plaintiffs at issue.

people assembled.  At these meetings, several Plaintiffs raised the question of their eligibility to

settle despite previously making claims to the VCF.  These Plaintiffs made clear that they wished

to enter the SPA, representing that their injuries had become much more serious and that their

recoveries from the VCF reflected an earlier and different state of injuries.  At the Queens public

meeting, I stopped the discussion of this issue because of the likelihood that it would soon be

presented to me for decision:

> There is going to be an issue or there may be an issue with the
> Victims Compensation Fund and people who have made
> claims. . . .  You needn't say things because they could be relevant
> in that and I will have to decide.  I can't decide that now.

Transcript of Public Meeting at 84, In re World Trade Center Disaster Site Litig., 21 MC 100

(S.D.N.Y. Aug. 3, 2010).  I learned, subsequently, that 59 Plaintiffs were affected, all

represented by Napoli Bern, with knowledge, it seemed, of their VCF experiences.

Under ATSSSA, any person who makes claim to the VCF "waives the right to file

a civil action (or to be a party to any action) in any Federal or State court for damages sustained

as a result of the terrorist-related aircraft crashes of September 11, 2001."  ATSSSA

§ 405(c)(3)(B)(i), 49 U.S.C. § 40101 note.  The SPA, negotiated by Plaintiff's Liaison Counsel

with the WTC Captive, provides that "any Plaintiff who received an award from the September

11th Victim Compensation Fund is ineligible to receive any payment referenced in this

Agreement."  SPA § VII.A.

Napoli Bern had conflicting obligations.  If the 59 Plaintiffs were admitted to the

SPA, as many of them requested, the final settlement amount would be spread thinner, affecting

in particular the most severely injured Plaintiffs, the "Tier 4" Plaintiffs, whose recoveries were

variable and dependent on how much of the fixed settlement amount would remain after the less

severely injured Plaintiffs had been paid.  Further, litigating the eligibility of the 59 Plaintiffs

could have delayed and prejudiced the entire settlement, and therefore prejudiced the

expectations of many for timely realization of their settlements, which were to provide funds to

pay for medical and other necessities. Finally, if the 59 Plaintiffs opted out of the SPA, the

ability of the Plaintiffs to attain the 95 percent threshold, and to attain the higher percentages

yielding larger settlement payments, would be jeopardized. On the other hand, Napoli Bern had

to make any possible arguments it could on behalf of these 59 Plaintiffs. Any way one looks at

it, Napoli Bern's common representation of these 59 Plaintiffs and its thousands of other

Plaintiffs put the firm in conflict.

   Napoli Bern had additional issues. Napoli Bern, in the expectation of a

contingency fee, had advanced over 10,000 cases for nine years without compensation. As I

learned later in the litigation, from a motion that Napoli Bern withdrew, the firm was deeply in

debt, to the extent of millions of dollars, secured by personal guaranties of the principals of the

firm, payable at high, compounding interest rates. Approval of the SPA would produce

approximately $150 million for the firm in fees, plus expenses, and would allow the firm to

liquidate its debt.[2]

   In the first week of September, and before, I raised the issues of conflict with

Napoli Bern, and the need for an independent lawyer to consult with the 59 Plaintiffs and to file

an appropriate motion. Napoli Bern offered to engage an independent lawyer, in preference to

my appointing one, and I deferred to that wish. In the weeks that followed, nothing happened.

Thus, in an order setting a status conference for October 5, 2010, I initiated another discussion.

---

[2] In addition to settling with the City and its contractors, Napoli Bern have settled the lawsuits against the other principal Defendants, which include the Port Authority of New York and New Jersey; entities known as the Freshkills Defendants; Lloyd's of London; Survivair; and others. These settlements added an additional $100 million in settlement funds, and additional fees. A failure of the SPA would have jeopardized these settlements as well.

See Agenda for Status Conference, 21 MC 100 (Doc. No. 2183) (S.D.N.Y. Sept. 16, 2010). At

the conference, Mr. Napoli asked for more time to engage such a lawyer:

> THE COURT: Item 4 [of the agenda] reads: The status of plaintiffs
> who were not listed as eligible for recovery under the master
> settlement agreement because they participated in the victim
> compensation fund, their stated desire to participate in the master
> settlement, and the need for a judicial determination of these
> plaintiffs' eligibility.
> Mr. Napoli, do you want to report?
>
> MR. NAPOLI: Yes, your Honor.
> Our office is in the process, and we asked for the
> consultation of the Court, of finding special counsel to work on
> and talk with these clients to work on what is going to happen with
> these cases, whether it be by motion practice or some other means
> of resolution, and we would ask that we report back to you on
> finding special counsel.
>
> THE COURT: I'm anxious to help you, Mr. Napoli. I welcome
> your report. I received letters from these people, many of them,
> who complained that they entered the Victim Compensation Fund
> thinking that their injuries were slight. They say their injuries are
> now graver. They signed a release in a very broad form giving up
> all rights to litigate, and they would like to escape the terms of
> their release. One way or another, we need to have resolution of
> this issue.
> The master settlement process agreement defines eligible
> plaintiffs in such a way as to exclude these people, but they need to
> have resolution of their status in the litigation and whether the
> defense of release is valid or not and to what extent. So I'm very
> happy that you are exploring the availability of the special counsel
> to represent this group, and we'll see how this goes.

Transcript of Status Conference at 13-14, In re World Trade Center Disaster Site Litig., 21 MC

100 (S.D.N.Y. Oct. 5, 2010). By late October, Napoli Bern still had not progressed. Mr. Napoli

asked for another 30 days, representing that his firm was weighed down with processing

settlement paperwork.

I continued to discuss the issue of these 59 Plaintiffs informally with counsel. A

number of times, Mr. Napoli represented to the Court and to counsel for the WTC Captive that

he would opt out these 59 Plaintiffs—without consulting with his clients, it appeared—but withdrew that purported resolution when counsel for the WTC Captive pointed out that if these 59 Plaintiffs had no right to litigate, then they had no right to accept or reject the settlement, and also that 59 opt-outs would jeopardize the Plaintiffs' ability to obtain a 95 percent approval. Following these discussions, Mr. Napoli simply removed these 59 Plaintiffs from the EPL. Now, he would neither have to opt in or opt out for them. The 59 Plaintiffs thus became non-persons for purposes of the SPA.

In mid-November, the SPA was approved by 95.1 percent of the Plaintiffs listed on the EPL. There are issues with regard to that approval rate as well, but their telling awaits another motion pending before me. Of relevance to the present motion, Mr. Napoli's effort to resolve the issue was not a lawful resolution, for a lawyer cannot derogate any client's interests and prefer another client's interests.

By an agenda item at the status conference held February 2, 2011, I told Mr. Napoli that he had run out of time:

> THE COURT: Number two on the agenda is the status of plaintiffs who [obtained compensation from] the first victim compensation fund. I issued an order in October [but] there were discussions well before that. In November Mr. Napoli asked for another 30 days.
> Where are we, Mr. Napoli?
>
> MR NAPOLI: Your honor, I think there's two things to discuss on this topic. And one is the Zadroga Bill. There is some question as to whether or not these individuals will be eligible or ineligible for the reopening of the VCF to remedy any inequities in the amount of money they received either because it wasn't enough at the time, they didn't understand the injuries they had or those injuries got so much worse.
> So in that regard on one hand I would ask that your Honor . . . stay this until the regulations come out—
>
> THE COURT: No.

6

> MR. NAPOLI: OK. Then, your Honor, on the second hand, your
> Honor, then I would ask that a briefing schedule be made –
>
> THE COURT: The issue is, who gives them advice? . . . They
> need to be advised whether to try and opt into the settlement,
> whether to not opt into the settlement, whether to voluntarily
> dismiss their cases or to proceed with their cases. They need a
> lawyer to advise them. You have been their lawyer but you are
> bound under the settlement. As I understand it the terms of the
> [V]CF which they all participated [in] is to bar them from
> litigation. So someone's got to advise them what to do and I think
> I've waited enough time.

Transcript of Status Conference at 22-23, In re World Trade Center Disaster Site Litig., 21 MC

100 (S.D.N.Y. Feb. 2, 2011). On February 7, 2011, I engaged Noah H. Kushlefsky, Esq., of

Kreindler & Kreindler LLP, to advise these 59 Plaintiffs "of their respective rights and options

with regard to continuing in this litigation." Order Appointing Counsel, 21 MC 100 (Doc. No.

2341) (S.D.N.Y. Feb. 7, 2011). I provided that Napoli Bern was to compensate Mr. Kushlefsky

for his services, for Mr. Kushlefsky would perform services that Napoli Bern was obligated to

perform. The clients would be free, following consultation, to remain with Napoli Bern if both

client and law firm, after full disclosure and discussion, agreed that Napoli Bern henceforth

would be able to provide zealous and conflict-free representation to each client. Or, these 59

Plaintiffs could choose any other counsel to represent them, or any of them, including Mr.

Kushlefsky.

   I since have learned that Napoli Bern has refused to cooperate with Mr.

Kushlefsky, and has not turned over the files for any of these clients. Instead, Napoli Bern

moves under Federal Rules 60(b)(1) and (6) for vacatur of my Order appointing Mr. Kushlefsky.

Napoli Bern makes three arguments: (i) that Napoli Bern does not possess a conflict of interest

with regard to these 59 Plaintiffs; (ii) that if a conflict does exist, the appointment of Mr.

7

Kushlefsky is too broad a remedy; and (iii) that requiring Napoli Bern to compensate Mr.

Kushlefsky is an unfair sanction under Federal Rule of Civil Procedure 11.[3]

## II.   Discussion

In relevant part, Federal Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> . . .
>
> (6) any other reason that justifies relief.

Federal Rule 60(b)(1) is available for the district court to correct its own legal errors. United

Airlines, Inc. v. Brien, 588 F.3d 188, 175 (2d Cir. 2009). The point is to provide parties with a

mechanism for obtaining corrections of legal error more efficiently than the appeal process. In re

310 Assocs., 346 F.3d 31, 35 (2d Cir. 2003) (per curiam). Federal Rule 60(b)(6) motions must

be based on some reason other than those enumerated in the other subsections of the rule. Brien,

588 F.3d at 175. Relief is available only under "extraordinary circumstances." Rodriguez v.

Mitchell, 252 F.3d 191, 201 (2d Cir. 2001). The rule is used sparingly, "as an equitable remedy

to prevent manifest injustice." Lee v. Marvel Enterprises, Inc., 02 Civ. 8945, 2011 WL 382986,

at *9 (S.D.N.Y. Feb. 4, 2011). To obtain relief, the party must set forth "highly convincing

material" in support of the motion. Id. (quoting In re Evergreen Mut. Funds Fee Litig., 240

F.R.D. 115, 119 (S.D.N.Y. 2008).

---

[3] Napoli Bern presents an affidavit of W. Bradley Wendel, Professor of Law at Cornell Law School, which sets out basic principles of lawyers' conflicts in the customary setting. Professor Wendel is a leader in the field of legal ethics, but he is not intimately familiar with the lengthy and intricate history of these cases and this issue, as I am. His affidavit, no doubt correct on basic principles, does not account for the unusual nature of these cases and of Napoli Bern's conflicted representations.

Napoli Bern's principal contention is that no conflict exists with regard to these 59 Plaintiffs. New York Rule of Professional Conduct 1.7(a) sets forth the relevant rule on conflicts, and it provides that a lawyer "shall not represent a client if a reasonable lawyer would conclude that either . . . the representation will involve the lawyer in representing differing interests; or . . . there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." Comment 1 to Rule 1.7 provides:

> Loyalty and independent judgment are essential aspects of a lawyer's relationship with a client. The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of the client and free of compromising influences and loyalties. Concurrent conflicts of interest, which can impair a lawyer's professional judgment, can arise from the lawyer's responsibilities to another client, a former client or a third person, or from the lawyer's own interests. A lawyer should not permit these competing responsibilities or interests to impair the lawyer's ability to exercise professional judgment on behalf of each client.

N.Y. Rule Prof. Conduct 1.7(a), cmt. 1. Comment 24 further notes that "[a] conflict of interest exists . . . if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's representation of another client in a different case." Id. cmt. 24. At bottom, the consideration is straightforward: the reasonable lawyer should consider if one client "may reasonably fear that the lawyer will pursue [his or her] case less effectively out of deference to the other client." Id. cmt. 6.

Napoli Bern has been in a state of conflict of interest within the meaning of Rule 1.7(a). Napoli Bern took on these 59 Plaintiffs with the promise, implicit in any representation, that it would provide zealous advocacy, free from dilution by concerns about how other clients would be affected. To provide that service, Napoli Bern would have had to advocate that these 59 Plaintiffs should not be barred from suit by the ATSSSA, and that they should be able to

settle under the SPA. However, such advocacy by Napoli Bern would have created risk for other Plaintiffs that the settlement would be delayed or defeated, or that many of them would receive smaller recoveries. The interests of Napoli Bern's clients were "differing," as contemplated by Rule 1.7(a), and Napoli Bern's obligation to provide loyal and zealous advocacy for each of its clients was compromised.

Napoli Bern first tried to put the 59 Plaintiffs on the EPL, and then tried to opt them out of the SPA, this suggesting that in time they might be able to overcome the bar of the ATSSSA release. But this stratagem was not a solution desired by the Plaintiffs, for some or all of the 59 Plaintiffs preferred to settle. Indeed, some of the 59 Plaintiffs pleaded to the Court at the public meetings and in letters that they wanted—even needed—to settle. But Napoli Bern did not respond to the problem; instead, it removed these 59 Plaintiffs from the EPL. Having thus been in conflict for months, and having done nothing about it, Napoli Bern failed to give these 59 Plaintiffs the proper representation to which they were entitled. Instead, Napoli Bern favored the needs of the thousands of other clients whom it also represented. That this happened is hardly surprising, especially when one considers the possibility that Napoli Bern had financial motivations for preferring its thousands of settling clients.

Napoli Bern argues that it was not in conflict because these 59 Plaintiffs had no merit to their cases. The merit of these Plaintiffs' cases is not the issue. A lawyer's first obligation is make any and all possible good-faith arguments on behalf of his or her clients— each and all of his her clients—that is, to *advocate* as effectively as possible on their behalves. Napoli Bern indeed has an obligation to make arguments "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2), but it has made no arguments on behalf of these Plaintiffs.

Instead, Napoli Bern has allowed them to become second-class citizens of the Plaintiff population, waiting at the back of the line for all others to resolve their cases before having a chance to be heard. Even today, none of these 59 Plaintiffs knows whether or not his or her case is viable or can be made viable.

Nor is the conflict dissipated because the chance to settle under the SPA is now unavailable. Over 200 cases remain, those of the Plaintiffs who rejected the SPA and those of Plaintiffs who were ineligible. These cases are going to be the subject of rigorous pretrial practice, including motions to dismiss, motions under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), and motions in limine. Then, there will be trials. Whose cases shall go first? How shall Napoli Bern divide its resources among these remaining cases? Shall these 59 Plaintiffs wait until the end of the process? Does Napoli Bern intend again to subordinate the claims of these clients in favor of others?

From Mr. Napoli's representation at the last status conference, it appears Napoli Bern believes the new VCF created by the James Zadroga 9/11 Health and Compensation Act of 2010 ("Zadroga Act'), Pub. L. No. 111-347, 124 Stat. 3623 (2011), provides a solution to the firm's current problem. The Zadroga Act was not passed to alleviate Napoli Bern's dilemma or provide a relief from its unprofessional conduct. Whether the 59 Plaintiffs, or any of them, may become eligible to enter the new VCF authorized by the Zadroga Act is an open question at this point, and irrelevant to the concerns expressed in this Order.

Napoli Bern has ducked its conflict for months. That delay should not be extended. Napoli Bern's clients are as much entitled to conflict-free advice as any other client. I appointed Noah H. Kushlefsky to provide that consultation and advice, for Napoli Bern cannot do it.

11

This is a unique litigation, brought by 10,500 individuals, the rescue and clean-up workers who performed heroic service on the World Trade Center pile of smoldering debris. For many of these individuals, the injuries they alleged are seriously debilitating, compromising their lives, their vitality, and the health and well-being of their families. The realities of the cases have required a measure of judicial supervision to ensure that each of these Plaintiffs has been treated fairly. As part of that judicial supervision, I suggested months ago, and Napoli Bern agreed, that these 59 Plaintiffs needed an independent lawyer to consult with them, and, if need be, to represent their interests in a way that would not be influenced by the interests of any other Plaintiffs. Napoli Bern failed to fulfill this obligation, and its clients may well have been seriously prejudiced.

As to the remedy itself, Napoli Bern contends that I have, in effect, sanctioned the firm under Federal Rule 11 by foisting a lawyer on it, at its expense, for the benefit of clients who chose Napoli Bern to represent them. Whether and to what extent Napoli Bern should be sanctioned is another question—one that I do not need to reach in this Order. The issue here is how best to provide conflict-free representation to these 59 Plaintiffs. Mr. Kushlefsky was appointed because Napoli Bern, having asked for and received permission to find its own independent counsel to do the job, failed or was incapable of finding one. It is only fair that Napoli Bern compensate Mr. Kushlefsky, under my supervision, for performing the task that Napoli Bern undertook to do, but could not perform.

### III.    Conclusion

Napoli Bern's motion is denied. Noah H. Kushlefsky, as special counsel, shall begin contacting each of the 59 Plaintiffs promptly. Napoli Bern is ordered (i) to send a copy of this Order to each of the 59 Plaintiffs, and (ii) to forward a list of names, addresses, index

numbers, and phone numbers of each of these 59 Plaintiffs to Mr. Kushlefsky.  Napoli Bern shall

file a report showing it performed these requirements, by March 16, 2011.  Napoli Bern shall

further promptly and fully cooperate with Mr. Kushlefsky by turning over files of these 59

Plaintiffs, and otherwise providing its cooperation.  Mr. Kushlefsky shall endeavor to complete

his consultations, and file a report, by April 15, 2011, making recommendations on how to

proceed, including a description of motions that may be appropriate.

      The Clerk shall terminate the motion (Doc. No. 2378).

      SO ORDERED.

Dated:      March **11**, 2011
           New York, New York

                                   ALVIN K. HELLERSTEIN
                                   United States District Judge

13