USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/3/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                             :

IN RE WORLD TRADE CENTER DISASTER SITE    :  **FAIRNESS ORDER—**
LITIGATION                                :  **DECEDENTS' ESTATES**
                             :
-------------------------------------------------------------- :  21 MC 100 (AKH)
                             :  21 MC 103
IN RE WORLD TRADE CENTER DISASTER SITE    :
AND LOWER MANHATTAN DISASTER SITE       :
LITIGATION                                :
                             :
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiffs' Liaison Counsel, Worby Groner Edelman & Napoli Bern, LLP, seeks

leave to file compromise applications pursuant to New York Estates Powers & Trusts Law § 5-

4.6 (McKinney 2011), on behalf of Plaintiffs representing 104 estates that have settled their

lawsuits. The purposes of this Order are to provide background; to express this Court's findings

of reasonableness and fairness regarding the settlements; and to facilitate the supplementary

findings that will be necessary in the Surrogate's Courts having jurisdiction of the administration

of the decedents' estates.

        These 104 cases were among more than 10,000 cases that were brought by

individuals who worked to search for survivors and remains, and to clean up the debris, in the

wake of the terrorist-related aircraft crashes of September 11, 2001. Pursuant to the Air

Transportation Safety and System Stabilization Act ("ATSSSA"), this Court exercised exclusive

jurisdiction over these cases. ATSSSA § 407(b)(3), 49 U.S.C. § 40101 <u>note</u>. The cases were

coordinated into Master Calendars, 21 MC 100 for the cases arising from the World Trade

Center complex and related areas, and 21 MC 103 for workers who worked both in the complex

and in nearby areas of southern Manhattan.[1]  After many years of litigation, Plaintiffs' Liaison

Counsel, counsel for Defendants, and counsel for the WTC Captive Insurance Company, an

entity formed by Congress to provide $1 billion of insurance to the City of New York and its

contractors, agreed to a mass settlement agreement for all claims by Plaintiffs against the City of

New York and its contractors.

       In March 2010, I rejected an earlier version of this agreement, ruling that it

provided too little compensation to the Plaintiffs and too much to the attorneys, and that it was

unfair in other respects as well.  Transcript of Status Conference, In re World Trade Center

Disaster Site Litig., 21 MC 101 (S.D.N.Y. March 19, 2010).  Further negotiations followed: the

terms and conditions were improved, more money was provided for settling Plaintiffs,

compensation to lawyers was reduced, and internal procedures were modified.  The agreement

again was submitted to me, and in June 2010, at a status conference at which various Plaintiffs

expressed their opinions, I approved the settlement as fair and reasonable.  Transcript of Status

Conference, In re World Trade Center Disaster Site Litig., 21 MC 100 (S.D.N.Y. June 10, 2010).

The terms and conditions of the agreement are set out in a 104-page document known as the

Settlement Process Agreement, As Amended ("SPA"), a copy of which is filed in the public

records of this case.[2]

       The SPA required, to become effective, that 95 percent of the eligible Plaintiffs

accept the settlement.  An elaborate set of proceedings followed to assure that all Plaintiffs

learned of the settlement and were able to make an intelligent decision whether or not to accept

---

[1] Approximately 2,000 additional cases involving workers in only the nearby areas of Southern Manhattan were
coordinated in 21 MC 102. The City of New York has settled these cases as well, but many defendants have not.
The cases in this Master Calendar are not involved in this Order.

[2] A copy of the SPA and the attached exhibits also may be found on this Court's website. See
http://nysd.uscourts.gov/cases.php?form=sept11 (last visited June 2, 2011).

it. I held two public hearings in public assembly areas—a public school in Staten Island and the courthouse of the New York Supreme Court in Queens—which were attended by many of the Plaintiffs, and were covered extensively by the press. I appointed a professor of ethics and professional responsibility to monitor and assure fairness and intelligibility in the communications to the Plaintiffs. I appointed Special Counsel to complement the efforts of Liaison Counsel to help reach out to Plaintiffs who were not responding to communications and whose decisions could not be ascertained. And I appointed an Allocation Neutral and an Appeals Neutral to administer the SPA, to assure judicial accountability. See Order Acknowledging, and Setting Hearing On, Modified and Improved Agreement of Settlement, In re World Trade Center Disaster Site Litig., 21 MC 100 (Doc. No. 2083) (S.D.N.Y. June 10, 2010); Transcript of Status Conference at *41, In re World Trade Center Disaster Site Litig., 21 MC 100 (S.D.N.Y. June 10, 2010).

In November 2010, more than 95 percent of the Plaintiffs eligible to settle under the SPA accepted the settlement, causing it to take effect. The settlement, and other settlements that followed with additional Defendants, yields an approximate range of $720.8 to $811.8 million in compensation for the settling Plaintiffs, whose individual recoveries turn on the amounts they receive from the SPA and the other settlements they are eligible to join. Order Approving Settlements, In re World Trade Center Disaste Site Litig., 21 MC 100 (Doc. No. 2248) (S.D.N.Y. Nov. 15, 2010). Proceedings to determine the precise gross amount are pending.

The SPA provides a tier system for categorizing Plaintiffs' injuries, which is tied to the type and severity of the injury and the capacity for proving a causal relation to the conditions of the work sites. Tiers 1, 2, and 3 provide fixed payments, ranging from $3,250 for

3

Tier 1 Plaintiffs to either $6,500 or $11,000 for Tier 3 Plaintiffs, depending on their particular cases and the areas in which they worked. Tier 4, populated by Plaintiffs who suffered the most severe injuries related to work-site conditions, provides fixed payments and a final variable payment. The total amount for Tier 4 Plaintiffs can range from a five-figure to a seven-figure settlement amount, depending on the type and severity of injury.

The Tier 4 payment system requires each Plaintiff to present evidence of the severity of his injury. That evidence is evaluated by the Allocation Neutral, who determines a settlement award based on the medical evidence presented by the Plaintiff. The SPA provides for a rehearing process to the Allocation Neutral, and an appeal to the Appeal Neutral.

The 104 estates at issue populate Tiers 1-3 and Tier 4. I understand that estates in Tiers 1-3 are ready to be paid the amounts owed to them under the SPA, and that the Allocation Neutral is reviewing the Tier 4 estates' claims to make a final award.

New York Estates Powers & Trust Law sets out a procedure for approving litigation settlements entered into by estates of decedents. The law requires a "personal representative to the court in which the action is pending" to make an application that calls for the court to inquire into the merits of the action and the appropriateness of the settlement—or, in the wording of the statute, "compromise"—figure. N.Y. E.P.T.L. § 5-4.6(a). This court and the Surrogate's Court have concurrent jurisdiction over the approval process. See Id. § 5-4.6(e) ("Nothing in this section shall be deemed to preclude the attorney for the administrator or personal representative from petitioning the surrogate's court for approval of a compromise and for allocation and distribution thereof.").

The Surrogate's Courts are not familiar with the lengthy and complicated proceedings that took place in this Court. In the interest of fairness, judicial efficiency, and

4

comity between federal and state courts, this Court should review the issues with which it is familiar, remitting to the Surrogate's Courts the issues of probate administration with which it has special expertise.

I have made the determinations of fairness that the law requires to approve a settlement entered into by the representatives of the decedent's estates. E.g., Transcript of Status Conference at *41, In re World Trade Center Disaster Site Litig., 21 MC 100 (S.D.N.Y. June 10, 2010). I have made this determination for each and all of these 104 decedents' estates. But this Court lacks knowledge or expertise with the special issues of probate administration that also must be considered. In the interests of fairness, judicial efficiency and comity, those issues should be considered by the appropriate Surrogate's Courts. Pursuant to the concurrent jurisdiction provided by section 5-4.6(a), Plaintiffs' representatives of the 104 estates should now make application to the appropriate Surrogate's Courts to make the final decisions on each application to enable the payments to each representative to be distributed to the rightful beneficiaries.

SO ORDERED.

Dated:      June 3 2011
            New York, New York                    ALVIN K. HELLERSTEIN
                                                  United States District Judge

5