# EXHIBIT C

Hearing before Hon. A.K. Hellerstein (21 MC 100)  4/15/2011  2:20:00 PM

```
 1   14FAAWORC1              Conference
 2   UNITED STATES DISTRICT COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3   ------------------------------x
 3   IN RE WORLD TRADE CENTER
 4   DISASTER SITE LITIGATION
 4   ------------------------------x   21 MC 100(AKH)
 5                                     New York, N.Y.
 5
 6                                     April 15, 2011
 6                                     2:20 p.m.
 7
 7   Before:
 8
 8               HON ALVIN K. HELLERSTEIN,
 9
 9                       District Judge
10
10                       APPEARANCES
11
11   WORBY GRONER EDELMAN & NAPOLI BERN, LLP
12        Attorneys for Plaintiffs
12        350 Fifth Avenue
13        New York, New York  10118
13   BY:  PAUL NAPOLI
14        CHRISTOPHER R. LOPALO
14
15   SULLIVAN PAPAIN BLOCK McGRATH & CANNAVO P.C.
15        Attorneys for Plaintiffs
16        120 Broadway
16        New York, New York  10271
17   BY:  ANDREW J. CARBOY
17
18   SCHIFF HARDIN LLP
18        Attorneys for Defendant
19        The Port Authority of NY and NJ
19        900 Third Avenue
20        New York, New York  10022
20   BY:  BETH D. JACOB
21        PAUL SCRUDATO
22
23
24
25
```

```
 1              APPEARANCES CONTINUED
 2
 2   PATTON BOGGS LLP
 3        Attorneys for Defendants
 3        The City of New York and
 4        contractors
 4        The Legal Center
 5        One Riverfront Plaza
 5        Newark, New Jersey  07102
 6   BY:  JAMES E. TYRRELL, JR.
 6        JOSEPH E. HOPKINS
 7
 7   McDERMOTT WILL & EMERY LLP
 8        Attorneys for Defendants
 8        WTC Captive Insurance Co.
 9        600 Thirteenth St, N.W.
 9        Washington, D.C.  20005-3096
10   BY:  DAVID BIESLER
11        - also present -
12   KREINDLER & KREINDLER LLP
12        750 Third Avenue
13        32nd Floor
13        New York, New York  10017
14   BY:  NOAH KUSHLEFSKY
15   And Special Masters, et al.
16                oOo
17
18
19
20
21
22
23
24
25
```

```
 1
 2              (Case called)
 3              THE COURT:  Good afternoon, everyone.  Please be
 4   seated.
 5              You should know -- find seats, folks -- that I have
 6   received another report from Mr. Garretson and posted it on the
 7   web -- substantial progress in making a payments.  I don't have
 8   the dollar numbers and I don't have a good recollection of what
 9   I posted on the web yesterday but it's very pleasing at the
10   progress that had been made and continues to be made.  There
11   are a certain number of plaintiffs who've still not completed
12   the forms they have to fill out and I don't know the
13   significance of that or whether there are issues that need to
14   come to me that happened.
15              I have not yet decided the question raised by the
16   objections of the Captive Insurance Company with regard to the
17   obligation to make incentive payments.  That was the subject of
18   an earlier order which has been challenged.  And since I issued
19   that order without the benefit of briefing from both sides I
20   need to consider that position carefully and consider the
21   respective positions set out in the briefs and come to a
22   decision.  I am disappointed in my own lack of progress which I
23   hope to remedy as soon as I can.  That's a fancy way of saying
24   I haven't gotten to it yet but I will.  There's been other
25   things that keep on emerging and pushing it backwards, so not
```

```
 1   only this case but other of the 9/11 cases and indeed my whole
 2   calendar.
 3              Mr. Beisler, is there anything that you want to add to
 4   the issues I just touched on?
 5              MR. BIESLER:  Just a couple of highlights from
 6   Mr. Garretson's report if you like.
 7              There has been a total of about $36.9 million in
 8   payments sent out to the plaintiffs' firms for distribution to
 9   their respective clients, precisely $36,850,830.27.  As the
10   report reflects 9,675 of the primary plaintiffs have been paid
11   to date.  That's about 95.6 percent of them.
12              In terms of upcoming important milestones
13   Mr. Garretson's report reflects that medical records review is
14   well under way and he anticipates Tier IV interim payments in
15   about six weeks by the end of May and further expects to
16   complete final distributions this calendar year by December.
17              From our perspective the process is moving along very
18   well.  There are a few individuals who have some issues with
19   paperwork.  We have been working through that with the mutual
20   plaintiffs' counsel.  And you could see in the report that a
21   fair number of the remaining outstanding issues in that regard
22   relate either to estates that are still being probated or
23   otherwise have liens that are still being resolved.  So we are
24   very pleased with the progress to date and very comfortable
25   with the work by allocation.
```

Page 17

1   and developed according to what might be good there. Both
2   aspects of the process were pleasantly interrupted by the
3   announcement of the settlement.
4       In working these 78 cases out now with the benefit of
5   a great deal of experience I try to consider how to gain the
6   requisite measure of specificity. I've considered the case
7   management order number 10 that I signed in the context of the
8   special process agreement and I've considered the experience I
9   in trying to elicit specificity through pleadings at an earlier
10  stage of the case. And I thought that neither goal as it was
11  put out to me would give me the kind of progress that I thought
12  would – in these case. To try to borrow and adapt and take as
13  much as possible to create a procedure that really is
14  unprecedented given the variety of the cases and the number of
15  cases and the seriousness of these cases and the hot crucible
16  of 9/11, I developed a procedure we had using the population of
17  the database and achieving uniformity with values that have now
18  have been tested to some substantial degree with the earlier
19  settlement enables counsel to fix values and to be able to fix
20  values as information comes in in a much more reliable way.
21      With the confidence of a 95 percent plus vote of
22  acceptance even though we have a field of plaintiffs who did
23  not wish to join us, we have values that could come very close
24  to creating an order of settlements for those who wish to
25  settle. And for those who didn't wish to settle we would have

Page 18

1   a pathway towards trial. That system worked before. That's
2   why I think it would work now and that is why I am adopting the
3   system.
4       So we will reduce the questions as Mr. Tyrrell
5   suggests. We will come out with the medical reports from both
6   sides as Mr. Tyrrell suggests. But in order to do that
7   effectively we need releases from every plaintiff in those 78
8   And if I find that the authorizations are not advanced I can
9   conclude that that plaintiff is not moving his case ahead and
10  may be risky and involuntary dismissal.
11      So not only will plaintiff lose his eligibility but he
12  may also lose his status as plaintiff. So we don't have to
13  anticipate what will come but I want everybody to know that the
14  obligation to give -- is a serious one and cannot be neglected.
15      Now, Mr. Tyrrell, what is a good date to require that?
16      MR. TYRRELL: Your Honor, given the fact you've
17  ordered it already, I would say seven days from now would be
18  the outside date and we would take on to provide the written
19  authorization. It's only a form you have to sign. It's not a
20  big deal.
21      THE COURT: So you would provide the authorization say
22  Tuesday coming?
23      MR. TYRRELL: We've provided them already, your Honor.
24  All we want is them back signed by the plaintiffs.
25      THE COURT: I'd like to attach it to the order. So

Page 19

1   Mr. Hopkins could send Mr. Roth a copy of that which has been
2   set out. The obligation will be returned let's say by next
3   Friday.
4       MR. TYRRELL: What the problem has been so you now
5   know and we are going to clarify that if what we provide your
6   Honor's chambers some of these come back signed by the
7   attorneys.
8       THE COURT: They have to be signed by the individual.
9       MR. LOPALO: Your Honor?
10      THE COURT: Yes, Mr. Lopalo.
11      MR. LOPALO: We have been doing this exchange for the
12  past several years. My office has been signing the
13  authorizations on behalf of clients with power of attorney and
14  that works. My office uses that type of authorization every
15  day. And uses it with Mount Sinai. Uses it with private
16  medical insurances and uses it with the city.
17      THE COURT: If the power of attorney is attached,
18  Mr. Hopkins, will the city accept that?
19      MR. HOPKINS: We've had occasion with many providers,
20  your Honor, and it's pushed back to the further --
21      THE COURT: There is no reason why the clients
22  themselves should not be signing it.
23      MR. LOPALO: We'll need more than next Friday to get
24  this accomplished.
25      THE COURT: Mr. Lopalo, if you cannot provide this

Page 20

1   individuals by Friday a letter from your office stating the
2   precise approximate date by which they will be provided will be
3   satisfactory to avoid any sanction but you must have that on an
4   individual basis.
5       MR. TYRRELL: Your Honor, when this is done we will
6   render to you a report that indicates all that have done it and
7   which ones are missing so that your Honor can then decide where
8   to go from there.
9       THE COURT: Thank you.
10      MR. TYRRELL: Your Honor, if I can go to a slightly
11  different subject. I know -- we're starting of course with
12  these 78, none of whom are the 60 we discovered before as your
13  Honor well knows. But we learned a lot in probing it to get
14  full medical records from the city and I am speaking now only
15  about the City of New York, as to these 78 many of them are
16  firemen, policemen and others who are city workers, some are
17  not. The city -- I know from past experience -- so the city
18  needs to fully complete the job, not May 13 but June 1. We'll
19  produce --
20      THE COURT: Sorry?
21      MR. TYRRELL: June 1, another two weeks because a of
22  lot of these medical records, current medical records are
23  easier to get but for people who have been fire officers for 20
24  years, a lot of this is in archives on old computer dates.
25  It's hard to get it out.