# EXHIBIT D

Hearing before Hon. A.K. Hellerstein (21 MC 100 102 103)  7/25/2011  2:30:00 PM

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
     -----------------------------x
     IN RE WORLD TRADE CENTER
     DISASTER SITE LITIGATION
     -----------------------------x    21 MC 100(AKH)
     IN RE LOWER MANHATTAN DISASTER    21 MC 102(AKH)
     SITE LITIGATION                   21 MC 103(AKH)
     -----------------------------x
     IN RE COMBINED WORLD TRADE CENTER
     DISASTER SITE AND LOWER MANHATTAN
     DISASTER SITE LITIGATION
     -----------------------------x
                            New York, N.Y.
                            July 25, 2011
                            2:30 p.m.
     Before:

             HON. ALVIN K. HELLERSTEIN,

                       District Judge

                       APPEARANCES

     WORBY GRONER EDELMAN & NAPOLI BERN, LLP
         Attorneys for Plaintiffs
         350 Fifth Avenue
         New York, New York 10118
     BY: PAUL NAPOLI
         CHRISTOPHER R. LOPALO
         MARC BERN
     SULLIVAN PAPAIN BLOCK McGRATH & CANNAVO P.C.
         Attorneys for Plaintiffs
         120 Broadway
         New York, New York 10271
     BY: ANDREW J. CARBOY
         NICHOLAS PAPAIN

     PATTON BOGGS LLP
         Attorneys for Defendants
         The City of New York and
         contractors
         The Legal Center
         One Riverfront Plaza
         Newark, New Jersey 07102
     BY: JAMES E. TYRRELL, JR.
         JOSEPH E. HOPKINS
         CHRISTOPHER DiMURO
```

```
                       APPEARANCES (Continued)
     McDERMOTT WILL & EMERY LLP
         Attorneys for Defendants
         WTC Captive Insurance Co.
         600 Thirteenth St, N.W.
         Washington, D.C. 20005-3096
     BY: MARGARET H. WARNER
         - also present -
     KREINDLER & KREINDLER LLP
         750 Third Avenue
         32nd Floor
         New York, New York 10017
     BY: NOAH KUSHLEFSKY
     And Special Masters, et al.
                            oOo
```

 1   (Case called)
 2   (In open court)
 3       THE COURT: Good afternoon, everyone. Please be
 4   seated.
 5       THE DEPUTY CLERK: In re: World Trade Center disaster
 6   site litigation. Counsel, before you start speaking, state
 7   your names for the record.
 8       THE COURT: Very nice to see all of you on this
 9   mid-summer Monday afternoon. So the parties have suggested an
10   agenda. First, having an update on the settlement; second, an
11   update on the Zadroga bill; third, I'll interject
12   Mr. Kushlefsky's report; fourth, the report on discovery that's
13   been had. I wasn't sure there was any, but I'll be glad to
14   hear that. Five, the discovery plan going forward; six, the
15   status of the opinion writing of the objections to my
16   December 30 order with regard to incentive payments.
17       I could dispose of that last one. I've been overcome
18   by digressions, so the opinion is slowly, slowly germinating.
19   It's taken longer than I had envisioned. I've been having
20   other issues come before me that I had not envisioned. I'll do
21   my best to try to move it forward within the next two, three
22   weeks, but no promises. It's one of the benefits of being a
23   judge. There are no clients asking about this or that.
24       All right, let's do the settlement update. We begin
25   with Ms. Warner, please.

 1       MS. WARNER: Your Honor, Margaret Warner for the WTC
 2   captive. Your Honor, through last Friday we report that there
 3   had been 24 waves of payments made pursuant to the final
 4   settlement agreement.
 5       THE COURT: I'm sorry, Ms. Warner, could you do that
 6   again?
 7       MS. WARNER: Through last Friday, your Honor, we
 8   report that there have been 24 waves of payments made to
 9   plaintiffs pursuant to the final settlement agreement. The
10   total amount of money that has been paid pursuant to the final
11   settlement agreement is $122.3 million in direct payments to
12   plaintiffs, and an additional $23.5 million, approximately, to
13   Met Life for the critical care insurance policy feature of the
14   settlement. Therefore, the total amount of money that has been
15   paid for the settlement through last Friday is
16   $145.825 million.
17       Your Honor, the breakdown of that money is as follows:
18   The settlement is now complete for 3,729 primary plaintiffs.
19   And when I say it is complete, I report that each of those
20   plaintiffs have received all initial payments and accelerated
21   final payments for which they claimed eligibility. They have
22   received the certificate of insurance from Met Life, or they
23   have been ruled ineligible, and three, they have not claimed
24   eligibility for any future payments. There are 10,116 opt-in
25   plaintiffs. Overall, 36.9 percent of the total opt-in

Hearing before Hon. A.K. Hellerstein (21 MC 100 102 103)  7/25/2011  2:30:00 PM

29

1  MR. NAPOLI: I don't think that's a problem. If I
2  recall your Honor back in April already signed such an order
3  and we already provided the HIPAA releases.
4  MR. TYRRELL: Here's the problem. It's not so much
5  getting the release, the question is where do we send it? We
6  have not had any contact with this witness to identify each of
7  their doctors who are medical providers. So we need from
8  Mr. Napoli, we either need sort of a predeposition of these
9  people or answered questions or we need Mr. Napoli to outline
10 for us where are the places to which we send it, because having
11 the release does nothing without knowing who their provider of
12 medical service is.
13 THE COURT: I issued an order of how many years back
14 you could go. Remind me how many years back you can go?
15 MR. TYRRELL: Five.
16 THE COURT: Is that what I said?
17 MR. TYRRELL: How many years back it went? Yes, at
18 that point it was 1996.
19 MR. HOPKINS: Five years prior to 9/11/2001, your
20 Honor.
21 MR. NAPOLI: Your Honor, if I may, your April order
22 ordered the plaintiffs to provide HIPAA releases and population
23 TCDI, which includes all the member medical providers. This
24 has already been done.
25 THE COURT: Well, if it's been done, then it's been

30

1  done, but my order would be that within two weeks, Mr. Napoli,
2  you will deliver to Mr. Tyrrell HIPAA releases and
3  identifications of each doctor consulted by each of your
4  plaintiffs in the five years before September 11, 2001 and
5  since then.
6  MR. TYRRELL: And that's precisely right.
7  THE COURT: Let me just see if that could be done,
8  Mr. Napoli.
9  MR. TYRRELL: The key thing --
10 THE COURT: Just a minute. Mr. Tyrrell. Can you do it
11 within two weeks?
12 MR. NAPOLI: Yes. One point, I don't think we're the
13 only --
14 THE COURT: Don't you have to consult with your
15 clients? How can you physically do it?
16 MR. NAPOLI: We've done it, your Honor.
17 THE COURT: Are you so sure you've done it with all of
18 your clients?
19 MR. NAPOLI: Because Mr. Lopalo told me we've done it
20 for each of these clients.
21 THE COURT: Mr. Lopalo --
22 MR. LOPALO: Your Honor, all HIPAA forms for medical
23 records and all the list of medical providers have been
24 provided to the defendants that are out of this group.
25 THE COURT: So all you're worried about is the update

31

1  from the time you last did this.
2  MR. LOPALO: Correct, which will be from about June to
3  now.
4  THE COURT: All right.
5  MR. TYRRELL: Here's -- the answer is yes, it's okay,
6  but understand where this leaves us. Okay, they have given us,
7  let's assume we get, or already have the HIPAA releases and
8  they say that they either have given us or will give us a list
9  of providers. What we have found with the experience of the 60
10 the last go-around is that the list of providers was
11 extraordinarily incomplete. So there has to be some
12 consequence, okay, they have to take this seriously. If they
13 do not give us a list of providers, then they should not be
14 able to introduce evidence about what comes out of those
15 medical records. But if we go back and find that those doctors
16 and those medical records exist that we found and that they
17 never told us about, then we should be able to use it and they
18 should not be able to come back with stuff --
19 THE COURT: I'll deal with sanctions afterwards.
20 We're dealing with intelligence. Not everybody has records of
21 all the doctors that they consult. If you find that there are
22 others, we'll look at it, and if you make out a case for
23 sanctions you can persuade me, but this --
24 MR. TYRRELL: It's not so much sanctions I want as a
25 complete record to take a good deposition and IME from.

32

1  THE COURT: I assume that the record they're going to
2  give you is as complete as possible, because if it's not
3  complete it will be quickly apparent from doctor's records
4  because doctors refer back to other doctors and if something is
5  relevant it's been there before. Let's go on. You get the
6  releases in two weeks. How long will it take you to get the
7  information?
8  MR. TYRRELL: It will take us from the point in time
9  to get what you said 30 to 45 days to go back to those
10 providers, read the records to see if it cross references to
11 other providers and have a fair chance to get those records in
12 hand.
13 THE COURT: Already, so two months from today is 60
14 days, you will start the depositions of the plaintiffs who have
15 been identified as 16. And 60 days from that time, we're
16 talking now about 120 days from today to take depositions that
17 will cover their medical conditions, that will involve an
18 examination of them and I'll come back to that in a minute and
19 find out where they worked and when they were working. And
20 we'll see how many are left.
21 As for the scope of the medical examination --
22 MR. TYRRELL: Your Honor, before we get there, could I
23 just be sure I understand? You said two things: I know we're
24 going to take the depositions of the 16, but I thought you said
25 that the full 68 --