UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
IN RE WORLD TRADE CENTER DISASTER        :
SITE LITIGATION                                          :    21 MC 100 (AKH)
                                                         :
-------------------------------------------------------------- :
IN RE WORLD TRADE CENTER LOWER           :
MANHATTAN DISASTER SITE LITIGATION       :    21 MC 102 (AKH)
                                                         :
-------------------------------------------------------------- :
IN RE COMBINED WORLD TRADE CENTER        :
AND LOWER MANHATTAN DISASTER SITE        :    21 MC 103 (AKH)
LITIGATION (straddler plaintiffs)                        :
                                                         :
-------------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF
# MOTION FOR STAY PENDING APPEAL

James E. Tyrrell, Jr.
Joseph E. Hopkins
PATTON BOGGS LLP
1185 Avenue of the Americas
New York, New York 10036

-and-

The Legal Center
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
Tel: (973) 848-5600
Fax: (973) 848-5601
Attorneys for Defendants

-i-

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ........................................................................................................................ 4

    I.    A Stay Will Not Substantially Harm the Other Parties and Will Guard Against Such Harm ................................................................................................................ 6

    II.   Defendants Will Be Irreparably Injured Unless a Stay Is Granted ..................................... 8

    III.  A Stay Is in the Public Interest ............................................................................. 9

    IV.  The Likelihood that Defendants Will Prevail on the Merits of Their Appeal Satisfies the Applicable Standard ................................................................................. 9

CONCLUSION .................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*,
   87 S. Ct. 1 (1966) (Harlan, J., in chambers) ................................................................4

*Brenntag Int'l Chems., Inc. v. Bank of India*,
   175 F.3d 245 (2d Cir. 1999)..........................................................................................8

*Cayuga Indian Nation of N.Y. v. Pataki*,
   188 F. Supp. 2d 223 (N.D.N.Y. 2002)................................................................6, 9, 10

*Cohen v. Met. Life Ins. Co.*,
   334 F. App'x 375 (2d Cir. 2009) ...................................................................................4

*Cuomo v. U.S. Nuclear Reg. Comm'n*,
   772 F.2d 972 (D.C. Cir. 1985).....................................................................................10

*de la Fuente v. DCI Telecomms., Inc.*,
   269 F. Supp. 2d 237 (S.D.N.Y. 2003).........................................................................5, 6

*Eurasia Int'l, Ltd. v. Holman Shipping, Inc.*,
   411 F.3d 578 (5th Cir. 2005) ........................................................................................4

*Frommert v. Conkright*,
   639 F. Supp. 2d 305 (W.D.N.Y. 2009).......................................................................4, 5

*Harris v. Butler*,
   961 F. Supp. 61 (S.D.N.Y. 1997)..................................................................................5

*In re Suprema Specialties, Inc.*,
   330 B.R. 93 (S.D.N.Y. 2005).........................................................................................5

*Lopez v. Heckler*,
   713 F.2d 1432 (9th Cir. 1983) ....................................................................................10

*Marcoux v. Farm Serv. & Supplies, Inc.*,
   290 F. Supp. 2d 457 (S.D.N.Y. 2003)...........................................................................7

*Mohammed v. Reno*,
   309 F.3d 95 (2d Cir. 2002).....................................................................................6, 10

*Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*,
   702 F. Supp. 60 (S.D.N.Y. 1988)........................................................................5, 6, 10

*Silverstein v. Penguin Putnam, Inc.*,
   No. 01 Civ. 309 JFK, 2003 WL 21361734 (S.D.N.Y. June 12, 2003) ....................................5

*Texaco Inc. v. Pennzoil Co.*,
    784 F.2d 1133 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1 (1987)..........................5, 6

*Tucker Anthony Realty Corp. v. Schlesinger*,
    888 F.2d 969 (2d Cir. 1989)................................................................................................8

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977) ...........................................................................................10


**RULES**

Fed. R. Civ. P. 62...................................................................................................2, 3, 4, 5


**STATUTES**

James Zadroga 9/11 Health and Compensation Act of 2010, Pub. L. No. 111-347, 124
    Stat. 3623 (2011)................................................................................................................8


**OTHER AUTHORITIES**

11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2905 (2d ed. 1995 &
    Supp. 2011) ........................................................................................................................4

**INTRODUCTION**

The City of New York and the Contractors ("Defendants") have appealed the Court's September 8, 2011 Order (the "September 8th Order") directing the Allocation Neutral to distribute "bonus payments" of $55 million.[1] They now ask the Court to stay its Order while their appeal is pending. Defendants' insurer, the WTC Captive Insurance Company, Inc. ("WTC Captive"), previously acknowledged an opt-in rate of 96% and placed $12.5 million in the settlement fund accordingly. To safeguard Plaintiffs' interest in the Court's Order, the WTC Captive has also separated additional funds of $42.5 million and will, as a condition of the stay, maintain those funds in a separate account for the duration of the appeal, thereby eliminating any possibility, however remote, that Defendants would be unable to satisfy the Court's Order if it is upheld on appeal.[2]

A stay on these terms is appropriate and is a proper exercise of the Court's discretion. Staying the September 8th Order will not harm Plaintiffs because the disputed funds will be

---

[1] Defendants include the City of New York; AMEC Construction Management, Inc.; AMEC Earth & Environmental, Inc.; Lend Lease (US) Construction LMB Inc.; Evergreen Recycling of Corona (E.R.O.C.); Plaza Construction Corp.; Tully Construction Co., Inc.; Turner Construction Company; and Turner/Plaza, a Joint Venture; and the other entities (the "Contractors") identified in Exhibit A to the World Trade Center Litigation Settlement Process Agreement, as Amended ("Amended SPA"). Upon the parties' affirmation that the Opt-In Threshold had been met on January 5, 2011, the Amended SPA became the "Final Settlement Agreement" or "FSA." Capitalized terms not defined herein shall have the meaning ascribed to them in the FSA.

[2] Defendants do not dispute that a bonus payment may be due based upon actual opt-in experience calculated consistent with the express terms of the Amended SPA and now the FSA. On March 7, 2011, the WTC Captive added $12.5 million to the amount of funds to be distributed by the settlement process's Allocation Neutral on the basis that the opt-in percentage exceeds 96%. (LaSala Aff. ¶ 7.) The WTC Captive separated this $12.5 million under a full reservation of rights, as set forth in a March 4, 2011 letter to Plaintiffs' Liaison Counsel. (*Id.*) As described above, the WTC Captive deposited the balance of the $55 million awarded by the Court into a newly-established separate account on September 20, 2011. (*Id.* ¶ 9.) The WTC Captive will not disturb the funds for the duration of the appeal, provided that Defendants' requested stay is granted. (*Id.*)

protected and remain available for distribution if the Court's ruling is affirmed and in the interim the Allocation Neutral can continue to direct payments to settling Plaintiffs that are due notwithstanding this disputed issue. Further, the settling plaintiffs will not be prejudiced by the insignificant delay caused by an appeal of this Court's Order as the overwhelming majority of settling plaintiffs have already received payments pursuant to the FSA. Moreover, a stay will protect Defendants from the harm they otherwise will sustain if funds are distributed now and the Court's ruling is *not* upheld by the Second Circuit (there is no realistic possibility that Defendants or the WTC Captive would be able to recover funds distributed to Plaintiffs). If the Court does not grant this motion, Defendants will be compelled to obtain a stay as of right under Rule 62(d) by incurring the considerable expense of posting a supersedeas bond. In addition, because the funds at issue stand as protection to the City of New York and the Contractors, there is a strong public interest in preserving them against an improper distribution, as well as in avoiding the wasteful expense of a supersedeas bond. Finally, Defendants' arguments for reversal of the Court's Order are sufficiently substantial that a stay of the Order is warranted. The Court should therefore stay its September 8th Order pending resolution of Defendants' appeal.

**BACKGROUND**

Fifteen months ago, most parties to this litigation entered into the Amended SPA, which created a framework to resolve the parties' differences if at least 95% of the Plaintiffs who were eligible to opt into the settlement process in fact did so. (*See* Sept. 8, 2011, Order 2.) The Amended SPA called for $625 million (the "Settlement Amount") to be distributed to settling Plaintiffs and to be used to fund the purchase of a Critical Injury Insurance Policy if the Opt-In Threshold was satisfied. (*Id.* at 5.) To encourage as many Plaintiffs to opt in as possible, the

Amended SPA required further funding in addition to the Settlement Amount if the opt-in percentage met certain thresholds exceeding 95% (the "Bonus Payments"). (*Id.*)

On December 30, 2010, the Court entered *sua sponte* two orders that sought to alter the calculation of the opt-in rate and Opt-In Threshold. First, in the "FTP Order," the Court dismissed the claims of 409 Plaintiffs involuntarily and with prejudice because those Plaintiffs "could not be located, failed to respond to numerous communications directed to them, or refused to respond." (FTP Order 1.) Second, in the "Settlement Order," the Court directed the removal of 409 involuntarily dismissed Plaintiffs (and 48 others) from the list of Plaintiffs eligible to opt into the settlement. (Settlement Order ¶¶ 3, 5.) Together, these orders reduced the denominator used in calculating the Opt-In Threshold, thereby increasing the opt-in percentage to above 98%. (*Id.*) If correct, the Court's calculation would require the WTC Captive to add Bonus Payments to the settlement in addition to the Settlement Amount. (*See id.*)

The Court invited the WTC Captive and Defendants to lodge objections to the Court's decisions. (*Id.* ¶ 7.) Defendants did so, objecting to the Court's construction of the FSA and its calculation of the opt-in percentage. Defendants also filed notices of appeal from the Court's December 30th orders.

While Defendants' objections were pending, the WTC Captive acknowledged, subject to a full reservation of its rights pending the parties' final opt-in calculation, that the actual opt-in percentage calculated pursuant to the FSA was sufficiently high to warrant a Bonus Payment of $12.5 million in addition to the Settlement Amount. As a result, on March 7, 2011, the WTC Captive separated $12.5 million from its other assets by placing it in the Separate Account. (LaSala Aff. ¶ 7.)

On September 8, 2011, the Court overruled Defendants' objections.  The Court found that 99.4% of eligible Plaintiffs had opted into the settlement; that the Bonus Payments to be added to the Settlement Amount should total $55 million; and that "the WTC Captive should make the bonus payments as promised."  (Sept. 8, 2011, Order 5, 11.)  The Court also instructed the Allocation Neutral "to include such payments in the sums payable to settling Plaintiffs."  (*Id.* at 11.)  Finally, the Court made other findings that Defendants will challenge on appeal.  On September 21, 2011, Defendants filed notices of appeal from the September 8th Order.

## ARGUMENT

Absent a stay of the Court's September 8th Order, the $42.5 million in additional "bonus funds" must be added to the Settlement Amount to be distributed to Plaintiffs pursuant to the Allocation Neutral's instructions.  Though costly, posting a supersedeas bond would give Defendants an absolute right to a stay pending appeal; thus, the fundamental question on this motion is not whether to stay the September 8th Order, but whether to require the WTC Captive to diminish needlessly Defendants' available insurance to obtain the stay.  As explained below, the purpose of supersedeas bonds would not be served by requiring one here.  Instead, the Court should protect the interests of *all* interested parties by staying its Order pending appellate review on the terms set forth above.

Under Rule 62(d), a party that posts a supersedeas bond is entitled to an "automatic" stay pending appeal "as of right."  *E.g.*, *Frommert v. Conkright*, 639 F. Supp. 2d 305, 308 (W.D.N.Y. 2009) (citing Fed. R. Civ. P. 62(d); *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*, 87 S. Ct. 1, 3 (1966) (Harlan, J., in chambers); *Cohen v. Met. Life Ins. Co.*, 334 F. App'x 375, 378 (2d Cir. 2009); *Eurasia Int'l, Ltd. v. Holman Shipping, Inc.*, 411 F.3d 578, 585 (5th Cir. 2005)); 11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2905 & nn. 6–7 (2d ed. 1995 & Supp. 2011) (citing cases).  Without prejudice to their right to post a supersedeas bond

-4-

and thereby obtain such a stay, Defendants first seek a discretionary stay because the significant cost of obtaining a bond (LaSala Aff. ¶ 8) would diminish needlessly Defendants' insurance protection and because the proposed segregation of funds is, as explained herein, more than sufficient to ensure Defendants' future ability to satisfy the Court's Order.  *See Frommert*, 639 F. Supp. 2d at 313 (" 'The purpose of requiring a supersedeas bond pending appeal is to secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency.' Therefore, if the district court is confident that the judgment debtor will continue to have sufficient funds to satisfy the judgment, the court may dispense with the bond requirement.").

Where, as here, the moving party seeks a stay without posting a supersedeas bond, the decision to grant a stay pending appeal is committed to the court's equitable discretion.  In considering whether to grant such a stay, the courts of this district "typically" employ a four-factor balancing test that asks:

> (1) whether the petitioner is likely to prevail on the merits of his appeal; (2) whether, without a stay, the petitioner will be irreparably injured; (3) whether issuance of a stay will substantially harm other parties interested in the proceedings; (4) wherein lies the public interest.

*Harris v. Butler*, 961 F. Supp. 61, 62 (S.D.N.Y. 1997) (citations omitted); *accord de la Fuente v. DCI Telecomms., Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003); *Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*, 702 F. Supp. 60, 65 (S.D.N.Y. 1988).[3]

---

[3] The same four-factor inquiry also applies to stays pending appeal of injunctions under Rule 62(c), as well as every other type of discretionary stay.  *See, e.g.*, *Silverstein v. Penguin Putnam, Inc.*, No. 01 Civ. 309 JFK, 2003 WL 21361734, at *1 (S.D.N.Y. June 12, 2003) (stay under Rule 62(c)); *In re Suprema Specialties, Inc.*, 330 B.R. 93, 94–96 (S.D.N.Y. 2005) (stay by the district court of appealed bankruptcy court order); *cf. Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1152–55 (2d Cir. 1986) (preliminary injunction staying enforcement of state court order), *rev'd on other grounds*, 481 U.S. 1 (1987).

The four factors "will be applied flexibly according to the circumstances of each case." *de la Fuente*, 269 F. Supp. 2d at 240 (citing *Morgan Guar. Trust Co.*, 702 F. Supp. at 65). No single factor is dispositive; indeed, a stay properly may be granted even where one or more factors weighs against it. *See, e.g.*, *Cayuga Indian Nation of N.Y. v. Pataki*, 188 F. Supp. 2d 223, 252–53 (N.D.N.Y. 2002) (concluding with "little difficulty" that stay was warranted despite conclusion that petitioner failed to show irreparable harm absent the stay).

As explained more fully below, in analyzing the first equitable factor, "[t]he necessary 'level' or 'degree' of possibility of success [on the merits of the appeal] will vary according to the court's assessment of the other [stay] factors," especially the "balance of hardships" reflected in the second and third factors. *Mohammed v. Reno*, 309 F.3d 95, 101 & n.10 (2d Cir. 2002) (third alteration in original) (citations omitted). Accordingly, Defendants first address the balance of hardships, followed by the public interest, and finally the likelihood that Defendants will prevail on appeal.

## I. A STAY WILL NOT SUBSTANTIALLY HARM THE OTHER PARTIES AND WILL GUARD AGAINST SUCH HARM

It is axiomatic that "[a] judgment creditor's primary concern when a judgment in his favor is stayed pending appeal is that he be secure from loss resulting from the stay of execution." *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1154 (2d Cir. 1986) (internal citations omitted). "The court may order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery." *Id.* at 1155 (internal citations omitted). Here, Plaintiffs' interests are not endangered because there is no risk that Defendants' insurer will be unable to satisfy the Court's Order if that Order is upheld on appeal. The WTC Captive has placed $42.5 million of assets into a separate account and, provided a stay is entered, will not remove those assets until Defendants' appeal is resolved. (LaSala Aff. ¶ 9.)

The unqualified availability of these insurance assets provides further evidence that Plaintiffs will not be harmed by a stay. The WTC Captive agreed without reservation to indemnify Defendants against Plaintiffs' claims and is a party to the FSA. (*Id.* ¶¶ 4-6.) Beyond the $42.5 million in separated funds, the WTC Captive's financial position is solid, as the company reported $423.2 million in assets as of June 30, 2011. (*Id.* ¶ 10.) Moreover, the WTC Captive files financial statements on a quarterly basis with its regulators and other public entities. (*Id.*) In short, Plaintiffs bear no financial risk if the Court's Order is stayed pending Defendants' appeal. *Cf. Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 486 (S.D.N.Y. 2003) (insurer's declaratory judgment action contesting coverage and placement into receivership weighed against a stay absent posting of a supersedeas bond).

Further, a stay of the Court's Order will not delay settlement payments to Plaintiffs that otherwise are due under the terms of the FSA. As described in the Allocation Neutral's August 19, 2011 "Payment Status Update" to the Court, Interim Payments to "Tier 4 Plaintiffs" are proceeding on a weekly basis and the goal remains to issue Final Distributions to Tier 4 Plaintiffs within one year of the FSA's January 5, 2011 effective date. If the September 8th Order is stayed, the WTC Captive will continue to make these payments promptly at the direction of the Allocation Neutral, which will calculate them based upon settlement funds that include any undisputed opt-in bonus calculated by the parties pursuant to the FSA. (LaSala Aff. ¶ 11.) Should Defendants' appeal prove unsuccessful, the Allocation Neutral easily can direct supplemental payments to affected Plaintiffs reflecting whatever additional bonus amount the appellate court finds appropriate.

## II. DEFENDANTS WILL BE IRREPARABLY INJURED UNLESS A STAY IS GRANTED

A financial loss can be considered an "irreparable harm" if it "cannot be rectified by compensation" from the opposing party. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). "However, a perhaps more accurate description of the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). The *Tucker* and *Brenntag* courts each found irreparable harm where imminent insolvency of the non-movant left the movant no recourse to recover funds should it prevail subsequently.

In a similar manner, if the disputed bonus amounts here are paid out to the over 5,000 individual recipients before Defendants' appeal is resolved, there is no realistic possibility that such funds could be recovered should Defendants prevail on appeal. Seeking the return of funds from these individuals would be costly, legally difficult, and logistically impossible. Moreover, the insurance protection afforded Defendants by the WTC Captive will not be replenished through any other means. The WTC Captive was funded by a one-time premium payment from the Federal Emergency Management Agency. The WTC Captive's policy is not reinsured and there are no prospects for reimbursement of the disputed amount should the Defendants prevail on appeal.

Denial of a stay thus would cause irreparable harm to the City and the Contractors by depriving them of $42.5 million of insurance protection against pending and future claims. As a matter of law, the assets of the WTC Captive are the "first line of defense" for these insureds. *See* James Zadroga 9/11 Health and Compensation Act of 2010, Pub. L. No. 111-347, 124 Stat.

3623 (2011). Specifically, Section 204 of the Zadroga Act states that "the amount of funds of the WTC Captive Insurance Company, including the cumulative interest" must be applied first to defend and indemnify Defendants before other funding sources might become available. The improper depletion of these assets, without any prospect of replenishment, would therefore cause irreparable harm to Defendants.

## III. A STAY IS IN THE PUBLIC INTEREST

The WTC Captive is not an ordinary insurance company because it was funded with a special-purpose grant from the federal government to provide the City and the Contractors with liability insurance coverage that they could not obtain in the insurance marketplace after the events of September 11, 2001. The City and the Contractors have an acute interest in preserving the WTC Captive's funds for the purpose intended by Congress—the defense and indemnification of the City and the Contractors against claims arising out of the rescue, recovery, debris-removal, and cleanup operations at the site of the former World Trade Center and related locations. That interest will be harmed if funds must be paid out pursuant to an order that later is overturned on appeal. As discussed above, it would be impractical and impossible for Defendants or the WTC Captive to recover such disbursed funds from the thousands of individual settling Plaintiffs. Accordingly, a stay pending resolution of Defendants' appeals is in the public interest. *Cf. Cayuga Indian Nation*, 188 F. Supp. 2d at 252 (finding that "the broader public interest vis-à-vis New York State taxpayers as a whole augurs in favor of granting a stay").

## IV. THE LIKELIHOOD THAT DEFENDANTS WILL PREVAIL ON THE MERITS OF THEIR APPEAL SATISFIES THE APPLICABLE STANDARD

The "likelihood of success" standard does not require Defendants to persuade the Court that it probably erred in its September 8th Order. Instead, the Second Circuit has endorsed a

sliding scale approach in which "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." *Mohammed*, 309 F.3d at 101 (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). Thus, a stay pending appeal is proper even "where the likelihood of success is not high but the balance of hardships favors the applicant," just as it is proper "where the probability of success is 'high' [but only] 'some injury' has been shown." *Id.* (citing *Holiday Tours*, 559 F.2d at 843; *Cuomo v. U.S. Nuclear Reg. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)). Under this standard, "court[s] ha[ve] required only that the petitioner demonstrate a 'substantial case on the merits,' even if ultimate success is not a mathematical probability." *Cayuga Indian Nation*, 188 F. Supp. 2d at 253 (alterations in original) (quoting *Morgan Guar. Trust Co.*, 702 F. Supp. at 65); *see also Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983) (where balance of hardships "tips sharply" in favor of stay, the petitioner need only "demonstrate that serious legal questions are raised").

Here, there can be little dispute that Defendants' arguments present at least a "substantial case on the merits" that raises "serious legal questions" concerning, among other issues:[4]

- The proper application of contract interpretation principles to determine and enforce the FSA's terms (Objections, at 4–9);

- The Court's jurisdiction to adjudicate *sua sponte* the obligations of not only the parties to this litigation but also a non-party, the WTC Captive, in the absence of any action to enforce the FSA or other litigation over the "bonus" issue (Objections, at 3–4);

- The Court's calculations of the final opt-in percentage, even assuming the reasoning of the Order is sustained (Objections, at 11-14); and

---

[4] As the Court is familiar with Defendants' arguments on the merits, Defendants do not belabor them here but incorporate by reference their previous objections and reply brief. (Case 1:21-mc-00100-AKH, Dkt. Nos. 2314 and 2339; Case 1:21-mc-00102-AKH, Dkt. Nos. 3981 and 3989; Case 1:21-mc-00103-AKH, Dkt. Nos. 990 and 997.)

- The Court's authority to approve, modify, or amend the terms of the settlement (Objections, 2–3, 9; *see also* Order Denying Motion to Enlarge Settlement Eligibility Date, Case 1:21-mc-00102-AKH, Dkt. No. 3858, at 4 (acknowledging the Court's "doubt" that it has "the power to rewrite a material term of the Settlement Agreement")).

Because Defendants' appeal involves serious legal questions and the other three equitable factors heavily favor a stay, there is a sufficient likelihood of success on the merits to justify a stay.

## CONCLUSION

For the reasons stated above, this Court should stay the September 8th Order pending resolution of Defendants' appeal.

Dated: September 21, 2011

/s/ James E. Tyrrell, Jr.
James E. Tyrrell, Jr. (JT 6837)
PATTON BOGGS LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 246-5100
-and-
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
(973) 848-5600
*Attorneys for Defendants the City of New York and the Contractors*

113954