UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
IN RE: WORLD TRADE CENTER DISASTER SITE            Docket No.: 21MC100 (AKH)
LITIGATION
------------------------------------------------------------------------X
IN RE: WORLD TRADE CENTER LOWER MANHATTAN   Docket No.: 21MC102(AKH)
DISASTER SITE LITIGATION
------------------------------------------------------------------------X
IN RE: COMBINED WORLD TRADE CENTER AND          Docket No.: 21MC102(AKH)
LOWER MANHATTAN DISASTER SITE LITIGATION
------------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS MOTION FOR A STAY WITHOUT
REQUIREMENT OF SUPERSEDEAS BOND PENDING
APPEAL OF THIS COURT'S SEPTEMBER 8, 2011 ORDER.**


*Of Counsel*                                Worby Groner Edelman & Napoli Bern, LLP
   Denise A. Rubin                          *Plaintiffs' Co-Liaison Counsel*
                                            350 Fifth Avenue, Suite 7413
                                            New York, New York  10118
                                            (212) 267-3700

# TABLE OF AUTHORITIES

## CASES

*Cayuga Indian Nation*,
  188 F. Supp. 2d 223 (N.D.N.Y. 2002) ................................................................. 4, 5

*de la Fuente v. DCI Telecommunications, Inc.*,
  269 F. Supp. 2d 237 (S.D.N.Y. 2003) ..................................................................... 3

*Dillon v. City of Chicago*,
  866 F.2d 902 (7th Cir.1988) ..................................................................................... 4

*Harris v. Butler*,
  961 F.Supp. 61 (S.D.N.Y.1997)................................................................................. 5

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) .................................................................................................. 3

*Morgan Guaranty Trust Co. v. Republic of Palau*,
  702 F.Supp. 60 (S.D.N.Y. 1988), *vacated on other grounds*, 924 F.2d
  1237 (2d Cir.1991) .................................................................................................... 3

*Palazzetti Imp./Exp., Inc. v. v. Morson*,
  98 CIV. 722 (FM), 2002 WL 562654 (S.D.N.Y. 2002) ........................................... 3

*Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart,* Inc.,
  600 F.2d 1189 (5th Cir.1979) ................................................................................... 3

*Port Chester Electrical*,
  1991 WL 258737 (S.D.N.Y. 1991) ........................................................................... 4

*Teachers Ins. And Annuity Ass'n of America v. Ormesa Geothermal*,
  1991 WL 254573 (S.D.N.Y. 1991) ........................................................................... 3

*Tucker Anthony Realty Corp. v. Schlesinger*,
  888 F.2d 969 (2d Cir. 1989)...................................................................................... 5

## STATUTES

Fed. R. Civ. P. 62 ............................................................................................................. 4

Fed. R. Civ. P. 62(d) ........................................................................................................ 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
IN RE: WORLD TRADE CENTER DISASTER SITE        Docket No.: 21MC100 (AKH)
LITIGATION
-----------------------------------------------------------------------X
IN RE: WORLD TRADE CENTER LOWER MANHATTAN   Docket No.: 21MC102(AKH)
DISASTER SITE LITIGATION
-----------------------------------------------------------------------X
IN RE: COMBINED WORLD TRADE CENTER AND         Docket No.: 21MC102(AKH)
LOWER MANHATTAN DISASTER SITE LITIGATION
-----------------------------------------------------------------------X

Plaintiffs respectfully offer the within arguments and facts in opposition to the pending

motion by the City of New York, its Contractors and the WTC Captive Insurance Company, Inc.,

seeking this Court's Order granting a stay and waiving the requirement that they file a

supersedeas bond to secure that stay, in compliance with Fed. R. Civ. P. 62.

### MOVANTS HAVE FAILED TO SHOW IRREPARABLE HARM OR A FINANCIALLY SECURE PLAN TO MAINTAIN THE STATUS QUO.  THE REQUIREMENT OF A SUPERSEDEAS BOND SHOULD NOT BE WAIVED.

The movants (The City of New York, its Contractors and the WTC Captive Insurance

Co., Inc.) seek this Court's discretionary Order granting a stay without the need for the filing of a

supersedeas bond, upon which filing a stay is automatically granted.  *See* Fed. R. Civ. P. 62(d).

In so moving, the City and its Contractors suggest that their promise to segregate the balance of

the $55 million (in addition to the $12.5 already segregated) that would be payable under this

Court's September 8, 2011 Order should be sufficient basis to grant the stay; they contend that

the cost of the bond necessary to obtain a statutory stay as of right would injure the City and its

Contractors by reducing their *protection*.  They fail to identify the hazards they require this

protection against, which are unclear given the fact that most of the plaintiffs in this litigation

have settled their claims and the claims of other persons who had not yet sued the City and its Contractors have likely become time barred by this late date.

Ms. LaSala's Affidavit states that "on March 7, 2011, the WTC Captive transferred $12.5 million to [a] separate account from which settlement payments are issued, reflecting the WTC Captive's calculation that the opt-in percentage ultimately would exceed 96% and that an opt-in bonus in that amount ultimately may be due." LaSala Aff., at ¶7. Respectfully, if the Captive has calculated it is already required to pay that $12.5 million in Contingent Payments, *why is that money still being held?*

The LaSala Affidavit also states that "the FSA requires the parties to agree upon a final opt-in percentage, but in light of Defendants' appeal of the September 8, 2011 order that issue…remains *unresolved*. *See* LaSala Affidavit at ¶6. The plaintiffs respectfully disagree with Ms. LaSala's assessment. Indeed, it is plaintiffs' position that this issue *has been resolved* by this Court's September 8, 2011 Order. While the City has noticed an appeal, doing so does not change the fact that a United States Court has directed the money to be paid as due and owing.

We believe an amorphous "promise" to hold the money in separate accounts, including both the $12.5 million the Captive apparently concedes is already due and the $42.5 million at issue in the September 8, 2011 Order, is insufficient. Without a bond there is nothing to keep that money in those accounts as the appeal(s) wend their way through the process of briefing, argument and resolution.

Because a supersedeas bond is designed to protect the appellee (in this case the plaintiffs), the appellant seeking stay of judgment pending appeal without a bond, as the City and its Contractors ask here, has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after the posting of a supersedeas bond in

the full amount of the judgment. *See de la Fuente v. DCI Telecommunications, Inc.,* 269 F.

Supp. 2d 237, 240 (S.D.N.Y. 2003). The Courts have held that in determining whether to stay a

judgment pending appeal, this Court must consider (1) whether the petitioners is likely to prevail

on the merits of their appeal, (2) whether, without a stay, the petitioners will be irreparably

injured, (3) whether issuance of a stay will substantially harm other parties interested in the

proceedings, and (4) wherein lies the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 777

(1987); *Morgan Guaranty Trust Co. v. Republic of Palau*, 702 F.Supp. 60, 65 (S.D.N.Y. 1988),

*vacated on other grounds*, 924 F.2d 1237 (2d Cir.1991) (citations omitted).

As a (Magistrate) Judge of this Court has held, "a supersedeas bond protects an appellee

from the risks associated with delaying the enforcement of the judgment during the pendency of

an appeal. Accordingly, a party seeking a stay without a bond has the burden of setting forth

specific reasons why the court should 'depart from the usual requirement of a full security

supersedeas bond to suspend the operation of an unconditional money judgment.'" *Teachers Ins.*

*And Annuity Ass'n of America v. Ormesa Geothermal*, 1991 WL 254573, at *3 (S.D.N.Y.

1991)(Wood, J.)(*quoting Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc*.,

600 F.2d 1189, 1191 (5th Cir.1979)). The fact that the bond is costly is not one of the reasons

generally accepted by the courts for such a waiver.

The bond requirement should be eliminated or reduced only when doing so "does not

unduly endanger the judgment creditor's interest in ultimate recovery." *Morgan Guar*., 702

F.Supp. at 65; *Palazzetti Imp./Exp., Inc. v. v. Morson*, 98 CIV. 722 (FM), 2002 WL 562654

(S.D.N.Y. 2002). Moreover, the courts have held that in order to obtain even a reduction of the

supersedeas bond, the applicant must present the court with a "financially secure plan for

3

maintaining the same degree of solvency during the period of the appeal." That has not been done here except by reference to the current assets of the WTC Captive Insurance Company, Inc.

Other factors the courts have considered in the determination as to whether to waive the posting of a bond include "the degree of confidence that the district court has in the availability of funds to pay the judgment...; [w]hether the defendants' ability to pay the judgment is so plain that the cost of a bond would be a waste of money ...; and '[w]hether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendants in an insecure position [.]' " *Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir.1988) (internal quotation marks and citations omitted).

The Captive and its insureds, as the moving parties, have the burden of "objectively demonstrat[ing]" the reasons why this Court should depart from the usual requirement of a full security supersedeas bond to suspend the operation of its unconditional Order that the Contingency Payments be proffered. *See, e.g., Cayuga Indian Nation*, 188 F. Supp. 2d 223, 254-55 (N.D.N.Y. 2002), *citing Port Chester Electrical*, 1991 WL 258737, at *2 (S.D.N.Y. 1991) (internal quotation marks and citation omitted). "Although courts sometimes waive the full supersedeas requirement, they often require alternative security considerably in excess of the amount of the judgment." *Cayuga Indian Nation*, 188 F. Supp. 2d at 254-55 (citations omitted).

Finally, the movants have only asserted that it will be difficult to obtain the money back if paid out to the plaintiffs – this is not the sort of irreparable harm contemplated by the case law construing Rule 62, which holds, in relevant part, that the loss of quantifiable money damages is not irreparable harm. *Cayuga Indian Nation*, 188 F. Supp. 2d at 253:

> the State cannot show the requisite irreparable harm absent a stay.
> The State's argument of irreparable harm is seriously undermined
> "by the well-established principle that quantifiable money damages
> cannot be deemed irreparable harm." [internal citations omitted]

4

> Because the judgment herein is only for "quantifiable money
> damages," the State is unable to establish this particular stay
> element.

*Cayuga Indian Nation*, 188 F. Supp. 2d at 253, *citing Harris v. Butler*, 961 F.Supp. 61, 63

(S.D.N.Y.1997) (*citing*, inter alia, *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969,

975 (2d Cir. 1989)).

The plaintiffs who stand to benefit from these additional Contingent Payments under the

FSA are those who were most seriously injured by their time working at or around the WTC site

following the 9/11 attacks.  Every penny of the money they are entitled to receive under the FSA

is crucial to their ability to support themselves and their families and the longer these

Contingency Payments are withheld pending this appeal, the plaintiffs are paying the cost in

aggravation, stress and worry. These plaintiffs should be provided the measure of protection

offered by the supersedeas bond or by a "financially secure plan for maintaining the same degree

of solvency during the period of the appeal" that provides somewhat more assurance to the

plaintiffs than an empty promise.

The movants required nothing less of the so-called "London Insurers" in the *WTC*

*Captive Insurance Co., Inc. v. Liberty Mutual* matter before this Court when the London insurers

appealed this Court's order granting summary judgment to the Second Circuit.  Certainly there

was no reason to doubt whether Lloyds of London and the other defendants were likely to remain

solvent, yet they were required to post the supersedeas bond. *See* Exhibit "A", Notices of Posting

Bond.  While the Captive claims the cost of the bond is wasteful and prohibitive, it is certainly

no more risk than is being asked of the plaintiffs, *i.e.,* that they should just trust that the WTC

Captive Insurance Co., Inc., which has been so responsive to their needs over the course of this

litigation, is going to protect their interest in the Contingent Payments and this "segregated"

money to the exclusion of the Captive's interest or that of its insureds.

WHEREFORE this Court should deny the motion for a discretionary waiver of the

supersedeas bond and require the Captive to post the bond on behalf of its insureds.

Dated: New York, New York
     September 26, 2011          Respectfully submitted,

                    WORBY GRONER EDELMAN & NAPOLI BERN, LLP
                    *Plaintiffs' Co-Liaison Counsel*

                    Denise A. Rubin (DR5591)

                    350 Fifth Avenue, Suite 7413
                    New York, New York  10118
                    (212) 267-3700