UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: WORLD TRADE CENTER
DISAster SITE LITIGATION,                          21 MC 100 (AKH)
-----------------------------------------------------------x
THOMAS MAGEE,

                         Plaintiff,                Civil Action No. 05 Civ. 07210 (AKH)

    - against -

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, SILVERSTEIN
PROPERTIES and THE CITY OF NEW YORK,

                         Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE THE AFFIRMATIVE DEFENSES THAT THIS ACTION IS BARRED OR LIMITED BY THE AIR TRANSPORTATION SAFETY AND SYSTEM STABILIZATION ACT**

      Plaintiff Thomas Magee initiated this claim to recover damages for injuries he sustained in a 25 foot fall while working as a heavy equipment operator and welder at the World Trade Center reconstruction site on June 10, 2002. In their answers to Mr. Magee's complaint, defendants Port Authority of New York and New Jersey ("Port Authority"), World Trade Center Properties LLC ("WTC Properties") and the City of New York ("New York City") asserted as affirmative defenses that Mr. Magee had (1) waived any claim for recovery because he had made a claim in the Victim Compensation Fund and (2) that their liability was limited under the Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101 (2001) (the "ATSSSA"). Mr. Magee respectfully submits this memorandum of law in support of his motion to strike those affirmative defenses.

## BACKGROUND

On June 10, 2002, Thomas Magee, a heavy equipment operator and a welder, was assigned to work in an elevator shaft welding tiebacks at the former World Trade Center site. *See* Complaint ¶¶ 34-36, attached as Exhibit 1 to Therese Stevens Loucks Declaration ("Loucks Dec."), Plaintiff's Verified Bill of Particulars ¶ 10, attached as Exhibit 2 to Loucks Decl. The site where Mr. Magee was working was part of the World Trade Center reconstruction effort. *Id.* While Mr. Magee was working in the elevator shaft, positioned on a high ladder, a ground pump failed and water flooded the work area. See Mr. Magee's Worker's Compensation Form provided in Plaintiff's Response to Defendants' First Demand for Production, attached as Exhibit 3 to Loucks Decl. The flooding caused the ladder upon which Mr. Magee was standing to slip out from under him and Mr. Magee consequently fell approximately 25 feet to the ground. As a result of the fall, Mr. Magee suffered orthopedic injuries that were so severe he has been and is currently unable to work.

Nearly nine months before suffering this construction-related injury, Mr. Magee had been a volunteer construction worker in the post September 11 rescue and recovery effort at Ground Zero. *See* Mr. Magee's Sworn Statement Concerning Registration of Participation in World Trade Center Rescue, Recovery and/or Clean-up Operations, attached as Exhibit 4 to Loucks Decl. Starting on September 12, 2011, Mr. Magee volunteered near the collapsed World Trade Center buildings. Subsequent to the rescue and recovery work at Ground Zero, and related to specific respiratory injuries he sustained during the rescue/recovery efforts, Mr. Magee filed a claim with the September 11th Victim Compensation Fund ("VCF") established as part of the ATSSSA. As a condition of Mr. Magee's participation in the VCF, he signed a waiver in which he relinquished his right to file a civil action "for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001."

In 2003, Mr. Magee filed a state court complaint asserting labor law claims against the Port Authority, World Trade Center Properties LLC[1] and the City of New York to recover for the orthopedic injuries he sustained on June 10, 2002.  The Port Authority removed the case to federal court and the parties have litigated this matter in the context of this Court's multi-district World Trade Center litigation since that time.  During the course of the litigation, Mr. Magee has timely complied with all discovery and case management orders, providing defendants all documentation necessary to evaluate his claims for the orthopedic injuries.

While most plaintiffs with non-respiratory claims long ago settled their cases, the defendants in this particular action have refused to engage in settlement discussions with respect to Mr. Magee's lawsuit.  Defendants instead have relied on the affirmative defenses asserted in their answers, namely that (1) Mr. Magee is barred from recovery here because of his earlier participation in the VCF and (2) that their liability in this action is subject to the limitations set forth in the ATSSSA. *See* WTC Properties Verified Answer, ¶¶ 49 – 50, attached to Loucks Decl. as Exhibit 5; City of New York Verified Answer, ¶ 29, attached to Loucks Decl. as Exhibit 6; Port Authority Verified Answer, ¶¶ 53, 69, attached to Loucks Decl. as Exhibit 7.

Mr. Magee's injuries which are the subject of this lawsuit are common construction site injuries remote in time and causation from the September 11th terrorist attacks and are unrelated to the respiratory injuries for which he sought compensation in the Victim Compensation Fund. Indeed, Mr. Magee's orthopedic injuries were not eligible for compensation in the first Victim Compensation Fund (which for rescue and recovery workers required presence within 96 hours of the attacks and physical harm, 28 C.F.R. 104.2) or the newly reopened Victim Compensation Fund which is limited to the period of September 11, 2001 until May 30, 2002.  James Zadroga

---

[1] The complaint improperly named Silverstein Properties but World Trade Center Properties LLC served its Verified Answer in this litigation on March 20, 2003.

3

Case 1:21-mc-00100-AKH   Document 2594   Filed 10/20/11   Page 4 of 9

9/11 Health and Compensation Act of 2010, 76 Fed. Reg. 54112, 54120 (August 31, 2011) (to be codified at 28 C.F.R. pt. 104). Under these circumstances, Mr. Magee cannot be precluded from recovery for construction-related orthopedic injuries – suffered months after the time intended to be covered by the first VCF – on the basis of his earlier, unrelated participation in the VCF. Plaintiff therefore respectfully moves this Court to strike those affirmative defenses which attempt to limit or preclude recovery based on the ATSSSA.

## ARGUMENT

### 1. The Incident Giving Rise to Plaintiff's Injury is not Governed by ATSSSA

Mr. Magee's claims arise out of common construction-site injuries that fall far outside the scope of the ATSSSA. Congress passed the ATSSSA to "address the most pressing economic and safety issues facing the airlines after September 11, and to provide compensation for the victims of the tragedy." *Graybill v. The City of New York, et al.*, 247 F.Supp.2d 345, 352 (S.D.N.Y. 2002). The legislation established a compensation program for the September 11 victims and also limited the liability of certain companies and entities for claims arising from September 11. ATSSA §§ 403; 408, 49 USC 40101 note (2001). This section of the act created the VCF, from which "eligible individuals" could receive compensation for September 11 losses. "Eligible individuals" are limited to those persons (or, in the case of decedents, their representatives) who were on board one of the hijacked airplanes or who were present at the crash site at the time of or in the "immediate aftermath" of the crashes. ATSSA § 405(c)(2), 49 USC 40101 note (2001)   The Special Master appointed to administer the VCF promulgated rules defining "immediate aftermath" as "meaning within 12 hours of the relevant crash, except in the

4

case of rescue workers, who must have been present at one of the disaster sites within 72 hours[2] of the relevant crash." *Graybill*, 247 F.Supp.2d at 349 n. 3.

While federal jurisdiction may extend beyond those claims that fall within the scope of the VCF, nothing in the legislative history suggests that any case, "however tangentially connected to the events of September 11," should be considered as falling within the parameters of the ATSSSA. *Id.* at 351. Rather, those injuries sustained not as part of a claimant's involvement in the "immediate aftermath" of the crashes fall outside the ATSSSA and are not governed by the VCF or the statute's waiver provisions. *Id.* "Accidents at construction sites are common. Laborers work in confined spaces and under great pressures of time, using sophisticated machinery to excavate and erect heavy and unwieldy materials and necessarily depending on the alertness and competence of many others at the work-site, as well as on their own." *Id.*[3]

Though Mr. Magee was working at the World Trade Center construction site, his work was not performed in the "immediate aftermath" of the fatal crashes nor was his accident one that could only have occurred at the World Trade Center site or as a result of the September 11 attacks. Mr. Magee sustained his injuries as a result of a pump failure and, while "the dangers and pressures of the WTC site may have been greater than most normal construction sites", nothing about the pump failure, the ladder's displacement or Mr. Magee's injuries "were unique to that site or situation." *Id.* (granting plaintiff's motion to remand common construction tort

---

[2] This time frame was later expanded to 96 hours in the September 11th Victim Compensation Fund of 2001, 28 CFR Pt. 104.2(b) (2011).

[3] Mr. Magee's orthopedic workplace injuries at issue here must be distinguished from those suffered by the plaintiffs in *Virgilio* and *McNally*. In *Virgilio v. City of New York*, 407 F.3d 105, 113 (2d Cir. 2005), the survivors of firefighters who lost their lives in the towers sought to recover for the failure of the radio-transmission equipment. Those deaths occurred in the "immediate aftermath" of the attacks and were uniquely related to the terror attacks and the resulting catastrophe. Likewise, in *McNally v. Port Auth.*, 414 F.3d 352 (2d Cir. 2005), the Second Circuit concluded that the plaintiffs claims fell within the ATSSSA because the injuries were sustained as a consequence of inhalation of toxic fumes and debris during work performed in the immediate aftermath of the crashes, which work was uniquely related to the events of September 11. Here, on the other hand, the injuries Mr. Magee sustained could have occurred at any construction site any place in the country.

claim to state court because such injuries fell outside the purview of the ATSSSA). As this Court has noted, "[t]he state of New York has extensive statutory and regulatory laws governing construction sites and the duties and obligations of site owners to assure safe conditions to the construction workers who toil on their property. New York state courts have developed an expertise in applying these rules to find and apportion liability for accidents of this kind. There is no suggestion in the text of the Air Safety Act, or its legislative history, that Congress intended to displace the traditional functioning of state laws and state adjudicatory bodies in this kind of dispute." *Id.* Where, as here, a plaintiff's injuries do not arise out of any "special condition or risk linked to the tasks of demolition, clean-up, and removal on the WTC site," but, rather, are the sort of injuries that could have been sustained at any ordinary construction site, the claims do not fall within the ATSSSA. *Spagnuolo v. The Port Authority of N.Y. & N.J., et al.*, 245 F.Supp.2d 518, 521 (S.D.N.Y. 2002).

Here, there is no "connection, other than geography, between plaintiff's alleged injury and the events of September 11th," and, thus, "the action is 'too tenuous, remote, or peripheral'. . .to warrant a finding that the [action] 'relate[s] to' the terrorist attacks of September 11." *Milling v. The City of N.Y., et al,* 2006 WL 1652706 (S.D.N.Y June 14, 2006). Defendants' affirmative defenses asserting that the ATSSSA governs Mr. Magee's claims and limits their liability must, therefore, be stricken.

2. **Mr. Magee Could Not Have Recovered for These Injuries Through the Victim Compensation Fund**

The defendants' affirmative defense that Mr. Magee waived his right to recover for the orthopedic injuries he sustained on June 10, 2002 by participating in the VCF for his rescue-work related respiratory injuries must also be dismissed. Mr. Magee could not have recovered

6

for his orthopedic injuries in the VCF because the statute and regulations frame the time during which injuries are considered to have resulted from the September 11th terrorist attacks.

As discussed above, to be eligible to participate in the VCF, a claimant (or claimant's decedent) had to have been present at one of the three sites within 96 hours of the crashes. September 11th Victim Compensation Fund of 2001, 28 C.F.R. Pt 104.2(b) (2011). To recover for the orthopedic injuries through the first VCF, then, Mr. Magee would have had to have either sustained the injuries or been exposed to the injurious agent within that 96 hour period. His orthopedic injuries, however, did not occur until nine months later and are wholly unrelated to the respiratory injuries he sustained after volunteering in the Ground Zero rescue and recovery efforts.[4]

Mr. Magee executed a waiver with respect to the **respiratory injuries** for which he relinquished his right to file a civil action "for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001." That waiver did not extinguish Mr. Magee's right to litigate his claim for the unrelated orthopedic injury sustained nine months later.

The respiratory injuries, for which Mr. Magee waived his right to sue, are wholly unrelated to the construction work, fall from the ladder and subsequent injuries that he suffered while working in the elevator shaft.

Mr. Magee's orthopedic injuries resulted from the negligence of the owners and operators of the construction site in their failure to, among other things, comply with the safety standards prescribed by New York Labor Law §§ 240 and 241. They were wholly unconnected from the respiratory injuries Mr. Magee suffered after his volunteer rescue work and fall outside the scope of the VCF waiver that he entered into.

---

[4] The Zadroga Act further revives and expands the relevant time frame until May 30, 2002, and even that vastly expanded period does not cover the injuries which are included in this case. James Zadroga 9/11 Health and Compensation Act of 2010, 76 Fed. Reg. 54112, 54120 (August 31, 2011) (to be codified at 28 C.F.R. pt. 104)

7

**CONCLUSION**

Mr. Magee has made straightforward labor law claims that have now been pending for more than eight years. His injuries are remote in time and scope from the terrorist acts that formed the basis of the ATSSSA and they were not caused by any circumstance unique to the World Trade Center site. Allowing defendants to invoke defenses related to the ATSSSA regarding Mr. Magee's construction site injuries would greatly expand the reach of the statute far beyond what was intended and grant perpetual immunity for injuries of any sort sustained by former VCF claimants on the sole basis of geographic proximity to the World Trade Center. For all of the reasons set forth herein, plaintiff respectfully requests that this Court strike defendants' affirmative defenses.

Dated: October 19, 2011
      New York, New York

                                    KREINDLER & KREINDLER LLP

                                    /s/ Therese Stevens Loucks
                                    _____
                                      Therese Stevens Loucks, Esq.
                                      Noah H. Kushlefsky, Esq.
                                      750 Third Avenue
                                      New York, New York 10017
                                      (212) 687-8181
                                      Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

IN RE: WORLD TRADE CENTER DISASTER            Case No. 21 MC 100 (AKH)
SITE LITIGATION

Thomas Magee,

                      Plaintiff,

     - against –

The Port Authority of New York and New Jersey,
Silverstein Properties and the City of New York,

                      Defendants.
---------------------------------------------------------------X

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that a copy of the attached *Declaration of Therese Stevens Loucks, the exhibits thereto, and Plaintiff's Memorandum of Law In Support of Plaintiff's Motion to Strike the Affirmative Defenses that this Action is Barred or Limited by the Air Transportation Safety and System Stabilization Act* was served upon all parties on this 19th day of October 2011, via the Court's CM/ECF system.

                                                /s/
                                     Therese Stevens Loucks