UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: WORLD TRADE CENTER
DISASTER SITE LITIGATION,                                21 MC 100 (AKH)
------------------------------------------------------------x
THOMAS MAGEE,                                            Civil Action No. 05 Civ. 07210 (AKH)
                          Plaintiff,
      - against -

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, SILVERSTEIN
PROPERTIES and THE CITY OF NEW YORK,

                          Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION TO STRIKE DEFENSES AND REMAND

Plaintiff Thomas Magee ("Magee") submits this memorandum of law in support of his motion to strike certain affirmative defenses and remand his suit against defendants The Port Authority of New York and New Jersey ("Port Authority"), Silverstein Properties ("Silverstein") and The City of New York ("New York City") to the Supreme Court, New York County.

This Court does not have subject matter jurisdiction over the present action. Thomas Magee suffered injuries on June 10, 2002 in the normal course of his employment as a heavy equipment operator and welder working at the World Trade Center reconstruction site. Magee sued the defendants, all of whom are, like Mr. Magee, citizens or domiciles of the State of New York. Thereafter, the Port Authority removed the case to this Court on the premise that the injuries that are the subject of the suit were sustained during the recovery, debris removal and clean-up at the World trade Center disaster site, thus invoking federal question jurisdiction under 28 U.S.C. § 1441(a) and 42 U.S.C § 40101 as well as federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). This litigation, however, does not raise a federal question nor do Mr. Magee's claims fall within the purview of any federal law or statute, no federal officer or agency

1

exercised control over the construction site issues that precipitated Mr. Magee's injuries and the parties are non-diverse. Because this Court has no basis for exercising subject matter jurisdiction over this action, plaintiff respectfully requests that it grant an order pursuant to 28 U.S.C. § 1447(c) remanding this suit to State court.

In addition, the injuries that are the subject of this lawsuit are separate and distinct from those for which Mr. Magee was previously compensated by the Victim Compensation Fund ("VCF"). His current injuries are all orthopedic in nature and all result directly from the construction-related fall he suffered during the course of his employment on June 10, 2002. The VCF award, on the other hand, compensated Mr. Magee for respiratory injuries he sustained after being involved in the rescue and cleanup effort in the days immediately following the September 11th attacks. For that reason, the affirmative defenses raised by the defendants to prevent Mr. Magee from pursuing his independent, unrelated claim in this lawsuit must be struck.

## Factual Background to Magee's Victim Compensation Fund Claim

The day after the September 11th terrorist attacks, Thomas Magee volunteered in the rescue and recovery effort at the World Trade Center Site. *See* Magee Sworn Statement, Exhibit 4 to Dkt. Entry No. 18, 05-cv-7210, filed 10/19/11. Thereafter, he suffered respiratory injuries, which presented as asthmatic bronchitis . Consequently, he filed a claim and supporting documentation with the September 11th Victim Compensation Fund, which had been established as part of the Air Transportation Safety and System Stabilization Act ("ATSSSA"), 49 U.S.C. §§ 40101, 44302 – 06. *See* Exhibit 1 to the Declaration of Noah H. Kushlefsky ("Kushlefsky Decl.") filed herewith, (the Magee VCF Application and Claim Submission.) His claim described the injuries for which he sought compensation as "respiratory injuries." *See* Exhibit 1A

to the Kushlefsky Decl. ( VCF Application) at pg. 2.[1]  For those respiratory injuries, the VCF awarded Mr. Magee $536,206.00. *See* Exhibit 2 to the Kushlefsky Decl. (VCF Award Letter). As a condition of Mr. Magee's participation in the VCF, he signed a waiver in which he relinquished his right to file a subsequent civil action "for damages sustained <u>as a result</u> of the terrorist-related aircraft crashes of September 11, 2001." *See* Kushlefsky Decl., Exh. 1A (VCF Application), p. 25 (emphasis added).

### Factual Background to the Instant Suit

Nearly nine months after volunteering as an emergency rescue and recovery worker, Mr. Magee was employed by a contractor on the World Trade Center Construction site. *See* Complaint ¶¶ 34-36, Exhibit 1 to Dkt. Entry No. 18, 05-cv-7210, filed 10/19/11.  On June 12, 2002, Mr. Magee was employed as a heavy equipment operator and welder assigned to work in an elevator shaft welding tiebacks at the former World Trade Center site.  *See id.*; *see also* Plaintiff's Verified Bill of Particulars ¶ 10, Exhibit 2 to Dkt. Entry No. 18, 05-cv-7210, filed 10/19/11.  While Mr. Magee was working in the elevator shaft, positioned on a high ladder, a ground pump failed and water flooded the work area. *See* Magee Worker's Compensation Form, Exhibit 3 to Dkt. Entry No. 18, 05-cv-7210, filed 10/19/11.  The flooding caused the ladder upon which Mr. Magee was standing to slip out from under him and Mr. Magee consequently fell approximately 25 feet to the ground.  As a result of the fall, Mr. Magee suffered debilitating orthopedic injuries that were so severe he has been and is currently unable to work.  It is as a result of those construction-related injuries that Mr. Magee filed the instant lawsuit.

---

[1]   On his VCF Application, Mr. Magee stated, "Claimant was a rescue and recovery worker who sustained respiratory injuries as a result of his participation in the rescue and recovery effort." When asked on the Application to briefly describe the nature of his injuries, he wrote simply, "respiratory injuries." Kushlefsky Decl., Exh. 1A (VCF Application), p.2

The construction-related injuries are separate and distinct from the earlier respiratory injuries Mr. Magee sustained and for which he was compensated by the Victim Compensation Fund.[2] The current orthopedic injuries are temporally, biologically and physiologically independent from the respiratory injuries and they manifested themselves as a result of the fall from the ladder, having nothing to do with Mr. Magee's earlier exposure to the air borne toxins that caused his respiratory distress. Thus, the orthopedic injuries could not have been anticipated as evolving from the respiratory trauma and cannot be classified as "secondary" to the respiratory claims for which Mr. Magee was compensated by the VCF. *See Golod v. Hoffman La Roche*, 964 F.Supp. 841 (S.D.N.Y. 1997) (when question of fact exists regarding relationship between earlier and later injuries, action filed for later injuries after time had run to file claim based on earlier injuries will not be dismissed as time-barred). Even, however, if Mr. Magee's orthopedic and respiratory injuries can be considered as sharing a "common cause," they are nevertheless "separate and distinct [because] their biological manifestations are different and … the presence of one is not necessarily a predicate for the other's development." *Dunne v. World Trade Center Properties, LLC*, 05 Cv. 1578, Dkt. Entry No. 9 (S.D.N.Y. 2/22/2010).

## Procedural Background

On February 3, 2003, Mr. Magee filed a verified state court complaint asserting labor law claims against the Port Authority, World Trade Center Properties LLC[3] and the City of New York to recover for the orthopedic injuries he sustained on June 10, 2002. On August 12, 2005, the Port Authority removed the case to federal court on the basis that Mr. Magee's claim was

---

[2] Though the later back injury is noted in some of Magee's medical records submitted to the VCF, that is a measure of the timing of the claim and the fact that he was receiving treatment for the injuries. *See generally* Kushlefsky Decl., Exh. 1B (VCF Supporting Documents). They were not part of the claim on the face of the signed application.

[3] The complaint improperly named Silverstein Properties but World Trade Center Properties LLC served its Verified Answer in this litigation on March 20, 2003.

governed by the ATSSSA. *See* Port Authority Removal Notice, Dkt. Entry No. 1, 05-cv-7210, filed 8/12/05.  The Port Authority asserted that Mr. Magee's injuries "result[ed] from or relat[ed] to the terrorist related aircraft crashes of September 11, 2001," *id.*, p. 2, and that Mr. Magee's construction-related labor law claims therefore fell within the purview of the ATSSSA and were removable pursuant to 28 U.S.C. §1441(a).  As an alternative basis for removal, the Port Authority maintained that this Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1442(a)(1), alleging that the claim somehow was against a federal officer. *Id.*, pp. 5 - 7.  The parties have litigated this matter in the context of this Court's  consolidated World Trade Center litigation since that time.  During the course of the litigation, Mr. Magee has timely complied with all discovery and case management orders, providing defendants all documentation necessary to evaluate his claims for the orthopedic injuries.

   While most plaintiffs with non-respiratory claims long ago settled their cases, the defendants in this particular action have refused to engage in settlement discussions with respect to Mr. Magee's lawsuit for his orthopedic injuries.  Defendants have relied on the affirmative defenses asserted in their answers to Mr. Magee's suit, namely that (1) Mr. Magee is barred from recovery here because of his earlier participation in the VCF and (2) that their liability in this action is subject to the limitations set forth in the ATSSSA. *See* WTC Properties Verified Answer, ¶¶ 49 – 50, Exhibit 5 to Dkt. Entry No. 18, 05-cv-7210, filed 10/19/11; City of New York Verified Answer, ¶ 29, Exhibit 6 to Dkt. Entry No. 18, 05-cv-7210, filed 10/19/11; Port Authority Verified Answer, ¶¶ 53, 69, Exhibit 7 to Dkt. Entry No. 18, 05-cv-7210, filed 10/19/11.

    Mr. Magee has never been compensated for the injuries that are the subject of this lawsuit.  Mr. Magee has suffered common construction site injuries remote in time and causation from the September 11th terrorist attacks and his complaint here is unrelated to the respiratory

injuries for which he sought compensation in the Victim Compensation Fund. Indeed, Mr. Magee's orthopedic injuries were not eligible for compensation in the first Victim Compensation Fund (which, for rescue and recovery workers, required presence [and exposure or physical harm] within 96 hours of the attacks, *see* 28 C.F.R. 104.2) or the newly reopened Victim Compensation Fund, which is limited to claims for injuries sustained between September 11, 2001 until May 30, 2002. James Zadroga 9/11 Health and Compensation Act of 2010, 76 Fed. Reg. 54112, 54120 (August 31, 2011) (to be codified at 28 C.F.R. pt. 104). The Zadroga Act frames the time when the World Trade Center site changed over from a rescue, recovery and cleanup effort to an ordinary construction project. Under these circumstances, Mr. Magee cannot be precluded from recovery for construction-related orthopedic injuries – suffered months after the time intended to be covered by the first VCF – on the basis of his earlier, unrelated participation in the VCF.

Because, as a result of striking the defendants' affirmative defenses this Court will have no subject matter jurisdiction over Mr. Magee's labor law claims, plaintiff respectfully moves this Court to remand his claim to state court.

## ARGUMENT

It is the party "seeking to preserve removal, not the party moving for remand" that bears the "burden of proving federal removal jurisdiction." *Polesky*, 1998 WL 633666, *2; 14A Charles Allen Wright, *et al.*, *Federal Practice and Procedure*, § 3739 (2d ed. 1985 & Supp. 1997). "Generally speaking, removal statutes are to be 'strictly construed against removal and all doubts should be resolved in favor of remand.'" *Polesky*, 1998 WL 633666, *2, quoting *Pan Atlantic Group, Inc. v. Republic Ins. Co.*, 878 F.Supp. 630, 638 (S.D.N.Y. 1995). In this case, neither of the two grounds asserted by the Port Authority for removal jurisdiction confers subject

matter jurisdiction on this Court over Mr. Magee's claims and, for the reasons set forth herein, this Court should remand Mr. Magee's action to the Supreme Court for New York County.

### 1. This Action Arises Under State Law and Presents No Federal Question

Mr. Magee's claims arise out of common construction-site injuries that present no question under federal law and that fall far outside the scope of the ATSSSA. Congress passed the ATSSSA to "address the most pressing economic and safety issues facing the airlines after September 11, and to provide compensation for the victims of the tragedy." *Graybill v. The City of New York, et al.*, 247 F.Supp.2d 345, 352 (S.D.N.Y. 2002). The legislation both established a compensation program for the September 11th victims and also limited the liability of certain companies and entities for claims that were "the result of" the September 11th terrorist attacks. 49 U.S.C. 40101 note (2001) sec. 403 ("It is the purpose of this title to provide compensation to any individual … who was physically injured <u>as a result of the terrorist-related aircraft crashes</u> of September 11, 2001"); sec. 408. The ATSSSA created the VCF, from which "eligible individuals" could receive compensation for September 11 losses. 49 U.S.C. 40101 note (2001) sec. 405. "Eligible individuals" were limited to those persons (or, in the case of decedents, their representatives) who were on board one of the hijacked airplanes or who were present at the crash site at the time of or in the "immediate aftermath" of the crashes. *Id.* The Special Master appointed to administer the VCF promulgated rules defining "immediate aftermath" as "meaning within 12 hours of the relevant crash, except in the case of rescue workers, who must have been present at one of the disaster sites within 72 hours[4] of the relevant crash." *Graybill*, 247 F.Supp.2d at 349 n. 3.

---

[4] This time frame was later expanded to 96 hours in the September 11th Victim Compensation Fund of 2001, 28 CFR Pt. 104.2(b) (2011).

While federal jurisdiction may extend beyond those claims that fall within the scope of the VCF, nothing in the legislative history suggests that any case, "however tangentially connected to the events of September 11," should be considered as falling within the parameters of the ATSSSA. *Id.* at 351. Rather, those injuries sustained at or near the World Trade Center site but not as part of a claimant's involvement in the "immediate aftermath" of the crashes fall outside the ATSSSA and are not governed by the VCF or the statute's waiver provisions. *Id.* "Accidents at construction sites are common. Laborers work in confined spaces and under great pressures of time, using sophisticated machinery to excavate and erect heavy and unwieldy materials and necessarily depending on the alertness and competence of many others at the work-site, as well as on their own." *Id.*[5]

Though Mr. Magee was working at the World Trade Center construction site, his work was not performed in the "immediate aftermath" of the fatal crashes nor was his accident one that could only have occurred at the World Trade Center site or as a result of the September 11th attacks. Mr. Magee sustained his injuries as a result of a pump failure and, while "the dangers and pressures of the WTC site may have been greater than most normal construction sites", nothing about the pump failure, the ladder's displacement or Mr. Magee's injuries "were unique to that site or situation." *Id.* Granting plaintiff's motion to remand common construction tort

---

[5] Mr. Magee's orthopedic workplace injuries at issue here are substantially different from those suffered by the plaintiffs in *Virgilio* and *McNally*. In *Virgilio v. City of New York*, 407 F.3d 105, 113 (2d Cir. 2005), the survivors of firefighters who lost their lives in the towers sought to recover for the failure of the radio-transmission equipment. Those deaths occurred in the "immediate aftermath" of the attacks and were uniquely related to the terror attacks and the resulting catastrophe. Likewise, in *McNally v. Port Auth.*, 414 F.3d 352 (2d Cir. 2005), the Second Circuit concluded that the plaintiffs' claims fell within the ATSSSA because the injuries were sustained as a consequence of inhalation of toxic fumes and debris during work performed in the immediate aftermath of the crashes – work that was uniquely related to the events of the day of September 11th and the days thereafter. Here, on the other hand, the injuries Mr. Magee sustained could have occurred at any construction site any place in the country and at any time over the last ten years. Mr. Magee's injuries have no unique relationship to the terrorist attacks in the way that the *Virgilio* and *McNally* plaintiffs' injuries did.

8

claim to state court because such injuries fell outside the purview of the ATSSSA). As this Court has noted, "[t]he state of New York has extensive statutory and regulatory laws governing construction sites and the duties and obligations of site owners to assure safe conditions to the construction workers who toil on their property. New York state courts have developed an expertise in applying these rules to find and apportion liability for accidents of this kind. There is no suggestion in the text of the Air Safety Act, or its legislative history, that Congress intended to displace the traditional functioning of state laws and state adjudicatory bodies in this kind of dispute." *Id.* Where, as here, a plaintiff's injuries do not arise out of any "special condition or risk linked to the tasks of demolition, clean-up, and removal on the WTC site," but, rather, are the sort of injuries that could have been sustained at any ordinary construction site, the claims do not fall within the ATSSSA. *Spagnuolo v. The Port Authority of N.Y. & N.J., et al.*, 245 F.Supp.2d 518, 521 (S.D.N.Y. 2002).

Here, there is no "connection, other than geography, between plaintiff's alleged injury and the events of September 11th," and, thus, "the action is 'too tenuous, remote, or peripheral'. . .to warrant a finding that the [action] 'relate[s] to' the terrorist attacks of September 11." *Milling v. The City of N.Y., et al,* 2006 WL 1652706 (S.D.N.Y June 14, 2006). Because Mr. Magee's construction injuries were not the "result of the terrorist-related aircraft crashes," they fall outside the scope of the ATSSSA and this Court lacks subject matter jurisdiction over this action. For that reason, plaintiff respectfully requests that this Court remand his action to the Supreme Court for New York County, where it originated.

## 2. This Court Does Not Have Federal Officer Jurisdiction

As an alternative basis for subject matter jurisdiction, the Port Authority claimed that the federal government's involvement in the World Trade Center recovery activities in the immediate aftermath of the September 11th attacks raised a colorable defense of federal officer

9

immunity pursuant to 28 U.S.C. § 1442(a)(1). *See* Exhibit 3 to the Kushlefsky Decl. (Port Authority Removal Notice), ¶¶ 9 – 13.  Specifically, the removing defendant alleged that "federal agencies and officers exercised control over worker safety issues at the disaster site and, therefore, a causal nexus exists between plaintiff's worker safety claims at the disaster site and the alleged acts and omissions of the defendants." *Id.*,  p. 7.

The federal officer removal statute provides that a case may be removed from state to federal court when the case is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).  Because the defendants here are not federal officers, they must satisfy a three-pronged test to determine whether they may effect removal.  First, defendants must show that they are "person[s]" within the meaning of the statute who "act[ed] under [a federal] officer." *Id.* Second, they must show that they performed the actions for which they are being sued "under color of [federal] office." *Id.* Third, they must raise a colorable federal defense. *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

Here, regardless of their status as "persons" for purposes of removal jurisdiction, the actions for which defendants are being sued were not committed "under color of federal office" nor have they  raised a "colorable federal defense." Therefore, this Court has no federal officer jurisdiction over this claim.

First, a corporation, such as the Port Authority, that removes a case under the federal officer removal statute, must establish "that it was 'acting under' a federal officer, which subsumes the existence of a 'causal connection' between the charged conduct and asserted official authority." *In re MTBE Product Liability Litigation v. Atlantic Richfield Co.*, 488 F.3d 112, 124 (2d Cir. 2007) (reversing district court's decision sustaining removal on federal officer

grounds).  Second, the party seeking to sustain removal must present a colorable federal defense warranting removal of the claim from State courts to a Federal venue.

To establish that it was acting under a federal officer's direction and that a causal nexus exists between acts committed under that direction and Mr. Magees's claims, the Port Authority argues that the Occupational Safety and Health Administration ("OSHA") was in charge of a comprehensive program of worker safety at the World Trade Center site after New York City declared a state of emergency. *See* Kushlefsky Decl., Exh. 3, ¶¶ 10 – 12.  In support of this position, the Port Authority referred to statements by Marianne Jackson, the Deputy Federal Coordinating Officer of the Federal Emergency Management Agency for the World Trade Center Disaster, Patricia Clark, OSHA's Regional Administrator in New York and Bill Wright as well as something titled "Inside the Green Line: OSHA Responds to Disaster." *Id.*  It appears that the Port Authority's position is that the construction work being done on June 12, 2002 somehow fell within the monitoring and assistance provided by OSHA immediately after the September 11th attacks.

Even if this were true, it would reflect, at most, some degree of collaboration between OSHA and numerous other organizations in an attempt to keep workers at the World Trade Center site safe.  It does not "evince the substantial degree of direct and detailed federal control over the working conditions that courts have required to assert section 1442 jurisdiction." *McGillick v. World Trade Center Properties, LLC*, 2004 WL 2049260, *3 (S.D.N.Y. Sept. 13, 2004) (denying section 1442 jurisdiction and concluding that defendant was not acting under a federal officer's direction or control in respiratory injury case brought by September 11th cleanup worker).  Indeed, "[c]ourts generally have not found jurisdiction where the government officer did not directly require a purported agent to take specific actions." *Id.*, citing *Arness v. Boeing North Amer.,* 997 F.Supp. 1268, 1275 (5th Cir.1998) (no removal where government required

11

that engines be cleaned with a toxic substance but did not specify disposal and plaintiff's claims related to disposal); *Good v. Armstrong World Indus.,* 914 F.Supp. 1125, 1129 (E.D.Pa., 1996) (no removal for asbestos claim where the Navy was involved with design and manufacture of turbines, but it did not specify use of asbestos); *cf. Crocker v. Borden, Inc.,* 852 F.Supp. 1322, 1326 (E.D.La., 1994) (permitting removal where it was uncertain that plaintiffs claims for asbestos involved marine turbines which were under control of the navy).

The Port Authority has stated only that federal agencies or representatives set forth some standards with respect to the immediate emergency response at the World Trade Center site, but have offered no evidence that it was acting under the specific direction of a federal officer in the reconstruction work that took place eight months after the attacks. Nor has the Port Authority presented any evidence that it would be able to make a "colorable federal defense. " Instead it made conclusory arguments that its actions were governed or directed by OSHA, with no details as to the directions they were purportedly given.) The removing defendant has failed to show that it was acting under a federal officer's direction or that a causal nexus exists between Mr. Magee's construction-related injuries sustained during his fall in the elevator shaft and any federal agent's directive. Plaintiff therefore respectfully requests that this Court grant his motion to remand for lack of subject matter jurisdiction under 28 U.S.C. § 1442(a)(1).

### 3. Mr. Magee Could Not Have Recovered for These Injuries Through the Victim Compensation Fund

In addition to remanding for lack of subject matter jurisdiction, this Court should strike defendants' affirmative defense that Mr. Magee waived his right to recover for the orthopedic injuries he sustained on June 10, 2002 by participating in the VCF for his rescue-work related respiratory injuries. Mr. Magee could not have recovered for his orthopedic injuries in the VCF

because the statute and regulations frame the time during which injuries are considered to have resulted from the September 11th terrorist attacks.

As discussed above, to be eligible to participate in the VCF, a claimant (or claimant's decedent) had to have been present at one of the three sites within 96 hours of the crashes. September 11th Victim Compensation Fund of 2001, 28 C.F.R. Pt 104.2(b) (2011). To recover for the orthopedic injuries through the first VCF, then, Mr. Magee would have had to have either sustained the injuries or been exposed to the injurious agent within that 96 hour period. His orthopedic injuries, however, did not occur until nine months later and are wholly unrelated to the respiratory injuries he sustained after volunteering in the Ground Zero rescue and recovery efforts.[6]

Mr. Magee executed a waiver with respect to the respiratory injuries for which he relinquished his right to file a civil action "for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001." That waiver did not extinguish Mr. Magee's right to litigate his claim for the unrelated orthopedic injury sustained nine months later. Mr. Magee's orthopedic trauma resulted from the negligence of the owners and operators of the construction site in their failure to, among other things, comply with the safety standards prescribed by New York Labor Law §§ 240 and 241. They were wholly unconnected to the respiratory injuries that Mr. Magee suffered after his volunteer rescue work and fall outside the scope of the VCF waiver that he entered into.

---

[6] The Zadroga Act further revives and expands the relevant time frame until May 30, 2002, and even that vastly expanded period does not cover the injuries which are included in this case. James Zadroga 9/11 Health and Compensation Act of 2010, 76 Fed. Reg. 54112, 54120 (August 31, 2011) (to be codified at 28 C.F.R. pt. 104)

**CONCLUSION**

Mr. Magee has made straightforward labor law claims that have now been pending for more than eight years. His injuries are remote in time and scope from the terrorist acts that formed the basis of the ATSSSA and they were not caused by any circumstance unique to the World Trade Center site. Allowing defendants to invoke defenses related to the ATSSSA regarding Mr. Magee's construction site injuries would greatly expand the reach of the statute far beyond what was intended and grant perpetual immunity for injuries of any sort sustained by former VCF claimants on the sole basis of geographic proximity to the World Trade Center. For all of the reasons set forth herein, plaintiff respectfully requests that this Court strike defendants' affirmative defenses.

Dated: November 16, 2011
      New York, New York

                                KREINDLER & KREINDLER LLP

                                /s/ Noah H. Kushlefsky
                                Noah H. Kushlefsky, Esq.
                                Therese Stevens Loucks, Esq.
                                750 Third Avenue
                                New York, New York 10017
                                (212) 687-8181
                                Attorneys for Plaintiffs