UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: LOWER MANHATTAN DISASTER
SITE LITIGATION

21 MC 100 (AKH)

THIS DOCUMENT APPLIES TO ALL CASES
IN WHICH THE PORT AUTHORITY OF NEW
YORK AND NEW JERSEY IS A DEFENDANT

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT DISMISSING COMPLAINTS AGAINST
THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY
FOR LACK OF SUBJECT MATTER JURISDICTION**

Paul A. Scrudato
Donald A. Klein
Jill Berry
Schiff Hardin LLP
666 Fifth Avenue
New York, New York 10103
(212) 753-5000

*Attorneys for Defendant The Port Authority
of New York and New Jersey*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ........................................................................................ 3

      COMPLIANCE WITH SECTION 7107 IS A MANDATORY CONDITION
      PRECEDENT TO  SUBJECT MATTER JURISDICTION; BECAUSE
      PLAINTIFFS' CLAIMS DO NOT COMPLY WITH THE STATUTE, THEIR
      ACTIONS SHOULD BE DISMISSED ........................................................... 3

      A.     Plaintiffs Concede That The "Jimmy Nolan" Law Does Not Apply To
            Claims Against The Port Authority ........................................................ 3

      B.     Substantial Compliance With The Suability Statute Is Not Sufficient;
            Strict Compliance With All Provisions Is Required ............................... 5

      C.     The Suability Statute Is Substantive And Applies To Actions Brought
            Pursuant To ATSSSA ........................................................................ 7

            1.     Since The Suability Statute Is Substantive, Even Under Plaintiffs'
                  Approach It Applies To ATSSSA Cases ..................................... 9

            2.     Section 7107 Does Not Unfairly Limit Plaintiffs' Ability To
                  Commence Actions Or Conflict With ATSSSA By Resulting In
                  Disparate Treatment ................................................................13

      D.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff Bruce
            Greenberg's Claims ........................................................................ 15

CONCLUSION .................................................................................... 17

## TABLE OF AUTHORITIES

### CASES

*Aegis Ins. Servs., Inc. v. Port Auth. of N.Y. & N.J.*,
    2011 WL 2449494 (2d Cir. June 21, 2011) ................................................................. 8

*Bizien v. Port Auth. of States of N.Y. & N.J.*,
    577 F.Supp. 1093 (E.D.N.Y. 1983) .......................................................................... 5

*Brown v. Port Auth. Police Superior Officers Ass'n*,
    283 N.J. Super. 122 (App. Div. 1995) .................................................................... 6

*Brown v. U.S.*,
    742 F.2d 1498 (D.C. Cir. 1984) .............................................................................. 11

*Caceres v. The Port Authority of New York and New Jersey*,
    631 F.3d 620 (2d Cir. 2011) .................................................................................... 13

*Campbell v. City of N.Y.*,
    4 N.Y.3d 200, 791 N.Y.S.2d 880 (2005) ................................................................ 4

*Carrasco v. Klein*,
    381 F. Supp. 782 (E.D.N.Y. 1974) ......................................................................... 10

*Corcoran v. New York Power Authority*,
    202 F.3d 530 (2d Cir. 1999).............................................................................. 10, 14

*Davis v. Krauss*,
    478 F. Supp. 823 (E.D.N.Y. 1979) ......................................................................... 10

*Feeney v. Port Authority Transit Authority*,
    873 F.2d 628 (2d Cir. 1989), *aff'd* 495 U.S. 299 (1999)......................................... 12

*Felder v. Casey*,
    487 U.S. 131 (1988)................................................................................................ 11

*Felder v. City of N.Y.*,
    53 A.D.3d 401, 862 N.Y.S.2d 36 (1st Dept. 2008)................................................... 8

*Finley v. Giacobbe*,
    827 F. Supp. 215 (S.D.N.Y. 1993) .......................................................................... 10

*Gaff v. Port Authority of New York and New Jersey*,
    No. 02 Civ. 7252, 2003 WL 22232949 (S.D.N.Y. Sept. 29, 2003) ............................ 6

*Galik v. Clara Maass Medical Center*,
    771 A.2d 1141 (N.J. 2001)........................................................................................ 6

*Glover v. City of N.Y.*,
    401 F. Supp. 632 (E.D.N.Y. 1975) .......................................................................... 10

*Goldstein v. N.Y. State Urban Dev. Corp.,*
    64 A.D.3d 168, 879 N.Y.S.2d 524 (2d Dept. 2009) .......................................... 9

*Guadagni v. N.Y. City Transit Auth.,*
    No. 08-CV-3163, 2009 WL 205050 (E.D.N.Y. Jan. 27, 2009) ..................... 10

*Hardy v. New York City Health & Hosp. Corp.,*
    164 F.3d 789 (2d Cir. 1999).......................................................................12, 14

*Haywood v. Drown,*
    556 U.S. 729, 129 S.Ct. 2108 (2009) ......................................................... 10

*Hess v. Port Authority Trans-Hudson Corp.,*
    513 U.S. 30 (1994) ......................................................................................12, 13

*In re Sept. 11 Prop. Damage & Bus. Loss Litig.,*
    Nos. 02 MC 101, 02 Civ. 7188, 07 Civ. 10582, 2008 WL 2600448
    (S.D.N.Y. June 26, 2008)...........................................................................7, 10

*In re Sept. 11th Litig.,*
    494 F. Supp. 2d 232 (S.D.N.Y. 2007).......................................................14, 15

*Koch v. Dyson,*
    85 A.D.2d 346, 448 N.Y.S.2d 698 (2d Dept. 1982) ..................................... 5

*Lake Country Estates v. Tahoe Regional Planning Agency,*
    440 U.S. 391 (1979)..................................................................................... 13

*Laverne v. Corning,*
    316 F. Supp. 629 (S.D.N.Y. 1970) ............................................................. 10

*Luciano v. Fanberg Realty Co.,*
    102 A.D.2d 94, 475 N.Y.S.2d 854 (1st Dept. 1984)....................................4, 6

*Lyons v. Port Auth. of N.Y. and N.J.,*
    228 A.D.2d 250, 643 N.Y.S.2d 571 (1st Dept. 1996)................................. 16

*McNally v. The Port Authority of New York and New Jersey*
    *(In re World Trade Center Disaster Site),*
    414 F.3d 352 (2d Cir. 2005)....................................................................... 15

*Mitchell v. La Barge,*
    257 A.D.2d 834, 684 N.Y.S.2d 10 (3d Dept. 1999) ................................... 11

*Mulligan v. Port Auth. of N.Y. & N.J.,*
    No. 02 CIV 6885, 2002 WL 31008974 (S.D.N.Y. Sept. 6, 2002)................ 7

*N.Y. City Chapter, Inc. of Nat'l Elec. Contractors Ass'n v. Fabber,*
    73 Misc.2d 859, 343 N.Y.S.2d 33 (Sup. Ct. N.Y. Co. 1973) ....................... 5

*N.Y. State Crime Victims Bd. ex. rel. Thompson v. Gordon,*
    66 A.D.3d 1213, 887 N.Y.S.2d 283 (3d Dept. 2009) ................................... 4

*Oslick v. Port Auth. of N.Y. & N.J.*,
   83 F.R.D. 494 (S.D.N.Y. 1979) ............................................................... 5

*Ovadia v. Top Ten Jewelry Corp.*,
   2005 WL 1949970 (S.D.N.Y. Aug. 12, 2005) ......................................... 8

*Pardo v. Port Authority of New York and New Jersey*,
   No. 08-1311, 2009 WL 689730 (D.N.J. Mar. 10, 2009) ......................... 7

*Paschall v. Mayone*,
   454 F. Supp. 1289 (S.D.N.Y. 1978) ...................................................... 10

*Privat Air, S.A., v. Port Auth. of N.Y. & N.J.*,
   No. 05-CV-2213, 2007 WL 2089285 (E.D.N.Y. July 19, 2007) .............. 9

*Sarmie v. Mohawk Valley Gen. Hosp.*,
   75 A.D.2d 1012, 429 N.Y.S.2d 134 (4th Dept. 1980) ............................. 5

*Scholl v. Town of Babylon*,
   95 A.D.2d 475, 466 N.Y.S.2d 976 (2d Dept. 1983) .............................. 12

*Serko & Simon, LLP v. Port Auth. of N.Y. & N.J.*,
   02 Civ. 10052 (S.D.N.Y. May 6, 2003) .................................................. 7

*Taddonio v. Port Auth. of N.Y. & N.J.*,
   No. 02 Civ 7270, 2003 WL 21729956 (S.D.N.Y. July 25, 2003) ............ 7

*Wanczowski v. City of N.Y.*,
   186 A.D.2d 397, 588 N.Y.S.2d 1011 (1st Dept. 1992) .......................... 10

*Williams v. Allen*,
   616 F. Supp. 653 (E.D.N.Y. 1985) ........................................................ 10

*Williams v. Nat'l Car Rental Sys., Inc.*,
   225 N.J. Super. 164 (Law Div. 1988) ..................................................... 6

*Wolin v. Port of N.Y. Auth.*,
   268 F.Supp. 855 (S.D.N.Y. 1967) .......................................................... 5

*Yonkers Contracting Co., Inc. v. Port Auth. Trans-Hudson Corp.*,
   93 N.Y.2d 375, 690 N.Y.S.2d 512 (1999) .............................................. 9

## STATUTES

42 U.S.C. § 1983 ............................................................................. 10, 11

Air Transportation Safety and System Stabilization Act ("ATSSSA") ......... passim

New York General Construction Law § 66 .......................................... 5

New York General Municipal Law § 50 ........................................... passim

New York General Municipal Law § 50-e ................................ 3, 8, 10, 14

New York General Municipal Law § 50-i ...............................................................................4

New York General Municipal Law § 50-i(4)(a) ................................................................. 4

New York Unconsolidated Laws § 2501 ............................................................................. 5

New York Unconsolidated Laws § 7101 ..................................................................... passim

New York Unconsolidated Laws § 7107 ..................................................................... passim

New York Unconsolidated Laws § 7108 ..................................................................... passim

## **OTHER AUTHORITIES**

18B C.A. Wright & A.R. Miller, Federal Practice and Procedure § 4478 (2002) ..................... 8

## PRELIMINARY STATEMENT

New York Unconsolidated Laws Section 7101 *et seq*. (the Port Authority's "Suability Statute") conditions the Port Authority's waiver of sovereign immunity on compliance with conditions precedent set forth in the statute. Strict compliance with these conditions is mandatory. Substantial compliance is insufficient. Failure to comply with these conditions precedent deprives the Court of subject matter jurisdiction.

At issue in this motion is plaintiffs' failure to comply with the requirements of Section 7107: (i) that a plaintiff must serve a notice of claim on the Port Authority at least 60 days before an action is commenced, and (ii) that the action must be commenced within one year after the cause of action accrued. The fifteen remaining plaintiffs who are the subject of this motion have not satisfied Section 7107.[1] Their actions should be dismissed.

In opposing the Port Authority's motion, plaintiffs argue that the "Jimmy Nolan" Law should be applied to these cases, thus excusing plaintiffs' failure to comply with the Port Authority's Suability Statute. Plaintiffs admit, however, that the Jimmy Nolan Law cannot be applied to the Port Authority because there was no parallel legislation enacted in New Jersey.

Alternatively, plaintiffs assert that if the Jimmy Nolan Law does not apply, New Jersey permits "substantial compliance" with the Port Authority's Suability Statute. This argument fails. New Jersey courts, like New York courts, require strict compliance with Section 7107 (the provision at issue in the Port Authority's motion), but have allowed a narrow exception for substantial compliance with certain aspects of Section 7108 (a provision

---

[1] The actions of six plaintiffs (Patricia Defeo, Melvin Glover, Charles Logan, Robert Martin, Mimi Netrosio and John Ruis) were dismissed by the Court after the Port Authority filed its motion on October 12, 2011. Order Dismissing Certain Plaintiffs' Actions, No. 21 MC 100 (AKH), Oct. 26, 2011, ECF No. 2605; Stipulation of Voluntary Dismissal, No. 21 MC 100 (AKH), Nov. 9, 2011, ECF No. 2621. An additional plaintiff, Stanislaw Faltynowicz, has agreed to dismiss his action as well. There are now fifteen plaintiffs to whom the Port Authority's motion applies. One of the fifteen plaintiffs, Bruce Greenberg, is not represented by Worby Groner Edelman & Napoli Bern LLP. His opposition to the Port Authority's motion is addressed separately in Part D, *infra*.

not at issue in this motion).[2]  New York mandates strict compliance with both Sections 7107 and 7108, and it is New York law that applies to these cases.

Plaintiffs also argue that the Port Authority's Suability Statute is "procedural", not substantive, and therefore does not apply to cases brought pursuant to ATSSSA.  ATSSSA expressly provides that the substantive law of New York shall apply to these cases and the Suability Statute is the substantive law of New York.  This Court has already decided that the Port Authority's Suability Statute applies in cases brought pursuant to ATSSSA.  The Second Circuit Court of Appeals has applied the Port Authority's Suability Statute in World Trade Center litigation filed under ATSSSA.

The explicit theme underlying plaintiffs' arguments is that the Port Authority will not be prejudiced if their claims are allowed to proceed, and that the affected plaintiffs will have no "realistic remedy" if their cases are dismissed.

Prejudice to the Port Authority is irrelevant.  The Second Circuit has recently affirmed the principle that strict compliance with the Port Authority's Suability Statute is mandatory, regardless of whether the Port Authority would be prejudiced by a plaintiff's failure to comply with the Suability Statute.

The fourteen plaintiffs represented by Worby Groner Edelman & Napoli Bern LLP, in fact, had a realistic remedy – they were all offered a settlement that this Court deemed "fair and reasonable" and they all turned it down.  Plaintiffs have a right to reject the Port Authority's settlement offer, but their pleas of "unfairness" and "injustice" should not color the fact that their cases are jurisdictionally defective and should be dismissed.

---

[2] Section 7108 applies to these cases.  The Port Authority has moved only under Section 7107 and reserves its right to move under Section 7108, if necessary.  While some plaintiffs have also failed to comply with the requirements of Section 7108, summary judgment is appropriate even without reaching that issue.

<u>ARGUMENT</u>

**COMPLIANCE WITH SECTION 7107 IS A MANDATORY
CONDITION PRECEDENT TO SUBJECT MATTER
JURISDICTION; BECAUSE PLAINTIFFS' CLAIMS DO NOT
COMPLY WITH THE STATUTE, THEIR ACTIONS SHOULD BE DISMISSED.**

A.   <u>Plaintiffs Concede That The "Jimmy Nolan" Law Does Not Apply To Claims
     Against The Port Authority.</u>

At the outset of their memorandum (Pls. Mem. at 2-7[3]), plaintiffs devote nearly six

pages to urging this Court to apply the "Jimmy Nolan" Law retroactively to actions they

admit are barred by plaintiffs' failure to comply with the requirements of Section 7107.  In

support of their plea, plaintiffs argue: (1) that the New York legislature intended the Jimmy

Nolan Law to apply to the Port Authority; (2) that, because it refers to notices of claim, the

Jimmy Nolan Law revives actions that are subject to a statute of limitation (e.g., New York

General Municipal Law § 50-e, which applies to the City of New York) as well as actions

mandating jurisdictional conditions precedent to suit (the Port Authority Suability Statute);

and (3) that the Port Authority is a "public corporation" within the meaning of the statute.

Plaintiffs then concede, as ultimately they must, that since there was no parallel New

Jersey statute, the *Jimmy Nolan law in fact does not apply to the Port Authority.*  Pls. Mem. at

4 (plaintiffs "acknowledge that as a bi-state compact, state statutes affecting the Port

Authority can not be unilaterally enacted without a mirroring statute in the other state").  The

discussion over the application of the Jimmy Nolan Law to the Port Authority should end

here.

Even if plaintiffs did not concede that the Jimmy Nolan Law does not apply to the

Port Authority, plaintiffs' arguments regarding the statute have no merit.  *First*, the New

York legislature did not intend that the Jimmy Nolan Law apply to the Port Authority.  The

New York legislature is presumed to be aware of the requirements that the statute must

---

[3] Plaintiffs' Memorandum in Opposition to The Port Authority of New York and New
Jersey's Motion to Dismiss, dated November 18, 2011, is referred to herein as "Pls. Mem. at __".

expressly mention the Port Authority and that there be parallel New Jersey legislation. *See, e.g., N.Y. State Crime Victims Bd. ex. rel. Thompson v. Gordon,* 66 A.D.3d 1213, 1215, 887 N.Y.S.2d 283, 285 (3d Dept. 2009) ("the Legislature is presumed to have knowledge of pertinent statutes and precedent"). The legislation, however, is silent with respect to the Port Authority. The legislature is also presumed to be aware of the case law consistently holding that General Municipal Law § 50 does not apply to the Port Authority; therefore, if it had intended to affect claims against the Port Authority, it would not have amended only General Municipal Law § 50. *See Campbell v. City of N.Y.,* 4 N.Y.3d 200, 203-05, 791 N.Y.S.2d 880, 882-83 (2005) (distinguishing Section 50-i and Section 7107); *see also* Port Auth. Mem. at 10-11.[4]

*Second,* the reference in the statute to "notices of claim" does not mean that all cases requiring notices of claim are included in the Jimmy Nolan Law; it applies, at most, to cases that require a notice of claim and are also time-barred by a statute of limitations. The statute states that any action requiring a notice of claim that "is barred . . . *because the applicable period of limitation has expired* is hereby revived." N.Y. Gen. Mun. Law § 50-i(4)(a) (emphasis added). The time periods prescribed in Section 7107, however, are not "applicable period(s) of limitations"; they are "jurisdictional conditions precedent." *Luciano v. Fanberg Realty Co.,* 102 A.D.2d 94, 95, 475 N.Y.S.2d 854, 855 (1st Dept. 1984). By its terms, the Jimmy Nolan Law does not affect the Port Authority's Suability Statute. Had the legislature intended the Suability Statute to be amended, it would not have limited the amendment's reach to actions that were barred because of the expiration of periods of limitations.

*Third,* the reference in the Jimmy Nolan Law to actions against "public corporations" does not include the Port Authority. The definition of public corporation as used in the

---

[4] Memorandum of Law in Support of Motion for Summary Judgment Dismissing Complaints Against The Port Authority of New York and New Jersey for Lack of Subject Matter Jurisdiction, dated October 12, 2011, is referred to herein as "Port Auth. Mem. at __".

General Municipal Law is found in the General Construction Law § 66, which relates to various municipal corporations and not to bi-state agencies such as the Port Authority. *Sarmie v. Mohawk Valley Gen. Hosp.*, 75 A.D.2d 1012, 1013, 429 N.Y.S.2d 134, 135 (4th Dept. 1980) (applying N.Y. Gen. Constr. Law § 66 to N.Y. Gen. Mun. Law § 50); *N.Y. City Chapter, Inc. of Nat'l Elec. Contractors Ass'n v. Fabber*, 73 Misc.2d 859, 864, 343 N.Y.S.2d 33, 37 (Sup. Ct. N.Y. Co. 1973) (holding that the Port Authority is not a municipal corporation or a district corporation within the meaning of the General Municipal Law); *Bizien v. Port Auth. of States of N.Y. & N.J.*, 577 F.Supp. 1093, 1098 (E.D.N.Y. 1983) (holding that the Port Authority is not a municipal corporation for purposes of the General Municipal Law).[5]

All of this is academic, however, because even if the Jimmy Nolan Law did apply to the Port Authority, none of the plaintiffs subject to this motion even attempted to comply with the Jimmy Nolan Law by timely filing a complaint after serving a "Jimmy Nolan" notice of claim.

## B.   Substantial Compliance With The Suability Statute Is Not Sufficient; Strict Compliance With All Provisions Is Required.

Plaintiffs continue to claim that strict compliance with the provisions of Section 7107 is not required. The law in New York is clear that "substantial compliance" with Section 7107 is not enough and only strict compliance will suffice. Port Auth. Mem. at 4, 6-7.

---

[5] Plaintiffs do not cite any decision which holds that the Port Authority is a public corporation as that term is used in General Municipal Law § 50. Instead, they rely on cases that refer to the Port Authority as a public corporation in different contexts or under the different definition contained in New York Unconsolidated Laws § 2501. *Wolin v. Port of N.Y. Auth.*, 268 F.Supp. 855, 857 (S.D.N.Y. 1967) (referring to the Port Authority as a public corporation in the First Amendment context in case involving the right to distribute political leaflets in the Port Authority bus terminal); *Oslick v. Port Auth. of N.Y. & N.J.*, 83 F.R.D. 494, 495-96 (S.D.N.Y. 1979) (referring to the Port Authority as a public corporation for the purposes of citizenship in a diversity action); *Koch v. Dyson*, 85 A.D.2d 346, 349, 448 N.Y.S.2d 698, 701 (2d Dept. 1982) (referring in dicta to provision of electric power "to the Metropolitan Transportation Authority and the New York City Transit Authority, but also to the Port Authority, the City of New York, the State of New York, the United States, and other public corporations and electric corporations . . .").

Although New York law governs because New York is the forum state, New Jersey courts also require strict compliance with Section 7107. *Williams v. Nat'l Car Rental Sys., Inc.*, 225 N.J. Super. 164 (Law Div. 1988) (observing that "[o]ur courts have *strictly construed* the [sic] requirements [of Section 7107] as jurisidictional prerquisities which are conditions precedent to the bringing of suit" and refusing to apply the doctrine of substantial compliance) (emphasis added); *Brown v. Port Auth. Police Superior Officers Ass'n*, 283 N.J. Super. 122 (App. Div. 1995) (rejecting plaintiffs' "substantial compliance" argument where no notice was served at least 60 days prior to the commencement of the action).

The "substantial compliance" cases cited by plaintiffs (Pls. Mem. at 5-7) are readily distinguishable. *Galik v. Clara Maass Medical Center*, 771 A.2d 1141 (N.J. 2001) is a New Jersey case that does not involve the Port Authority's Suability Statute. Rather, it involves a statute that requires a plaintiff in a malpractice case to make a showing, by providing an "affidavit of merit" within 60 days *after* defendant answers a complaint, that the claims asserted are meritorious. *Id.* at 1146. Its purpose is "to weed out frivolous lawsuits at an early stage", *id.* at 1147, not, as in the case of Section 7107, to create a mandatory condition precedent to suit necessary to confer subject matter jurisdiction on the court.

Plaintiffs misstate the ruling in *Gaff v. Port Authority of New York and New Jersey*, No. 02 Civ. 7252, 2003 WL 22232949 (S.D.N.Y. Sept. 29, 2003). Pls. Mem. at 5-6. The issue in *Gaff* was not simply whether the plaintiffs could commence their actions with John Doe complaints. The Court held that they could, *because* they had previously served timely notices of claim. The case does not support plaintiffs' argument that the Port Authority would not be prejudiced because it had general notice with respect to other plaintiffs' claims. *See Luciano*, 102 A.D.2d at 94-95, 475 N.Y.S.2d at 855 (generalized notice is insufficient; court could not waive jurisdictional conditions precedent set forth in Port Authority's Suability Statute).

6

*Pardo v. Port Authority of New York and New Jersey*, No. 08-1311, 2009 WL 689730 (D.N.J. Mar. 10, 2009), does not involve the New Jersey equivalent to Section 7107 of the New York Unconsolidated Laws. Rather, it involves an aspect of New Jersey's statutory equivalent to Section 7108, where New Jersey courts have, in limited circumstances, permitted substantial compliance. The motion now before this Court, however, involves only plaintiffs' (non)compliance with Section 7107, where both New York and New Jersey require strict compliance. Plaintiffs have conceded that they have not strictly complied with Section 7107. Pls. Mem. at 4 n.2.

## C.   The Suability Statute Is Substantive And Applies To Actions Brought Pursuant To ATSSSA.

Plaintiffs' argument that the Port Authority's Suability Statute does not apply to actions brought pursuant to ATSSSA (Pls. Mem. at Part II) mischaracterizes the Suability Statute as procedural when, in fact, it is substantive. Then, relying on this mischaracterization, plaintiffs argue that application of the Suability Statute would be unfair and result in disparate treatment.

This Court has previously decided this issue and has applied the requirements of Section 7107 (and Section 7108) in the context of both the September 11 personal injury and property damage litigations. *Mulligan v. Port Auth. of N.Y. & N.J.*, No. 02 CIV 6885, 2002 WL 31008974 (S.D.N.Y. Sept. 6, 2002) (Hellerstein, J.); *Taddonio v. Port Auth. of N.Y. & N.J.*, No. 02 Civ 7270, 2003 WL 21729956 (S.D.N.Y. July 25, 2003) (Hellerstein, J.); *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, Nos. 02 MC 101, 02 Civ. 7188, 07 Civ. 10582, 2008 WL 2600448, at *1 (S.D.N.Y. June 26, 2008) (Hellerstein, J.); *Serko & Simon, LLP v. Port Auth. of N.Y. & N.J.*, 02 Civ. 10052 (S.D.N.Y. May 6, 2003) (Hellerstein, J.). It is

therefore law of the case that the requirements of the Port Authority's Suability Statute apply to actions brought pursuant to ATSSSA.[6]

The Second Circuit has also applied the requirements of the Port Authority's Suability Statute to an action brought under ATSSSA. *Aegis Ins. Servs., Inc. v. Port Auth. of N.Y. & N.J.*, 2011 WL 2449494 (2d Cir. June 21, 2011) (summary order) (amended June 27, 2011) (affirming this Court's dismissal of certain negligence claims against the Port Authority on subject matter jurisdiction grounds because plaintiffs had failed to comply with the Port Authority's Suability Statute; lack of prejudice to Port Authority by plaintiff's failure to comply is "immaterial").

The First Department Appellate Division has ruled that the City of New York's notice of claim law (General Municipal Law § 50-e) must be satisfied in cases brought pursuant to ATSSSA. "Congress did not intend ATSSSA to preempt" the City's notice of claim law (Section 50-e). *Felder v. City of N.Y.*, 53 A.D.3d 401, 402, 862 N.Y.S.2d 36, 37 (1st Dept. 2008). The First Department noted that ATSSSA preempts only "state law damages remedies, not substantive standards governing liability (citation omitted)." *Id.,* 862 N.Y.S.2d at 38. The court noted that the notice of claim law did not conflict with ATSSSA. *Id.* The court also found no evidence that Congress intended ATSSSA to displace Section 50-e. *Id.* The Port Authority's Suability Statute and § 50-e are both notice of claim laws, albeit the City provision is a statute of limitations and the Suability Statute is jurisdictional.

As demonstrated below, ATSSSA requires that the substantive law of New York apply to these actions, and the Suability Statute is unquestionably substantive. Moreover, the

---

[6] *See Ovadia v. Top Ten Jewelry Corp.*, 2005 WL 1949970, at *1 (S.D.N.Y. Aug. 12, 2005) (Holwell, J.) ("if a court decided a rule of law, that decision should continue to govern in subsequent stages of the same case [or] a closely related case"); *see also* 18B C.A. Wright & A.R. Miller, Federal Practice and Procedure § 4478 (2002) (courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication).

Suability Statute does not unfairly limit plaintiffs' time to commence their actions, nor results in disparate treatment.

1. **Since The Suability Statute Is Substantive, Even Under Plaintiffs' Approach It Applies To ATSSSA Cases.**

Plaintiffs declare in Part II.B of their memorandum, without citing any authority whatsoever, that Section 7107 is procedural, not substantive, because it involves service of a notice of claim. Pls. Mem. at 11-12. Plaintiffs then argue that Section 7107 does not apply because their claims are a "purely federal cause of action". Pls. Mem. at 13. They are wrong on both fronts. First, it is well-established under New York law that the notice of claim requirements in Section 7107 are substantive. Second, ATSSSA expressly provides that: "The substantive law for decision ... shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law." ATSSSA, Section 408(b)(2).

In applying Section 7107, the New York Court of Appeals specifically held more than a decade ago that the jurisdictional conditions precedent to suit contained in the Port Authority's Suability Statute are substantive, not procedural. *Yonkers Contracting Co., Inc. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375, 378, 690 N.Y.S.2d 512, 514 (1999) ("a statute of limitations merely suspends the remedy provided by a right of action, but [Section 7107] *conditions* the existence of a right of action, thereby creating a substantive limitation on the right." (emphasis in the original). *See also Goldstein v. N.Y. State Urban Dev. Corp.*, 64 A.D.3d 168, 176, 879 N.Y.S.2d 524, 530 (2d Dept. 2009) (*citing* Yonkers). Federal courts applying New York law are in accord. "Under New York's substantive law, notice of claim requirements are jurisdictional, and the failure to comply with them ordinarily requires dismissal." *Privat Air, S.A., v. Port Auth. of N.Y. & N.J.*, No. 05-CV-2213, 2007 WL 2089285, at *2 (E.D.N.Y. July 19, 2007). The Suability Statute is not only substantive under New York law, it involves a question of subject matter jurisdiction which cannot be waived

or modified by the Court.  *See* Port Auth. Mem. at 3-5; *see also In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, Nos. 02 Mc 101, 02 Civ. 7188, 07 Civ. 10582, 2008 WL 2600448, at *1 (S.D.N.Y. June 26, 2008) ("The [notice of claim] requirements are jurisdictional and non-waivable").

Plaintiffs here fail to address the significance of ATSSSA's direction that state substantive law apply.  *Corcoran v. New York Power Authority*, 202 F.3d 530 (2d Cir. 1999), involved a statute, the Price-Anderson Act, which, like ATSSSA, created a cause of action in federal court but provided that the substantive rules of decision were to be derived from the law of the state in which the occurrence took place unless such provisions were inconsistent with the provisions of the statute.  The Second Circuit observed that "[b]y providing that the substantive rules of decision are derived from state law, 'Congress expressed its intention that state law provides the content of *and operates as federal law.*'"  *Id.* at 538 (emphasis in the original).  Applying General Municipal Law Section 50-e, the Court of Appeals affirmed a grant of summary judgment to defendants because plaintiff had failed to file a timely notice of claim against the New York Power Authority and its claims were time-barred.  The same result is reached here under the Port Authority's Suability Statute.

The numerous cases cited by plaintiffs involve procedural, not substantive, notice of claim provisions that do not involve questions of subject matter jurisdiction or are cases involving markedly different statutes.  Almost all are Section 1983 civil rights cases,[7] which involve separate federal jurisdictional rules.

---

[7] *See Williams v. Allen*, 616 F. Supp. 653, 656 (E.D.N.Y. 1985) (federal civil rights action and General Municipal Law § 50); *Davis v. Krauss*, 478 F. Supp. 823, 824-25 (E.D.N.Y. 1979) (same); *Paschall v. Mayone*, 454 F. Supp. 1289, 1297-98 (S.D.N.Y. 1978) (same); *Glover v. City of N.Y.*, 401 F. Supp. 632, 634 (E.D.N.Y. 1975) (same); *Carrasco v. Klein*, 381 F. Supp. 782, 783 & 787 n.12 (E.D.N.Y. 1974) (same); *Laverne v. Corning*, 316 F. Supp. 629, 631 & 636 (S.D.N.Y. 1970) (same); *Wanczowski v. City of N.Y.*, 186 A.D.2d 397, 397, 588 N.Y.S.2d 1011 (1st Dept. 1992) (same). *Guadagni v. N.Y. City Transit Auth.*, No. 08-CV-3163, 2009 WL 205050, at *1-*2 (E.D.N.Y. Jan. 27, 2009) (same); *Haywood v. Drown*, 556 U.S. 729, 129 S.Ct. 2108 (2009) (same); *Finley v. Giacobbe*, 827 F. Supp. 215, 218-19 (S.D.N.Y. 1993) (§ 1983 and federal labor law claims and General

In *Felder v. Casey*, 487 U.S. 131 (1988), upon which plaintiffs rely heavily, the Supreme Court held that a Wisconsin notice of claim law was pre-empted as inconsistent with 42 U.S.C. § 1983, a federal civil rights statute.  In *Felder*, the plaintiff sued in state court, and the Supreme Court noted that the lower federal courts had, with one exception, "concluded that notice-of-claim provisions are inapplicable to § 1983 actions brought in federal court." *Id.* at 140.  The issue before the Supreme Court in *Felder* was whether the same rule applied to § 1983 actions brought in state court.  The Court determined that the Wisconsin statute conflicted with the federal civil rights laws because it conditioned recovery that Congress authorized for a "reason manifestly inconsistent with the purposes of the federal statute: to minimize governmental liability" and further because it imposed a "substantive burden" on persons seeking redress against government bodies, which were the precise class of defendants Congress sought to target with federal civil rights legislation.  *Id.* at 141-42.

Section 1983, in contrast to ATSSSA, "provides a 'uniquely federal remedy against incursion ... upon rights secured by the Constitution and laws of the Nation.'" *Id.* at 139 (citation omitted).  It was in this distinctive context that the *Felder* Court declined to apply state notice of claim requirements because they conflicted with the "complexities of federal civil rights litigation." *Id.* at 140.  None of these conflicts is implicated by ATSSSA and the Suability Statute.

Other cases cited by plaintiffs arise under similar comprehensive federal schemes.[8] As this Court noted during the argument of the City's pre-Jimmy Nolan motion to dismiss for failure to comply with General Municipal Law § 50:

---

Municipal Law § 50); *Felder v. Casey*, 487 U.S. 131, 134 (1988) (§ 1983 and Wisconsin notice of claim statute).

[8] *See Brown v. U.S.*, 742 F.2d 1498, 1500 & n.2 (D.C. Cir. 1984) (constitutional tort and District of Columbia notice of claim statute);  *Mitchell v. La Barge*, 257 A.D.2d 834, 834-35, 684 N.Y.S.2d 10, 10-11 (3d Dept. 1999) (Fair Labor Standards Act, N.Y. Town Law § 65 and General

> [The notice of claim requirement] clearly is a substantively important issue of state law and has many purposes and does not frustrate in any way the right to sue that is conferred by Congress under the Air Transportation Safety and System Stabilization Act.
>
> The exceptions in maritime law, Fair Labor Standards Act, and the Rehabilitation Act cited by Ms. Rubin are examples of particular federal policies that have strong substantive elements to it in terms of elaborate legislative schemes developed by Congress and are much different from the situation in this case, where state law is to govern the claims brought under the ATSSSA except to the extent that they are inconsistent with federal law.   And there is nothing about these preconditions to sue which, in my opinion, were inconsistent with state law.

Tr. Oral Arg. at 20, Nos. 21 MC 100, 21 MC 102 (AKH) (July 28, 2009).

Lastly, plaintiffs argue in Part II.A of their memorandum that the Port Authority does not have sovereign immunity pursuant to the Eleventh Amendment "when there is an issue of a federal law." Pls. Mem. at 8-11.  Plaintiffs cite *Feeney v. Port Authority Transit Authority*, 873 F.2d 628 (2d Cir. 1989), *aff'd* 495 U.S. 299 (1999) and *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994) in support of this argument.  Neither case has anything to do with the motion before the Court.

In *Feeney*, the plaintiff asserted federal statutory claims under a federal statute (FELA) and the Port Authority asserted Eleventh Amendment immunity to suit in federal court.  The Second Circuit determined that the Port Authority had, in fact, consented to suit in federal court pursuant to the express language of the Port Authority's Suability Statute that did not limit the Port Authority's consent to suit to state court.  *Feeney*, 873 F.2d at 632.  In *Hess*, the Supreme Court held that the Port Authority lacked Eleventh Amendment sovereign immunity from federal statutory claims (the *Hess* plaintiff also asserted FELA claims).  513

---

Municipal Law § 50); *Scholl v. Town of Babylon*, 95 A.D.2d 475, 476-77, 466 N.Y.S.2d 976, 977-78 (2d Dept. 1983) (maritime law and General Municipal Law § 50); *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 791 (2d Cir. 1999) (Emergency Medical Treatment and Active Labor Act and General Municipal Law § 50).

U.S. at 52-53.  In contrast, plaintiffs in this case filed claims pursuant to a federal statute (ATSSSA) that expressly provides for the application of New York substantive law.[9]

In *Caceres v. The Port Authority of New York and New Jersey*, 631 F.3d 620 (2d Cir. 2011), the Second Circuit determined that the court had no subject matter jurisdiction over the plaintiff's state law claims because the plaintiff had failed to satisfy the requirements of the Port Authority's Suability Statute.  The Second Circuit addressed *Hess* directly, noting that its ruling was entirely consistent with *Hess* because *Hess* did "not bear upon the validity of conditions for waiving sovereign immunity over claims arising under state law." *Id.* at 625. In other words, where a plaintiff sues the Port Authority in federal court and asserts claims that arise from state law (as ATSSSA provides), the federal court is bound to apply the Port Authority's Suability Statute; as the court noted in *Caceres*, the failure to satisfy the Suability Statute "will result in withdrawal of defendant's consent to suit and compels dismissal of the action for lack of subject matter jurisdiction." *Id.*

2. **Section 7107 Does Not Unfairly Limit Plaintiffs' Ability To Commence Actions Or Conflict With ATSSSA By Resulting In Disparate Treatment.**

Plaintiffs' argument that the Port Authority's Suability Statute would conflict with the purpose of ATSSSA and result in disparate treatment of plaintiffs (Pls. Mem. at Parts II.C and II.D) should be rejected.  As they do throughout their memorandum of law, plaintiffs continue to rely on cases involving procedural notices of claim without acknowledging that these are not applicable to the Suability Statute's jurisdictional requirements.  In any event, the disparate treatment to which plaintiffs refer is that between those plaintiffs who complied

---

[9] Plaintiffs also cite *Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391 (1979), in support of their argument.  In *Lake Country Estates*, however, the Supreme Court determined, based upon facts and legislation unique to a bi-state agency created by California and Nevada, that the agency was not immune to suit in federal court pursuant to the Eleventh Amendment. *Lake Country Estates* has no bearing on whether a federal court must apply a jurisdiction-conferring statute (such as the Suability Statute) to a case where state substantive law applies.

with the Suability Statute and those who did not,[10] not disparate treatment of similarly-situated plaintiffs. These plaintiffs could have complied with the requirements of Sections 7107 and 7108; it is not inequitable for them to bear the consequences of their decision to ignore the Suability Statute. Under plaintiffs' approach, no rules or requirements would apply to any of their cases or claims, because that would result in disparate treatment between plaintiffs whose actions complied with applicable rules and those plaintiffs whose actions did not.

The Second Circuit rejected a similar challenge to the notice of claim requirements under General Municipal Law § 50-e in *Corcoran v. New York Power Authority*, 202 F.3d 530 (2d Cir. 1999). The Court there held that the notice of claim requirement was not inconsistent with the Price-Anderson Act by imposing different standards of liability on private and public nuclear power plant operators. "[I]mposing different requirements on suits by similarly-situated plaintiffs does not create an inconsistency sufficient to reject adopting a notice of claim requirement." *Id.* at 538; *see also Hardy*, 164 F.3d at 793-95 (upholding notice of claim requirements for suits under the Emergency Medical Treatment and Active Labor Act against municipal hospitals, although plaintiffs with claims against private hospitals did not have similar prerequisites). Thus, there is no question that ATSSSA does not pre-empt the Suability Statute.

Far from rejecting the interests of the states, ATSSSA recognizes the states' interests in applying their laws, as this Court already has found. *In re Sept. 11th Litig.*, 494 F. Supp. 2d 232, 243 (S.D.N.Y. 2007); *see supra*, at 7. By providing that all claims will be heard by this Court, ATSSSA ensured that similarly-situated plaintiffs would be treated similarly.

---

[10] Plaintiffs complain that the City of New York had been inconsistent in its assertion of its rights under General Municipal Law § 50, resulting in disparate treatment of plaintiffs. Pls. Mem. at 25 n.6. The significance of this allegation is unclear, but in any event it is irrelevant. The Port Authority has been consistent in challenging all plaintiffs who do not comply with the Suability Statute and since it is a question of subject matter jurisdiction, any oversight by the Port Authority with respect to a particular case can be rectified later in the litigation.

Application of Section 7107 would not be "antithetical to the federal scheme" outlined in ATSSSA, as plaintiffs argue. *See* Pls. Mem. at 23. To the contrary, state substantive law is "the scheme" outlined in ATSSSA. In *McNally v. The Port Authority of New York and New Jersey (In re World Trade Center Disaster Site)*, 414 F.3d 352, 379-80 (2d Cir. 2005), the Second Circuit found that what ATSSSA displaces is not the state substantive standards governing liability, but only the state-law damages remedies.

One "important purpose" of Congress in enacting ATSSSA was to protect the Port Authority "against the possibility of ruinous liability arising from the terrorist-related aircraft crashes of September 11, 2001." *In re Sept. 11th Litig.*, 494 F. Supp. 2d at 238 (referring to protection of aviation defendants); ATSSSA § 408(a)(1). Avoidance of disparate treatment is only one of the many important purposes of ATSSSA. Thus, respecting the Port Authority's sovereign immunity and the conditions under which it is waived is in keeping with the purpose of ATSSSA.

## D. The Court Lacks Subject Matter Jurisdiction Over Plaintiff Bruce Greenberg's Claims.

Plaintiff Bruce Greenberg has failed to advance, or even attempt to advance, *any* legal argument whatsoever in opposition to the Port Authority's motion for summary judgment. In his initial November 2, 2011 response, plaintiff mistakenly declared that his action had been timely filed. The Court deemed plaintiff's response "conclusory" and "insufficient" to oppose the Port Authority's motion. Order, 21 MC 100 (AKH), Nov. 8, 2011, ECF No. 2619. Plaintiff's second response is no more compelling.

Plaintiff Bruce Greenberg did not commence his action against the Port Authority in compliance with the one-year filing requirement of Section 7107. He acknowledges in his response to the Port Authority's motion that he did not commence his action until May 11, 2005, more than one year after he swore in his notice of claim that his cause of action arose: "On May 5, 2004, he learned that the illnesses he suffered were as a result of his work at [the

World Trade Center] site . . . ."  Ricker Decl., Exh. 8 at ¶ 3.  That is the latest date when his

cause of action accrued for purposes of Section 7107.  While Mr. Greenberg commenced his

action six days after the time limit expired, the Suability Statute requires strict compliance.

*See, e.g., Lyons v. Port Auth. of N.Y. and N.J.,* 228 A.D.2d 250, 643 N.Y.S.2d 571 (1st Dept.

1996) (dismissing suit when it was six days short of satisfying the 60-day notice period).

 Mr. Greenberg served only *one* notice of claim and filed only *one* complaint, and

these pleadings did not comply with the Port Authority's Suability Statute.  *See* Ricker Decl.,

Exh. 8.  The fact that Mr. Greenberg alleges that he was diagnosed with later physical

conditions is simply irrelevant, and certainly these subsequent conditions do not operate to

cure an action that was defective from the start.  If Mr. Greenberg had filed subsequent

notices of claim or had amended his complaint to reflect his "new" injuries, the effect of

these actions would be before the Court.  However, Mr. Greenberg did neither – he filed a

lawsuit against the Port Authority that was defective to begin with, and that deprives the

Court of subject matter jurisdiction over his claims.

## CONCLUSION

Plaintiffs have failed to comply with the Port Authority's Suability Statute.  The Port Authority's Suability Statute sets forth mandatory conditions precedent to suit that, if not complied with, deprive the Court of subject matter jurisdiction.  Thus, the cases at issue in this motion should be dismissed as against the Port Authority in their entirety and with prejudice.

Dated:  New York, New York
        November 23, 2011

Respectfully submitted,

By:  *Paul A. Scrudato*
     Paul A. Scrudato
     Donald A. Klein
     Jill Berry
     Schiff Hardin LLP
     666 Fifth Avenue
     New York, New York 10103
     (212) 753-5000

     *Attorneys for Defendant The Port Authority*
     *of New York and New Jersey*

NY\51086256.6

17