UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: WORLD TRADE CENTER
DISASTER SITE LITIGATION,

21 MC 100 (AKH)

----------------------------------------------------------x

THOMAS MAGEE,

Civil Action No. 05 Civ. 07210 (AKH)

                                    Plaintiff,

        - against -

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, SILVERSTEIN
PROPERTIES and THE CITY OF NEW YORK,

                                    Defendants.

**MEMORANDUM OF LAW (1) IN REPLY TO DEFENDANTS' OPPOSITION TO
STRIKE DEFENSES AND REMAND AND (2) IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Thomas Magee ("Magee") submits this reply/opposition memorandum of law in

support of (1) his motion to strike certain affirmative defenses proffered by defendants The Port

Authority of New York and New Jersey ("Port Authority"), Silverstein Properties ("Silverstein")

and The City of New York ("New York City") and remand his case to state court and (2) his

opposition to the motion for summary judgment filed by the Port Authority and New York City.

First, as to defendants' motion for summary judgment, the evidence in the record

establishes that Magee's execution of a waiver of suit applied only to the respiratory injuries he

sustained while working at the World Trade Center site as part of the rescue and recovery effort

in the immediate aftermath of the September 11 attacks.  The orthopedic injuries Magee suffered

on June 11, 2002 fell outside the scope of the Airline Transportation Safety and System

Stabilization Act ("ATSSSA") and subsequent regulations authorizing the Victims'

Compensation Fund ("VCF") and are medically unrelated to Magee's respiratory problems.

Magee could not have been compensated for the June 11, 2002 injuries by the fund program and,

thus, he could not have waived his right to file suit for those injuries in the future by virtue of

1

participating in the fund for his unrelated respiratory injuries.  The Port Authority and New York

City's motion for summary judgment (which is no more than a reiteration of the affirmative

defense of waiver set forth in their answer, only now set forth as a motion for summary

judgment, and appears to be made simply in order to give the defendants the chance to file a

reply brief) must, therefore, be denied.

Second, as to plaintiff's motion to remand to state court, Magee's claims are expressly

outside the scope of the relevant federal statute and regulations and defendants have offered no

plausible support for their federal officer jurisdiction argument.  Having failed to satisfy the

heavy burden placed on removing parties, this Court should return this litigation to the Supreme

Court for New York County.

Last, irrespective of plaintiff's motion to remand, this Court should strike the defendants'

affirmative defense that Magee has waived any claim for recovery because of his earlier

participation in the Victim Compensation Fund for his unrelated respiratory injuries and their

affirmative defense that defendants' liability is limited under the Airline Transportation Safety

and System Stabilization Act.  As discussed herein, Magee never waived his right to pursue a

claim for injuries that he sustained after the period of time covered by federal legislation.  His

debilitating orthopedic injuries were not proximately related to the September 11, 2001 terrorist

attacks; they are medically distinct from his respiratory damages and they do not fall within the

scope of federal law.  They are ordinary construction site injuries that are not covered by the

Victim Compensation Fund or the Airline Transportation Safety and Stabilization Act and the

provisions of those federal laws should not preclude Magee's suit or restrict his recovery.

## A. Genuine Questions of Material Fact Preclude Summary Judgment

Magee was working at the WTC construction site on June 11, 2002. *See* Exhibit A to

Declaration of Noah H. Kushlefsky ("Kushlefsky Decl."), Magee Verified Complaint; Exhibit 1

to Certification of James E. Tyrell ("Tyrell Cert."), Magee's Responses to Core Discovery, 05 cv. 5228 (Oct. 7, 2008); Exhibit 2 to Tyrell Cert., Magee Rule 50-h Hearing Testimony, 57:16 – 19. On that day, he was working as a welder in an elevator shaft. Exhibit 3 to Tyrell Cert., Magee Notice of Claim. This work was separate and distinct from Magee's earlier volunteer efforts with the rescue and recovery teams at Ground Zero. Exh. 2, Tyrell Cert., Magee Rule 50-h Hearing Testimony, 44:10 – 16 (Magee's construction work started once "[t]here was no more recovery.")While performing this ordinary construction work, a ground pump failed and water flooded the work area. *See* Exhibit B to Kushlefsky Decl., Magee Worker's Compensation Claim Form. The flooding caused the ladder upon which Magee was standing to slip out from under him and Magee consequently fell approximately 25 feet to the ground. *Id.* As a result of the fall, Magee, among other things, broke his back. *Id.* The physical damage to Magee's body was so severe that he has been unable to work for the more than nine years since the accident. *Id.*

Prior to June 11, 2002, Magee had worked as part of the rescue and recovery effort at Ground Zero. He volunteered his time starting on September 12, 2001, working tirelessly to clear the area of debris, to recover bodies and to assist in transporting survivors to medical facilities. *See* Tyrell Cert., Exh. 2, Magee Rule 50-h Hearing Test., 25: 10 –34:25 (Magee first went to Ground Zero on the afternoon of the attacks to "see if I could help," staying there to perform search and rescue for 36 hours with few breaks in between.) During his rescue and recovery at Ground Zero in the immediate aftermath of the attacks, Magee inhaled substantial amounts of dust and toxins that ultimately caused him to suffer from respiratory injuries. Seeking to recover for those respiratory injuries, Magee joined a lawsuit against a number of defendants, including The Port Authority and New York City. He also submitted a claim form with the Victim Compensation Fund ("VCF"), seeking monetary payment only for his "respiratory injuries."*See* Exhibit C to Kushlefsky Decl., VCF Claim Form, p. 2. Nowhere on the

3

claim form that Magee submitted to the VCF did he refer to his orthopedic injuries or suggest

that he was seeking compensation for those injuries. *Id.*[1]  On April 12, 2004, Magee stipulated to

the dismissal of the lawsuit for his respiratory injuries. *Ariola, et al. v. The Port Authority of New*

*York and New Jersey, et al.*, 02-cv-9127 (S.D.N.Y.), 4/12/2004 docket entry ("Stipulation and

Order of Dismissal.")  Thereafter, on June 4, 2004, the VCF awarded Magee $536,206 as

compensation for the claim he submitted for his respiratory injuries. *See* Exhibit D to

Kushlefsky Decl., June 4, 2004 VCF Award Letter.  The VCF award letter on June 4, 2004 noted

that issuance of the award was contingent on receipt of "notice of dismissal of any legal action."

*See id.*  Magee never dismissed the pending action for his unrelated orthopedic injuries, but the

respiratory action was dismissed. *See* Kushlefsky Decl., ¶¶ 6, 7.  The VCF paid the full amount

stated in the award letter on about July 10, 2004. *See id.*, ¶ 7.

The Victims' Compensation Fund was available only for injuries "resulting from" or

"relating to" the terrorist attacks.  While those terms may be ambiguous, *see Graybill v. City of*

*New York*, 247 F.Supp.2d 345, 347 – 48 (2002), the enabling federal regulations provide some

assistance in parsing their meaning.  In establishing the parameters of who could participate in

the compensation fund, the regulations explained that those individuals who were present at a

September 11 crash site or were in the immediate aftermath of the crashes and suffered physical

harm as a "direct result" of the crashes or of debris removal were eligible to submit a claim to the

---

[1] Defendants correctly note that some of the medical records Magee supplied when he submitted his claim form to the VCF refer to the injuries he sustained on June 11, 2002 – a fact that plaintiff addressed in his moving papers. For the most part, however, those are medical records discussing both his respiratory problems as well as his orthopedic injuries. It would have been more confusing to submit incomplete or redacted medical documents with his claim form than to provide the compensation fund with a complete set of his medical records, as the fund administrators requested. To the extent that those records discuss his orthopedic injury, such discussion in no way changes the fact that his claim form sought compensation solely for his respiratory injuries, and the orthopedic injuries were not compensable in the VCF.

fund. 28 C.F.R. § 104.2. The "immediate aftermath" is defined as "any period beginning with

the terrorist-related aircraft crashes of September 11, 2001, and ending on May 30, 2002." 28

C.F.R. § 104.2(c).[2] The original purpose behind the regulation's definition of "immediate

aftermath" was to include the

> rescue workers who assisted in efforts to search for and recover victims ... in
> recognition of [the] heroic efforts [of the rescue workers] and their selfless
> reasons for being at the sites ... [the regulations] and respond[] to a request by the
> Mayor of New York City that the program recognize the high level of danger and
> difficulty during the first four days of rescue operations.

*See* 66 Fed. Register 66274-01, 66277, 2001 WL 1635625.

The language concerning participation in the VCF that limits compensable injuries to

those that were "related to" or "resulted from" the terrorist attacks was intended to adequately

provide for rescue workers, while limiting the possibly endless exposure of the compensation

fund.  As this Court has explained

> Those working at the World Trade Center site as part of the rescue effort were
> focused on the immediate and central jeopardy created by the hijackings and
> crashes – the endangerment of human lives; any injuries incurred by exposure to
> airborne contaminants during the search for survivors fall within the range of
> claims in which the effects of the terrorist-related aircraft crashes predominated.
> At other sites, or after this period, the focus of the activities was clean-up, and the
> conditions that predominated were those of a demolition site, governed by the
> [New York State] Labor Law as interpreted and enforced by the New York
> Supreme Court.

*Hickey v. City of New York*, 270 F.Supp.2d 357, 377 (2003).  Indeed, Congress, in creating the

VCF limited its focus to the claims of "those immediately involved in the terrorist-related aircraft

crashes and the tasks following in their immediate aftermath, like the firefighters and police

officers who were involved in the attempts to rescue victims." *Id.*  The work that followed by

---

[2] Prior to Congress' passage of the Zadroga Act, the "immediate aftermath" period was
considerably shorter, covering the time between the airplanes' impact and 96 hours thereafter.
*See* 66 Fed. Register 66274-01, 66282, 2001 WL 1635625.  Even under the longer period of
time, however, Magee's orthopedic injuries fall outside the scope of the fund.

individuals like "ironworkers, sanitation workers, engineers, and the numerous other laborers who participated in the lengthy demolition and clean-up efforts, did not appear to have been considered by Congress." *Id.*

Even if he had wanted to, then, Magee could not have participated in the VCF process for his orthopedic injuries, as he sustained those injuries outside the time defined in federal regulations as constituting the "immediate aftermath" of the terrorist attacks. Magee, in other words, never had the chance to participate in the VCF process for the June 11, 2002 injuries.

As the Second Circuit has explained, it is the opportunity to <u>choose</u> between participation in the VCF and to pursue litigation that is the crux of the compensation fund's waiver provision. *Virgilio v. City of New York*, 407 F.3d 105, 113 (2d Cir. 2005) ("The [VCF] waiver provision plainly requires litigants to <u>choose</u> between risk-free compensation and civil litigation) (emphasis added).[3]

Magee, subject to the narrower time and proximity restrictions of the VCF provisions, had no choice between litigation and the compensation fund for his orthopedic injuries. The VCF was available only for those injuries that had their onset during the "immediate aftermath" of the attacks – originally the time between the airplanes' impact and 96 hours thereafter, and now defined as the period between the aircraft crashes on September 11, 2001 and May 30, 2002. *See* 49 U.S.C.A. § 40101 note, § 405(c)(i); 28 C.F.R. § 104.1. The choice between participating in the fund or litigating a claim is absolutely fundamental to the scope of the waiver. Magee could not have received compensation from the VCF for the injuries he suffered

---

[3] Participation in the VCF involves tighter time and proximity restraints on claimants than the jurisdictional statements set forth in the general provisions of the Air Transportation Safety and Stabilization Act ("ATSSSA"). See McNally, et al. v. Port Authority of New York and New Jersey, et al., 414 F.3d 353, 376 (2d Cir. 2005) (noting that a "narrower focus" appears in section 405 of the ATSSSA, "which deals only with compensation available from the Victim Compensation Fund[.]").

on June 11, 2002 and he therefore cannot be said to have <u>opted</u> to pursue litigation. Rather, Magee had no choice but to file suit to recover for those injuries. Being excluded from the VCF for his claims resulting from the June 11, 2002 incident, the waiver provision is wholly inapplicable to the action here. *Contrast Virgilio v. Motorola*, 03 Cv. 10156 (AKH), 2004 WL 433789, *2 (S.D.N.Y. March 10, 2004) ("As plaintiffs have <u>elected</u> their remedy, they have also waived the right to bring a civil action 'for damages sustained as a result of the terrorist-related aircraft crashes of September 11, 2001.'") (emphasis added). Where, as here, a plaintiff could not have elected the VCF as his remedy, that party surely cannot be prevented from pursuing his recovery through litigation. To preclude such an action would be to wholly deprive an injured party of the opportunity for redress – if the fund is not open to the claim and the courts refuse to consider it, the injured party would have no venue in which to seek compensation for his injuries.

While Magee's respiratory injuries, because their onset was triggered by his presence at the rescue and recovery site in those first hours after the attacks, were subject to the VCF waiver (and this, or course, explains his decision to stipulate to the dismissal of his respiratory injury suit prior to receiving compensation from the VCF), his orthopedic injuries are not. Magee's orthopedic injuries are connected the WTC site simply on the basis of geography and that connection is "too tenuous, remote or peripheral to warrant a finding that the action relates to the terrorist attacks of September 11" and the waiver effected for the compensation for the respiratory injuries cannot be extended to the orthopedic injuries. *Milling v. City of New York*, 2006 WL 1652706, *1 (S.D.N.Y. June 14, 2006) (granting motion to remand) (internal quotation marks omitted). This Court should, therefore, deny defendants' motion for summary judgment.

**B.   This Court Has No Subject Matter Jurisdiction Over Magee's Claims**

As set forth in plaintiff's opening memorandum of law, it is the removing party that always bears the burden of establishing removal jurisdiction. Out of respect for the rights of the

several states, and in keeping with the limited jurisdiction of the federal courts, removal

jurisdiction is "strictly construed," with all doubts resolved against removal. *Syngenta Crop*

*Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002); *In re Methyl Tertiary Butyl Ether ("MTBE")*

*Prods. Liability Litig.*, 488 F.3d 112, 124 (2d Cir. 2007). And the removing party always bears

the heavy burden of establishing proper jurisdiction. *United Food & Commercial Workers Union*

*v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994); *Funeral Fin. Sys.,*

*Ltd. V. Solex Express, Inc.*, No. 01 Cv. 6079 (JG), 2002 WL 598530, *3 (E.D.N.Y. April 11,

220) (noting that in the face of a motion to remand, the burden falls on the defendant to prove the

existence of jurisdiction and establish that the case is properly in federal court).[4]

The ATSSSA invested jurisdiction in the Southern District of New York only for those

claims "arising out of the hijacking and subsequent crash" of the airplanes seized by terrorists on

September 11, 2001. 28 U.S.C.A. § 40101 note, § 408(b). This Court must, however, construe

the jurisdiction-conferring statutes "with precision and fidelity to the terms by which Congress

expressed its wishes." *Bread Political Action Comm. v. Fed. Elections Comm'n*, 455 U.S. 577,

580 (1982) (internal citations and quotation marks omitted).The inquiry on this matter begins

with an examination of the terms of the statute to understand the meaning of those terms within

the context of the entirety of the legislation. *See Davis v. Mich., Dept. of Treas.*, 489 U.S. 803,

809 (1989) ("It is a fundamental cannon of statutory construction that the words of a statute must

---

[4] The decision that defendants submit as evidence that the remand issue was already settled does
not appear on the docket of Magee's instant lawsuit. *See generally*, 05 cv. 7210 docket.
Likewise, no briefing on this issue appears on the docket for this individual case. Plaintiff's
current counsel substituted onto this matter in May 2011 and has not previously briefed the
remand issue. The file from prior counsel does not contain any copies of briefing on the remand
issue, either, raising a serious question as to whether Magee ever participated in any argument or
motions practice on this issue. For that reason, plaintiff respectfully requests that this Court
reject defendants' "law of the case" argument allow him the opportunity to address the remand
issues.

be read in their context and with a view to their place in the overall statutory scheme") (citation omitted).

Congress passed the ATSSSA to establish a compensation program for the September 11th victims and to limit the liability of certain companies and entities for claims that were the "result of" the September 11th terrorist attacks. 49 U.S.C. 40101 note (2001), §403 ("It is the purpose of this title to provide compensation to any individual … who was physically injured as a result of the terrorist-related aircraft crashes of September 11, 2001"); § 408.The jurisdiction of the ATSSSA, while broad, is not boundless.  Injuries sustained during a common construction accident are not sufficiently uniquely connected to the terrorist attacks to fall within the scope of the terms of the legislation.  That the construction work involved the site of the terrorist attacks is, in many ways, no more than a coincidence.  Magee could have injured himself while working in the elevator shaft of a construction project in midtown Manhattan and, were these defendants supervising that project, they would be no more entitled to invoke the jurisdictional provisions of the ATSSSA in that case than they should be here.  Because Magee's construction injuries were not the "result of the terrorist-related aircraft crashes," they fall outside the scope of the ATSSSA and this Court lacks subject matter jurisdiction over this action.

Defendants also assert that this Court has federal officer removal jurisdiction.  In support of this argument, they boldly claim that they "were acting pursuant to federal directives with regard to safety at the WTC Site and that Plaintiff's allegations stem from their compliance with those directives." Defendants' Memorandum of Law, p. 14.  The materials they provide in support of that allegation, however, utterly fail to establish their entitlement to removal jurisdiction on federal officer grounds.

Defendants rely exclusively on three documents for federal officer removal jurisdiction.  First, they submit a three page summary of something purported to be describing "OSHA's Role

9

in Response & Recovery Operations at the World Trade Center." *See* Exhibit 4 to Tyrell Cert.

That document, however, is unsigned and provides no guarantee of the author, nor is it clear

from the paper whether OSHA even had any role in its drafting. The unverified exhibit could

well be a third-party's description of what he or she understood OSHA's role to be at the WTC

site. Further, even if authored by OSHA, the document describes the agency's role simply as

"one of assistance and consultation [.]" *Id.* It goes on to discuss efforts to check on air

monitoring and exposure to airborne toxins and provides some detail as to the distribution, fitting

and testing of respirators and other protective gear. *Id.* This work has nothing to do with

Magee's claims for injuries sustained during a fall from a ladder. While the document describes

some efforts that OSHA purportedly was providing regarding construction safety, those efforts

are described as simply "technical assistance and consultation to identify potential hazards and

abate them quickly to avoid injuries." *Id.*, p. 2. This hardly "evince[s] the substantial degree of

direct and detailed federal control over the working conditions that courts have required to assert

section 1442 jurisdiction." *McGillick v. World Trade Center Properties, LLC*, 2004 WL

2049260, *3 (S.D.N.Y. Sept. 13, 2004) (denying federal officer jurisdiction and concluding that

defendant was not acting under a federal officer's direction or control in respiratory injury case

brought by September 11th cleanup worker).

The second document defendants provide is something described as a partnership

agreement among various private and public entities. *See* Exhibit 5 to Tyrell Cert. The document

is unsigned, contains no signature line for any of the defendants and is dated February 9, 2005,

nearly three years after Magee fell down the elevator shaft. It can have no bearing whatsoever

on what the relationship was between defendants and the federal government and provides no

support for defendants' federal officer removal jurisdiction claim.

The final document is a general agreement among fourteen parties declaring their mutual goals in working at the WTC site and promising to work in a spirit of cooperation and shared purpose. *See* Exhibit 7 to Tyrell Cert. Nothing in this document (or the others that defendants submit) suggests – let alone establishes – that a federal officer was directly requiring a purported agent to take specific actions. *In re MTBE Product Liability Litigation v. Atlantic Richfield Co.,* 488 F.3d 112, 124 (2d Cir. 2007) (removing parties must establish "that [they were] 'acting under' a federal officer, which subsumes the existence of a 'causal connection' between the charged conduct and asserted official authority."). At the very most, the documents suggest some degree of collaboration between OSHA and numerous other organizations in an attempt to keep workers at the World Trade Center site safe. The materials do not, however, provide any proof that defendants' acts "were performed pursuant to an officer's direct order or to comprehensive and detailed regulations." *Ryan v. Dow Chemical,* 781 F. Supp. 934, 947 (E.D.N.Y. 1992) (Agent Orange manufacturers were not "acting under" federal officials with respect to product and manufacturing and thus were not entitled to federal officer removal jurisdiction); *see also Arness v. Boeing,* 997 F. Supp. 1268, 1273 (C.D. Cal. 1998) (denying federal officer removal motion and noting that "[m]ost courts have held that the federal officer must have direct and detailed control over the defendant) (internal quotation marks and citations omitted).

The defendants have submitted no reliable evidence that they were acting under a federal officer's direction, that any federal officials or agencies were directing and controlling all aspects of the WTC construction project or that a causal nexus exists between Magee's construction-related injuries and any federal agent's directive. They have therefore failed to establish entitlement to removal jurisdiction on federal officer grounds under 28 U.S.C. § 1442(a)(1).

As Magee's claims do not "arise out" of the terrorist attacks and the defendants were not acting at the direct behest and under the firm control of federal officials, plaintiff respectfully requests that this Court grant his motion to remand his lawsuit to the Supreme Court for New York County.

## C.  This Court Should Strike Certain Affirmative Defenses

Irrespective of the question of this Court's subject matter jurisdiction over the claims, it should strike the defendants' affirmative defenses of waiver and limitation of liability.  As explained above in Section A, Magee's participation in the VCF was limited to his claims for respiratory injuries.  The question of this Court's subject matter jurisdiction under the ATSSSA over Magee's orthopedic injury lawsuit is not coterminous with a decision on defendants' affirmative defenses.  Plaintiff did not and could not have participated in the VCF for the injuries he sustained on June 11, 2002.  The orthopedic injuries Magee suffered as a result of his fall down the elevator shaft were wholly independent from his respiratory injuries and were not in any way a foreseeable consequence of the injuries that formed the basis of his VCF claim. *See Mangini v. McClurg*, 24 N.Y. 556, 567 (1969) (when the nature of subsequent injuries were not, as a practical or medical matter, discoverable at the time a release or waiver was entered into, that release or waiver will not bar a claim for those later discovered injuries); *see also Golod v. La Roche*, 964 F. Supp. 841, 851 (S.D.N.Y. 1997) (when injuries or diseases involve different biological manifestations they are considered separate and distinct); *Dunne v. World Trade Center Properties, LLC*, 05 Cv. 1578, Dkt. Entry No. 9 (S.D.N.Y. 2/22/2010) (injuries must be considered "separate and distinct" when "their biological manifestations are different and … the presence of one is not necessarily a predicate for the other's development.")

Under these circumstances, when Magee's orthopedic injuries were caused by a fall down an elevator shaft (and were not, as a practical or medical matter, related to his respiratory

12

injuries) and when Magee was barred from participating in the VCF for his orthopedic injuries, the compensation awarded to Magee for his respiratory injuries (which was predicated on his actual dismissal of his lawsuit for those injuries, and was paid out despite the ongoing lawsuit for his orthopedic injuries) cannot preclude his right to recover for his back injuries – which have disabled him and will continue to prevent him from being able to work for the duration of his lifetime.

## D. Conclusion

Thomas Magee fell and severely injured himself in a common construction site accident. He has never been compensated for those injuries. He could not have recovered for those injuries from the Victim Compensation Fund. Thomas Magee, who worked day after day and month after month on the WTC construction site, should not be barred from any recovery for his construction-related orthopedic injuries – suffered months after the time intended to be covered by the first VCF – on the basis of his earlier, unrelated participation in the VCF for his medically distinct respiratory injuries.

Dated: December 30, 2011
      New York, New York

                    KREINDLER & KREINDLER LLP

                    /s/ Noah H. Kushlefsky
                    Noah H. Kushlefsky, Esq.
                    750 Third Avenue
                    New York, New York 10017
                    (212) 687-8181
                    Attorneys for Plaintiffs