UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ x

IN RE: WORLD TRADE CENTER DISASTER
SITE LITIGATION

THIS DOCUMENT APPLIES TO ALL IN RE
WORLD TRADE CENTER DISASTER SITE
LITIGATION

------------------------------------------ x

**AFFIDAVIT**

21 MC 100 (AKH)

DAVID POSNER, M.D., being duly sworn upon oath, deposes and states as follows:

1.      I am a physician duly licensed to practice medicine in the State of New York and am board certified in Internal Medicine and Pulmonary Disease.  I am currently an Attending Physician at Weill Cornell New York Hospital and Lenox Hill Hospital, and I am an Assistant Professor of Medicine at New York University School of Medicine.  I received my medical degree from New York Medical College, Valhalla, New York in 1981.  I continued my postgraduate training at Lenox Hill Hospital, where I completed a Residency in Internal Medicine in 1985; and at Long Island Jewish Medical Center, where I completed a Fellowship in Pulmonary Disease and Critical Care Medicine in 1987.  My primary specialty is Pulmonary Disease.  As a practicing physician in the New York Metropolitan area, I am fully familiar with the standards of medical practice in the medical community within the field of Pulmonary Disease, as those standards existed in New York and nationally during the relevant dates at issue.

2.      I submit this affidavit in opposition to the Motion to Modify the Subpoena Issued to the Fire Department of the City of New York and for a Protective Order.

3.      I have reviewed the 28 articles set forth in Exhibit "A" of the Subpoena Duces Tecum to the Fire Department of New York dated 11/23/11, and am familiar with the published content of these articles.

4.       My understanding is that the City of New York declines to produce the address, place of residence, sex, race, height, date of birth, date of death, hire date and retirement date, and seeks to redact such information from the Requested Documents and Things to be Produced.  In order to fully evaluate these articles and the conclusions contained therein, and to test their validity, this information is material.

5.       The defendants in this action seek to have access to the medical and demographic data collected via the MMTP program.  This program provides for proactive monitoring of FDNY participants' medical conditions by obtaining data for specific conditions based upon symptom reporting, as well as testing by medical examination and assessment of physiology via pulmonary function testing and other technical modalities.  The symptoms reported, and test results, are subject to varying interpretation, which may result in conclusions other than those drawn by the MMTP investigators.

6.       All medical testing is based upon the known concept that a test can be interpreted as a true positive or a false positive based upon the incidence of a given condition within the population of those being tested.  Therefore, in order to verify or refute the interpretations of the MMTP investigators, the demographics and medical risk factors need to be known.  It is essential that the raw data that includes the race, sex, height, date of birth, date of death, date of hire and date of retirement be provided in order to understand important aspects of the data which was collected but not used and/or not reported.

7.       Data that the City of New York objects to disclosing includes information that is a necessary, standard medical component of pulmonary function evaluation, that is, predicted values.  Accurate, reliable predicted values for a given population, which are premised, in part, on race, age, height and weight, are essential controls that are considered in interpreting a specific individual's pulmonary function tests.

{01080490.DOC }

8.      Objective data is interpreted in consideration of the incidence of a condition in a defined population.  Age, as determined by a full date of birth, is significant since, statistically, some changes in core lung function are associated with aging.  Further, the way in which the objective data is interpreted may be impacted by the patient's clinical condition.  Information such as date of hire and date of retirement can serve to fix the period of potential occupational inhalation exposure, both prior to and following the September 11 attacks.

9.      The unprecedented events of September 11 and the unique nature of the exposures alleged invite robust review of all data by experts from the medical and scientific community.  The restricted access to the data collected, to date, has impeded this scrutiny and the ability to fully critique the reported findings.

Dated:      New York, New York
            January 11, 2012

_____
DAVID POSNER, M.D.

Sworn to before me this
11th day of January 2012

JULIO A. RODRIGUEZ
Notary Public, State of New York
Qualified in Suffolk County
01RO6035237
Commission Expires 2-4-14

{01080490.DOC }