UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------

IN RE: WORLD TRADE CENTER
DISASTER SITE LITIGATION                    21 MC 100 (AKH)

THIS DOCUMENT APPLIES TO ALL
IN RE WORLD TRADE CENTER
DISASTER SITE LITIGATION



-------------------------------------------------------


# REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO MODIFY SUBPOENA ISSUED TO FIRE DEPARTMENT OF THE CITY OF NEW YORK AND FOR PROTECTIVE ORDER

## Preliminary Statement

The City, in its moving papers, stated that it was willing to provide virtually all of the information sought by the subpoena served by the Subcontractor Defendants, subject to limited de-identifying redactions that would make the production compliant with federal and state law. The only information that the City proposed to redact was (a) privileged and confidential and (b) not needed by the Subcontractors' experts to assess the reliability of the studies at issue. In response to the City's motion, the Subcontractors have not demonstrated that the various state and federal laws do not require redaction of potentially identifying information such as the exact home address, race, sex, and exact birth dates of people who received medical care from the FDNY's Medical Monitoring and Treatment Program. And they have advanced only conclusory reasons why their experts need the identifying information.

The City therefore respectfully requests that this Court enter the order proposed by the City that provides that the City will provide de-identified data from the Medical Monitoring and Treatment Program.

## Point I

### Under Choice of Law Principles, New York State's Doctor-Patient Privilege Applies

The Subcontractors maintain that because this is a federal-question case, state privilege laws do not apply. The argument fails to take into account the second sentence of Federal Rule of Evidence 501. That sentence provides that "in a civil case, state law governs privilege regarding a claim or defense for which state

law supplies the rule of decision."[1] As the City pointed out in its moving brief, section 408(b)(2) of ATSSSA states that "the substantive law for decision . . . shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law." *See also McNally v. Port Auth. (In re WTC Disaster Site)*, 414 F.3d 352, 380 (2d Cir. 2005). Thus, under the plain language of FRE 501 and section 408(b)(2) of ATSSSA, New York's doctor-patient privilege applies to this dispute. *See generally Eagle Precision Techs. v. Eaton Leonard Robolix, Inc.*, No. 03cv352, 2005 U.S. Dist. LEXIS 47173 (S.D. Cal. Aug. 11, 2005). *Cf. Von Bulow v. Von Bulow*, 811 F.2d 136, 140 (2d Cir. 1987), *cert. denied*, 481 U.S. 1015 (1987) (federal privilege law applies where the evidence relates to a federal RICO claim, which is not simply based on state law, and pendent state claims); *Young v. United States*, 149 F.R.D. 199, 204 (S.D. Cal. 1993) ("While one may debate the meaning of the last sentence of Rule 501, its legislative history clearly indicates that state privilege law was not intended to apply in [cases brought under the] Federal Tort Claims Act . . . ," which base liability upon the law of the State in which the act occurred.).

---

[1] Rule 501 was amended effective Dec. 1, 2011. Before the amendment, the second sentence of Rule 501 read in relevant part, "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with State law." The Notes of the Advisory Committee on 2011 Amendments explain that "[t]he language of Rule 501 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility."

2

Alternatively, even if, as the Subcontractors implicitly maintain, the first sentence of FRE 501 were the operative part of the Rule, New York's privilege law would apply. The first sentence of FRE 501 provides that: "The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege *unless any of the following provides otherwise*:

- the United States Constitution;
- *a federal statute*; or
- rules prescribed by the Supreme Court" (emphasis added).[2]

Under the first sentence, it is state rather than federal privilege law that applies where Congress has so provided. *See* 23 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE § 5433 at 857-58 and 858 n.33 (1980). Here, Congress has provided that "the substantive law for decision" shall be state law. ATSSSA § 408(b)(2). Privilege laws are clearly substantive in nature. *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 555 n.2 (2d Cir. 1967) (holding such rules substantive for Erie purposes). Such rules "affect people's conduct at the stage of primary private activity and should therefore be classified as substantive or quasi-substantive." *Id.* (quoting *Massachusetts Mut. Life Ins. Co. v. Brei*, 311 F.2d 463, 466 (2d Cir. 1962) (quoting HART & WECHSLER, THE FEDERAL COURTS AND THE FEDERAL SYSTEM 678 (1953))); *see also* 23 WRIGHT AND MILLER § 5433, n. 33.

---

[2] Before it was amended, the first sentence of Rule 501 read as follows: "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

3

Accordingly, even under the first sentence of FRE 501, New York's physician-patient privilege applies to the materials sought here.

Finally, even if this Court were to apply the federal law of privilege to this case, and thus not apply the state doctor-patient privilege, the federal statutes cited by the City still require that the identifying information of the participants in the Medical Monitoring and Treatment Program be redacted from the City's response to the Subcontractors' subpoena. (*See* City's Mem. of Law in Supp. 14-17.)

## Point II

### The Identifying Information Is Protected by New York's Doctor-Patient Privilege and Should Be Redacted

In its moving brief, the City set out the essential elements necessary to establish whether New York's doctor-patient privilege applies to an interaction between a doctor and another person. In short, the privilege applies when a doctor speaks with a patient for the purposes of providing medical treatment. Dr. Prezant's affidavit clearly states that the subpoena seeks data that he acquired in the course of monitoring and treating members of the FDNY who responded to the terrorist attacks of 9/11. (Prezant Aff. ¶ 12.)

The Subcontractors assert that the study data "was not acquired by a physician attending a patient for treatment purposes." (Subcontractors' Mem. of Law in Opp. 7.) Without referring to Dr. Prezant's affidavit or any other source of facts in the record, they claim, "Here, the relevant information has been collected for research purposes, not for treatment of any specific individual." (*Id.*)

In fact, as Dr. Prezant states at paragraph 12 of his affidavit, the subpoena seeks "information collected from . . . personnel participating in the MMTP program to monitor the medical condition of, and provide medical treatment and prescription drugs to, active and retired Fire and EMS personnel who participated in the rescue and recovery efforts on and after September 11, 2001." Thus, New York's doctor-patient privilege applies to the information sought by the Subcontractors' subpoena.

## Point III

## New York Law Provides that When a Litigant Withdraws a Claim, Medical Information Concerning that Claim Is Privileged

In its principal brief, the City maintains that when a plaintiff withdraws a claim, the doctor-patient privilege protects confidential records related to the withdrawn claim from disclosure. The City relies on *Kohn v. Fisch,* 262 A.D.2d 535, 692 N.Y.S.2d 429 (2d Dep't 1999) and *Strong v. Brookhaven Memorial Hospital Center,* 240 A.D.2d 726, 659 N.Y.S.2d 104 (2d Dep't 1997) in support of its position. The Subcontractors purport to distinguish those cases on the basis that they "did not involve participation in research studies, publication of the results of studies, federal funding of studies, or limited access to underlying data." (Subcontractors' Mem. of Law in Opp. 8.) If by this argument, the Subcontractors are again contending that the Medical Monitoring and Treatment Program records do not involve medical treatment, as discussed above and at paragraph 12 of Dr. Prezant's affidavit, they are mistaken.

The Subcontractors further argue that the "medical conditions of the participants who discontinued or settled their cases . . . is [sic] potentially relevant to issues of causation in this litigation." (*Id.*) While the medical condition of the former plaintiffs may be relevant, a showing of relevance obviously does not override the doctor-patient privilege. The Subcontractors provide no rationale for why a defendant in one litigation is entitled to identify (and thus learn the medical condition of) a person solely because that person brought a different litigation that has been discontinued.

## Point IV

## Redaction of Identifying Information Is also Required by Federal Law; the Court, in any Event, Should Enter the City's Proposed Protective Order

The Subcontractors do not dispute, and even acknowledge, that 42 U.S.C. § 241(d) "provides for the protection of the privacy of individuals who are research subjects" and "authorizes the withholding of names and other identifying characteristics of such individuals." (Subcontractors' Mem. of Law in Opp. 9.) They maintain, however, that redacting names and Social Security numbers will sufficiently safeguard the identity of the Medical Monitoring and Treatment Program participants and that full street addresses and specific dates of birth should be provided without redaction. The Subcontractors fail to acknowledge that

providing full street addresses or specific dates of birth is tantamount to identifying the participants.[3]

With respect to the effect of the informed-consent forms approved by the Institutional Review Board in accordance with 42 U.S.C. § 289 and 45 C.F.R. § 116, the Subcontractors mischaracterize the promises of confidentiality contained in the forms, stating that they only "promis[e] that the *names* of participants will not be identified." (*Id.* at 8 (emphasis in original).) Rather, the consent forms promise more—that the participants will not be identified because their names will not be provided *and* because other identifying information will not be provided. (City's Mem. of Law in Supp. 14-15.) Once again, providing participants' full addresses would be equivalent to identifying them, even if their names were redacted. As the City noted in its initial filing, HIPAA provides a national standard for how confidential medical information should be handled and provides specific instructions on what data must be redacted to "de-identify" medical information.

And providing the data in a de-identified form as required by HIPAA's implementing regulations will provide all of the information the Subcontractors' experts need. Dr. Prezant explained in paragraph 24 of his affidavit why he believes that the Subcontractors' experts do not need any more information than they would get if the City de-identified the data in accordance with HIPAA.

---

[3] Disclosure of a subject's full address is arguably more identifying than disclosure of his or her name, as there may be many of the latter but only one of the former. Specific dates of birth may be less identifying, although that depends on the population at issue, which here is discrete and well-known. Thus, disclosure of a specific date of birth, especially in conjunction with other identifying information, could easily be used to identify individual firefighters and EMS rescue workers.

7

In response, the Subcontractors submitted the affidavits of two experts, purportedly to explain why they needed information that could be used to identify individual study participants. Dr. Posner states that "[i]t is essential" that he be able to review "the raw data." (Posner Aff. ¶ 6.) But his explanation for why he needs the raw data is that it "includes information that is a necessary, standard medical component of pulmonary function evaluation, that is, predicted values." (*Id.* ¶ 7.) Dr. Posner thus seems to have been unaware that the City is willing to provide predicted values. (*See* Prezant Aff. ¶¶ 24-25.) And Dr. Posner provides no rationale and cites no authority for why he needs exact dates, instead of age in years or year of hire or retirement "to fully evaluate [Dr. Prezant's] articles and conclusions . . . and to test their validity." (Posner Aff. ¶ 4.)[4] Thus, he has not demonstrated a need for all of the potentially identifying information.

And the Subcontractors' other expert, Dr. Mundt, asserts that he needs the potentially identifying information "to fully scientifically evaluate the underlying relationships between occupational and environmental exposures and diseases as described in the referenced articles and the conclusions contained therein." (Mundt Aff. ¶ 4.) Like Dr. Posner, he offers no rationale and cites no authority to support his assertion. In short, the Subcontractors have offered no factual or legal support

---

[4] At the November 22, 2011 conference, during which the production of the MMTP data was discussed, the Court expressed its agreement with redacting the specific dates of birth of the study participants: "You don't have to have a specific date of birth. You can have a span within three years then." (*See* Tr. 14:22-23, Nov. 22, 2011, attached as Exhibit A to the Deutsch Decl. in Opp.)

8

for why providing information de-identified in accordance with HIPAA is not sufficient.

The Subcontractors rely on one case to support their position on this point: *In re Zyprexa Products Liability Litigation*, 254 F.R.D. 50 (E.D.N.Y. 2008). But even in that case, the court "conclude[d] that, provided the disputed medical records are de-identified in accordance with the requirements of 45 C.F.R. § 164.514(b)(2) [HIPAA's implementing regulation], they are not privileged and are thus discoverable." *Id.* at 56.

Rather than being "untenable" as the Subcontractors maintain, the City's position with respect to redacting identifying information is fully consistent with the rulings and protective orders issued by federal courts in similar circumstances. In *Murphy v. Philip Morris Inc.*, No. CV 99-7155, 2000 U.S. Dist. LEXIS 21128 (C.D. Cal. Mar. 17, 2000), a case relied on by the Subcontractors, the court acknowledged that it had a "mandate [to] take affirmative steps to avoid the unnecessary disclosure of the personal identities of the . . . study participants" (at *8-9) and that "both California law and federal law require that, to the extent possible, these identities be protected" (at *11). The court ordered, therefore, that the following "shall be redacted or removed from the disclosure" before being provided: "personal names, addresses, social security numbers, personal identification numbers, insurance policy numbers, specific places of employment, specific places of education, telephone numbers, and any other data which identifies

9

or accesses the participant and/or her relatives, friends, employers or associates." *Id.* at *13.

Similarly, as the Subcontractors acknowledge, in *American Tobacco*—which, it is important to note, was decided before HIPAA was adopted—the Second Circuit upheld the district court's ruling that the producing party "may redact the names of the subjects of the two studies . . ., and their street addresses, town or village of residence, names of employers, social security numbers and union registration numbers, provided, however, that Mount Sinai and the ACS shall provide the county of residence of the subjects." 880 F.2d 1520, 1526 (2d Cir. 1989).[5]

Also consistent with *Murphy* and *American Tobacco* are a host of other federal court decisions in the Southern District in which the courts have held that even though there is no doctor-patient privilege under federal law, there is still a privacy interest relating to medical information requiring appropriate sealing. *See, e.g., Aguilar v. Immigration & Customs Enforcm't Div. of the U.S. Dep't of Homeland Sec.*, No. 07cv8224, 2009 U.S. Dist. LEXIS 99815, at *9 (S.D.N.Y. Oct. 23, 2009) (there is no physician-patient privilege under the federal common law;

---

[5] Moreover, as the City has proposed in the order it submitted with its moving papers, the protective orders issued in both *Murphy* and *American Tobacco* included a provision requiring that any person having access to the protected medical data first execute a non-disclosure undertaking. *See Murphy v. Philip Morris*, 2000 U.S. Dist. LEXIS at *14; *American Tobacco*, 880 F.2d at 1526.

At the November 22, 2011 conference, this Court also expressed agreement with the City's request to limit access to this sensitive data to counsel for the subpoenaing parties, liaison counsel, and their retained experts rather than allow it to be distributed to hundreds of parties and their counsel. (*See* Tr. 12:9-13, Nov. 22, 2011, attached as Exhibit A to the Deutsch Decl. in Opp.)

10

"[n]evertheless, litigants do have a privacy interest in keeping their sensitive medical records confidential"); *Manessis v. New York City Dep't of Transp.*, No. 02cv359, 2002 U.S. Dist. LEXIS 17884, at *4 (S.D.N.Y. Sept. 23, 2002) ("Although there is no physician-patient privilege in federal law, Manessis does have a privacy interest in his medical records."); *Olszewski v. Bloomberg, L.P.*, No. 96cv3393, 2000 U.S. Dist. LEXIS 17951, at *8 (S.D.N.Y. Dec. 13, 2000) (recognizing "a privacy interest in keeping one's medical and mental health records confidential"); *Gill v. DeFrank*, No. 98cv7851, 2000 U.S. Dist. LEXIS 8836, at *42 (S.D.N.Y. March 9, 2000) (recognizing that plaintiff had a right to privacy in his medical records) (*modified on other grounds by DeFrank*, 2000 U.S. Dist. LEXIS 9122).

Importantly, none of the cases relied on by the Subcontractors support disclosure of the full street addresses or specific dates of birth of the Medical Monitoring and Treatment Program participants. To the contrary, in both *Murphy* and *American Tobacco*, street address was not disclosed. Neither was the identity of the individual's employer. Here, redacting the participants' employer would serve no purpose, as all of the participants worked for the FDNY. Therefore, the increased redaction the City seeks here is necessary to maintain the same level of anonymity required in those other cases.

## Conclusion

In light of New York's doctor-patient privilege and federal statutes regarding medical privacy, the City should be permitted to redact the personally identifying information of the Medical Monitoring and Treatment Program participants, such

as name, address, city of residence, sex, race, height, and specific dates of birth, death, hire, and retirement. The City therefore requests that the Court (1) modify the subpoena to permit the City to redact the data identified above that could be used to identify the participants; (2) allow the City to produce the year of the event, rather than the specific date, for birth, death, hire, and retirement; and (3) enter the proposed protective order, which limits the individuals who may see any produced data, requires recipients of any data to use it solely for the current litigation and to return it at its conclusion, and prohibits recipients of the data from taking any steps to identify any individual participant in the Medical Monitoring and Treatment Program.

Dated: New York, New York
       January 18, 2012

                                            Respectfully submitted,

                                            MICHAEL A. CARDOZO
                                            Corporation Counsel of
                                            the City of New York
                                            100 Church Street
                                            New York, New York 10007
                                            (212) 788-0514
                                            kbecker@law.nyc.gov

                                        By: _____
                                            Kenneth A. Becker (KB-0940)
                                            Chief, WTC Unit