UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: WORLD TRADE CENTER DISASTER SITE LITIGATION | 21 MC 100 (AKH) |
| THIS DOCUMENT APPLIES TO ALL WORLD TRADE CENTER DISASTER SITE LITIGATION | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OMNIBUS MOTION TO COMPEL NON-PARTIES TO COMPLY WITH DEFENDANTS' SUBPOENAS**

*On the brief:*
Adlai J.J. Small
Kashif T. Chand

James E. Tyrrell, Jr.
Joseph E. Hopkins
PATTON BOGGS LLP
1185 Avenue of the Americas
New York, New York 10036

-and-

The Legal Center
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
Tel: (973) 848-5600
Fax: (973) 848-5601
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

STATEMENT OF FACTS ................................................................................................1

ARGUMENT ....................................................................................................................3

    I.    EPA SHOULD BE COMPELLED TO PRODUCE A RECORDS CUSTODIAN TO TESTIFY TO THE COMPLETENESS OF ITS DOCUMENT PRODUCTION ................................................................5

    II.   ANGEL AERIAL SHOULD BE COMPELLED TO PRODUCE RECENTLY IDENTIFIED DOCUMENTS RESPONSIVE TO DEFENDANTS' SUBPOENA OR PROVIDE A CERTIFICATION AS TO WHY THESE DOCUMENTS CANNOT BE PRODUCED ...........................9

CONCLUSION ................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bank of New York v. Meridien Biao Bank Tanz.*,
   171 F.R.D. 135 (S.D.N.Y. 1997) .................................................................................. 4

*Concord Boat Corp. v. Brunswick Corp.*,
   169 F.R.D. 44 (S.D.N.Y. 1996) ..................................................................................... 4

*Dynegy Midstream Serv., LP v. Trammochem*,
   451 F.3d 89 (2d Cir. 2006) ............................................................................................ 4

*Estate of Ungar v. Palestinian Authority*,
   396 F. Supp. 2d 376 (S.D.N.Y. 2005) ........................................................................... 3

*In re DG Acquisition Corp.*,
   151 F.3d 75 (2d Cir. 1998) ............................................................................................ 4

*Koch v. Greenberg*,
   2009 WL 2143634 (S.D.N.Y. July 14, 2009) ............................................................... 4

*SEC v. Selden*,
   484 F. Supp. 2d 105 (D.D.C. 2007) .............................................................................. 6

*Watts v. SEC*,
   482 F.3d 501 (D.C. Cir. 2007) ...................................................................................... 6

*Western Bank Puerto Rico v. Kachkar*,
   2009 WL 856392 (S.D.N.Y. Mar. 27, 2009) ................................................................ 4

**STATUTES**

5 U.S.C.A. 552(b) ................................................................................................................ 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 30(b)(6) ................................................................................................ passim

Fed. R. Civ. P. 45 ................................................................................................................ 4

This memorandum of law is submitted on behalf of Defendants, the City of New York and certain of its Contractors (collectively, "Defendants"),[1] in support of Defendants' Omnibus Motion to Compel Non-Parties to comply with Defendants' Subpoenas. Defendants respectfully ask the Court to compel the Environmental Protection Agency ("EPA") and Angel Aerial, Corp. ("Angel Aerial") to comply with the Subpoenas that Defendants have issued to them, to produce and permit for inspection and copying materials responsive to those subpoenas and/or certify to why those documents cannot be produced, to compel the production of individuals for deposition, and any other relief that this Court sees fit.

## STATEMENT OF FACTS

On February 7, 2005, this Court entered Case Management Order No. 3 ("CMO 3"), authorizing non-party discovery (limited to the issues of immunities) from the federal agencies present at the World Trade Center Site and related locations ("WTC Site"). (*See* Case Management Order No. 3, attached as Exhibit ("Ex.") B to the February 7, 2013 Certification of Adlai J.J. Small Esq., ("Small Cert.").) This discovery was narrowly tailored, focusing on information maintained by OSHA, Federal Emergency Management Agency ("FEMA"), Army Corps of Engineers ("ACOE"), and EPA. At that time, discovery from any other federal, state or private entity had not been authorized and the approved discovery did not extend beyond the issues relating to immunity.

It was not until December 2008—when Case Management Order No. 8 was entered—that full non-party discovery began. (*See* Case Management Order No. 8, Small Cert. Ex. C).

---

[1] As used in this motion, the term Defendants refers to all parties identified in Exhibit A of the Certification of Adlai J. J. Small.

Defendants were authorized to pursue discovery from any and all federal, state and private entities maintaining relevant information. During 2009 and 2010, 166 subpoenas were served on non-party entities: 101 records subpoenas; 58 Fed. R. Civ. P. 30(b)(6) subpoenas; and 7 combined records and Fed. R. Civ. P. 30(b)(6) subpoenas. Of the records custodian subpoenas issued by Defendants, 30 were issued to federal agencies (including EPA, OSHA, FEMA and ACOE), 8 were issued to state agencies, and 70 were issued to private entities, including many unions affiliated with current and former Plaintiffs. (Small Cert. ¶ 4). In December 2009, 31 federal agencies and 34 labor unions were served with Fed. R. Civ. P. 30(b)(6) subpoenas for the deposition testimony of a records custodian and an individual with substantive knowledge of the work performed by each entity at the WTC Site. (Small Cert. ¶ 5). Before many of these depositions could proceed[2] and before many non-parties had completed their document productions, the litigation was stayed in March 2010 as a result of settlement.

Subsequently, on November 22, 2011, this Court convened a conference specifically to address the advancement of non-party discovery. The Court's instructions and guidance during that conference permitted non-party discovery to move forward without limitation. This Court stated: "you go ahead [and take non-party discovery] as you were going at the time they were stopped." (*See* November 22, 2011 Court Hearing Tr. 10:19 – 11:13, Small Cert. Ex. D). As a result, Defendants resumed their non-party discovery efforts from those entities that had failed to fully discharge their discovery obligations prior to the stay. Defendants also issued new subpoenas and sought further discovery—working to obtain documents from previously un-served non-parties and issuing new Fed. R. Civ. P. 30(b)(6) subpoenas for depositions.

---

[2] Only two non-party depositions occurred during this period, the deposition of Chief John McDonnelly of the Uniformed Fire Officers Association and the deposition of John McAusland of the Port Authority Police Benevolent Association.

While most non-party discovery issues have been resolved amicably, several areas remain unresolved and necessitate this motion to compel:

- EPA has refused to produce a records custodian for deposition to ensure the completeness and veracity of its production; and
- Angel Aerial initially confirmed the existence of responsive documents but has recently indicated that no documents related to its work at the WTC Site exist.[3]

This outstanding discovery is relevant not only to those Plaintiffs remaining in the 21 MC 100 docket but to the claims against Defendants by plaintiffs in other dockets or that may bring claims in the future. Denying Defendants access to this information now poses the real and significant risk of the loss of this information—through either the destruction of documents or the unavailability of deponents. Defendants therefore have been forced to seek the assistance of the Court.

## ARGUMENT

Rule 45 of the Federal Rules of Civil Procedure ("Rule 45") authorizes federal courts to issue subpoenas to non-parties to "compel testimony or the production of documentary evidence in an ongoing case." *Estate of Ungar v. Palestinian Authority*, 396 F. Supp. 2d 376, 379 (S.D.N.Y. 2005).[4] Subpoenas issued pursuant to this rule allow a party to "obtain discovery

---

[3] At the October 17, 2012, status Conference, this Court was advised of non-party discovery issues that remain unresolved. To deal with these issues, the Court requested that Defendants file this omnibus motion and identify those non-parties with outstanding discovery issues. (*See* October 17, 2012 Court Hearing Tr. 19:7 – 22:7, Small Cert. Ex. E). Defendants' counsel continues to work with a number of non-parties not named herein to finalize outstanding discovery and will promptly raise any problems with the Court if disputes arise.

[4] When issued to a corporation or governmental agency, a party may describe the topics of deposition and allow the organization to designate one or more employees for deposition. Rules

3

regarding any non-privileged matter that is relevant to any party's claim or defense." *Koch v. Greenberg*, 2009 WL 2143634, at *2 (S.D.N.Y. July 14, 2009) (citing Fed. R. Civ. P. 26(b)(1)). To prevent discovery from becoming a "game," Rule 45 allows the party serving a subpoena to "move the issuing court for an order compelling production." *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998); *Western Bank Puerto Rico v. Kachkar*, 2009 WL 856392, at *2 (S.D.N.Y. Mar. 27, 2009) (citing Fed. R. Civ. P. 45(c)(2)(B)(i)). A party who fails to obey a subpoena, without adequate excuse, may be held in contempt by the court from which the subpoena issued. Fed. R. Civ. P. 45(e); *Dynegy Midstream Serv., LP v. Trammochem*, 451 F.3d 89, 95 (2d Cir. 2006).

A party seeking to avoid compliance with a subpoena served under Rule 45 must show that the subpoena imposes an "undue burden or expense on a person subject to the subpoena." Rule 45(c). To determine whether a subpoena presents an "undue" burden or expense, the courts consider a variety of factors, including, but not limited to: (1) the relevance of the information requested; (2) the need of the party for the production; (3) the breadth of the request for production; (4) the time period covered by the subpoena; (5) the particularity with which the subpoena describes the requested production; and (6) the burden imposed. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996).

---

30(b)(6), 45. Not only must the organization "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters . . ." they must also "prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." *Bank of New York v. Meridien Biao Bank Tanz.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997).

4

I. **EPA SHOULD BE COMPELLED TO PRODUCE A RECORDS CUSTODIAN TO TESTIFY TO THE COMPLETENESS OF ITS DOCUMENT PRODUCTION**

Discovery of the EPA began on September 7, 2005 when Defendants issued a subpoena to EPA that was limited strictly to the issues of immunity.[5] (*See* September 7, 2005 Subpoena *duces tecum*, Small Cert. Ex. F). Instead of responding to this subpoena under Rule 45, EPA unilaterally decided to treat this subpoena as a request for documents under the Freedom of Information Act ("FOIA"). (*See* October 5, 2005 letter from Robert A. Friedrich, Small Cert. Ex. G). In doing so, the EPA withheld approximately 2,200 pages of documents responsive to Defendants' subpoenas. (*Id.*). EPA withheld draft and preliminary indoor air assessment reports and human health effects studies; internal e-mail communications, analyses, opinions and recommendations of EPA employees or contractors; and internal talking points and briefing papers—all potentially relevant to the WTC Litigation. (*Id.*) Defendants appealed EPA's decision to treat the subpoenas as FOIA requests but EPA unilaterally denied this appeal. (*See* March 30, 2006 letter from Marla E. Diamond, Small Cert. Ex. H).

Thereafter, in April 2009—after full-fledged discovery was authorized—Defendants served a subpoena *duces tecum* on EPA requesting documents related to the EPA's work at the WTC Site. (*See* April 21, 2009 Subpoena *duces tecum*, Small Cert. Ex. I). Defendants' document requests covered topics ranging from information relating to the EPA's environmental testing at the Site to their involvements with safety issues. (*Id.*) Later, in December 2009, Defendants served EPA Headquarters and EPA Region 2 with Fed. R. Civ. P. 30(b)(6) subpoenas for the depositions of (1) a records custodian and (2) an individual with substantive

---

[5] In addition to the document discovery allowed under Case Management Order No. 3, Defendants also took the depositions of two EPA employees, Steven Touw and Bruce Sprague, limited to the issues of immunity.

knowledge of the work performed by EPA at the WTC Site. (*See* December 11, 2009 30(b)(6) subpoena served on EPA Headquarters and December 11 2009 30(b)(6) subpoena served on EPA Region 2, Small Cert. Ex.'s J, K). But before depositions could move forward, Defendants adjourned these depositions in light of the settlement. (*See* March 22, 2010 letter from Patricia K. Hirsch, Small Cert. Ex. L). As a result of the stay, further enforcement of these subpoenas was made impossible from March 12, 2010 to November 22, 2011.

When non-party discovery resumed in November 2011, Defendants continued to pursue outstanding discovery from EPA. Because it was unclear whether EPA had fully complied with its discovery obligations, Defendants spoke with representatives of the EPA Office of Inspector General ("OIG"), EPA Headquarters and EPA Region 2 in an effort to move forward with its subpoena for depositions, originally served in December 2009. ("Small Cert. ¶ 15). Defendants sought to depose a records custodian from each of these three EPA sub-divisions both to confirm that EPA's production was complete and to determine whether any documents may have been lost or destroyed. Instead of complying with Defendants' Fed. R. Civ. P. 30(b)(6) subpoenas, EPA instead required Defendants to request these depositions under the agency's *Touhy* regulations (even though these requests were already made in Defendants' subpoenas). Attempting to move the process forward, Defendants—with adamant objection—consented to the EPA's request for a *Touhy* letter.[6] (*See* August 27, 2012 letter to Earl Salo, Small Cert. Ex. M).

---

[6] Defendants do not accept the EPA's interpretation of *Touhy* and object to the unilateral conversion of the subpoenas into FOIA requests. The United States Court of Appeals for the District of Columbia Circuit has held that "[a]n agency's *Touhy* regulations are relevant for *internal* housekeeping and determining who within the agency must decide how to respond to a federal court subpoena." *Watts v. SEC*, 482 F.3d 501, 508-09 (D.C. Cir. 2007) (emphasis added). Consistent with that reasoning, the United States District Court for the District of

Defendants' *Touhy* letters requested deposition testimony addressing: (1) whether EPA produced field notes for each and every on-scene coordinator at the WTC Site; (2) how the environmental monitoring evolved at the WTC Site, from sampling to analysis; and (3) how documents related to the WTC Site were obtained, created, stored, disseminated, maintained, preserved, and/or lost or destroyed. (*Id.*) This effort met with varying degrees of success.

After a series of negotiations with EPA OIG, counsel for the parties agreed to address many of the issues listed in the *Touhy* request letter by a declaration from EPA OIG prior to the deposition of a records' custodian. Defendants' counsel has reviewed the detailed declaration provided by EPA OIG and believe that at the present time, it is an adequate and generally thorough response. In stark contrast, however, the outcome of negotiations regarding the depositions of an EPA Headquarters and EPA Region 2 records custodian has proved to be far from adequate. Defendants issued its *Touhy* request letter for those records custodian depositions on August 27, 2012. (*Id.*) No response was received until October 25, 2012—and only after Defendants informed EPA that court intervention per the Court's statements at the October 17, 2012 Court Conference would occur. (*See* October 25, 2012 letter from Steven M. Talson, Small Cert. Ex. N).

In its October 25, 2012 response, EPA categorically refused to produce any individual for deposition. EPA claimed that these depositions were not "clearly in the best interests of the

---

Columbia has observed that *Touhy* regulations "apply solely to the agency's methods for handling discovery requests," and "[t]he means by which parties issue subpoenas on the government, and the applicable legal standards governing compliance, are governed by the Federal Rules of Civil Procedure." *SEC v. Selden*, 484 F. Supp. 2d 105, 109 (D.D.C. 2007); *see also Houston Bus. Journal v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996) (stating that, to the extent that the Agencies' *Touhy* regulations conflict with the Federal Rules of Civil Procedure, they are *ultra vires* and, thus, invalid). Furthermore, certain documents such as geological data and certain inter/intra agency memoranda, may be exempt from disclosure under FOIA. *See* 5 U.S.C.A. 552(b).

7

EPA"—a position in direct contravention to the views expressed by the Court at the November 22, 2011 Court Conference. At that conference, the Court made clear that "whatever [the federal agencies] hold back it has to be on a principled basis or a privilege log basis." (*See* November 22, 2011 Court Conference 3:14 – 10:3, Small Cert. Ex. D). And David Fishback from the United States Department of Justice, appearing for the EPA, was present at that conference. (*Id.*).

But the EPA's actions since the November 22, 2011 Court Conference have not been on a privilege log basis, nor have they been principled. Throughout the discovery process, EPA has refused to produce a privilege log—improperly treating Defendants' subpoenas as requests under FOIA. (*See* May 14, 2009 letter from Arthur A. Elkins, Small Cert. Ex. O). And the EPA's arguments against producing a records custodian for a deposition are not principled. EPA argues that the deposition requests are overbroad and would require the deposition of numerous EPA records custodians and individuals with substantive knowledge of the WTC Site. (*See* October 25, 2012 letter from Steven M. Talson, Small Cert. Ex. N). But this argument misses the mark. Under Rule 30(b)(6), the agency is allowed to educate a witness regarding the issues requested in the subpoena. *Bank of New York v. Meridien Biao Bank Tanz.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997). Numerous employees would only need to be deposed if EPA chose to do so. It is EPA, and not Defendants, who have manufactured this purported burden.

EPA further takes issue with the fact that the areas of testimony requested in the *Touhy* letter would require a records custodian to have substantive knowledge of the documents prepared at the WTC Site.[7] (*See* October 25, 2012 letter from Steven M. Talson, Small Cert.

---

[7] Regardless of the EPA's objections, Defendants' December 2009 subpoenas specifically sought the deposition of a records custodian *and* an individual with substantive knowledge of the WTC

8

Ex. N). Implicitly, a records custodian must have an understanding of the types of documents prepared at the WTC Site to testify as to how those documents were stored, maintained, and produced. Defendants do not have substantive knowledge of the documents prepared by EPA at the WTC Site and must rely on EPA for this knowledge. It is only with this knowledge—obtained from a records custodian with substantive knowledge of the documents produced at the Site—that Defendants can determine if EPA's production is adequate. And if there is no records custodian with this knowledge, then EPA can (in fact, is obligated to) educate the chosen deponent under Rule 30(b)(6).

Securing complete production of EPA's documents is crucial to Defendants' defense. By way of example, the field notes prepared by EPA on-scene coordinators provide first-hand knowledge of the sampling conditions at the WTC Site. These notes often contain information that is not available from lab sheets or chain of custody forms and will allow defendants to determine the accuracy of environmental monitoring at the WTC Site. As EPA faces minimal burden by producing individuals for deposition on these topics, Defendants urge this Court to compel EPA to comply with its discovery obligations and produce the requested individuals for deposition.

## II. ANGEL AERIAL SHOULD BE COMPELLED TO PRODUCE RECENTLY IDENTIFIED DOCUMENTS RESPONSIVE TO DEFENDANTS' SUBPOENA OR PROVIDE A CERTIFICATION AS TO WHY THESE DOCUMENTS CANNOT BE PRODUCED

Angel Aerial, a company that provided dust suppression at the WTC Site, was initially served with a subpoena for documents on May 22, 2009 seeking documents related to its dust suppression work at the WTC Site. (*See* May 22, 2009 Subpoena *duces tecum* issued to Angel

---

Site. It is this subpoena, and not the *Touhy* letter that EPA forced Defendants to prepare, that controls.

9

Aerial, Small Cert. Ex. P). On October 21, 2009, Jim Miller, President of Angel Aerial, informed Defendants that "[a]fter an extensive search, [Angel Aerial] was unable to locate the [responsive documents] you requested." (*See* October 21, 2009 letter from Jim Miller, Small Cert. Ex. Q). In an effort to gain a better understanding of the overall dust suppression efforts at the WTC Site and Angel Aerial's involvement, Defendants sought to interview Mr. Miller. During this interview held on October 11, 2012—more than 2 years after the initial subpoena was issued—Mr. Miller revealed that he had "boxes" of documents, stored at Angel Aerial's Massapequa office, detailing Angel Aerial's dust suppression efforts at the WTC Site. (*See* November 29, 2012 letter to Jim Miller, Small Cert. Ex. R). At the time, Mr. Miller took pride in maintaining these documents, explaining at great length the importance of these documents to him and Angel Aerial. He then agreed to produce these documents in response to Defendants' subpoena. (*Id.*)

Since the October 11, 2012 interview with Mr. Miller, several attempts were made to arrange for the production of these documents, but to no avail. (*Id.*) Angel Aerial suddenly changed its position on November 30, 2012, claiming that its WTC documents were no longer in existence, in direct contravention to the statements made by Mr. Miller on October 11, 2012. (Small Cert. ¶ 22). Further efforts to determine the scope of Angel Aerial's work at the WTC Site and the loss of Angel Aerial's documents have been ignored. This, despite being informed on November 29, 2012 and January 16, 2013 that Defendants would seek Court intervention if Angel Aerial did not cooperate in discovery. (*See* November 29, 2012 letter to Jim Miller, Small Cert. Ex. R; Small Cert. ¶ 23).

Documents relating to Angel Aerial's work at the WTC Site are critical to Defendants' defense preparations and may provide important environmental health and safety information

relating to engineering controls, which served to significantly limit Plaintiffs' potential exposures to dust at the WTC Site. Notwithstanding the importance of these documents, Angel Aerial has given Defendants the run around—on the one hand stating unequivocally that responsive documents exist and then claiming that those same documents have been lost or destroyed. Moreover, Defendants attempts to gain a better understanding of Angel Aerials' work at the Site and the loss of its documents have been met with evasive tactics. Angel Aerial has refused to provide Defendants with any details as to when the loss or destruction of documents occurred or explain how it allegedly occurred. As such, Defendants request that Angel Aerial and Mr. Miller be compelled to produce these documents immediately. In the alternative, if these documents have in fact been destroyed, Defendants request that this Court order Angel Aerial to provide a certification setting forth specific details regarding the circumstance of the destruction and the timing of the same so that this information can be further evaluated by Defendants.

## CONCLUSION

Because EPA and Angel Aerial have failed to comply with their discovery obligations, Defendants urge the Court to direct these non-parties to comply with the subpoenas that Defendants issued, to produce and permit for inspection and copying any responsive materials specified in those subpoenas and/or certify to why those documents cannot be produced, to compel the production of individuals for deposition, and to award any other relief that this Court sees fit.

Dated: February 8, 2013

                                                 *s/ James E. Tyrrell, Jr.*
                                                 James E. Tyrrell, Jr. (JT 6837)
                                                 Joseph E. Hopkins

PATTON BOGGS LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 246-5100
-and-
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
(973) 848-5600
*Attorneys for Defendants*