**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE WORLD TRADE CENTER DISASTER SITE LITIGATION | 21 MC 100 |
| THIS DOCUMENT APPLIES TO ALL WORLD TRADE CENTER DISASTER SITE LITIGATION | |

**NON-PARTY U.S. ENVIRONMENTAL PROTECTION AGENCY'S
OPPOSITION TO DEFENDANTS' OMNIBUS MOTION TO COMPEL AND
MEMORANDUM IN SUPPORT OF CROSS-MOTION TO QUASH SUBPOENA**

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION .............................................................................................................1

FACTUAL BACKGROUND .............................................................................................2

      A.    Defendants' Previous Discovery Requests ..................................................2

      B.    Defendants' 2009 Subpoenas for Testimony ...............................................6

ARGUMENT .....................................................................................................................10

I.     Defendants May Not Enforce the Subpoena to EPA Headquarters in this Court..............10

II.    The Court Should Quash Defendants' Subpoena to EPA Region 2 .................................11

      A.    The Court Should Sustain EPA Region 2's Denial of the Request for Testimony Because It Was Not "Arbitrary and Capricious" Under the Administrative Procedure Act.................................................................11

      B.    Even Applying the Standard of Review Under the Federal Rules of Civil Procedure, the Court Should Disallow the Requested Depositions Because They Would Subject EPA to an Undue Burden.....................................17

CONCLUSION...................................................................................................................20

## TABLE OF AUTHORITIES

**PAGE**

### FEDERAL CASES

*Bangoura v. U.S. Department of the Army,*
    607 F. Supp. 2d 134 (D.D.C. 2009) ...................................................................5

*Dow Chemical Canada, Inc. v. HRD Corp.,*
    No. H-10-0138, 2010 WL 2680641 (S.D. Tex. July 2, 2010) ...........................10

*EPA v. General Electric Co.,*
    197 F.3d 597 (2d Cir. 1999),
    *modified on reh'g*, 212 F.3d 689 (2d Cir. 2000) ........................................11, 12

*In re Application for Order Quashing Deposition Subpoenas, dated July 16, 2002,*
    No. M8-85, 2002 WL 1870084 (S.D.N.Y. Aug. 14, 2002) ...............................10

*In re SEC ex rel. Glotzer,*
    374 F.3d 184 (2d Cir. 2004) ........................................................................11, 12

*In re Sealed Case,*
    141 F.3d 337 (D.C. Cir. 1998) ..........................................................................10

*In re September 11 Litigation,*
    621 F. Supp. 2d 131 (S.D.N.Y. 2009) .....................................................11, 12, 13

*Moran v. Pfizer, Inc.,*
    99CIV9969, 2000 WL 1099884 (S.D.N.Y. Aug. 4, 2000) ................................12

*Motor Vehicle Manufacturers. Ass'n of U.S. v.*
    *State Farm Mutual Automobile Insurance. Co.,*
    463 U.S. 29 (1983) .....................................................................................12, 13

*Reynolds v. Attorney General,*
    391 Fed. Appx. 45 (2d Cir. 2010) ......................................................................17

*Solomon v. Nassau County,*
    274 F.R.D. 455 (E.D.N.Y. 2011) ..................................................................12, 18

*United States ex rel. Touhy v. Ragen,*
    340 U.S. 462 (1951) ............................................................................................1

*Westernbank Puerto Rico v. Kachkar,*
    No. 07-1606, 2009 WL 856392 (S.D.N.Y. Mar. 27, 2009) ...............................10

## DOCKETED CASES

*Kosmaczewski v. City of New York*,
    No. 1:05-cv-07206-AKH (S.D.N.Y.)...................................................................19

*Montalvo v. City of New York*,
    No. 1:05-cv-07208-AKH (S.D.N.Y.)...................................................................19

*Roche v. FGP 90 West Street, LLC*,
    No. 1:05-cv-07150-AKH (S.D.N.Y)....................................................................19

## STATUTES

5 U.S.C. § 301 ...................................................................................................................1

5 U.S.C. §§ 551-59, 701-06 ..............................................................................................2

5 U.S.C. § 552 ...................................................................................................................3

5 U.S.C. § 552(a)(4) ..........................................................................................................5

5 U.S.C. § 552(a)(6)(A) ...................................................................................................17

5 U.S.C. § 702 .................................................................................................................11

5 U.S.C. § 706(2)(A)........................................................................................................12

## REGULATIONS

40 C.F.R. §§ 2.401-2.403 ..................................................................................................8

40 C.F.R. § 2.404 .........................................................................................................9, 13

40 C.F.R. § 2.405 ...............................................................................................................5

40 C.F.R. § 2.406 .............................................................................................................17

## RULES

Fed. R. Civ. P. 26 ............................................................................................................18

Fed. R. Civ. P. 30(b)(6)...........................................................................................1, 6, 8, 18

Fed. R. Civ. P. 45 ................................................................................... 2, 10, 11, *passim*

## INTRODUCTION

Although the United States is not a party to the World Trade Center Disaster Site Litigation, Region 2 and Headquarters of the U.S. Environmental Protection Agency ("EPA") have participated in discovery since 2005, producing voluminous monitoring data, thousands of electronic files, and tens of thousands of pages of hard-copy documents.  The productions reflected information generated by numerous EPA and contractor personnel who contributed to EPA's supporting role in the disaster response.  Thus, it is incorrect to suggest, as Defendants do at several points in their brief, that EPA has disregarded its document discovery obligations.

Notwithstanding the focus of Defendants' brief, moreover, the sufficiency of EPA's document production is not before the Court.  Rather, Defendants' motion seeks to compel compliance solely with two subpoenas for Rule 30(b)(6) deposition testimony – one to EPA Headquarters, the other to EPA Region 2 – that they served in December 2009.[1]  On October 25, 2012, in response to Defendants' August 27, 2012, *Touhy* letter invoking the 2009 subpoenas, EPA denied the request for testimony.[2]  This denial was not unprincipled, as Defendants allege, but instead resulted from Defendants' failure to frame clear, concrete, and tailored topics for testimony.  EPA reasonably declined to provide the described "records custodian" testimony because the descriptions were irreconcilably ambiguous, overly broad, and burdensome,

---

[1] Defendants' motion to compel seeks relief solely with respect to these two subpoenas, and not as to any of the several document subpoenas Defendants have served on EPA since 2005.  Both the introduction and conclusion to Defendants' brief refer to EPA in tandem with Angel Aerial, Corp., and in that context ask the Court to compel the non-parties "to produce and permit for inspection and copying materials responsive to those subpoenas and/or certify why those documents cannot be produced, [and] to compel the production of individuals for deposition."  Defs.' Mem. at 1.  The section specific to EPA, however, requests only that the Court compel EPA to "produce the requested individuals for deposition."  Defs.' Mem. at 9 (ECF No. 2947).

[2] Under the federal housekeeping statute, 5 U.S.C. § 301, federal agencies may promulgate procedures governing "the conduct of [their] employees . . . and the custody, use and preservation of [the agencies'] records, papers and property.  The Supreme Court upheld the authority for such regulations in *United States ex rel. Touhy v. Ragen,* 340 U.S. 462 (1951).

potentially requiring EPA to involve dozens of agency personnel in the depositions.  Once apprised of these defects, Defendants could have corrected them.  Instead, Defendants were silent for three months and then filed their motion to compel.

At the outset, the Court should deny Defendants' motion as to the EPA Headquarters subpoena because it did not issue from this Court and thus may not be enforced here.  Further, the Court should sustain the agency's denial of the request for EPA Region 2 testimony and grant EPA's motion to quash that subpoena based on the "arbitrary and capricious" standard of review for agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-59, 701-06.  To the extent the Court considers the Headquarters subpoena at all, it should quash that subpoena as well.  Alternatively, the Court should disallow the requested testimony under Rule 45 because it would impose an undue burden on EPA.

## FACTUAL BACKGROUND

Because Defendants contend that the testimony they seek is necessary to confirm that EPA's document production was complete, and because their brief cites purported shortcomings in that production, EPA clarifies the history of its extensive document production efforts in section A below.  Section B recites the history of the 2009 subpoenas for testimony, on which Defendants have moved to compel.

### A.    Defendants' Previous Discovery Requests

Defendants first sought discovery from EPA in 2005, following up an informal request in June of that year with subpoenas for documents and testimony served on September 7, 2005.  In response, EPA made available for day-long depositions two of the Region 2 personnel, Bruce Sprague and Steve Touw, who had directed the agency's activities at the disaster site.  EPA's Region 2's Regional Counsel approved the testimony based on EPA's belief that it was in the interest of the agency to provide witnesses with relevant knowledge of EPA's responsibilities

2

and roles at the World Trade Center and Fresh Kills Landfill sites.  Nov. 21, 2005, letter from EPA Region 2 to Latham & Watkins, Bowcut Decl. Ex. 1.  EPA Headquarters and Region 2 also produced, in separate determinations under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, more than 45,000 pages of printed documents and five CDs containing sampling data, sampling reports from Public Affairs, photographs, and other electronic information.  *Id.*; Oct. 5, 2005, letter from EPA to Latham & Watkins, Bowcut Decl. Ex. 2.  EPA Headquarters withheld about 2,200 pages of documents under several FOIA exemptions.  Oct. 5, 2005, EPA letter at 1. Region 2 withheld about 664 pages of documents, most of them falling under FOIA Exemption 5 (for documents "not . . . available by law to a party") because they were protected by the attorney-client or deliberative process privileges.  Nov. 21, 2005, EPA Region 2 letter at 2.

Commensurate with the scope of Defendants' document request, EPA's 2005 production was necessarily broad.  While Defendants' motion casts the 2005 subpoena as "limited strictly to the issues of immunity," Defs.' Mem. at 5, the request nevertheless encompassed the breadth of EPA involvement in the disaster response.  The subpoena sought, among other information, *all* documents reflecting (a) EPA's "role and activities at the WTC Site"; (b) how EPA "assumed and carried out . . . particular duties under the Federal Response Plan, the National Contingency Plan, the Stafford Act, any Presidential Decision Directives, or pursuant to the agency's own statutory authority"; and (c) "any indoor and outdoor monitoring (air, dust, water, . . ., etc.) activities at or around the WTC Site."  Sept. 7, 2005, subpoena to EPA, Small Cert. Ex. F.

On April 21, 2009, Defendants directed a second document subpoena to EPA.  This subpoena was exceptionally overbroad, sweeping within it virtually all EPA activity relating to the WTC site, whether or not relevant to the litigation.  Sept. 17, 2009, letter from EPA Region 2 to Patton Boggs, Bowcut Decl. Ex. 3.  In particular, although the subpoena defined the "Relevant Time Period" as between September 11, 2001, and August 31, 2002, it nevertheless requested

3

documents relating to the time period between "September 11, 2001 and the present [when the subpoena was served]." *Id.* at 3. Further, of the subpoena's 28 requests, 19 were verbatim or near-verbatim reprisals of the requests in the 2005 subpoena, to which EPA already had responded. The Justice Department, on EPA's behalf, objected to the burdensome nature of these requests, and EPA, wrote to Defendants that it would respond under FOIA once DOJ's objections were resolved. *Id.* Defendants never narrowed their requests.

Rather than wait any longer for a resolution, EPA Region 2 voluntarily produced documents under FOIA in September 2009. *Id.* This production consisted of CDs containing 5,559 files in 540 folders, as well as various links for requested information that was available online. *Id.* Although it was not clear whether Defendants' request for sampling data included the individual laboratory data sheets, the agency also offered to make this voluminous information available for inspection and copying.[3] The eight-page cover letter to EPA's FOIA response set forth in detail, for each of the 28 document requests, whether the agency's 2005 response had addressed the request; what responsive documents were being provided; what material was publicly available; and, if there were no responsive documents, the reason why. *Id.* Under FOIA Exemption 6, EPA withheld personal identifying information of residents and agency employees involved in the WTC Residential Dust Cleanup Program. *Id.*[4]

After the stay of discovery was lifted in November 2011, EPA Headquarters also produced additional documents in response to the April 2009 subpoena. Headquarters withheld

---

[3] Defendants elected not to copy the data sheets in 2009. In 2012, after the stay of discovery was lifted, Defendants raised this topic and EPA provided this information, in electronic format, on 12 CDs. Feb. 21, 2012, letter from EPA Region 2 to Patton Boggs, Bowcut Decl. Ex. 4.

[4] In response to the April 21, 2009, subpoena, EPA's Office of the Inspector General separately produced documents in 2009-10 and after non-party discovery resumed in late 2011.

about 600 pages of documents under FOIA Exemption 5 as subject to privilege or work-product

protection.  Dec. 20, 2011, letter from EPA to Patton Boggs, Bowcut Decl. Ex. 5.

Although Defendants have complained about the conversion of their document subpoenas

into FOIA requests, *e.g.,*Defs.' Mem. at 6 n.6, EPA did so in accordance with its *Touhy*

regulations and FOIA.  *See* 40 C.F.R. § 2.405 ("[W]here a subpoena [is a] request for documents,

the requested documents will be provided or denied in accordance with [procedures for disclosing

records under EPA regulations implementing FOIA].").  Under FOIA, EPA was not required to

produce a *"Vaughn* index" – which correlates each withheld document with a FOIA exemption

and nondisclosure justification – in response to an initial document request.  *E.g., Bangoura v.*

*U.S. Dep't of the Army*, 607 F. Supp. 2d 134, 143 n.8 (D.D.C. 2009) (noting agency not required

to provide a *Vaughn* index prior to the filing of a FOIA lawsuit).  Nevertheless, EPA specified the

information it was withholding and the FOIA exemptions on which it relied to do so.  *See, e.g.,*

Nov. 21, 2005, letter from EPA Region 2 to Latham & Watkins at 1, Bowcut Decl. Ex. 1.

To the extent Defendants were dissatisfied with EPA's document productions, they had

administrative and judicial remedies.  Defendants submitted an administrative appeal of EPA

Region 2's 2005 FOIA decision, which resulted in the release of 89 additional pages and denial

of the remainder of the appeal.  Sept. 30, 2008, letter from EPA to Patton Boggs, Bowcut Decl.

Ex. 6.  Defendants also appealed Headquarters's 2005 FOIA decision, which resulted in EPA

providing a supplemental list describing the documents withheld.  Jan. 9, 2007, letter from EPA

to Patton Boggs, Bowcut Decl. Ex. 7.  Finally, Defendants appealed Headquarters' December

2011 FOIA decision, the determination of which is still pending.  Jan. 17, 2012, letter from

Patton Boggs to EPA, Bowcut Decl. Ex. 8.  In each instance, Defendants' appeals concerned

EPA decisions to withhold documents under the FOIA exemptions.  Defendants could have

challenged the sufficiency of EPA's document searches, but they have not done so.  Defendants

also could have filed district court actions seeking judicial review of their FOIA appeal denials, *see* 5 U.S.C. § 552(a)(4), but they have not done so.

**B.      Defendants' 2009 Subpoenas for Testimony**

On December 11, 2009, Defendants served the two subpoenas for Rule 30(b)(6) testimony that are the subject of their motion to compel.  One subpoena, issued from this Court, was directed to EPA's Region 2 office in New York.  Bowcut Decl. Ex. 18.  The other subpoena, issued from the United States District Court for the District of Columbia, was directed to EPA Headquarters in Washington, D.C.  Bowcut Decl. Ex. 17.[5]  Both commanded EPA to appear for deposition on December 28, 2009, in New York and Washington, D.C., respectively.

Defendants do not quote the subpoenas – which are substantially identical – but describe both as merely seeking the deposition of "a records custodian" for the purpose of "ensur[ing] the completeness and veracity of [EPA's] production."  Defs.' Mem. at 3.  Testimony by "records custodian(s)" on certain topics, quoted in full below, was one aspect of the subpoenas:

1. Procedures undertaken to respond to any and all subpoenas served on You in connection with the Litigation, including, but not limited to, decisions to produce or withhold documents.
2. The practices and procedures for the preparation, retention, storage, and indexing of documents from September 11, 2001 to the present.
3. The document retention/destruction policy in effect from September 11, 2001 to the present.
4. The use of electronic information systems to store documents from September 11, 2001 to the present.
5. The preparation of any privilege logs in relation to any and all subpoenas served on You in connection with the Litigation.

Bowcut Decl. Exs. 17, 18.  Notwithstanding the depositions of EPA personnel in 2005, however, the subpoenas also sought testimony by "individuals with substantive knowledge of work performed at the site."  This "substantive" testimony was to address the following subjects:

---

[5] For the Court's convenience, EPA has included the subpoenas in its own filing.  The same subpoenas are in Defendants' papers as Exhibits J and K to the Certification of Adlai Small.

1. Knowledge of any work performed or actions taken by Your agency concerning the WTC Site and related locations from September 11, 2001 to the present.

2. Executive orders, directives, proclamations, or communications, written or oral, with Your employees or Your agents concerning the WTC Site and/ [sic] related locations from September 11, 2001 to the present.

3. Health or safety issues at the WTC Site and related locations, including but not limited to:  enforcement of all applicable health and safety rules, regulations, standards and best practices; violations of any rules, regulations, standards, and best practices; and use of PPE.

4. Employee manuals, memoranda and correspondence pertaining to safety rules and/or regulations to be followed by Your employees and/or agents to ensure workplace safety at the WTC Site.

5. Knowledge of any cooperation, interactions, correspondence, or communications between You, Your employees, and/or Your agents and any other Federal, State, or private entity relating to the WTC Site and related locations.

6. Scientific, medical, or other research, testing, studies, reports, plans, policies, or procedures conducted or reviewed by You, Your employees, or Your agents relating to the WTC Site and related locations.

*Id.*

The Justice Department promptly registered objections, pointing not only to EPA's *Touhy* requirements, but also to the "excessive breadth" of the requests.  Dec. 16, 2009, letter from DOJ to Patton Boggs, Bowcut Decl. Ex. 16.  Shortly thereafter, Defendants agreed to adjourn the depositions scheduled for December 28 to allow the parties time to amicably resolve the matter. Dec. 23, 2009, letter from Patton Boggs to DOJ, Bowcut Decl. Ex. 20.  Defendants neither narrowed the subpoenas nor sought to enforce them before discovery was stayed in March 2010.

When non-party discovery resumed in November 2011, Defendants provided EPA a list of the documents they were still seeking, and Headquarters and Region 2 provided the documents.  *See* Dec. 8, 2011, letter from Patton Boggs to EPA and DOJ, Bowcut Decl. Ex. 9; Dec. 20, 2011, letter from EPA to Patton Boggs, Bowcut Decl. Ex. 5; Feb. 21, 2012, letter from EPA Region 2 to Patton Boggs, Bowcut Decl. Ex. 4.  Not until the summer of 2012 did Defendants revive the December 2009 subpoenas and renew a request for "records custodian"

testimony.  Echoing DOJ's 2009 objection, EPA again requested that Defendants comply with its *Touhy* regulations, 40 C.F.R. §§ 2.401-2.403, by submitting a written request stating the nature of the requested testimony and why permitting the testimony would be in the interests of EPA. *See* Oct. 25, 2012, letter from EPA to Patton Boggs, Bowcut Decl. Ex. 10 (referencing Aug. 2, 2012, phone call).  As EPA noted, clarification of the nature of the testimony sought was particularly important because the subpoenas were then more than two years old and sought testimony in substantive subject areas that could not be addressed by an EPA records official.  *Id.*

Defendants submitted a single *Touhy* request, referencing both subpoenas, to EPA Headquarters on August 27, 2012.  Bowcut Decl. Ex. 19.[6]  They made clear that they continued to "rely[] on both December 11, 2009 subpoenas served on EPA Headquarters and Region 2 as the basis for [their] request for depositions" and that they objected to EPA's invocation of the *Touhy* process.  *Id.*  Nevertheless, in describing the testimony sought, Defendants did not simply restate the Rule 30(b)(6) topics from the subpoenas.  Nor did they clarify whether their request included only the subpoenas' records-custodian topics.  Instead, the *Touhy* request employed entirely new language to describe the testimony Defendants were seeking.  In addition to seeking "confirm[ation of] the completeness of  both EPA Headquarters' and EPA Region 2's production of documents," the *Touhy* letter requested testimony on the following topics:

> (1) whether EPA produced field notes for each and every on-scene coordinator at the WTC Site;
> (2) the evolution of EPA monitoring data at the WTC Site, from collection to dissemination (including, but not limited to, how this data was synthesized and calculated; how the data was mapped; how the lab sheets were generated and stored; who had custody of this data; and how the results were communicated to workers at the WTC Site);

---

[6] For the Court's convenience, EPA has included the *Touhy* request in its own filing.  The same letter is in Defendants' papers as Exhibit M to the Certification of Adlai Small.

(3) whether any events may have occurred between September 11, 2001 and the present date that resulted in the loss or destruction of any WTC-related materials in EPA's possession;

(4) any deficiencies identified in recent productions made by EPA;

(5) how EPA monitoring data was conveyed to the Columbia University Mailman School of Public Health and what degree of cooperation existed between the two organizations;

(6) what efforts were undertaken to determine the location of documents responsive to the subpoena;

(7) what efforts were undertaken by EPA to determine whether a document was responsive to the subpoenas issued by Defendants; and

(8) whether any potential issues may arise in the authentication of documents produced by EPA.

*Id.*

EPA Headquarters and Region 2 denied Defendants' *Touhy* request as not "clearly in the interests of EPA," 40 C.F.R. § 2.404, in separate, similarly worded letters dated October 25, 2012.  2012 EPA denial letter, Bowcut Decl. Ex. 10; 2012 EPA Region 2 denial letter, Bowcut Decl. Ex. 11.  In summary, the denial letters found that the subpoenas and *Touhy* request would have required large numbers of personnel to be involved in depositions; in some aspects did not give EPA sufficient information to determine which employees needed to be deposed; and in other aspects overlooked agency FOIA and document-authentication processes.  *Id.*  The denials noted in particular that Defendants' *Touhy* letter, rather than clarify the testimony sought, had introduced even more ambiguity and overbreadth.  *Id.* at 2.[7]

Both the Headquarters and Region 2 letters indicated that the *Touhy* request "as currently constituted" was denied.  *Id.* at 4.  Defendants never attempted to narrow their testimony requests to address EPA's concerns before filing their motion to compel three months later.

---

[7] Defendants compare these denials to the separate response of the EPA OIG, which, after negotiations with Defendants, provided a declaration addressing various custodial issues relating to its production.  OIG, however, did not participate in the disaster response.  Its role was limited to producing after-the-fact reports relating to EPA's response at the disaster site, and the numbers of both personnel involved and documents produced were correspondingly limited.

## ARGUMENT

**I.      Defendants May Not Enforce the Subpoena to EPA Headquarters in this Court.**

Defendants' motion rightly asserts that Rule 45 allows a party serving a subpoena to "move the *issuing court* for an order compelling production."  Defs.' Mem. at 4 (emphasis added) (quoting *Westernbank Puerto Rico v. Kachkar*, No. 07-1606, 2009 WL 856392, at *2 (S.D.N.Y. Mar. 27, 2009)).  Referencing their two deposition subpoenas in tandem, without differentiating between the two, Defendants appear to have assumed that this Court would have jurisdiction over both.  Their motion never confronts the fact that one of the subpoenas – the subpoena served on EPA Headquarters – issued out of the United States District Court for the District of Columbia.  Bowcut Decl. Ex. 17.

Rule 45 allocates authority over subpoenas to the district court from which they were issued, even if another court would be in a better position to adjudicate the dispute.  *In re Application for Order Quashing Deposition Subpoenas, dated July 16, 2002*, No. M8-85, 2002 WL 1870084, at *6 (S.D.N.Y. Aug. 14, 2002) (refusing to transfer motion to quash to district in which underlying litigation was pending); Notes of Adv. Comm. on Rules, 1991 Am., Fed. R. Civ. P. 45 ("[A] subpoena for a deposition must still issue from the court in which the deposition or production would be compelled. . . . [T]he court in whose name the subpoena is issued is responsible for its enforcement."); *see also, e.g.*, *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) (reversing transfer of motion to quash and motion to compel to court where underlying litigation was pending); *Dow Chem. Canada, Inc. v. HRD Corp.*, No. H-10-0138, 2010 WL 2680641, at *2 (S.D. Tex. July 2, 2010) (collecting cases).  There is no jurisdiction to enforce the EPA Headquarters subpoena in this Court.  Because the subpoena to EPA Headquarters issued from the district court in Washington, D.C., that court is the proper forum for any motion to compel.

## II.     The Court Should Quash Defendants' Subpoena to EPA Region 2.

Defendants' deposition subpoena to EPA Region 2 issued from the Southern District of
New York and thus is properly before the Court.  Under the applicable standard of review,
supplied by the APA, the Court should sustain EPA's denial of Defendants' poorly drawn and
burdensome request for testimony as neither arbitrary nor capricious.  Even assuming, as urged
by Defendants, that the Federal Rules of Civil Procedure supply the rule of decision, the Court
should quash the subpoena because of the undue burden it would impose on EPA.  Although we
primarily reference the EPA Region 2 subpoena below, the same analysis would apply to the
EPA Headquarters subpoena, if the Court were to determine that it may consider that subpoena.

### A.     The Court Should Sustain EPA Region 2's Denial of the Request for Testimony Because It Was Not "Arbitrary and Capricious" Under the Administrative Procedure Act.

EPA Region 2's denial of Defendants' request for testimony is governed by the APA.
As this Court has recognized, "'sovereign immunity in the absence of a waiver' bars actions
seeking to compel a federal agency . . . to produce discovery."  *In re Sept. 11 Litig.*, 621 F. Supp.
2d 131, 143 (S.D.N.Y. 2009) (Hellerstein, J.) (quoting *EPA v. Gen. Elec. Co.*, 197 F.3d 592, 597
(2d Cir. 1999) (quashing subpoena for production of documents by EPA)).  Neither Rule 45 nor
any other rule of civil procedure waives this immunity.  *See Gen. Elec.*, 197 F.3d at 597-98.
Rather, the APA "contains the sole waiver 'that would permit a court to require a response to a
subpoena in an action in which the government is not a party.'"  *In re Sept. 11 Litig.*, 621 F.
Supp. 2d at 143 (quoting *Gen. Elec.*, 197 F.3d at 597).  The APA provides that a party "adversely
affected or aggrieved by agency action . . . is entitled to judicial review."  5 U.S.C. § 702.

The judicial review afforded by the APA is expressly conditioned on the existence of a
"final" agency action.  *In re SEC ex rel. Glotzer*, 374 F.3d 184, 191 (2d Cir. 2004).  In this case,
that final action – with respect to Defendants' *Touhy* request for testimony – was the October 25,

2012, denial of Defendants' request pursuant to the EPA's *Touhy* regulations.  Although

Defendants have argued that the agency's *Touhy* regulations are irrelevant to this proceeding,

citing law of the District of Columbia Circuit, Defs.' Mem. at 6 n.6, the Second Circuit takes a

different view of the matter.  *See Gen. Elec.*, 197 F.3d at 598.  Indeed, at the October 17, 2012,

hearing in this litigation, in which Defendants contended that EPA was not meeting its discovery

obligations, the Court itself advised Defendants that they would need to comply with the *Touhy*

regulations.  Oct. 17, 2012, Hearing Tr. 19:9 – 20:6, Bowcut Decl. Ex. 12.

Under the APA standard of review, an agency decision may be set aside only if it is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.

§ 706(2)(A).  In *General Electric*, the Second Circuit, after determining that the APA was the

only applicable waiver of sovereign immunity, initially concluded that the APA standard of

review governed an agency's refusal to respond to a subpoena.  197 F.3d at 599.  On rehearing,

however, the court withdrew the latter portion of the opinion, discerning at least "a plausible

argument" that the Rule 45 standard of review applied.  *EPA v. Gen. Elec. Co.*, 212 F.3d 689,

690 (2d Cir. 2000); *see also Glotzer*, 374 F.3d at 190.  Since *General Electric*, however, this

Court and at least one other district court in the Second Circuit have found the APA standard of

review applicable to agency refusals to comply with subpoenas.  *In re Sept. 11 Litig.*, 621 F.

Supp. 2d at 144 (applying APA standard to quash subpoena for testimony by FBI agents); *Moran

v. Pfizer, Inc.*, 99CIV9969, 2000 WL 1099884, at *2 & n.1 (S.D.N.Y. Aug. 4, 2000) (applying

APA standard and denying motion to compel FDA testimony).[8]

Review under the APA "arbitrary and capricious" standard is "narrow," and a court

should not "substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n of U.S. v.*

---

[8] Several other decisions have found it unnecessary to decide which standard applied, concluding
on the facts of those cases that the result was the same under either standard.  *See, e.g.*, *Solomon
v. Nassau County*, 274 F.R.D. 455, 458 (E.D.N.Y. 2011).

*State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Rather, as this Court has recognized, the

"analysis consists of determining whether the agency 'has relied on factors which Congress has

not intended it to consider, entirely failed to consider an important aspect of the problem, offered

an explanation for its decision that runs counter to the evidence before the agency, or is so

implausible that it could not be ascribed to a difference in view or the product of agency

expertise." *In re Sept. 11 Litig.*, 621 F. Supp. 2d at 144 (quoting *State Farm*, 463 U.S. at 43).

      EPA Region 2's denial of the request for testimony was in no sense arbitrary, capricious,

or an abuse of discretion.  EPA may only provide testimony in response to a subpoena when the

General Counsel or his designee, in consultation with the appropriate agency official, determines

that compliance with the subpoena is "clearly . . . in the interests of EPA." 40 C.F.R. § 2.404.  In

consultation with the Regional Administrator, Regional Counsel Eric Schaaf, properly concluded

that the request was not clearly in the interests of EPA because it would have required numerous

Region 2 personnel to be involved in depositions; in certain aspects did not allow the agency to

determine which employees would need to be deposed; and in other aspects overlooked agency

FOIA and document-authentication processes.  2012 EPA Region 2 denial letter, Bowcut Decl.

Ex. 11.  Further, Mr. Schaaf explained to Defendants exactly why this was so.[9]

      First, the process Defendants followed in serving their subpoena and crafting their *Touhy*

letter created irreconcilable ambiguity regarding the testimony they seek – ambiguity that exists

to this day in their motion to compel.  The December 2009 subpoena sought testimony by both

"records custodian(s)" and "individuals with substantive knowledge."  Bowcut Decl. Ex. 18.

The *Touhy* letter that followed in August 2012 did not simply restate the subpoena topics or

indicate that Defendants wanted testimony only on the "records custodian" topics.  Instead, the

---

[9] The letter from EPA Headquarters, by Associate General Counsel Kevin Minoli, articulated the
same reasons for denying Defendants' *Touhy* request.  Bowcut Decl. Ex. 10.

letter simultaneously asserted that Defendants sought "the deposition of a records custodian"; affirmed that Defendants relied on the subpoena as a basis for the depositions; asserted additional requests for substantive testimony not in the subpoena, including information on the "evolution of EPA monitoring data"; and disregarded other topics in the subpoena, leaving unclear whether Defendants still sought that testimony.  *Id.*  On this record, EPA Region 2 reasonably deemed the *Touhy* request insufficiently clear and overly broad.  2012 EPA Region 2 denial letter at 2.[10]

Second, even assuming Defendants sought only testimony on the topics listed in their *Touhy* request and in the "records custodian" portion of the subpoena, several of those topics required testimony beyond the capacity of an agency records official to provide.  *Id.* at 2-3. Indeed, as EPA Region 2 noted, the requests potentially required the potential involvement of *many* substantive witnesses.  *Id.*  EPA Headquarters – not Region 2 – has a Records Officer who potentially could speak to official policies and procedures for storage, retention, and destruction of agency documents, as requested in the December 2009 subpoena.  *See* EPA Records Mgmt. Policy, dated June 7, 2005, at 4, Bowcut Decl. Ex. 21.  Within Region 2, particular personnel could speak to procedures followed to respond to the document subpoenas and to the use of electronic systems to store documents, as also requested in the subpoena.[11]  However, the subpoena and *Touhy* letter went well beyond this sort of records custodian testimony.

---

[10] That EPA had cause for confusion as to whether Defendants sought records custodian testimony or substantive testimony or both is further illustrated by Defendants' brief.  *Compare* Defs.' Mem. at 3 ("EPA has refused to produce a records custodian for deposition") *with id.* at 8 n.7 ("Regardless of the EPA's objections, Defendants' December 2009 subpoenas specifically sought the deposition of a records custodian *and* an individual with substantive knowledge of the WTC Site.  It is this subpoena, and not the *Touhy* letter that EPA forced Defendants to prepare, that controls.")

[11] At both Region 2 and Headquarters, counsel assisted in aspects of the response to the document subpoenas, including determining which documents to withhold from release under FOIA exemptions.  Their testimony could not be compelled even under Rule 45.  *See* Fed. R. Civ. P. 45(c)(3)(A)(iii) (directing that a subpoena be modified or quashed to the extent it "requires disclosure of privileged or other protected matter").

For example, the *Touhy* letter sought testimony on the "efforts undertaken by EPA to determine whether a document was responsive" to Defendants' document requests, and the 2009 subpoena sought information on the "practices and procedures" for the "preparation [and] retention . . . of documents from September 11, 2001 to the present."  Bowcut Decl. Exs. 18, 19. EPA Region 2 did not have a single document custodian who could speak to the preparation and retention of the varied and voluminous documents related to the WTC disaster.[12]  Rather, numerous personnel were involved in EPA Region 2's disaster response and generated, received, and preserved the individual documents that were later produced in response to Defendants' 2005 and 2009 document subpoenas.  *See, e.g.*, Bowcut Decl. ¶ 3 (stating that in 2012, roughly 70 likely custodians of documents relating to EPA's WTC response were identified in Region 2); Bruce Sprague Dep. Tr. 131:11-13, Bowcut Decl. Ex. 14 (estimating that 25 to 30 on-scene coordinators from Region 2 were assigned to the disaster response); *id.* at 152:17 – 153:24 (discussing involvement of different Region 2 and other EPA personnel in decontamination operations, sampling at Ground Zero, sampling at Fresh Kills, the site Emergency Operations Center, vacuuming operations, and other taskings); Steven Touw Dep. Tr. 102:13-15, Bowcut Decl. Ex. 15 (explaining that Region 2 "had the majority of our people involved in the Trade Center response, either directly in the field or in a support role back in Edison").[13]

---

[12] Defendants' brief illustrates EPA's concern that the requests sought not mere records-custodian testimony, such as what would be used to establish a hearsay exception, but testimony from the custodians of individual documents.  *See* Defs.' Mem. at 9 ("It is only with this knowledge – obtained from a records custodian with substantive knowledge of the documents produced at the site – that Defendants can determine if EPA's production is adequate.")

[13] Beyond Region 2, various Headquarters components participated in EPA's disaster response, including, but not limited to, the Office of Solid Waste and Environmental Response, Office of Air Quality and Standards, National Exposure Research Laboratory, National Center for Environmental Assessment, Office of Environmental Information, and Office of Communication, Education, and Media Relations.  *See* Office of Science and Technology Policy, Preliminary Survey of Air Quality and Related Health Studies Conducted in the Vicinity of Ground Zero, Appx. B at 13-22 (Dec. 2002) (documenting WTC-related federal projects), Bowcut Decl. Ex. 13.

Defendants' *Touhy* letter also sought testimony on the "evolution of EPA monitoring data at the WTC Site, from collection to dissemination (including, but not limited to, how this data was synthesized and calculated; how the data was mapped; how the lab sheets were generated and stored; who had custody of this data; and how the results were communicated to workers at the WTC Site)." Bowcut Decl. Ex. 19. The records produced in response to Defendants' 2005 and 2009 subpoenas indicate that various Region 2 personnel performed sampling, as did personnel from other EPA regional offices and other agencies; contractors performed quality assurance and quality control functions; EPA's Office of Environmental Information at Headquarters aggregated the data and entered it into the Oracle database that was provided to Patton Boggs; other contractors mapped the data; and public affairs representatives met with the public to discuss the data. Numerous individuals from Region 2, in addition to Headquarters, would have been needed to address EPA's role in both the substantive data collection and the data preservation issues raised by Defendants' request for testimony.

Third, several testimony topics were so vague that EPA could not determine which, or how many, witnesses would need to be involved in depositions. 2012 EPA Region 2 denial letter at 3. These included "whether *any* events may have occurred between September 11, 2001 and the present date" that resulted in destruction of "WTC-related materials"; "*any* deficiencies identified" by Defendants in EPA's document productions; and "whether *any* potential issues may arise" in the authentication of EPA's documents. *Id.*; Bowcut Decl. Exs. 18, 19 (emphasis added). If Defendants had focused on specific deficiencies or documents, Region 2 would have had some basis to address the requests. Because numerous custodians provided responsive documents, however, EPA could not identify witnesses to address these topics in the abstract.

Fourth, all of these problems were exacerbated by the absence of a reasonable time limitation. 2012 EPA Region 2 denial letter at 3. Like the 2009 document subpoena, the

subpoena for testimony defined the "Relevant Time Period" as between September 11, 2001, and August 31, 2002.  Bowcut Decl. Ex. 18.  Both the subpoena for testimony and the *Touhy* request, however, sought testimony as to documents and events from the time period "between September 11, 2001 and the present."  That period spanned 8 years at the time of the subpoena.  By the time Defendants submitted their *Touhy* request in 2012, it had stretched to 11 years, "greatly magnify[ing] the burden on EPA by requiring it to identify . . . multiple deponents who together possess the broad scope of knowledge needed to respond."  2012 EPA Region 2 denial letter at 3.

Fifth, EPA Region 2 appropriately pointed out that aspects of Defendants' request related to the agency's FOIA and document authentication process, as to which Defendants had not exhausted their administrative remedies.  For example, if Defendants questioned whether EPA "produced field notes for each . . . on-scene coordinator at the WTC Site," or believed there to be "deficiencies . . . in recent productions made by the EPA," Bowcut Decl. Ex. 19, they should have challenged the sufficiency of EPA's searches for responsive documents under FOIA.  *See* 5 U.S.C. § 552(a)(6)(A); *Reynolds v. Attorney General*, 391 Fed. Appx. 45, 46-47 (2d Cir. 2010) (citing availability of administrative challenge to sufficiency of FOIA search).  In addition, Defendants could have resolved – and still may resolve – any of the "authentication issues" vaguely referenced in their *Touhy* letter by requesting authenticated copies of particular EPA documents produced to them under FOIA.  *See* 40 C.F.R. § 2.406.

EPA Region 2 was properly concerned with the burden and potential burden imposed by Defendants' *Touhy* response and their subpoena.  The Court should uphold EPA's determination and quash the subpoena for testimony.

**B.  Even Applying the Standard of Review Under the Federal Rules of Civil Procedure, the Court Should Disallow the Requested Depositions Because They Would Subject EPA to an Undue Burden.**

Under Rule 45, the Court must set aside a deposition subpoena that "subjects a person to

undue burden." Fed. R. Civ. P. 45(c)(3)(iv). Relatedly, under Rule 26, the Court must limit

discovery if, among other reasons, "the party seeking discovery has had ample opportunity to

obtain the information by discovery in the action[,] or . . . the burden or expense of the proposed

discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C). In analyzing an agency's

refusal to comply with a third-party subpoena, the Court "may take into account not only the

direct burdens caused by the testimony, but also the government's serious and legitimate concern

that its employee resources not be commandeered into service by private litigants to the

detriment of the smooth functioning of government operations." *Solomon*, 274 F.R.D. at 559-60

(internal quotation omitted).

For all the reasons set forth above, the undue burden imposed on EPA Region 2 by

Defendants' subpoena and *Touhy* request is manifest. Defendants do not appear to have

seriously considered the burden imposed by the imprecise, ambiguous, and broad nature of their

requests – even though Rule 45 requires them to take steps to limit that burden, Fed. R. Civ. P.

45(c)(1), and even though EPA Region 2's denial letter addressed the matter in detail. The *only*

arguments Defendants marshal regarding burden are that EPA need only designate one witness

to testify under Rule 30(b)(6), and that a records custodian who will testify about how

"documents were stored, maintained, and produced" should inherently have "substantive

knowledge of the documents prepared by EPA at the WTC Site." Defs.' Mem. at 8-9.

Neither of these arguments grasps the difficulty confronting EPA. Even if EPA elected

to present a single Rule 30(b)(6) witness on all of the topics set forth in the subpoena and *Touhy*

request, it would still be required – as Defendants stress on the next page of their brief – to

educate that witness with the information "known or reasonably available to the organization."

Fed. R. Civ. P. 30(b)(6); Defs.' Mem. at 9. Defendants' subpoena and *Touhy* request would still

require the involvement of numerous agency personnel, whether they testified themselves or

educated a designated witness.  And Defendants' claim about the knowledge of records custodians rests on the faulty premise that testimony about how documents were stored and produced is all Defendants have asked for.  In fact, as we detailed above, Defendants have asked a great deal more, including that a records custodian testify to "efforts undertaken to determine whether a document was responsive" and to "practices and procedures" for the "preparation [and] retention . . . of documents from September 11, 2001 to the present."  Bowcut Decl. Exs. 18, 19.  As indicated above, information on these subjects is in the hands of the numerous agency personnel who generated or received documents in connection with the WTC disaster response.

The undue burden imposed on EPA Region 2 alone is reason to quash Defendants' subpoena, but the Court should also consider that burden in view of the questionable need for any further discovery from EPA.  To the United States' knowledge, only two respiratory cases against Defendants, *Greenberg* and *Bowers*, remain on the 21 MC 100 docket.  Defendants recently filed a motion to dismiss Mr. Greenberg's claims as barred by the statute of limitations, ECF No. 2939, and Mr. Bowers has failed to appear for deposition, ECF No. 2964.  The allegations in the three remaining 21 MC 100 non-respiratory cases against Defendants do not implicate EPA's air monitoring or other disaster recovery efforts.[14]  Further, while Defendants assert that the "outstanding discovery" is also relevant to "claims against Defendants by plaintiffs in other dockets or that may bring claims in the future," the Court should not permit Defendants to bootstrap their other discovery needs, real or speculative, in this fashion.  If discovery from EPA was needed in other litigation, then Defendants should have sought it there.

---

[14] *See Kosmaczewski v. City of New York*, No. 1:05-cv-07206-AKH, ECF No. 1 at 17 (alleging ankle injury); *Montalvo v. City of New York*, No. 1:05-cv-07208-AKH, ECF No. 1 at 16 (alleging injury from fall while cutting beam); *Roche v. FGP 90 West Street, LLC*, No. 1:05-cv-07150-AKH, ECF No. 1 at 9-10 (alleging injury from falling air duct).

Finally, the burden imposed by this discovery should be considered alongside the fact

that Defendants have had ample opportunity to obtain it.  Defendants could have sought such

testimony as early as 2005, in connection with EPA's document production.  Defendants also

could have presented a clear and tailored request for testimony at any point after the stay of

discovery was lifted in November 2011.  Even after EPA Region 2 denied their *Touhy* request in

October 2012, Defendants had the opportunity to narrow their requests to address EPA's

concerns.  Instead, Defendants waited three months and then filed their motion to compel.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to compel as to

both 2009 subpoenas for testimony, and grant EPA's motion to quash the single subpoena – that

directed to EPA Region 2 – that may be reviewed in this Court.

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch, Civil Division

DAVID S. FISHBACK
Assistant Director, Torts Branch, Civil Division

_____ /s/ Brian E. Bowcut_____
BRIAN E. BOWCUT
Trial Attorney, Environmental Torts Section
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, DC 20044
E-mail:  brian.bowcut@usdoj.gov
Telephone:  (202) 616-4203
Facsimile:  (202) 616-4473

Attorneys for the U.S. Environmental
Dated:  February 26, 2013                          Protection Agency